UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
HONORABLE MARK C. SCARSI, U.S. DISTRICT JUDGE

_____

UNITED STATES OF AMERICA,      |
                               |
              Plaintiff,       |
                               |
VS.                            | No. 2:23-CR-00599-MCS-1
                               |
ROBERT HUNTER BIDEN            |
                               |
              Defendant.       |

_____


REPORTER'S TRANSCRIPT OF ARRAIGNMENT & STATUS CONFERENCE

LOS ANGELES, CALIFORNIA

THURSDAY, JANUARY 11, 2024

1:00 P.M.


_____

APRIL LASSITER-BENSON, RPR
FEDERAL OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA 90012
(213)894-3539

```
 1                        - A-P-P-E-A-R-A-N-C-E-S -

 2

 3     For the Plaintiff:

 4                    MR. LEO J. WISE
                      MR. DEREK EDWARD HINES
 5                    US DEPARTMENT OF JUSTICE
                      OFFICE OF SPECIAL COUNSEL, DAVID C. WEISS
 6                    950 PENNSYLVANIA AVENUE NW
                      ROOM B-200
 7                    WASHINGTON, DC 20530
                      (771)217-6091
 8                    ljw@usdoj.gov
                      deh@usdoj.gov
 9

10

11

12     For the Defendant:

13                    MR. ABBE DAVID LOWELL
                      MS. ANGELA M. MACHALA
14                    WINSTON & STRAWN, LLP
                      1901 L STREET NW
15                    WASHINGTON, DC 20036-3508
                      (202)282-5000
16                    abbelowellpublicoutreach@winston.com
                      (213)615-1997
17                    amachala@winston.com

18

19

20

21

22

23

24

25
```

```
 1              THURSDAY, JANUARY 11, 2024; 1:00 P.M.

 2                    LOS ANGELES, CALIFORNIA

 3      -------------------------------------------------------

 4            THE COURTROOM DEPUTY:  Calling Item No. 1, CR

 5      23-599, USA vs. Robert Hunter Biden.

 6                  Counsel, state your appearances, please.

 7            MR. WISE:  Good afternoon, Your Honor.  Leo

 8      Wise and Derek Hines for the United States.

 9            THE COURT:  Good afternoon.

10            MS. LOWELL:  Good afternoon, Your Honor.  Abbe

11      Lowell and Angela Machala of Winston & Strawn, on behalf

12      of Mr. Biden.

13            THE COURT:  Good afternoon, counsel.  Good

14      afternoon, Mr. Biden.  You're in courtroom 7C of the

15      United States District Court for the Central District of

16      California, located in Downtown Los Angeles.  We're here

17      today because you've been accused by the United States

18      with a criminal offense.  The proceeding today will

19      constitute your initial appearance and your arraignment.

20      And we're also going to have a status conference, as

21      well.

22                  Typically, the arraignment and the

23      initial appearance would be done before a magistrate

24      judge, then we would schedule a subsequent status

25      conference.  But just to make things more
```

```
 1    streamlined and avoid unnecessary hearings, we'll
 2    put them all together here.
 3              The Court notes that you're represented
 4    here by Mr. Lowell and Ms. Machala from the firm of
 5    Winston & Strawn.  So there's no issue with respect
 6    to counsel.
 7              The Court's received a statement of
 8    rights signed by you, and I've got it in front of
 9    me.  Did you sign this statement of rights?
10              THE DEFENDANT:  Yes, Your Honor.
11              THE COURT:  And did you understand it?
12              THE DEFENDANT:  Yes, Your Honor.
13              THE COURT:  So, you did read it before you
14    signed it?
15              THE DEFENDANT:  I did, Your Honor.
16              THE COURT:  Did you have an opportunity to ask
17    any questions of your counsel about it?
18              THE DEFENDANT:  Yes, Your Honor.
19              THE COURT:  And so, were all those questions
20    resolved?
21              THE DEFENDANT:  Yes, Your Honor.
22              THE COURT:  You need anymore time to go
23    through it?
24              THE DEFENDANT:  No, your Honor.
25              THE COURT:  Mr. Lowell, did you review the
```

5

1    advisement of the statutory and constitutional rights?

2              **MS. LOWELL:**  I did.  Would you have me be

3    standing or seating when I address you?

4              **THE COURT:**  You can seat.  Sitting is fine, as

5    long as you're close to the microphone, this way the

6    court reporter can pick everything up.  But that's ok.

7              **MS. LOWELL:**  We did review that with our

8    client.

9              **THE COURT:**  Okay.  And as far as you know,

10   does he have any remaining outstanding questions about

11   it?

