1  Angela M. Machala (State Bar No. 224496)
   AMachala@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue, 38th Fl.
3  Los Angeles, CA 90071
   Telephone: (213) 615-1700
4  Facsimile:  (213) 615-1750

5  Abbe David Lowell (*admitted pro hac vice*)
   AbbeLowellPublicOutreach@winston.com
6  Christopher D. Man
   CMan@winston.com
7  Kyllan Gilmore
   KGilmore@winston.com
8  WINSTON & STRAWN LLP
   1901 L Street NW
9  Washington, DC 20036
   Telephone: (202) 282-5000
10 Facsimile:  (202) 282-5100

11 Attorneys for Robert Hunter Biden

12

13                 **UNITED STATES DISTRICT COURT**

14                 **CENTRAL DISTRICT OF CALIFORNIA**

15

16 UNITED STATES OF AMERICA,            **Case No. 2:23-cr-00599-MCS**

17              Plaintiff,              *Hon. Mark C. Scarsi*

18     vs.                             **DEFENDANT'S NOTICE OF MOTION
                                       AND MOTION TO DISMISS FOR
19 ROBERT HUNTER BIDEN                 SELECTIVE AND VINDICTIVE
                                       PROSECUTION AND BREACH OF
20              Defendant.             SEPARATION OF POWERS**

21
                                       Hearing Date:  March 27, 2024
22                                     Time:          1:00 PM
                                       Place:         Courtroom 7C
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL DEREK E. HINES

PLEASE TAKE NOTICE that on March 27, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi, Defendant Robert Hunter Biden, by and through his attorneys of record, will, and hereby does, respectfully move this Court for an order dismissing the Indictment for selective and vindictive prosecution as the prosecution is motivated by discriminatory intent and animus, has discriminatory effects, violates separation of powers principles, and because the record establishes a presumption of vindictiveness.  In the alternative, this Court should order discovery and a hearing so that Mr. Biden may provide further support for his claims.

Mr. Biden's motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file with the Court, the oral arguments of counsel, and such other matters as the Court may deem proper to consider.

Dated:  February 20, 2024                  Respectfully submitted,

                                                         WINSTON & STRAWN LLP


                                            By: */s/ Angela M. Machala*
                                                 Angela Machala
                                                 Abbe David Lowell
                                                 Christopher D. Man
                                                 Kyllan Gilmore

                                                 *Attorneys for Robert Hunter Biden*

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................4

    I.    The Tax Investigation, The Gun, And DOJ's Initial Charging Decision ..4

    II.    Mounting Political Pressure And DOJ's Second Charging Decision .......4

    III.    IRS Whistleblowers And DOJ's Third Charging Decision ......................5

    IV.    Congressional Intervention And DOJ's Fourth Charging Decision .........5

    V.    Aftermath And DOJ's Fifth Charging Decision .......................................7

    VI.    DOJ Policy Against Congressional Interference ......................................8

LEGAL STANDARD ......................................................................9

ARGUMENT ...............................................................................11

    I.    This Prosecution Is Motivated By Discriminatory Intent And Animus ..11

    II.    The Record Establishes A Presumption Of Vindictiveness....................15

    III.    DOJ's Prosecution Of Mr. Biden Has Discriminatory Effects ...............17

    IV.    The Prosecution Of Mr. Biden Violates Separation of Powers ..............19

    V.    If The Court Does Not Dismiss, It Should Permit Discovery And A Hearing ...................................................................................20

CONCLUSION ...........................................................................20

i

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS - CASE NO. 2:23-CR-00599-MCS

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Collins v. Jones*,
  2015 WL 790055 (E.D. Pa. Feb. 24, 2015) ...................................................14, 15

6

7

*Dixon v. D.C.*,
  394 F.2d 966 (D.C. Cir. 1968) .....................................................................11, 15

8

9

*Duncan v. Perez*,
  445 F.2d 557 (5th Cir. 1971) ..............................................................................19

10

11

*Medrano v. Allee*,
  347 F. Supp. 605 (S.D. Tex. 1972) .....................................................................19

12

13

*Miracle v. Estelle*,
  592 F.2d 1269 (5th Cir. 1979) ............................................................................16

14

15

*United States v. Adams*,
  870 F.2d 1140 (6th Cir. 1989) .................................................................10, 18, 20

16

17

*United States v. Alvarado-Sandoval*,
  557 F.2d 645 (9th Cir. 1977) ........................................................................15, 16

18

*United States v. Armstrong*,
  517 U.S. 456 (1996).............................................................................................9

19

20

*United States v. Banks*,
  383 F. Supp. 389 (D.S.D. 1974) ...................................................................11, 20

21

22

*United States v. Berrios*,
  501 F.2d 1207 (2d Cir. 1974) ...............................................................................9

23

24

*United States v. Biden*,
  No. 23-cr-00061-MN (D. Del. 2023)..............................................1, 6, 14, 20

25

26

*United States v. Biden*,
  No. 23-mj-00274-MN (D. Del. 2023) ...................................................................6

27

*United States v. Bradley*,
  880 F. Supp. 271 (M.D. Pa. 1994)...........................................................9, 13, 20

28

ii

*United States v. DeMarco,*
   550 F.2d 1224 (9th Cir. 1977) ..................................................................15, 16

*United States v. Eilertson,*
   707 F.2d 108 (4th Cir. 1983) ............................................................................18

*United States v. Falk,*
   479 F.2d 616 (7th Cir. 1973) ...........................................................11, 14, 18, 19

*United States v. Gerard,*
   491 F.2d 1300 (9th Cir. 1974) ...........................................................15, 16, 17

*United States v. Groves,*
   571 F.2d 450 (9th Cir. 1978) ............................................................................16

*United States v. Jamison,*
   505 F.2d 407 (D.C. Cir. 1974) .....................................................................15, 16

*United States v. Judd,*
   579 F. Supp. 3d 1 (D.D.C. 2021) .......................................................................9

*United States v. Koh,*
   199 F.3d 632 (2d Cir. 1999) .............................................................................10

*United States v. Korey,*
   614 F. Supp. 2d 573 (W.D. Pa. 2009) ..............................................................16

*United States v. Lewis,*
   517 F.3d 20 (1st Cir. 2008) ..............................................................................19

*United States v. Mardis,*
   670 F. Supp. 2d 696 (W.D. Tenn. 2009) ..........................................................19

*United States v. Monsoor,*
   77 F.3d 1031 (7th Cir. 1996) ............................................................................10

*United States v. Mumphrey,*
   193 F. Supp. 3d 1040 (N.D. Cal. 2016) ............................................................13

*United States v. Napper,*
   574 F. Supp. 1521 (D.D.C. 1983) ......................................................................9

*United States v. Ruesga-Martinez,*
   534 F.2d 1367 (9th Cir. 1976) ...........................................................10, 16, 17

*United States v. Shaughnessy*
   No. 22-cv-02811-CRC (D.D.C. 2023) ................................................. 18

*United States v. Steele,*
   461 F.2d 1148 (9th Cir. 1972) ...................................................... 9, 14

