1  Angela M. Machala (SBN: 224496)
   AMachala@winston.com
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue, 38th Fl.
3  Los Angeles, CA 90071-1543
   Telephone:  (213) 615-1700
4  Facsimile:  (213) 615-1750

5  Abbe David Lowell (*admitted pro hac vice*)
   AbbeLowellPublicOutreach@winston.com
6  Christopher D. Man
   CMan@winston.com
7  WINSTON & STRAWN LLP
   1901 L Street NW
8  Washington, DC 20036-3508
   Telephone:  (202) 282-5000
9  Facsimile:  (202) 282-5100

10 Attorneys for Robert Hunter Biden

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No. NO. 2:23-CR-00599-MCS-1 |
|---|---|
| Plaintiff, | *Hon. Mark C. Scarsi* |
| vs. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO STRIKE SURPLUSAGE** |
| ROBERT HUNTER BIDEN, | |
| Defendant. | Hearing Date: March 27, 2024<br>Time: 1:00 PM<br>Place: Courtroom 7C |

**NOTICE OF MOTION AND MOTION TO STRIKE**

TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL DEREK E. HINES

PLEASE TAKE NOTICE that on March 27, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi, Defendant Robert Hunter Biden, by and through his attorneys of record, will, and hereby does, respectfully move this Court for an order to strike the irrelevant and prejudicial surplusage in the Indictment with the redactions proposed in Exhibit 1.

Mr. Biden's motion is based on Federal Rules of Criminal Procedure 7(c)-(d), this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file with the Court, the oral arguments of counsel, and such other matters as the Court may deem proper to consider.

Dated: February 20, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Angela M. Machala*
Angela M. Machala
Abbe David Lowell
Christopher D. Man

*Attorneys for Robert Hunter Biden*

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Federal Rule of Criminal Procedure 7(c) requires an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Accordingly, Rule 7(d) grants the Court broad discretion to strike surplusage from an indictment to protect defendants from "prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United States v. Ramirez*, 710 F.2d 535, 544–45 (9th Cir. 1983).[1]

On December 7, 2023, a grand jury authorized a nine-count Indictment against Mr. Biden for willful failure to file and pay taxes, tax evasion, and filing false returns. (DE 1.) The prosecution littered the Indictment with superfluous, inflammatory allegations that are both unrelated to the elements of these offenses and would be highly prejudicial to Mr. Biden by misleading and confusing the jury and denying him his right to a fair trial. Mr. Biden therefore asks the Court to find the identified categories of allegations addressed below are prejudicial surplusage and strike those allegations in the Indictment consistent with the redactions proposed in Exhibit 1.

### ARGUMENT

I. **THE COURT SHOULD STRIKE ALLEGATIONS ABOUT MR. BIDEN'S "EXTRAVAGANT LIFESTYLE" AND OTHER GRATUITOUS DESCRIPTORS**

The Indictment is littered with inflammatory characterizations and gratuitous facts and descriptors that have little or no probative value and yet pose a significant risk of confusing and misleading the jury or prejudicing the jury's view of Mr. Biden. These

---

[1] Mr. Biden demonstrates in his accompanying motions to dismiss that the Court should dismiss this case on multiple grounds. Mr. Biden files this motion to strike surplusage, in the event the case proceeds to trial, so the petit jury does not consider the same irrelevant, prejudicial, and inflammatory allegations considered by the grand jury. If the Court's practice is not to read an entire Indictment to or provide a copy of the Indictment to the petit jury, and instead, read a summary, then this motion to strike is not necessary.

fall in two main categories: (1) gratuitous and prejudicial descriptions and characterizations of Mr. Biden's finances, spending habits, expenditures, and relationships; and (2) allegations regarding Mr. Biden's separation from his ex-wife and the state court proceedings the prosecution alleges preceded Mr. Biden's late filing of his tax returns in 2020.

**Gratuitous facts and descriptions.** The Indictment is loaded with allegations regarding Mr. Biden's "extravagant lifestyle" and characterizations of his personal choices and spending habits (during his deep addiction) in a way meant to depict Mr. Biden as irresponsible, frivolous, and otherwise of questionable character and integrity. These allegations are not probative of any elements of the charged offenses.[2]

For example, in every count charging Mr. Biden with willful failure to pay taxes (Counts 1, 2, 4, and 9), the Indictment devotes an entire section to gratuitous allegations about his spending habits, with the heading: "Rather than pay his taxes, the Defendant spent millions of dollars on an extravagant lifestyle." (DE 1 at 20, 25, 30, 55.) These allegations are irrelevant as a matter of law to whether Mr. Biden willfully committed failure to pay tax violations. *See United States v. Easterday*, 564 F.3d 1004, 1011 (9th Cir. 2009) ("Because the financial circumstances of a defendant do not bear on the determination of willfulness under § 7202, Easterday's proffered evidence [of inability to pay] was irrelevant . . . .").[3]

Moreover, the Indictment includes numerous allegations about Mr. Biden's finances at irrelevant times, such as 2020 when he late filed his tax returns. (DE 1 at

---

[2] Even if these allegations indicated negligence, recklessness, or callous disregard for Mr. Biden's tax obligations (which they do not), that is not willfulness or relevant to willfulness because those mental states do not demonstrate a conscious intention not to pay taxes. *See* DOJ Criminal Tax Manual (CTM) 10.08[4] (2024) (citing *United States v. Collins*, 457 F.2d 781, 783 (6th Cir. 1972); *United States v. Matosky*, 421 F.2d 410, 413 (7th Cir. 1970)).