12             **MS. LOWELL:**  He does not.

13             **THE COURT:**  Okay.  So the Court finds that the

14   defendant's been fully advised of his statutory and

15   constitutional rights.  And the defendant and counsel

16   have both signed the document indicating they've been

17   advised of defendant's statutory and constitutional

18   rights.

19             I want to talk about the charges.  So,

20   Mr. Biden, the Government's proceeding against you

21   by a way of a nine-Count indictment, returned by the

22   grand jury on December 7, 2023.  The indictment

23   charges you with violations of Title 26, United

24   States Code § Section 7201, and that's evasion of

25   Tax Assessment; Title 26, United States Code §

1    Section 7203, Failure to File and Pay Taxes; and

2    Title 26, United States Code § Section 7206, that's

3    filing False or Fraudulent Tax Return.

4                    Have you had an opportunity to review

5    the indictment?

6                **THE DEFENDANT:**  Yes, Your Honor.

7                **THE COURT:**  Without admitting or denying the

8    allegations contained in the indictment, do you

9    understand the nature of the charges being brought

10   against you?

11               **THE DEFENDANT:**  Yes, I do, Your Honor.

12               **THE COURT:**  You have the right to have the

13   indictment read to you here in open court.  Do you waive

14   that right?

15               **THE DEFENDANT:**  I do, Your Honor.

16               **THE COURT:**  So, I also want to remind the

17   Government, pursuant to the Due Process Protections Act

18   in the Central District of California, Order 21-02, the

19   Court orders the Government to comply with the disclosure

20   obligations under _Brady vs. Maryland_ and its progeny.  It

21   reminds the Government of the consequences of not doing

22   so -- the possible consequences.  And they could include:

23   Exclusion of evidence; adverse jury instructions;

24   dismissal of charges; contempt; referral to a

25   disciplinary authority; and sanctions.

7

1          Does the Government understand its

2   obligations and agree to comply with Brady?

3          **MR. WISE:**  We do, Your Honor.

4          **THE COURT:**  Thank you.

5          Just let me ask the Government counsel,

6   any need for victims to be notified of the

7   proceedings today?

8          **MR. WISE:**  No, Your Honor.

9          **THE COURT:**  Okay.  Thank you.

10         Now, that's the initial appearance part,

11  so now we'll move on to the arraignment part, which

12  is actually pretty short, considering we covered

13  information we needed to in the initial appearance.

14         Mr. Lowell, how does your client intend

15  to plead to the charges?

16         **MS. LOWELL:**  Free to the nine counts.

17  Mr. Biden enters a plea of not guilty.

18         **THE COURT:**  I'm going to have the courtroom

19  deputy take the plea of not guilty from Mr. Biden at this

20  time.

21         **THE COURTROOM DEPUTY:**  Mr. Biden, how do you

22  now plead to Counts I through IX of the indictment,

23  guilty or not guilty?

24         **THE DEFENDANT:**  Not guilty.

25         **THE COURTROOM DEPUTY:**  Thank you.

1          **THE COURT:**  Thank you.

2               Okay.  So that's the arraignment.  So

3     now we're going to move on to talk about bond and

4     detention.

5               Let me turn to the Government, first.

6     What's the Government's position on bond and/or

7     detention in this case?

8          **MR. WISE:**  Your Honor, we're not seeking

9     detention.  We agree with the recommendation from

10    pretrial and their conditions that they've proposed.

11         **THE COURT:**  Okay.  Thank you, counsel.

12              Does the defense agree with

13    the conditions proposed by pretrial services?

14         **MS. LOWELL:**  We do, Your Honor.

15         **THE COURT:**  And the Court notes the fact

16    that -- and this is intentional, that these conditions

17    are the same conditions existing in Delaware, because I

18    don't want there to be any confusion between requirements

19    here, as opposed to requirements in Delaware.  They

20    should be the same, which should make things simpler.  So

21    I'm going to go through and discuss the conditions, make

22    sure they're on the record.

23              And, Mr. Biden, if you have any

24    questions about the conditions, please let me know.

25    We'll let counsel know.  In fact, if you have any

9

1   questions at all during the proceeding, we can

2   always stop and address them.  Is that clear?

3             **THE DEFENDANT:**  Thank you, Your Honor, yes.

4             **THE COURT:**  So, the Court finds that there are

5   conditions that will assure defendant's appearance in

6   future court proceedings, and the safety of the

7   community.

8             Accordingly, the Court sets release as

9   follows:  The defendant is to be released upon his

10  own personal recognizance.