*United States v. Stone,*
   No. 21-cv-60825-RAR (S.D. Fla. 2021) ........................................ 18

*United States v. Velsicol Chem. Corp.,*
   498 F. Supp. 1255 (D.D.C. 1980) ................................... 10, 14, 15, 16

*United States v. Wood,*
   36 F.3d 945 (10th Cir. 1994) ......................................................... 15

*Wayte v. United States,*
   470 U.S. 598 (1985) ........................................................... 9, 13, 14

**Statutes**

26 U.S.C. § 7212 ................................................................................. 11

26 U.S.C. § 7217 ................................................................................. 11

**Other Authorities**

Alito, Samual A., *Equal Protection and Classifications Based on Family
   Membership*, 80 Dick. L. Rev. 410 (1976) ...................................... 15

Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 245 (2001) ............... 8

U.S. Dep't of Just. Criminal Tax Manual (2024) .............................. 18, 19

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Mr. Biden moves to dismiss the Indictment for selective and vindictive prosecution.  Since its inception in 2018, the investigation of Mr. Biden has been compromised by politics.  This case follows a nearly six-year record of DOJ changing its charging decisions and upping the ante on Mr. Biden in direct response to political pressure and its own self-interests.  When the prosecution brings charges for purposes unrelated to legitimate prosecutorial considerations, it violates due process and equal protection rights.  The appropriate remedy is dismissal, or, if the Court harbors any doubts, targeted discovery and a hearing to investigate whether these charges were brought for improper purposes.

As the Court knows, Mr. Biden filed a similar motion in the District of Delaware related to federal gun charges also brought for improper purposes.  *United States v. Biden*, No. 23-cr-00061-MN (D. Del. Dec. 11, 2023), DE 63 ("Del. Mot.").  DOJ, in opposition, did not deny that politicians have been pushing the agency to target Mr. Biden for political reasons since 2018.  *See id.*, DE 68 ("Del. Opp.").  Nor did the agency deny that it has been subjected to condemnation, accusations, burdensome inquiries, and other political consequences related to its handling of this investigation.  (*Id.*)  The remaining question is whether it is more likely than not DOJ was influenced by that pressure or its own improper motives in deciding to bring these charges.  The record responds with a resounding "yes."

In support of his motion in Delaware, Mr. Biden explained that, after opening an investigation at former President Trump's behest in 2018, DOJ and IRS did nothing until 2021, when Congressmen demanded investigative records.[1]  DOJ then proposed deferred charges (after initially suggesting a non-prosecution agreement), only to change its tune

---

[1] Press Release, Chuck Grassley, *Grassley, Johnson Seek Information About Feds' Involvement In Hunter Biden Firearm Incident* (Mar. 26, 2021), https://www.grassley.senate.gov/news/news-releases/grassley-johnson-seek-information-about-secret-service-involvement-in-hunter-biden-firearm-incident.

1  and demand Mr. Biden plead guilty to misdemeanor tax charges when IRS

2  whistleblowers went public with accusations of misconduct.  This led to a carefully

3  negotiated Plea Agreement and Diversion Agreement that would have resolved all the

4  charges in this case, but when that deal went public, was widely condemned by extremist

5  Republicans as too lenient, and Congress decided to open an inquiry, DOJ tried to back

6  out (even of the validly executed Diversion Agreement)[2] and indicted Mr. Biden on the

7  gun charges.[3]  This chronology of events—itself sufficient to support an inference of

8  selective and vindictive prosecution—is confirmed by additional significant evidence,

9  including expert opinions, DOJ's charging policies and practices, admissions and

10  statements by DOJ, IRS, and public officials, and valid threats of future consequences for

11  the agency if it does not continue targeting Mr. Biden.  (*See* Del. Mot.)  And to put this

12  evidence in perspective, Mr. Biden cited *many* cases where courts dismissed charges

13  because of selective or vindictive prosecution with a fraction of this evidence.  *Id.*

14      But there is more.  After Special Counsel Weiss caved to outside pressure and

15  brought the three felony gun charges, he was summoned to testify before Congress and

16  berated for not being even more punitive.  A month later, he responded by indicting Mr.

17  Biden on the tax charges in this Court, including felonies, when just weeks earlier he had

18  deemed two misdemeanor charges sufficient.

19      DOJ cannot escape the inferences raised by its conduct.  DOJ discussed these

20  charges with Mr. Biden for a year between spring 2022 and spring 2023, and Mr. Biden

21  gave presentations regarding the very allegations and evidence cited in the Indictment.

---

22  [2] After the court in Delaware raised questions about non-substantive aspects of the plea

23  deal, DOJ—facing significant backlash—used the excuse to renege.  Rather than negotiate in good faith, DOJ inexplicably demanded Mr. Biden plead guilty to felonies

24  with jail time.  The Delaware court had no concerns with the substance of the deal.  And it is telling that, in a 51-page opposition in Delaware, DOJ offers *no explanation* for its

25  change of heart beyond the assertion that the parties had not agreed on the non-substantive provisions still being negotiated, which is of course no explanation at all for

26  DOJ's sudden and unreasonable demands.  (*See* Del. Opp.)

27  [3] The extensive back-and-forth negotiation between the U.S. Attorney's Office and Mr.

28  Biden's counsel regarding the prosecution's decision to resolve all investigations of him is discussed in the declaration of Christopher Clark filed currently with Mr. Biden's Motion to Dismiss for Immunity Conferred by His Diversion Agreement.  ("Clark Decl.")

2

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF
SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

DOJ proposed misdemeanor and deferred charges.[4]   DOJ then leapt from a two-count misdemeanor Information to a nine-count Indictment with felonies directly following (1) accusations that DOJ made a sweetheart deal and brought gun charges to "protect" Mr. Biden, (2) Congress, *for the first time in history*, interrogated a Special Counsel for seven hours about a pending matter,[5] and (3) Mr. Biden, in DOJ's words, "insist[ing] that the proposed Diversion Agreement bound both parties," which DOJ says caused it to refuse "any further plea negotiations."  (Del. Opp. at 15.)   Just as the events in early 2023 confirm DOJ's determination that prosecution was *not* warranted on these facts, the events preceding these charges confirm DOJ changed its mind for improper purposes.

When the evidence indicates discriminatory prosecution, the burden is on the prosecution to rebut it by proving the charges were brought on some valid basis.  The prosecution proved in Delaware that it cannot do this.  DOJ barely engaged these facts at all beyond denying it succumbed to undeniable political pressure.  Instead, DOJ defended its decision to bring the gun charges based on what it calls "overwhelming evidence" of Mr. Biden's guilt, although it had no new evidence to warrant a change in its charging decision.  (Del. Opp. at 2, 24.)   Who knows what the prosecution will invent to justify the tax charges?  But like the gun charges, DOJ has known the facts underlying the tax charges for years and even discussed the allegations with Mr. Biden before deciding *not* to charge him.  This record demands dismissal of these charges.[6]

---

[4] If DOJ half-believed the allegations of willful misconduct, evasion, and fraud alleged in the Indictment after Mr. Biden gave presentations on those topics, it would not have proposed misdemeanor and deferred charges.