[3] *Easterday* held that the prosecution did not need to prove ability to pay at the time of a willful failure to pay, *see id.*, but its reasoning—that one can have an intention to pay or not pay that is independent of any ability to pay—applies in reverse as well: the allegations that Mr. Biden spent money on other things is not relevant to whether or not he intended to pay his taxes.

55.) As Mr. Biden explains in the contemporaneously filed Motion to Dismiss Count I, the fact Mr. Biden's accountants late filed his past returns in 2020 does not render the 2020 filing date any sort of legal payment or filing deadline. *See* Motion to Dismiss Count I at 10. Therefore, even if allegations about Mr. Biden's finances had any relevance, allegations about his finances long *after* he is accused of committing the charged offenses are irrelevant and present a high risk of prejudice and jury confusion.

To be clear, certain of the prosecution's charges for evasion and filing false returns (Counts 6, 8) are based on allegations that Mr. Biden falsely reported personal expenditures as business expenses. The alleged false business expenses and their basic nature may therefore be relevant to these offenses, but what is not relevant are the government's subjective characterizations of those expenditures and insinuations that these allegations reflect Mr. Biden's character or integrity. For example, the indictment claims that Mr. Biden spent money on "drugs, escorts and girlfriends, luxury hotels and rental properties, exotic cars, [and] clothing . . ." (DE 1 at 12.) The prosecution also describes Mr. Biden's rental house as "lavish," (DE 1 at 6) and states that Mr. Biden made car payments—not just on a generic car, but on a "Porsche."[4] *Id.*

The Indictment further compounds the prejudicial impact of these irrelevant assertions by including a chart of "expenditures that the Defendant made instead of paying his taxes," breaking down his spending into categories such as "payments – various women" and "adult entertainment." (DE 1 at 13.) These categories of expenditures purportedly made by Mr. Biden are not probative of any claims or issues, and these irrelevant assertions—as salacious as they may be—must be struck from the Indictment to avoid improper prejudice. *See United States v. Rakow*, 2006 WL

---

[4] As indicated by the redactions and proposed replacement text in Exhibit 1, the Court should substitute generic words like "car" in place of words meant to emphasize the alleged "extravagant" nature of Mr. Biden's expenditures. These replacements would maintain all relevant aspects of the prosecution's argument while removing the risk of prejudice to Mr. Biden. If the prosecution's claim of relevance rests upon whether Mr. Biden spent money on things other than taxes, it can say that without further characterizing what he spent his money on.

8445943, at *5 (C.D. Cal. July 3, 2006) (prohibiting the government from highlighting specific expenditures from a credit card statement as prejudicial).

In addition, the Indictment repeatedly characterizes Mr. Biden's romantic and intimate relationships when describing personal expenses that the prosecution alleges were wrongfully reported as business expenses. (DE 1 at 38, 39, 40, 48.) The relevant allegation is that Mr. Biden made payments to individuals that were not business related yet were reported on his returns as business expenses—the nature of Mr. Biden's relationships with those individuals is irrelevant.

Finally, the Indictment includes a whole section of allegations related to incoming payments to Mr. Biden from different sources that it alleges indicate Mr. Biden's ability to pay his taxes at various times. (DE 1 at 29 – 30.) As noted, Mr. Biden's ability to pay is irrelevant to his intent to pay taxes or file returns and the Court should therefore strike these allegations as well.

**Separation and state court proceedings.** The Indictment includes a number of irrelevant and prejudicial allegations regarding Mr. Biden's separation from his ex-wife and state court legal proceedings that the prosecution alleges prompted Mr. Biden to engage new accountants to late file his returns in 2020. (DE 1 at 14, 15, 24.) Mr. Biden does not oppose the prosecution referencing the proceedings and their basic nature to the extent the prosecution claims they are related to filing the tax returns (although Mr. Biden does not concede any such connection), but the additional allegations about Mr. Biden's motives related to those proceedings, such as to avoid "contempt" or making required support payments, are irrelevant and included only to cast Mr. Biden in a negative light. These facts are not relevant to Mr. Biden's intent to pay his taxes, whether he did so on time, or anything else at issue, and also must be stricken.[5]

**Emphasis added.** Apart from the substantive surplusage, the Indictment also

---

[5] This prejudicial surplusage with no probative value would never withstand future admissibility challenges, such as challenges under evidence Rule 403, which lends further support for striking them now before they compound expenses and judicial resources in the future.

includes prejudicial formatting that should be removed. The Indictment improperly adds emphasis by bolding certain words in text messages attributed to Mr. Biden. (DE 1 at ¶¶ 75, 79.) This is not a brief; this is an indictment. Adding emphasis to certain words runs contrary to Rule 7(c)'s requirement that an indictment be "a plain, concise, and definite written statement of the essential facts." These stylistic choices are prejudicial and wholly inappropriate for this stage of the proceedings, and must be stricken.

## CONCLUSION

Given the foregoing, the Court should issue an order striking the irrelevant and prejudicial surplusage in the Indictment with the redactions proposed in Exhibit 1.

Date: February 20, 2024

Respectfully submitted,

By: /s/ *Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (admitted pro hac vice)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone : (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Robert Hunter Biden*