11            In addition to the general conditions of

12  release as noted in the release form, the following

13  conditions are imposed.  And again, these are the

14  same conditions as Delaware:  So, the defendant is

15  ordered to submit to the United States Probation and

16  Pretrial Services supervision as directed by the

17  supervising agency; defendant is to maintain or

18  actively seek employment, unless excused by the

19  supervising agency for schooling, training or other

20  reasons approved by the supervising agency; the

21  defendant is not to possess any firearms,

22  ammunition, destructive devices or dangerous

23  weapons; the defendant is not to use alcohol, and is

24  to submit to alcohol testing if directed to do so,

25  and also if directed to do so, participate in

1    outpatient treatment as approved by the supervising

2    agency; testing may include any form of prohibited

3    substance, screening or testing; you must pay all or

4    part of the cost for being tested, based upon your

5    ability to pay, as determined by the supervising

6    agency; the defendant is not to use or possess

7    illegal drugs or state-authorized marijuana;

8    defendant is to submit to drug testing; testing may

9    include any form of prohibited substance screening

10   or testing; again, you must pay all or part of the

11   cost of testing, based upon your ability to pay as

12   determined by the supervising agency; if directed to

13   do so, defendant must participate in outpatient

14   treatment as approved by the supervising agency; the

15   defendant is not to use for purposes of

16   intoxication, any controlled analogue as defined by

17   federal law, or any street synthetic or designer

18   psychoactive substance capable of impairing mental

19   or physical functioning, more than minimally, except

20   as prescribed by a medical doctor.

21            And there is an additional condition:

22   As directed by the probation and pretrial services

23   officer, the defendant shall provide to the

24   probation and pretrial services officer:  One,

25   federal and state income tax returns and a signed

1    release authorizing their disclosure; and two, an

2    accurate financial statement with supporting

3    documentation as to all assets, income expenses and

4    liabilities of the defendant; and communicating in

5    writing with all international travel plans and

6    provide supporting documentation if requested, both

7    in the Central District of California and to the

8    district in which you are residing.

9              Any question about any of those

10   conditions?

11              **THE DEFENDANT:**  No, your Honor.

12              **THE COURT:**  Any questions from counsel?

13              **MS. LOWELL:**  No, Your Honor.

14              **THE COURT:**  And I do know the Court has spoken

15   with the probation and pretrial services individuals and

16   they are here today and I thank them for joining us

17   today.  We've gotten a good record of the supervision, to

18   date, because I understand these individuals have been

19   providing the supervision for Delaware.  And I will just

20   say, in criminal matters, in the Court's experience,

21   that's all very helpful.  It really does provide the

22   Court more options when there's cooperation.  So the

23   Court appreciates that and notes that for the record.

24              There are pretty serious consequences if

25   there's not cooperation.  Any failure to obey the

1    conditions can cause a number of things to happen.

2    If you do fail to obey the conditions, the release

3    order can and most likely will be revoked.  A

4    warrant will issue for your arrest.  You may be

5    subject for prosecution for contempt, which could

6    result in a possible term of imprisonment or a fine,

7    in addition to the penalties you're facing, if

8    convicted of the charges against you.

9              Those are the consequences.  And in our

10   experience in this Court, we have done that.  When

11   folks have violated the consequences of release,

12   we've issued bench warrants for their arrest, and

13   people have -- many of them are having to spend

14   pretrial time in incarceration, as opposed to being

15   released.  Do you understand that?

16        **THE DEFENDANT:**  I do, Your Honor.

17        **THE COURT:**  Do you agree to abide by all the

18   conditions of your release?

19        **THE DEFENDANT:**  I do, Your Honor.

20        **THE COURT:**  Thank you.

21        Okay.  So we've now completed the

22   initial appearance and the arraignment portion of

23   the proceeding today.  They're very straightforward.

24        I'd like to kind of move into a status

25   conference portion.  And again, this is all pursuant

1    to Rule 12(c) of the federal rules of criminal

2    procedure.

3            I'd like to start off talking about

4    pretrial motions.  So, the Court has gone through

5    and actually read what's been filed so far in

6    Delaware.  So the Court wanted to come up to speed

7    on the issues of play here.  And so, we've got -- at

8    least we're up to speed in what's been filed so far.

9            The parties have spent, it looks like, a

10   lot of time, or will spend time briefing issues in

11   Delaware.  And I think that should help us expedite

12   matters here, because it wouldn't surprise me if

13   some of the same issues raised in Delaware are

14   raised in this Court.  In fact, the Court

15   anticipates that happening.