[5] As AP News observed, Mr. Weiss "agreed to the unusual appearance under heavy pressure from House Republicans, who are looking to ramp up their impeachment inquiry into President Joe Biden and his family."  Farnoush Amiri & Lindsay Whitehurst, *Special Counsel In The Hunter Biden Case Insists He Was The 'Decision-Maker' In Rare Testimony*, Associated Press (Nov. 7, 2023), https://apnews.com/.

[6] Indeed, if this case is not the one to dismiss for selective and vindictive prosecution and breach of separation of powers, it is unclear what is left of those doctrines.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL BACKGROUND

In 2018, President Trump began levying accusations at Mr. Biden and calling on Attorney General ("AG") Barr to investigate.[7]  Mr. Barr secretly assigned U.S. Attorney David Weiss to investigate Mr. Biden, which Mr. Biden announced on December 10, 2020.  And while Mr. Trump's accusations were hollow, they set political forces in motion that DOJ was neither equipped nor motivated to resist.

## I.   The Tax Investigation, The Gun, And DOJ's Initial Charging Decision

In connection with a series of personal hardships, Mr. Biden struggled with addiction, which took a turn for the worse on the one-year anniversary of his brother's death in 2016.  As a result, Mr. Biden paid some of his income taxes for 2016, but he did not fully pay or file by the 2017 deadline.  Mr. Biden was similarly late the following years until he engaged new accountants in 2019, who prepared and filed his late returns and helped him pay all his taxes and penalties in 2021.  DOJ and IRS were aware of these facts from their investigation, and in 2019, DOJ obtained warrants to search Mr. Biden's electronic data for evidence related to his taxes.  (Del. Opp. at 7.)  These devices are the source of the correspondence between Mr. Biden, his staff, and his accountants that DOJ cites in the Indictment, (DE 1 ¶¶ 54, 56, 72, 74–83), and based on this evidence, DOJ determined no felony charges were warranted.

## II.   Mounting Political Pressure And DOJ's Second Charging Decision

While DOJ continued to weather increasing political pressure, Mr. Trump and his supporters used Mr. Biden's personal history as both a means of demeaning the Bidens and leveraging DOJ.[8]  DOJ finally buckled under the pressure and contacted Mr. Biden's

---

[7] Kathryn Watson et al., *Investigation Into Hunter Biden's "Tax Affairs" Began In 2018*, CBS News (Feb. 10, 2020), https://www.cbsnews.com/.  This same year, Mr. Biden purchased a small firearm that he owned for 11 days, never loaded, and never fired—the basis of the gun charges in Delaware.

[8] President Trump, for example, used Mr. Biden's struggle with addiction to attack President Biden in a presidential debate in 2020.  Michael Collins, *Hunter Biden's Drug Use Back In Public Eye As Criminal Charges Could Be Around The Corner*, USA Today (June 12, 2023), https://www.usatoday.com/.

4

1   counsel on May 15, 2023 to propose a non-prosecution agreement for the gun and tax

2   charges, even though DOJ had already determined the charges should not be brought.[9]

## III.   IRS Whistleblowers And DOJ's Third Charging Decision

4          Between January 2022 and May 2023, Mr. Biden discussed the alleged tax

5   violations with DOJ and gave several presentations on subjects including the conduct and

6   evidence that DOJ now cites in the Indictment as evidence of willful misconduct.  DOJ

7   once again decided prosecution was unnecessary, and even provided a framework for the

8   deal (a DPA) used in another recent case where DOJ deferred charges.[10]  But politics

9   again intervened when the IRS agents Gary Shapley and Joseph Ziegler went public with

10  claims that DOJ and the Administration were interfering with the tax investigation.[11]  A

11  few weeks later, the House Ways and Means Committee voted to release, in violation of

12  numerous federal laws, hundreds of confidential documents including the IRS case files

13  on Mr. Biden.  This prompted further congressional inquiry, and Mr. Weiss responded

14  by demanding Mr. Biden plead guilty to two misdemeanor tax charges.[12]

## IV.   Congressional Intervention And DOJ's Fourth Charging Decision

16         Mr. Biden agreed to plead guilty to the tax misdemeanors, but when the plea deal

17  was made public, the political backlash was forceful and immediate.  Even before the

18  Delaware court considered the plea deal on July 26, 2023, extremist Republicans were

19  denouncing it as a "sweetheart deal," accusing DOJ of misconduct, and using the excuse

---

[9] *See* Clark Decl. ¶¶6, 10.

[10] Clark Decl. ¶¶13–14 (discussing AUSA Wolf's May 19, 2023 email to Chris Clark).

[11] *See* Catherine Herridge et al., *IRS Whistleblower In Hunter Biden Case Says He 'Felt Handcuffed' During 5-Year Investigation*, CBS (July 19, 2023), https://www.cbsnews.com/.

[12] Clark Decl. ¶12 (discussing AUSA Wolf's May 18, 2023, email to Chris Clark listing 12 "key terms" for a resolution).  As The New York Times explained, "Weiss was willing to conclude the investigation without even as much as a plea deal before the [IRS] agents accused the Justice Department of interfering."  Michael Schmidt et al., *Inside The Collapse Of Hunter Biden's Plea Deal*, N.Y. Times (Aug. 19, 2023), https://www.nytimes.com/.

to interfere with the investigation.[13]   Leaders of the House Judiciary, Oversight and Accountability, and Ways and Means Committees ("HJC," "HOAC," and "HWMC," respectively) opened a joint investigation, and on June 23, HWMC Republicans publicly released closed-door testimony from the whistleblowers, who, in the words of Chairman Smith, "describe how the Biden Justice Department intervened and overstepped in a campaign to protect the son of Joe Biden by delaying, divulging and denying an ongoing investigation into Hunter Biden's alleged tax crimes."[14]   Then, one day before Mr. Biden's plea hearing, Mr. Smith tried to *intervene* to file an amicus brief "in Aid of Plea Hearing," in which he asked the court to "consider" the whistleblower testimony.[15]

At the July hearing, Judge Noreika questioned specific non-substantive provisions of the agreement and deferred ruling so the parties could propose revisions.[16]   Instead, Mr. Weiss demanded felonies and jail time, declared an "impasse" when Mr. Biden refused, and brought three felony gun charges.   Members of Congress then publicly admitted they forced DOJ to do this.   Chairman Comer declared outside the Capitol that "our investigation that's shined a light on the many wrongdoings of the Biden family has picked up a lot of credibility today, because now we see that there are a lot of crimes that this family's committed and that played out in court today."[17]   Chairman Smith told Fox

---

[13] Phillip Bailey, *'Slap On The Wrist': Donald Trump, Congressional Republicans Call Out Hunter Biden Plea Deal*, USA Today (June 20, 2023), https://www.usatoday.com/.