16           With that in mind, I'd like to set a

17   deadline for pretrial motions.  And these are the

18   dates the Court would like to hear -- would like to

19   keep to, with respect to pretrial motions.

20           One, the deadline to file pretrial

21   motions would be Tuesday, February 20, 2024.  So,

22   over a month from now.

23           The deadline for oppositions to pretrial

24   motions would be Monday, March 11, 2024.  If the

25   parties wish to file replies, replies aren't

1    required, according to the Court's criminal rules.

2    But if the parties wish to file replies, they would

3    be due by Monday, March 18, 2024.

4              I intend to hold a hearing on the

5    motions, back here in this Court, Wednesday,

6    March 27, 2024 at 1:00.  I would expect that hearing

7    to take the better part of the afternoon, unless I'm

8    surprised and the parties don't have very much by

9    way to discuss with motions, but I'm anticipating

10   that would be -- that would take us from 1:00 to

11   close of business here.

12             The Court would plan to issue rulings on

13   the motions no later than Wednesday, April 17, 2024.

14   So I'm kind of keeping you on a tight schedule, but

15   I'm sort of committing that the Court's going to use

16   its best efforts to not keep you hanging on that, to

17   make sure that the motions are resolved by April 17,

18   2024.

19             So, assuming the motions don't resolve

20   the matter, or otherwise resolve some interlocutory

21   appeal, the Court would hold a pretrial conference

22   on Monday, June 3rd at 1:00 p.m. and the trial would

23   begin Thursday, June 20, 2024 at 8:30 a.m.

24             Now, in looking at the Speedy Trial Act,

25   I note that, you know, the Speedy Trial Act says

1    that the trial's got to happen within 70 days of

2    today, which is the initial appearance and

3    arraignment.  By my calculation, the Court would

4    exclude the time from today, to the filing of the

5    motions, February 20, 2024.  In the interest of

6    justice, the Court will make the finding that the

7    interest of justice outweigh the defendant's right

8    and the public's right for a speedy trial, so I

9    exclude that time.

10           Now, I note that the time from the

11   filing of a motion, to the decision on the motion,

12   is also excluded under the Speedy Trial Act.  So I

13   think that the June 20, 2024 date would fit within

14   our 70-day window, starting 70 days from today.

15           If the parties have a different view on

16   that speedy trial time, let me know, but I think

17   that that works, by my own math.

18           So, that being said, I know I've talked

19   for awhile.  Do the parties know of any reason why

20   we can't keep to that schedule?

21        **MR. WISE:**  Not from the United States, Your

22   Honor, no.

23        **THE COURT:**  Thank you.

24        **MS. LOWELL:**  Not quite as certain as the

25   Government on this one, only because, Judge, at least as

1  to this defendant, we don't yet know the schedule in

2  Delaware.  I hope that this Court and that Court will

3  coordinate as necessary.  And I'm not sure there will be

4  a necessary overlap, but that's one point.

5          As to the motions practice, I think your

6  schedule is fine.  I may have another trial that

7  predates this by many years, that is still waiting

8  to be scheduled, but, again, I'm sure I can figure

9  out something that will accommodate that.

10          So, with the idea that I can come back

11  to the Court when I know those two things, the

12  schedule you have proposed is fine.

13          **THE COURT:**  All right.  So the Court will go

14  -- I'm sorry.

15          **MS. LOWELL:**  No, I was going to say one more

16  thing.

17          In terms of the motions practice, three

18  out of the four motions that we filed in Delaware

19  will certainly be repurposed, because they raise

20  issues that would be equally applicable in the

21  Central District of California as they were in the

22  District of Delaware.  There will be at least one

23  additional motion, because the events that took

24  place in the tax investigation are somewhat

25  different, have more moving parts, including the

1    actions of the IRS agents that were involved.  So

2    that will be one more coming your way that was not

3    in Delaware.  I don't know that that will change

4    anything, but it will not be a simple motion.

5            **THE COURT:**  Thank you, counsel.

6            So what I'm going to do is, I'll go

7    ahead and issue an order with those dates.  That

8    will hopefully prevent conflict with Delaware,

9    because this order will be in place and the Court in

10   Delaware will likely be aware of it.  But do let the

11   Court know if this is a conflict with your trial,

12   with respect to this specific hearing date.

13           So, one other thing on motions.  So, as

14   the parties know from reading the Court's standing

15   order, the Court's standing order in criminal cases

16   contemplates that the page limitations on motions is

17   10 pages.  Motions and oppositions and replies not

18   necessary.