[14] Farnoush Amiri, *GOP Releases Testimony Alleging DOJ Interference In Hunter Biden Tax Case*, PBS (June 23, 2023), https://www.pbs.org/.

[15] *United States v. Biden*, No. 23-mj-00274-MN (D. Del. 2023), DE 7.

[16] Hr'g Tr. at 104:12-16, *Biden*, No. 23-cr-00061-MN (D. Del. July 26, 2023) ("These agreements are not straightforward and they contain some atypical provisions.  I am not criticizing you for coming up with these, I think that you have worked hard to come up with creative ways to deal with this."); *id.* at 105: 6-15 ("So I would like some briefing, additional briefing . . . on what it is that makes this plea acceptable, because I'm not saying that it is not, but nobody seems to really have given me [] what I would need . . . to determine that . . . .").

[17] Kyle Morris et al., *Comer Says House Investigations Into Hunter Biden Given A 'Lot Of Credibility' After Plea Deal Crumbles*, Fox News (July 26, 2023), https://www.foxnews.com/.

News, "justice has been served,"[18] and later tweeted: "Announcement of a special counsel *only happened because congressional GOP exposed* the two-tiered judicial system by shining light onto the investigation into Hunter Biden's alleged financial crimes & the political interference that shielded both him & POTUS from scrutiny."[19]  Yet, the prosecution's critics were still not satisfied.

## V.   Aftermath And DOJ's Fifth Charging Decision

Neither the proposed deal nor the three felony gun charges were sufficient for extremist Republicans.  Mr. Biden enforced the Diversion Agreement in response to the gun charges, at the same time Congress was dragging Mr. Weiss before the HJC over the decision not to bring additional charges.[20]  Mr. Trump joined the fray, vowing that if DOJ does not prosecute Mr. Biden for more, he will "appoint a real special prosecutor to go after" the "Biden crime family," "defund DOJ," and revive an executive order allowing him to fire Executive Branch employees at will.[21]  As a result, Mr. Weiss reported he and others in his office faced death threats and feared for the "safety" of his team and family.[22]  This *fifty-six page, nine count* tax indictment followed, and sure enough, Republican Congressmen claimed credit for that too.[23]

---

[18] *Jason Smith On Hunter Biden Plea Deal Collapse: Justice Is Being Served*, Fox News (July 26, 2023), https://www.foxnews.com/video/6331889313112.

[19]  @RepJasonSmith, *X* (Aug. 11, 2023), https://twitter.com/RepJasonSmith/status/1690065476838105088 (emphasis added).

[20] Now those same Congressmen are trying to force Assistant U.S. Attorney Lesley Wolf, who negotiated the Diversion Agreement and Plea Agreement, to provide further testimony about the investigation.

[21] *See* Kristen Holmes, *Trump's Radical Second-Term Agenda Would Wield Executive Power In Unprecedented Ways*, CNN (Nov. 16, 2023), https://www.cnn.com/.  Bolton, *Trump's Call To Defund DOJ, FBI Puts Senate, House GOP At Odds*, The Hill (Apr. 6, 2023), https://thehill.com/.

[22] Betsy Woodruff Swan, *What Hunter Biden's Prosecutor Told Congress: Takeaways From Closed-Door Testimony Of David Weiss,* Politico (Nov. 10, 2023), https://www.politico.com/.

[23] Chris Stein, *Top House Republican Takes Credit For New Charges Against Hunter Biden*, The Guardian (Dec. 8, 2023), https://www.theguardian.com/.

## VI.    DOJ Policy Against Congressional Interference

DOJ has a long history of condemning interference by Congress.  In 1982, AG William Smith expressed the "longstanding position of the Executive Branch" that DOJ generally "decline[s] to provide committees of Congress with access to or copies of law enforcement files except in the most extraordinary circumstances."[24]  Deputy Assistant AG Robert Shanks elaborated that DOJ "has an obligation to ensure that . . . its prosecutorial function is not compromised by excessive congressional pressures, [which] . . . offends not only the rights of the accused, but also . . . the integrity of the judicial process and, ultimately, the obligation of the Executive faithfully to execute the laws."[25] More recently, AG John Ashcroft explained that if criminal investigations "are subject to congressional scrutiny, we will face the grave danger that prosecutors will be chilled from . . . the sound exercise of prosecutorial discretion . . . [and might] err on the side of investigation or prosecution simply to avoid public second guessing . . . ."[26]

Failure to adhere to these policies is a recent trend, and this is not the first time Mr. Trump and his supporters played a role.  Deputy AG Rod Rosenstein yielded to politics when investigating Russian interference with the 2016 election, drawing criticism from DOJ and Congress alike.  As Deputy Assistant AG Harry Litman explained: "Rosenstein has capitulated to political pressure from the president and his allies in Congress . . . in a

---

[24] H. Rep. 99-435 at 1168-69.  The letter quotes former Deputy AG Thomas Kauper: "If a congressional committee is fully apprised of details of an investigation as [it] proceeds, there is a substantial danger that congressional pressure will influence the course of the investigation."  *Id.* at 1170; *see also* 40 U.S. Opp. Atty. Gen. 45, 1941 WL 1875 (Apr. 30, 1941 AG Robert Jackson) ("Disclosure of information contained in [investigative] reports might [] be the grossest kind of injustice," as they "include leads and suspicions" and "[e]ven though later and more complete reports exonerate the individuals, . . . we know that a correction never catches up with an accusation.").

[25] 8 U.S. Opinions of Off. of Legal Counsel 252 (O.L.C.), 1984 WL 178369, *Congressional Subpoenas of Department of Justice Investigative Files* (Oct. 17, 1984 Deputy Assistant AG Robert Shanks).

[26] 25 Opinions of the Off. of Legal Counsel at 2 (Jan. 10, 2012 AG Ashcroft); Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 245, 2357–58 (2001) ("Resolution of prosecutorial questions . . . [is where] the crassest forms of politics . . . pose the greatest danger of displacing professionalism and thereby undermining confidence in legal decision making.").

8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

way that harms the long-term interests of the Justice Department and likely does little to protect the probe or Rosenstein's own job."[27]

There is no doubt that DOJ is in an unenviable political position with respect to this case. But as DOJ itself has long believed, Mr. Biden's rights must come first. Politics have tainted this prosecution, and there is no constitutional option but to dismiss this case.

## LEGAL STANDARD

"For almost one hundred years, the federal courts have recognized that it is unconstitutional to administer the law with an evil eye and an unequal hand so as practically to make unjust and illegal discrimination between persons in similar circumstances." *United States v. Napper*, 574 F. Supp. 1521, 1523 (D.D.C. 1983) (citations omitted). Thus, "although prosecutorial discretion is broad, it is not unfettered" and "the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (citations omitted).[28] If charges are brought for an improper purpose, the prosecution is selective and violates due process and equal protection rights. *Id.* "In deciding if a defendant has established selective prosecution, a court must undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *United States v. Bradley*, 880 F. Supp. 271, 280 (M.D. Pa. 1994) (citations omitted). The evidence must support inferences that the prosecution exercised its discretion with (1) "discriminatory purpose" and (2) "discriminatory effect." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). When a defendant alleges such evidence,

---

[27] Harry Litman, *Rod Rosenstein Has Made Two Critical Missteps*, Wash. Post (Apr. 23, 2018), https://www.washingtonpost.com/; *see also* Former Sen. Carl Levin (D-Mich), *Congress Dangerously Wields Its Oversight Power In Russia Probe*, The Hill (May 15, 2018) ("Should [Congress] seek to try to influence the discretionary authority of the executive branch in a prosecutorial matter, the third branch of government, the judiciary, could throw out the prosecution based on political influence."), https://thehill.com/.