19           Now, the Court is willing to grant the

20   parties a little leeway here, to exceed the page

21   limits, you know, contemplating doubling them, at

22   most.  I did read a motion in Delaware that was 70

23   pages long.  I'm looking for -- I'm not looking to

24   give the parties that much leeway.  So what I want

25   you to do is to meet and confer with each other, see

1   if you can agree on what you think are appropriate

2   page limitations, you know, not to exceed something

3   reasonable.  But I'll leave that to the parties in

4   the first instance to meet and confer on that.  And

5   just file a proposed stipulation and order to exceed

6   the page limitations set out in the Court's standing

7   order.  That make sense?

8            **MR. WISE:**  Yes, Your Honor.  Thank you.

9            **MS. LOWELL:**  It does to us, too, Judge.  And

10  we will meet and confer.  I mean, I get -- I definitely

11  understand.  I want to submit to you the fewest number of

12  pages, to make the legal and factual arguments.  And if I

13  can do that, and we'll try to confer, we may ask you for

14  a little leeway, as you said.  If there weren't 70 pages

15  of things to say in Delaware, I would have said, 70

16  pages.  But I understand your admonition to us, and we'll

17  try to conform.  Otherwise, I will give you good reason

18  to consider what we need.  Okay?

19           **THE COURT:**  Thank you, counsel.

20           And again, the more we can streamline

21  things, the better.  Just sticking to the legal

22  issues and the germane facts should help.

23           Okay.  Again, if we're going to move

24  this case either forward or expeditiously, and

25  efficiently -- and that's what this Court likes to

1   do.  We like to move things along, because I think

2   it's better for all the parties and we don't have

3   things linger.

4            So I'll remind the Government again of

5   its Brady obligations.  Has the Government already

6   produced Brady material?

7            **MR. WISE:**  Your Honor, we've made three

8   voluminous discovery productions that I think would

9   include anything that could reasonably be considered

10  Brady, and we've done that.  The most recent one was this

11  week.  And they were -- we began in the firearm

12  investigation -- in the firearm case, because arguably,

13  information in that case that is inculpatory in this

14  case, may be arguably, exculpatory in that case, and so,

15  it works in both directions.  So we took the position

16  that we would make fairly voluminous discovery

17  productions, starting in that case, and then continue as

18  this case was brought and as we're now here in front of

19  Your Honor.

20           **THE COURT:**  So, as far as you know, you've

21  fully complied with your Brady obligations at this point?

22           **MR. WISE:**  Yes, Your Honor.

23           **THE COURT:**  Thank you.

24           **MS. LOWELL:**  Inquire, please.  Your Honor, we

25  inquire of the Government whether their position is that

1    the discovery that they've made available in the Delaware

2    case is, in fact, for all intents and purposes, exactly

3    the same as they owe us in the California case.

4            THE COURT:  Counsel, would you care to comment

5    on that?

6            MR. WISE:  Sure.

7            Yeah, we're not going to reproduce the

8    same material that was produced in Delaware.  And it

9    is -- it's a common sort of production that we have.

10   Both charges came out of, essentially, the same

11   investigation.  And so, we've produced the discovery

12   for, really, all of that.

13           THE COURT:  And so, everything in Delaware is

14   fair game to be used here?

15           MR. WISE:  I'm not sure if that's the case,

16   but we have produced -- we have produced information in

17   the Delaware case that we don't intend to just reproduce

18   here.  That's what I would say.

19           THE COURT:  Okay.

20           MS. LOWELL:  I guess I -- I think that

21   clarified my question.  I guess I didn't ask it quite

22   right.

23           So, there's nothing additional that is

24   discoverable and required of the Government to

25   provide in California, that either has not been or

1     will not be provided in what they have been

2     providing in Delaware.

3              **THE COURT:**  And I think that's your position,

4     correct?

5              **MR. WISE:**  I think our position is, we've

6     produced -- for instance, in Delaware, there's records in

7     the year in which he purchased the firearm.  Let's say

8     there's business records, financial records that arguably

9     could be used to show his state of mind in that one year.

10    And that is potentially germane to a defense, on the

11    firearms charge.

12             We've produced additional years of

13    financial records here this week.  We don't intend

14    to go back into Delaware and say, here's all those

15    other years, both before and after the year when the

16    gun was purchased that we've produced in California.

17    So what I would say is, we're taking a kind of

18    unified approach.  Whether information is admissible

19    in either of the two trials, is a separate issue.