[28] *See also United States v. Berrios*, 501 F.2d 1207, 1209 (2d Cir. 1974) ("Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations . . . . Selective prosecution then can become a weapon used to discipline political foe[s]."); *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) ("[T]he Government cannot base its decision to prosecute on . . . a defendant's political beliefs." (citation omitted)).

1   the burden shifts to the prosecution to "show[] the selection process actually rested upon

2   some valid ground." *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972).

3       Vindictive prosecution is a species of selective prosecution where the prosecution

4   is or objectively appears to be driven by "genuine animus." *United States v. Monsoor*,

5   77 F.3d 1031, 1034 (7th Cir. 1996). Dismissal requires a defendant to show by a

6   preponderance of the evidence either that (1) the prosecution was vindictive in fact (with

7   evidence of "actual vindictiveness") or (2) facts that indicate a "realistic likelihood"[29] of

8   vindictiveness and thus create an objective "apprehension or appearance of prosecutorial

9   vindictiveness." *United States v. Velsicol Chem. Corp.*, 498 F. Supp. 1255, 1263–65

10  (D.D.C. 1980) (citing Ninth Circuit cases). The "mere appearance of vindictiveness is

11  enough to place the burden on the prosecution" to show a legitimate motive. *Ruesga-*

12  *Martinez*, 534 F.2d at 1369. Notably, the animus element is essentially the same as the

13  discriminatory intent element of selective prosecution: both require evidence the

14  prosecution was brought for arbitrary or improper purposes. The key difference is that a

15  defendant can show vindictive prosecution with facts establishing an objective

16  appearance of vindictiveness, *even where there is no actual vindictiveness*, and need not

17  show discriminatory effect. *Id*. Finally, dismissal of a selective and/or vindictive

18  prosecution is required whether the intent or animus belongs to the prosecutors *or*

19  *someone else with influence* over the prosecution. *See Monsoor*, 77 F.3d at 1035 (where

20  a party "prevail[s] upon the prosecutor in making the decision to seek an indictment," the

21  "ill will, whoever its bearer," may be "imputed to federal prosecutors").[30]

22

23  [29] A realistic likelihood is a "significant possibility that such discretion may have been
    exercised with a vindictive motive or purpose" which creates "a heavy burden of proving
24  that any increase in the severity of the alleged charges was not motivated by a vindictive
    motive." *United States v. Ruesga-Martinez*, 534 F.2d 1367, 1369 (9th Cir. 1976).
25
26  [30] *See also United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (prosecution is
    vindictive when the prosecutor "was prevailed upon to bring the charges by another with
27  animus"); *United States v. Adams*, 870 F.2d 1140, 1144–46 (6th Cir. 1989) (evidence that
    a party had "instigated and pushed" the prosecution justified discovery to see if the party
28  "was able to prevail upon the Department of Justice to institute a prosecution that
    [otherwise] would not have been undertaken").

**ARGUMENT**

This case follows years of public officials targeting Mr. Biden because of his political and familial affiliations and DOJ yielding to their pressure. This record should raise more than judicial misgivings. Politicians are not just wooing and wheedling, but openly interfering with this case. It is incumbent on the Court to intercede. *United States v. Falk*, 479 F.2d 616, 624 (7th Cir. 1973) ("[T]he judiciary has always borne the basic responsibility for protecting individuals against unconstitutional invasions of their rights by all branches of the Government.") (citations omitted).[31]

**I.    This Prosecution Is Motivated By Discriminatory Intent And Animus**

Proving animus and discriminatory intent in the minds of prosecutors (or those who influence them) typically is exceedingly difficult, but the fingerprints of discriminatory intent are all over this case. The timing of events; statements and admissions by DOJ, public officials, and others; opinions of experts; charging data; and other circumstantial and direct evidence all support a strong inference of improper and vindictive motive. Mr. Biden includes much of this evidence in his DE Motion, but DOJ does not contest the animus of those targeting Mr. Biden, just whether DOJ succumbed to this pressure. (Del. Opp. at 37–39.) Mr. Biden therefore provides only a broad overview of the animus and improper purposes driving this case.

**Donald J. Trump.** Mr. Trump is ground zero for improper motive.[32] During his term in office, President Trump incessantly called on DOJ, the media, the public, and

---

[31] The Court's supervisory powers provide an alternate basis to dismiss the indictment. *Dixon v. D.C.*, 394 F.2d 966, 970 (D.C. Cir. 1968) ("I conclude that in this case our supervisory power must be used to protect the purity of the government and its processes."); *United States v. Banks*, 383 F. Supp. 389, 397 (D.S.D. 1974) (similar). Importantly, the prosecution's "conduct need not be so unfair or imprudent as to offend due process before exercise of this supervisory power is appropriate." *Banks*, 383 F. Supp. at 392.

[32] President Trump initiated the investigation of Mr. Biden illegally. 26 U.S.C. § 7217 provides: "It shall be unlawful for any person [including the President] to request, directly or indirectly, any officer or employee of the [IRS] to conduct or terminate an audit or other investigation of any particular taxpayer with respect to the tax liability of such taxpayer." Mr. Trump also violated 26 U.S.C. § 7212 by interfering with that investigation.

1  even foreign governments to target and investigate Mr. Biden.[33]  Countless statements

2  from Mr. Trump when he was President accuse both Mr. Biden *and* DOJ of corruption

3  and misconduct and call on supporters to take action.[34]  Since leaving office, Mr. Trump

4  has continued to flex his considerable influence to drive the prosecution of Mr. Biden.

5  On June 20, 2023, Mr. Trump posted repeatedly about the "Hunter/Joe Biden settlement,"

6  which he describes as a "traffic ticket" and a "massive coverup and full-scale election

7  interference 'scam' the likes of which has never been seen in our country before."[35]  He

8  blames this on Mr. Weiss, calling him "a coward" and "a smaller version of Bill Barr,

9  who never had the courage to do what everyone knows should have been done" because

10  he "gave out a traffic ticket instead of a death sentence."[36]  And Mr. Trump's outrage has

11  grown since he was indicted.  At a recent rally, he swore "retribution" on his rivals and

12  the agencies he believes helped them.[37]  He promises to "defund the DOJ" until it

13  "come[s] to [its] senses," appoint a "real special prosecutor" to "go after" the Bidens and

14  revive an executive order that lets him fire executive branch employees without cause.[38]

---

15
16  [33] Many examples are cited in Mr. Biden's Del. Mot.  (Del. Mot. at 28–33.)  Out of public view, Mr. Trump also improperly pressured DOJ to target and investigate Mr. Biden, including instructing the AG and Deputy AG Donoghue to "figure out what to do with H[unter] Biden."  Devlin Barrett & Josh Dawsey, *Trump To Acting AG, According To Aide's Notes: 'Just Say The Election Was Corrupt + Leave The Rest To Me'*, Wash. Post (July 31, 2021), www.washingtonpost.com/.