20             But it would seem inefficient and

21    wasteful to be giving a hard drive with all the 2018

22    financial records from Delaware, and Delaware -- and

23    then the same hard drive here.  And so, we're not

24    double producing, I guess is what I would say.

25             **THE COURT:**  Right.  But the answer to

1    counsel's question -- so, it's clear, though, that you

2    currently feel that you've produced all the materials

3    you're required to produce, either by having produced

4    them originally in Delaware, or having supplemented your

5    production over the last couple days.

6            **MR. WISE:**  Yes, Your Honor.  And there may be,

7    I think, potentially, additional small productions.  But,

8    at this point, our goal was, before coming before Your

9    Honor today, we would have substantially, all -- if not

10   all the discovery produced.  And I think we're in that

11   position.

12           **MS. LOWELL:**  That's very helpful, but just to

13   be -- a finer point on this.  I understand counsel's

14   representation.  But, for example, the investigation that

15   took place prior to events this summer, ended at a

16   certain point.  We know that a new investigation began in

17   this district, which included the impaneling of a grand

18   jury.  We know there were witnesses in front of that

19   grand jury.  We know there were documents obtained to

20   that grand jury.  I assume, therefore, that since it

21   wouldn't have necessarily come out of Delaware, counsel's

22   representing that, to the extent there's Brady, or other

23   material that was acquired in the Central District of

24   California since July 26 of 2023, that either has been or

25   will be made available.

1      **THE COURT:**  And I believe that's counsel's

2  representation.

3      **MR. WISE:**  It is.  If it's Brady that's

4  relevant to either case, it would -- it will have been

5  produced.

6      **THE COURT:**  Okay.  And if there's any issues

7  with discovery, you can always raise them with the Court.

8      **MS. LOWELL:**  It is our practice, as counsel

9  for the Government knows, that we will be making a

10  specific discovery request by letter to the Government so

11  that we can make sure that we've put in place everything

12  that we're asking for.  If there's any issues about that,

13  we hope to work them out.  Otherwise, of course, there

14  would be motions issue.

15      I guess on that, my question is, you

16  have set out the motion schedule which includes

17  February 20 of 2024?  That, I understood to be what

18  would normally be, if you call it, the dispositive

19  or trial based motions.

20      If there are discovery issues, how would

21  Your Honor like to us deal with those?

22      **THE COURT:**  Yeah, and I think that's a good

23  point.  Thank you for raising it.

24      The February 20th date is for motions

25  that you know now that you intend to bring.  If

1    something comes up later on, you're just welcome to

2    bring that motion at anytime, but only for things

3    that you weren't aware of before the February 20th

4    date.  Does that make sense?

5              **MS. LOWELL:**  Thank you.

6                   And there's only one more clarification

7    I would like, if you're willing, please.

8                   So, you've given us the hearing date

9    presumptively now for March the 27th.  If you just

10   scan the motions that were filed in Delaware, you'll

11   know that there is an issue that we've raised that

12   we believe requires an evidentiary hearing --

13             **THE COURT:**  Right.

14             **MS. LOWELL:**  -- depending on how the

15   Government responds.  That being the case, I don't know

16   if you want to combine that or how we would do that.  And

17   you don't have to answer that now, I suppose, until you

18   see how that plays out in our motions.  But I wanted to

19   raise that to the Court's attention, because we believe

20   there is such a need.

21             **THE COURT:**  And one of the things I wanted to

22   raise, I had a couple questions about the motions that

23   were raised today that -- just some thoughts the Court

24   had.  But let me just finish up on discovery and I'll get

25   to those questions, because it includes your issue with

1    an evidentiary hearing.

2              So, again, Brady -- complying with Brady

3    is important to keep us on track.  I want to remind

4    the party of their obligations under Rule 16 for

5    request for information, to make sure the parties

6    are responsive to each other, with respect to that.

7    And then, just suggest that the Government provide

8    Jencks material well in advance of trial, just so we

9    don't have unnecessary continuances and things

10   during trial.  So, I just wanted to make that

11   suggestion.  I know it's not required, but it

12   certainly helps when the Government makes early

13   Jencks material disclosures.

14             So, with respect to the motions, a

15   couple of things.  One, so, in several of the

16   motions it seemed to be requesting an evidentiary

17   hearing.  I just wanted -- in the papers, to be

18   helpful for the Court, if you could just make it

19   clear what the evidence would be you were seeking

20   from whom and what you expect it to show.  To the

21   extent you're looking at evidence about the

22   prosecutorial decision-making from the prosecutor's

23   side, just help the Court out.  You know, there's

24   obviously prosecutorial immunity.  And there's cases

25   from the Ninth Circuit and district court cases

1    which seem to limit the ability to take discovery

2    into prosecutorial decisions.  And so, I would like

3    you to address those cases.