17

18

19  [34] Separately, Mr. Trump's personal attorney, Rudy Giuliani, searched for "dirt" on Mr. Biden, convinced DOJ to open dedicated channels to receive this information, and disseminated stolen electronic data (after manipulating some of it) to create a media spectacle right before the 2020 election.  Mr. Giuliani even made presentations to multiple U.S. Attorney's Offices regarding Mr. Biden.  *See, e.g.*, Ltr. from Asst. Att'y Gen. Boyd to Hon. Jerrold Nadler (Feb. 18, 2020).

20

21

22  [35] Brett Samuels, *Trump Compares Hunter Biden Charges To 'Traffic Ticket'*, The Hill (June 20, 2023), https://thehill.com/.

23  [36] Ryan Bort, *Trump Blasts Prosecutor He Appointed for Not Giving Hunter Biden 'Death Sentence'*, Rolling Stone (July 11, 2023), https://www.rollingstone.com/.

24

25  [37] Maggie Haberman & Shane Goldmacher, *Trump, Vowing 'Retribution,' Foretells A Second Term Of Spite*, N.Y. Times (Mar. 7, 2023), https://www.nytimes.com/.

26  [38] Rami Ayyub, *Trump, Newly Charged, Urges Defunding Justice Department And FBI*, Reuters (Apr. 6, 2023), https://www.reuters.com/; Brett Samuels, *Trump Vows To Appoint Special Prosecutor To 'Go After' Biden If Former President Wins In 2024*, The Hill (June 12, 2023), https://thehill.com/; Tal Axelrod, *Trump's Unprecedented Campaign Pitch: Elect Me To Get Revenge On The Government*, ABC News (July 14, 2023), https://abcnews.go.com/.

27

28

**Republicans In Congress.** After President Biden assumed office, Senators Chuck Grassley and Ron Johnson publicly announced their demand for investigative records related to Mr. Biden.[39] Since then, congressional Republicans have used the authority of three House committees to target Mr. Biden and influence DOJ.[40] Rep. Comer, who regularly brags about (mis)using congressional authority, recently vowed in a committee release titled "Justice Department Attempting a Biden Family Coverup" that the "[HOC] will continue to follow the Biden family's money trail . . . [and] [w]e will also continue to work with the [HJC] and HWMC] to root out misconduct at the Justice Department and hold bad actors accountable for weaponizing law enforcement powers."[41] In other words, three Republican-led committees have taken it upon themselves to investigate a private citizen while sidelining DOJ with brickbats and burdensome inquiries. And unlike DOJ, Congress does not even pretend to offer a presumption of innocence.

**The Department of Justice.** DOJ confirmed its own improper motive when, under fire from Congress and the public, it resorted to charges that reports indicate Mr. Weiss himself admitted would not have been brought against the average American.[42] *See Bradley*, 880 F. Supp. at 280–81 ("Circumstantial evidence of invidious intent may include proof of disproportionate impact.").[43] Appropriate factors considered when making charging decisions include "the strength of the case, the prosecution's general

---

[39] Press Release, Sen. Chuck Grassley, *Grassley, Johnson Seek Information About Feds' Involvement In Hunter Biden Firearm Incident* (Mar. 26, 2021), https://www.grassley.senate.gov/.

[40] The HOAC's "mission statement is to ensure the efficiency, effectiveness, and accountability of the federal government and all its agencies," not to investigate a private citizen. H. Comm. on Oversight and Accountability, *About – Mission* (last accessed Dec. 7, 2023), https://oversight.house.gov.

[41] Press Release, H. Comm. on Oversight and Accountability, *Comer: Justice Department Attempting A Biden Family Coverup* (Aug. 11, 2023), https://oversight.house.gov/.

[42] Michael Schmidt et al., *Inside The Collapse Of Hunter Biden's Plea Deal*, N.Y. Times (Aug. 19, 2023), https://www.nytimes.com/. The article does not disclose the source, and DOJ points out that an unidentified law enforcement official denied the report, but DOJ has stopped short of expressly denying the account. (*See* Del. Opp. at 39–40.)

[43] *United States v. Mumphrey*, 193 F. Supp. 3d 1040, 1046, n.6 (N.D. Cal. 2016) ("[E]vidence of differential treatment is also probative of discriminatory intent.").

13

deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan . . . ." *Wayte*, 470 U.S. at 607. If DOJ had wanted to bring these charges based on any of these legitimate considerations, it would have done so years ago when it first obtained the evidence it relies on. *See Falk*, 479 F.2d at 622 (selective prosecution where government "had notice of [the] violations . . . [y]et the indictment . . . was not returned until almost three years had passed . . . .").

Instead, even when DOJ did cave to pressure, it was willing to resolve the whole matter without a guilty plea before IRS whistleblowers went public. And if DOJ's motives remained in doubt, its efforts to torpedo even that deal puts the matter to rest. If DOJ agreed to a deal based on legitimate considerations, nothing about the Court asking the parties to address specific, procedural concerns should have impacted that analysis. Moreover, as Congress prepared to rake Mr. Weiss (who had started to fear for the safety of his staff and family) over the coals for being too lenient, despite felony gun charges, and DOJ was scrambling to pile on charges, Mr. Biden was enforcing the Diversion Agreement. This was widely publicized[44] and led to further criticism of DOJ, which did not disguise its outrage.[45] DOJ then refused to entertain further plea negotiations (Del. Opp. at 15), and vaulted from two tax misdemeanors to nine misdemeanors and felonies.

Rather than rebut these facts, the prosecution argued in Delaware that the discriminatory intent driving this case is really directed at Mr. Biden's father. (Del. Opp. at 1, 4, 20.) *First*, the caselaw is clear that, while it is worse when a prosecution is brought based on protected activity, defendant rights are violated whenever charges are brought for arbitrary or improper purposes. *See Wayte*, 470 U.S. at 608 (improper purpose is any "unjustifiable standard" or "arbitrary classification"); *Velsicol*, 498 F. Supp. at 1265

---

[44] *See e.g.*, Michael Schmidt et al., *Hunter Biden Says Prosecutors Reneged on Major Part of Plea Deal*, N.Y. Times (Aug. 14, 2023), https://www.nytimes.com/.

[45] The prosecution penned an angry reply in support of its motion to vacate the court's briefing order in Delaware accusing Mr. Biden of "inaccurate" assertions, "misstat[ing] the record," and of being "misleading" by claiming the Diversion Agreement is binding. *See Biden*, No. 23-cr-00061-MN (D. Del.), DE 32 (filed Aug. 15, 2023). These accusations are ironic considering DOJ demanded, without explanation, that Mr. Biden change the bargain by pleading guilty to felonies with jail time to continue negotiations.