4           One case from the Ninth Circuit that

5    jumps out is _Stapley vs. Pestalozzi_.  That's 733

6    F.3rd 804.

7           And then there's a case out of the

8    district court in Phoenix, _Garunyon vs. Maricopa_

9    _County_.  It talks about discovery with respect to

10   prosecutorial decisions.

11          So, if you're going to be asking for

12   that, just give me some briefing on that so --

13          **MS. LOWELL:**  We would have to.  And we will.

14   And I'll look at those two cases for sure.  But, Judge, I

15   know that those cases, without having seen them, we have

16   an incredibly sui generis situation here, whether or not

17   the Government agrees with us or not.  Of course they

18   don't.  But you do know something of the history of this

19   case.

20          We had a resolution of this case in the

21   summer of 2023, and then things happened.  And so,

22   one of our motions talks about the fact that we have

23   an existing agreement in effect.  And it has a fact

24   pattern based on that.  Depending on the

25   Government's opposition, which is due next week, it

1    may or may not require more evidentiary dealings.

2    It's an unusual situation when you're trying to find

3    out what happened when the Government says you don't

4    have a contract, and we say that we do, for example.

5    I don't know what those cases are, but I don't think

6    it can be in the same context.

7              And then, as to the other possibility --

8    and I'll look at this -- this is where it would very

9    well go to what you just pointed out.  We've raised

10   an issue of undue interference in the process.  If

11   there's been undue interference, and we believe

12   there has been, then probing who made that

13   interference, when they made it, and by what

14   vehicle, I think, gets us past the threshold of,

15   normally, you don't get that kind of discovery.

16             That being the case, I understand we

17   have the burden to show it.

18             **THE COURT:**  Right.  And it's going to be -- I

19   guess it's different if you're looking at a party outside

20   the prosecution team that is making statements -- urging

21   the prosecution to do something.  That all seems very

22   discoverable.  When you get inside the prosecution team,

23   that's where I think that the standards are higher and

24   you have to make a stronger showing to take discovery in

25   that area.  At least that's what I think the case law

1    stands for.  But you can tell me I'm wrong there.

2              **MS. LOWELL:**  No, I think you're generally

3    right.  And I think this is such an unusual situation for

4    our first motion filed in Delaware, for example, that it

5    might actually change what is often the norm.

6              Theoretically, if we have already shown

7    the Court correspondence between members of the

8    prosecution team and members of the then defense

9    team that said, we have an agreement, this is the

10   way it's going to go, this is what it means, we've

11   put that forward.  If they don't contest those

12   facts, I don't need the hearing.  If they contest

13   that that's not what was said by them or their

14   superiors or others, then we might.  It really

15   depends on what their response is.

16             **THE COURT:**  Okay.

17             **MR. WISE:**  Yeah, I would just say, I think

18   Mr. Lowell is putting the cart before the horse.

19             **THE COURT:**  Sure.

20             **MR. WISE:**  Whether we contest them or not,

21   there's a threshold question whether any of that matters

22   or is even relevant to the decision-making, based on the

23   motion that was filed.  And that's -- we're going to

24   respond Tuesday.  Not surprisingly, we do not think an

25   evidentiary hearing is warranted.  We do not think they

1    have met their burden.  We do not think this is all that

2    unusual.  Pleas fall apart all the time.  High-profile

3    people are prosecuted and it gets a lot of media

4    attention.  As the saying goes, "There's nothing new

5    under the sun."  And we think that's the case here.

6             MS. LOWELL:  We don't want to argue our

7    motion --

8             THE COURT:  Right.  No.

9             MS. LOWELL:  -- in front of Your Honor right

10   now and I know you don't want us to.  So why don't we

11   wait and argue that when it's due.

12            THE COURT:  Yeah.  No, I think that's fine.

13            And one other issue.  You talked about

14   issues that appear to be sui generis here.  In

15   looking at the separation of powers issue, I note

16   that the case that you cite, the Mardis case, right,

17   the district court case there, seems to be the only

18   case that ruled on an issue of congressional

19   interference with a prosecution.  And I know it

20   decided that it didn't violate the separation of

21   powers and it didn't rise to that level.

22            I'm always curious when there appears to

23   be only one case on an issue.  I've done a little

24   bit of digging.  Some of the hard-working people

25   sitting behind you have also done some digging.  And

1   we haven't found any either.  But I would just be

2   interested if there is other case law out there that

3   would be of interest to the Court.  Or if it is the

4   only case, please make sure that that's clear in the

5   briefing.