14

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

(dismissing a vindictive prosecution based on "institutional stake" in discouraging third-party conduct and avoiding "contempt for federal law enforcement"); *Collins v. Jones*, 2015 WL 790055, at *11 (E.D. Pa. Feb. 24, 2015) (vindictive prosecution includes charges "motivated by the prosecutor's personal stake in the outcome of a case . . . .").[46] *Second*, Mr. Biden *is* being targeted because of *his* political and familial affiliations, both of which are constitutionally protected, as well as for trying to enforce his legal rights.[47] When the prosecution purports to act in accordance with legitimate enforcement priorities and reverses course in response to congressional ire or a defendant's defense of his rights, discriminatory intent and animus are evident. *See Dixon*, 394 F.2d at 968 (prosecution improper if "the Government had legitimately determined not to prosecute appellant and had then reversed its position solely because he filed a complaint"); *id.* at 970 ("The Government did not change its view of the merits; it merely sought to avert the risk of rebuke."). The Court must intervene and protect Mr. Biden's rights.

## II. The Record Establishes A Presumption Of Vindictiveness

Even were there no actual vindictiveness, dismissal is required because the record creates "the apprehension or appearance of prosecutorial vindictiveness." *Velsicol*, 498 F. Supp. at 1264. This presumption arises when the prosecution makes a charging decision and then brings or increases charges ("ups the ante") when (1) it could have done so earlier and (2) there are no "intervening events or [] new evidence of which the government was excusably unaware at the time of the first" decision to justify the change. *United States v. Jamison*, 505 F.2d 407, 417 (D.C. Cir. 1974); *United States v. Gerard*, 491 F.2d 1300, 1304–07 (9th Cir. 1974).[48] The focus is on whether the prosecution's

---

[46] *See also Steele*, 461 F.2d at 1152 (prosecution must rest "upon some valid ground"). DOJ has no legitimate interest in charging Mr. Biden based on animus towards his father.

[47] *See* Alito, Samual A., *Equal Protection and Classifications Based on Family Membership*, 80 Dick. L. Rev. 410 (1976).

[48] The prototypical example is when the prosecution seeks to punish or discourage a defendant's lawful conduct, but the presumption applies whenever the prosecution appears to up the ante for improper purpose. *See United States v. Alvarado-Sandoval*, 557 F.2d 645, 645–46 (9th Cir. 1977) (rejecting argument that the presumption was not raised because "the appellant in this case did not affirmatively assert a right which then

conduct might cause other defendants to fear unjust prosecution. *United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir. 1977) ("The prophylactic rule is designed not only to relieve the defendant . . . but also to prevent chilling the exercise of such rights by other defendants who must make their choices under similar circumstances in the future.").[49]

Given these standards, this case reaches the very heart of the doctrine. Mr. Biden described a nearly six-year record replete with examples of DOJ upping the ante right after being pressured to do so or Mr. Biden trying to enforce his rights. The prosecution could have brought these charges years ago and then agreed not to multiple times, only to pull the deal, deny it was made, and pile on felony indictments. This would raise an apprehension of vindictiveness in any defendant who believed DOJ was facing pressure to charge or who was considering a plea agreement. This is exactly the kind of chilling effect the doctrine is designed to combat. *Gerard*, 491 F.2d 1300, 1304–05 ("fear of vindictiveness might discourage meritorious" legal challenges); *see United States v. Groves*, 571 F.2d 450, 453–54 (9th Cir. 1978) (the "coincidence of events presents overwhelming circumstantial evidence" that charges were "in retaliation for appellant's suggestion that the Speedy Trial Act barred prosecution on the cocaine complaint" because "[w]ith full knowledge of the appellant's violation" "the government did not see fit to seek the indictment until shortly after the [assertion of] statutory rights").[50]

---

precipitated a 'raising of the ante'" because facts still created appearance prosecution upped the ante for improper purposes). *Velsicol*, 498 F. Supp. at 1265 (presumption created where charges appeared to be based on "institutional stake" in discouraging third-party conduct and avoiding "contempt for federal law enforcement"); *supra* Section I.

[49] *See United States v. Korey*, 614 F. Supp. 2d 573, 584–86 (W.D. Pa. 2009) ("The government has identified no new evidence, no new witnesses, and no change in the law to support this charge . . . ."). The Fifth, Tenth, and D.C. Circuits have issued similar rulings. *Miracle v. Estelle*, 592 F.2d 1269, 1277 (5th Cir. 1979); *United States v. Wood*, 36 F.3d 945, 947 (10th Cir. 1994); *Jamison* 505 F.2d 407.

[50] *See Ruesga-Martinez*, 534 F.2d at 1369; *Alvarado-Sandoval*, 557 F.2d at 645–46; *United States v. DeMarco*, 550 F.2d 1224, 1226 (9th Cir. 1977); *Velsicol*, 498 F. Supp. at 1265.

It is apparent the prosecution cannot rebut this presumption. The prosecution suggests that it was justified in bringing charges because plea negotiations fell through, but the parties had already reached a substantive agreement. *See Groves*, 571 F.2d at 455 (distinguishing cases where an agreement was not reached and dismissing because "both the government and the appellant had long since completed negotiations on the plea agreement"). And any claim about the strength of the evidence should fall on deaf ears in this Circuit. *See Ruesga-Martinez*, 534 F.2d at 1370 ("The prosecution [argues] . . . there was more than ample evidence . . . [but] [t]his does not in itself justify an increase in the severity of the charges . . . because that evidence was known to the prosecution before it brought the original lesser charge."); *Gerard*, 491 F.2d at 1306–07 (rejecting strength of case justification because the prosecution "knew all the facts from the outset," yet "did not think [the charge was] worth bringing in the first place.").[51]

## III. DOJ's Prosecution Of Mr. Biden Has Discriminatory Effects

"[T]o establish discriminatory effect," the second element of a selective prosecution claim, a defendant must show that "similarly situated individuals . . . were not similarly prosecuted." *Jones*, 159 F.3d at 977. It is hard to imagine better evidence than Mr. Weiss's reported admission that DOJ would not charge others on the same facts.[52] Mr. Weiss's initial view that tax charges should not be brought against Mr. Biden was confirmed by C.D.C.A. U.S. Attorney Martin Estrada and D.C. U.S. Attorney Matthew Graves, who both testified to Congress that their Offices declined to partner with Mr. Weiss on the case or pursue separate charges after performing their own assessments of the charges.[53] Experienced legal experts agree, including former Attorney

---

[51] *See also id.* at 1304–05 (any justification "must be restricted to demonstrated events occurring subsequently to the first" charging decision).

[52] *See supra* n.12.