6             And then, finally, you know, in

7   the Ninth Circuit there's a high bar for

8   interlocutory appeals.  The leading case there is

9   *U.S. vs. Austin*, 416 F.3d 1016.  To the extent

10  anybody -- the defense wants to argue that denial of

11  their motion should lead to an interlocutory appeal,

12  please include that in your briefing.  Because what

13  I would like to do is, if that's going to be

14  requested, I would like to deal with it all at once,

15  if we can, just to streamline things a bit.

16            **MS. LOWELL:**  Fine.  Exactly.  We will do that.

17            As to your last point, I'll look at that

18  case.  Again, it shouldn't be surprising that in a

19  very unique factual situation, there won't be a lot

20  of cases, because up until the summer of 2023, there

21  wasn't the evidence that you can see from reading

22  all of the articles that that kind of interference

23  was attempted.  But if there's a case, when get to

24  the point of filing it here, as opposed to Delaware,

25  we will let you know.

```
 1              The other part about this, and again, it
 2      sort of goes to what Mr. Wise said.  One of the
 3      things in our briefing papers, which, if you've
 4      read, you've already seen, and will be refiled here,
 5      is the statements of all the officials at the
 6      Department of Justice who have said over and over
 7      again in every administration, that if congress does
 8      what we're alleging congress did, or, at least, some
 9      members of congress, it could be a violation of
10      both:  Separation of powers and due process. I
11      realize that's not a district court case.
12              But, of course, there's administrative
13      law that says when an agency makes a statement about
14      its policies, it ought to basically enforce those.
15      So we'll bring that to your attention.
16              THE COURT:  Thank you.
17              So, those were all of the issues that I
18      wanted to kind of discuss in this sort of
19      preliminary status conference.
20              Do the parties have issues they would
21      like to raise?  Let me start with the Government.
22              MR. WISE:  Not from the United States, Your
23      Honor.  Thank you.
24              THE COURT:  Okay.
25              MS. LOWELL:  One moment, Your Honor.
```

```
 1              THE COURT:  Sure.
 2              MS. LOWELL:  (Conferring with client.)
 3               Your Honor, we do not.
 4              THE COURT:  Okay.  Well, thank you.  I will
 5     look forward to seeing you at the motion hearing.  I look
 6     forward to rereading the papers.
 7               Mr. Biden, please, immediately following
 8     the hearing, I think there's some additional
 9     processing with probation and pretrial services that
10     needs to happen.
11              MS. LOWELL:  I think we're complete, Your
12     Honor, but we'll make sure with your deputy clerk and
13     then them, that that's the case.
14              THE COURT:  Yeah.
15              MS. LOWELL:  I think we may -- if we have to
16     sign this particular one, we'll do that.
17              THE COURT:  So, yeah, just -- I think you may
18     need to report to the U.S. Marshal for some exit
19     proceeding.  I'm not sure what it will involve.
20              MS. LOWELL:  We'll do whatever is required.
21              THE COURT:  Just make sure you talk to
22     probation and the U.S. Marshal on the way out.
23               And we may have not -- from a technical
24     nature, I think we have to make sure that we get you
25     to state your true name and make sure it's the
```

1    correct name on the indictment.

2              So, could you please do that?

3              **THE DEFENDANT:**  Robert Hunter Biden.

4              **THE COURT:**  And that's the correct name on the

5    indictment?  You verified that?

6              **THE DEFENDANT:**  Yes, Your Honor.

7              **THE COURT:**  Okay.  Thank you very much.

8              Okay.  That's all we have for today.

9    Thank you, counsel.  I look forward to working with

10   you on this.  Thank you.

11             **MR. WISE:**  Thank you, Your Honor.

12             **MS. LOWELL:**  Thank you.

13             (WHEREUPON, the foregoing proceedings were

14             adjourned at 1:32 p.m.)

15                    (Adjournment.)

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    C E R T I F I C A T E
 3        I, April Lassiter-Benson, do hereby certify that the
 4   foregoing 33 pages are, to the best of my knowledge, skill
 5   and ability, a true and accurate transcript from my
 6   stenotype notes in the matter of:
 7
 8   UNITED STATES OF AMERICA
 9   vs.
10   ROBERT HUNTER BIDEN
11
12        Dated this 15th day of January, 2024.
13
14   S/APRIL LASSITER-BENSON
     Official Court Reporter
15   United States District Court
     Central District of California
16
17
18
19
20
21
22
23
24
25
```