[53] Estrada testified that he and Mr. Weiss "discussed [Estrada's office's] analysis of facts and law to explain to him why we would not be co-counseling on the case." *US Attorney For California Says He Declined To Partner With Weiss On Hunter Biden Charges In His District*, Fox News (Oct. 26, 2023), https://www.foxnews.com/. "Weiss reportedly considered not charging Hunter Biden, now 53, at all after Graves and Estrada turned down his requests, then changed his mind when IRS supervisory agent Gary

17

General Eric Holder who stated publicly that he had spoken to both Republican and Democratic U.S. attorneys who all agreed that these tax charges would not have been brought but for political pressure.[54]  This supports an inference of discriminatory effect. *See Adams*, 870 F.2d at 1146 ("Mr. Gipson, drawing on his lengthy experience as an employee of the IRS, states in his affidavit that he does not believe that criminal proceedings would 'ordinarily' be instituted in tax cases of the sort presented here," which "raises a significant question as to why this particular prosecution was undertaken.").[55]

Where a defendant is negligent or shows "careless disregard" for tax obligations, willfulness cannot be established, and criminal penalties are inappropriate, and this is really what the Indictment reflects. *See United States v. Eilertson*, 707 F.2d 108–09 (4th Cir. 1983).  Regardless, it is no secret that DOJ does not prosecute everyone who fails to file or pay taxes on time.[56]  Instead, DOJ lists over 30 factors in its Criminal Tax Manual (CTM) that it considers indicative of willfulness and evasion, and only those relating to history of payment and repeated violations apply to Mr. Biden.  *See* DOJ CTM 8.08[3],

---

Shapley and case agent Joseph Ziegler came forward this year to allege irregularities in the investigation." *Biden-Picked LA US Attorney Claimed He Was Too 'Resource-Strapped' To Charge Hunter*, N.Y. Post (Oct. 26, 2023), https://nypost.com/.

[54]Mr. Holder went on to say that he believes Mr. Biden is "being treated perhaps a little differently because of who he is" and that "[t]here's a political component to this case . . ." *Eric Holder: Hunter Biden Charges Wouldn't Have Been Brought In Normal Scenario*, CNN (Dec. 8, 2023), https://www.cnn.com/.

[55] *See Falk*, 479 F.2d at 623 (evidence "including the admission of the Assistant United States Attorney and the two published statements by the Selective Service officials that contradict the propriety of the action taken in this case, made out at least a prima facie case of improper discrimination").

[56] The government does not generally bring criminal charges for failing to file or pay taxes, especially if the individual paid the taxes, interest, and penalty afterwards, as Mr. Biden did in October 2021.  According to the IRS Data Book for 2021, 2,600,000 taxpayer returns were not timely filed.  Many, if not the vast majority, of those cases were resolved with *civil* resolutions, even in the most high-profile cases.  For example, in *United States v. Shaughnessy*, a DC law partner and his wife failed to file and pay their taxes for 11 years with nearly $7.2 million owed.  DOJ ultimately resolved this civilly with tax, penalties and interest only.  *See* Joint Motion for Entry of Consent Judgment, No. 22-cv-02811-CRC (D.D.C. 2023), DE 9.  In *United States v. Stone*, where former Trump adviser Roger Stone and his wife owed nearly $2 million in unpaid taxes for 4 years, DOJ again resolved the matter civilly.  No. 21-cv-60825-RAR (S.D. Fla. 2022), DE 64.

10.05[5][a] (2024).  DOJ's charges boil down to the claim Mr. Biden knew he had to file returns and pay taxes and failed to do so on time—allegations present in any case charging these offenses and that cannot therefore distinguish Mr. Biden from the countless others DOJ does not prosecute.  *See United States v. Lewis*, 517 F.3d 20, 27–28 (1st Cir. 2008) (discriminatory effect exists where there are "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions" with respect to the defendant and those who are not charged).[57]  And any remaining doubt is resolved by the record of DOJ determining repeatedly that charges were not warranted on these facts.  Mr. Biden has established a prima facie case for selective prosecution that DOJ cannot rebut, and dismissal is required.

## IV.    The Prosecution Of Mr. Biden Violates Separation of Powers

When prosecutors bring charges because of political pressure, it not only violates due process and equal protection, but separation of powers as well.  *United States v. Mardis*, 670 F. Supp. 2d 696, 701 (W.D. Tenn. 2009) (discussing "whether a decision to prosecute was tainted by a violation of the separation of powers").  As Mr. Biden argued in his DE Motion, courts have recognized that while public officials "may cajole, and exhort with respect to the administration of a federal statute," separation of powers are violated when those efforts "result in an[] assumption of executive power or in legislative domination of the executive."  *Id.*; (*see also* Del. Mot. at 57.)  For the many reasons discussed, Congress has done far more than cajole and exhort—it has influenced DOJ's charging decisions, and it is the role of this Court to intercede.  *Falk*, 479 F.2d at 624.

---

[57] *See also Duncan v. Perez,* 445 F.2d 557, 560 (5th Cir. 1971) ("De minimus [violations] of this kind. . . do not become the subject of criminal proceedings."); *Medrano v. Allee*, 347 F. Supp. 605, 614 (S.D. Tex. 1972) (defendant's violation "was treated differently from other [violations] which were more [serious]," which "can only be characterized as 'biased' or 'selective'").

19

**V.    If The Court Does Not Dismiss, It Should Permit Discovery And A Hearing**

Mr. Biden also argued in Delaware[58] that even if he has not presented sufficient evidence for dismissal, "[t]he standard for obtaining an evidentiary hearing on the matter is somewhat lower . . . ." *Bradley*, 880 F. Supp. at 279.[59]  A hearing is necessary where "the motion alleges sufficient facts to take the question past the frivolous state . . . and raises a reasonable doubt as to the prosecutor's purpose." *Id.*

> The standard for discovery is even lower.  The defendant must merely make out a colorable entitlement to the defense of discriminatory prosecutions, . . . or come forward with some evidence tending to show the existence of the essential elements of the defense.

*Id.* (citations omitted); *see Adams*, 870 F.2d at 1146 ("It may well be that no fire will be discovered under all the smoke, but there is enough smoke here, in our view, to warrant the unusual step of letting the defendants find out how this unusual prosecution came about.").  Mr. Biden has easily met these lower standards, so if the Court declines to dismiss, it should order discovery and a hearing so that Mr. Biden may provide further support for his claims.

## CONCLUSION

"[O]ur society is not bettered by law enforcement that . . . is not conducted in a spirit of fairness or good faith." *Banks*, 383 F. Supp. at 397.  This prosecution falls in that category, and the Court should dismiss the indictment, or order discovery and a hearing to ensure Mr. Biden's rights are protected.

---

[58] *See Biden*, No. 23-cr-00061-MN (D. Del. 2023), DE 64 (Mr. Biden's motion for discovery and evidentiary hearing).

[59] "[T]he decision whether or not to order discovery, or an evidentiary hearing, lies substantially within the trial court's discretion." *Bradley*, 880 F. Supp. at 280.

Dated: February 20, 2024

Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 615-1700
Fax: (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
Christopher D. Man
Kyllan Gilmore
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com

*Attorneys for Robert Hunter Biden*