DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone:  (771) 217-6091
    E-mail:      Leo.Wise@USDOJ.GOV, DEH@USDOJ.GOV

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-cr-00599-MCS |
|---|---|
| Plaintiff, | **GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON IMMUNITY CONFERRED BY HIS DIVERSION AGREEMENT** |
| v. | |
| ROBERT HUNTER BIDEN, | |
| Defendant. | |
| | Hearing Date:    March 27, 2024 |
| | Hearing Time:    1:00 p.m. |
| | Location:           Courtroom of the |
| | Hon. Mark Scarsi |

        Plaintiff United States of America, by and through its counsel of record, hereby opposes the defendant's motion to dismiss the indictment for based on immunity conferred by his diversion agreement (Dkt. 25) (the "Motion").

//

//

1

This opposition is based upon the attached memorandum of points and authorities, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated:    March 8, 2024                   Respectfully submitted,

                                          DAVID C. WEISS
                                          Special Counsel

                                          /s/_____
                                          LEO J. WISE
                                          Principal Senior Assistant Special Counsel

                                          DEREK E. HINES
                                          Senior Assistant Special Counsel

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

# TABLE OF CONTENTS

I.    SUMMARY ........................................................................................... 1

II.   PROCEDURAL HISTORY ................................................................... 1

III.  ARGUMENT ........................................................................................ 6

    A.    The Diversion Agreement Never Entered Into Effect. ................................ 6

        1.    By the plain terms of the diversion agreement that the parties negotiated, it goes into effect only upon approval by U.S. Probation. ....................................................................... 6

        2.    The approval of U.S. Probation was a condition precedent to the formation of the agreement. ........................................ 12

    B.    Because The Diversion Agreement Never Entered Into Effect, the Government Was Free to Withdraw It. ........................................ 17

IV.  CONCLUSION .................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aschan v. Auger*,
　861 F.2d 520 (8th Cir. 1988) ........................................................................7

*CKSJB Holdings LLC v. EPAM Sys., Inc.*,
　837 F. App'x 901 (3d Cir. 2020) ..................................................................8

*In re Zohar III, Corp.*,
　No. 18-10512 (KBO), 2021 WL 3793895 (D. Del. Aug. 26, 2021) ..............9

*Int'l Bhd. Of Teamsters v. NASA Servs., Inc.*
　957 F.3d 1038 (9th Cir. 2020) ............................................................13. 15

*Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*,
　559 F. Supp. 3d 368 (D. Del. 2021)....................................................passim

*Klamath Water Users Protective Ass'n v. Patterson*,
　204 F.3d 1206 (9th Cir. 1999) .....................................................................7

*LPPR, Inc. v. Keller Crescent Corp.*,
　532 F. App'x 268 (3d Cir. 2013) .............................................................9, 10

*Mellon Bank N.A. v. Aetna Bus. Credit, Inc.*,
　619 F.2d 1001 (3d Cir. 1980)................................................................15, 16

*Nat. Res. Def. Council v. Kempthorne*,
　621 F. Supp. 2d 954 (E.D. Cal. 2009) .........................................................7

*Nat. Res. Def. Council v. Kempthorne*
　627 F. Supp. 2d 1212 (E.D. Cal. 2009) .......................................................7

*Nat. Res. Def. Council v. Kempthorne*
　No. 1:05-CV-1207 OSS SMS, 2009 WL 2424569 (E.D. Cal. Aug. 6, 2009)...............7

*NBC Universal v. Paxson Commc'ns*,
　No. Civ.A. 650-N, 2005 WL 1038997 (Del. Ch. Apr. 29, 2005)..................10

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)..........................................................................................19

*O'Neill v. United States*,
  50 F.3d 677 (9th Cir. 1995) ...............................................................................9

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ....................................................................7, 10, 11

*S'holder Representative Servs. LLC v. Shire US Holdings, Inc.*
  No. CV 2017-0863-KSJM 2020 WL 6018738 (Del. Ch. Oct. 12, 2020).....................16

*Sohm v. Scholastic Inc.*,
  959 F.3d 39 (2d Cir. 2020)................................................................13, 15, 19

*Sonitrol Holding Co. v. Marceau Investissements*,
  607 A.2d 1177 (Del. 1992) ...............................................................................11

*United States v. Clark*,
  218 F.3d 1092 (9th Cir. 2000) ............................................................................8

*United States v. Gonzalez*,
  918 F.2d 1129 (3d Cir. 1990).............................................................................17

*United States v. Harris*,
  376 F.3d 1282 (11th Cir. 2004) ...........................................................................7

*United States v. Hicks*,
  693 F.2d 32 (5th Cir. 1982) ................................................................................7

*United States v. Hyde*
  520 U.S. 670 (1997)..........................................................................................13

*United States v. Savage*,
  978 F.2d 1136 (9th Cir. 1992) ..........................................................................17

*United States v. Warren*,
  594 F.2d 1046 (5th Cir. 1979) ............................................................................7

*W & G Seaford Assocs. v. Eastern Shore Mkts., Inc.*,

   714 F.Supp. 1336 (D.Del. 1989).........................................................13

**Statutes**

18 U.S.C. §§ 922(g)(3)...........................................................................1

26 U.S.C. § 7201....................................................................................6

26 U.S.C. § 7203....................................................................................6

26 U.S.C. § 7206....................................................................................6

**Other Authorities**

Restatement (Second) of Contracts § 226 & cmt. A (Am. Law Inst. 1981)....................13

Wayne L. LaFave, Criminal Law § 21.2(c) (6th ed. 2017) ...............................18

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   SUMMARY

The defendant has moved to dismiss the indictment returned by the grand jury in this district on the ground that a proposed diversion agreement presented to the United States District Court for the District of Delaware on July 26, 2023, which the district court rightly referred to as a "proposed agreement," which required the approval of the Chief United States Probation Officer to enter into effect, which she expressly declined to give, *see* Exhibit 1, and as to which the district court in Delaware "deferred" a decision on accepting, nonetheless is in effect and confers "sweeping" immunity on the defendant in this case.

Because U.S. Probation did not approve the diversion agreement and its approval was an express condition precedent to the formation of the agreement, the agreement, and its immunity provision, never went into effect. Because the agreement never went into effect, the government was free to withdraw it, which it did, in writing, on August 9, 2023. Therefore, the defendant's motion to dismiss the indictment returned by the grand jury is meritless and should be denied.

### II.   PROCEDURAL HISTORY

On June 20, 2023, the United States filed a single count criminal information charging the defendant with violating 18 U.S.C. §§ 922(g)(3) and 924(a)(2) related to his illegal possession of a Colt Cobra 38SPL revolver (hereafter the "firearm information"). *United States v. Hunter Biden*, Criminal No. 23-00061-MN (D. Del.) at Dkt. 2. Simultaneously, the United States filed a second information charging the defendant with two counts of failing to pay taxes (hereafter the "tax information") that was docketed as a separate case, also in the United States District Court for the District of Delaware. *United States v. Hunter Biden*, Criminal No. 23-mj-274-MN Dkt. 2.

On July 26, 2023, the Court conducted a combined hearing on both informations. First, the Court held an initial appearance on the firearm information and an initial appearance on the tax information. Dkt. 25-2 3:22-6:25. The Court also entered an order

setting conditions of pretrial release and orally advised the defendant of those conditions. 23-00061-MN Dkt. 15 and Dkt. 16 at 7:18-10:15.[1]

The Court addressed the proposed plea agreement that the parties had negotiated to resolve the tax information and the proposed diversion agreement that the parties had negotiated to resolve the firearm information:

> THE COURT: Now, we have two cases and two agreements and I understand that the Diversion Agreement is not something that is typically before the Court, but you all did send it to me, so I do want to talk about that a little bit. There are some provisions in those agreements that are not standard and are different from what I normally see, so I think we need to walk through these documents and get some understanding **of what is being proposed** so that I can give due consideration to the determination that you all are asking me to make.

Dkt. 25-2 at 10:19-11:4 (emphasis added). A lengthy discussion of both the proposed plea agreement and the proposed diversion agreement then followed.

Of particular relevance to the defendant's motion to dismiss, the proposed diversion agreement that was discussed at the hearing contained the following provision: "The term of this Agreement shall be twenty-four (24) months, **beginning** on the date of **approval** of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14." Dkt. 25-3 at ¶1 (emphasis added). Paragraph two of the proposed diversion agreement further provided that, "The twenty-four (24) month period following the **execution and approval** of this Agreement shall be known as the 'Diversion Period.'" *Id.* at ¶2 (emphasis added). The signature page at the end of the proposed agreement had spaces for the parties, which the Agreement defined as the United States and the defendant, to execute the agreement. It also had a signature space for Margaret Bray, Chief United States Probation Officer for

---

[1] The court entered an identical order setting conditions of pretrial release in 23-mj-274-MN. *See* 23-mj-274-MN Dkt. 16.

the District of Delaware, to approve the agreement. The parties signed the proposed plea agreement and the proposed diversion agreement at the beginning of the hearing. As the attached declaration makes clear, when Chief United States Probation Officer Bray was asked to sign the proposed diversion agreement, she declined to do so. *See* Exh. 1. Indeed, the version of the agreement that the defendant docketed on August 2, 2023, has an empty signature line for Ms. Bray, immediately below the text "APPROVED BY." Dkt. 25-3 at 9.

Reflecting the fact that the terms of the diversion agreement required approval by U.S. Probation for the agreement to enter into effect, and Ms. Bray had not approved it, the government said the following when asked by the court to to summarize the proposed diversion agreement:

> Paragraph 1 [of the proposed diversion agreement] provides that it's for a two-year period, twenty-four months **beginning on the date of approval of this agreement, and that would be when the chief probation officer, Ms. Bray signs it,** unless there is a breach as set forth in paragraphs 13 and 14.

Dkt. 25-2 at 83:12-17 (emphasis added). The government did not say that Ms. Bray had signed it, because she had not, nor did the government say she had otherwise approved it, because she had not.[2] When the government finished summarizing the proposed diversion

---

[2] While the government clearly and accurately summarized how the proposed diversion agreement entered into effect, with the approval of U.S. Probation, defendant repeatedly mischaracterizes an answer that the government gave to a question posed by the Court. He misleadingly suggests that the government thought the agreement was already in effect at the time of the hearing. The cherry-picked answer that the defendant seizes on is the following: "Your Honor, the Diversion Agreement is a contract between the parties so it's in effect until it's either breached or a determination [of breach has been made], period." Motion at 6. But in his motion, the defendant omitted the question posed by the Court and to which the government responded: "[s]o if 922(g)(3), which makes it unlawful for a drug user addict to possess a gun were found by some court to be unconstitutional, what happens to the Diversion Agreement?" Dkt. 25-2 at 91:2-5. The question was premised on a future event after the agreement went into effect. The

*(footnote cont'd on next page)*

3

agreement, the Court asked defense counsel, "Mr. Clark, any corrections you want to make?" to which defense counsel stated, "No, Your Honor." *Id*. at 90:14-15.

Further, during the extended discussion on the proposed diversion agreement, the Court posed the following question demonstrating that Ms. Bray's approval had not been secured:

> THE COURT: All right. Now, I want to talk a little bit about this agreement not to prosecute. The agreement not to prosecute includes -- is in the gun case, but it also includes crimes related to the tax case. So we looked through a bunch of diversion agreements that we have access to and we couldn't find anything that had anything similar to that.
>
> So let me first ask, do you have any precedent for agreeing not to prosecute crimes that have nothing to do with the case or the charges being diverted?
>
> MR. WISE: I'm not aware of any, Your Honor.
>
> THE COURT: Do you have any authority that says that that's appropriate and that the probation officer **should agree to that** as terms**, or the chief of probation should agree to that** as terms of a Diversion Agreement?

Dkt. 25-2 at 46:5-8. Obviously, the phrase "should agree" reflects future, not past tense. Put another way, if Ms. Bray, as the Chief U.S. Probation Officer, had already agreed to the diversion agreement, the Court would not be asking if she "should."

In addition to the Court's concerns about the agreement not to prosecute in the diversion agreement quoted above, the Court also questioned whether the proposed

---

government's answer is similarly based on this premise. In any event, government counsel's statement, however one interprets it, does not magically make the diversion agreement come into effect. Only the terms of the agreement itself do that. The defendant's entire judicial estoppel argument is similarly premised on his misrepresentation of this answer government counsel gave in response to the Court's question at the hearing. Motion at 18-19. For that reason, it should be rejected.

diversion agreement was enforceable or even constitutional. *Id*. at 92:22-106:2. As a result, the Court deferred a decision on the proposed diversion agreement and the proposed plea agreement, as reflected in a minute order entered on the docket:

> Minute Entry for proceedings held before Judge Maryellen Noreika - Initial Appearance as to Robert Hunter Biden on (1) Count 1 held on 7/26/2023., defendant was present with counsel. The Court advised defendant of rights and granted release with conditions. Defendant waived the preliminary hearing. The Court advised counsel of their Brady obligations under Rule 5(f). **The Court deferred a decision on the plea and pretrial diversion agreement.** The parties shall submit briefs as ordered within 30 days; Not Guilty Plea entered. Time is excluded from the Speedy Trial Act between today and 9/1/2023 in the interests of justice.

(emphasis added). The Court entered a nearly identical minute order in 23-mj-274-MN.

Following the July 26, 2023 hearing, the government and the defendant engaged in further negotiations on both the proposed plea and the proposed diversion agreement but, those negotiations were unsuccessful. 23-00061-MN Dkt. 25. Because the parties could not reach agreement, the government informed the defendant, in writing on August 9, 2023, that it was withdrawing the most recent version of its proposed plea agreement and its proposed diversion agreement. 23-00061-MN Dkt. 32.

On October 11, 2023, the government voluntarily moved to dismiss the tax information without prejudice so that charges could be brought in a district with proper venue. 23-mj-274-MN Dkt. 31. In its motion to dismiss, the government cited the fact that the defendant had pled not guilty to the tax information and, therefore, had not waived venue for any tax charges and that venue did not lie in the District of Delaware for any tax charges. *Id*. at 3-4. The defendant did not oppose the government's motion. 23-mj-274-MN Dkt. 43. On October 17, 2023, the district court in Delaware granted the government's motion to dismiss. *Id*.

On December 7, 2023, a federal grand jury in the Central District of California returned an indictment charging the defendant with multiple tax crimes, including failure to file or pay taxes, in violation of 26 U.S.C. § 7203 (Counts One, Two, Three, Four, Five, and Nine), attempted evasion of assessment, in violation of 26 U.S.C. § 7201 (Count Six), and filing a false and fraudulent tax return, in violation of 26 U.S.C. § 7206 (Counts Seven and Eight). Dkt. 1.

## III.   ARGUMENT

Because the diversion agreement never entered into effect, the defendant has no immunity from prosecution.

### A. The Diversion Agreement Never Entered Into Effect

The defendant's first argument is that the diversion agreement is in effect. Motion at 1. However, he offers three different and conflicting theories as to why it is in effect. First, he asserts that "[t]he Diversion Agreement was validly *executed* and, therefore, it is a binding and enforceable contract." Motion at 8 (emphasis added). Then, in the next paragraph he says, "[t]he Agreement need only be *approved and executed by the parties* to become effective, and that has occurred." *Id.* (emphasis added). Later in that same paragraph he writes, "Because Mr. Biden *accepted* the Diversion Agreement, 'the government may not now revoke it.'" *Id.* (emphasis added). The defendant doesn't tell the Court which of his own differing theories he ultimately relies on. And by the plain terms of the agreement, it is none of those things.

1. By the plain terms of the diversion agreement that the parties negotiated, it goes into effect only upon approval by U.S. Probation.

By its plain terms, the diversion agreement negotiated by the parties only goes into effect upon approval of the Chief of U.S. Probation for the District of Delaware, which was a condition precedent to the formation of the contract. And that didn't happen.

The Ninth Circuit's methodology for interpreting plea agreements is "settled."

*In re Doe*, 51 F.4th 1023, 1030 (9th Cir. 2022). It begins, "with the fundamental rule that plea agreements are contractual in nature and are measured by contract law standards." *Id*. By analogy, the same principle should apply to the analysis of the diversion agreement as the United States Circuit Courts of Appeal for the Fifth, Eighth, and Eleventh Circuits have found. *United States v. Harris*, 376 F.3d 1282, 1287 (11th Cir. 2004) ("A pretrial diversion agreement is analogous to a plea bargain agreement. Accordingly, this court interprets a pretrial diversion agreement applying the same standards we would use to interpret a plea agreement."); *Aschan v. Auger*, 861 F.2d 520, 522 (8th Cir. 1988); *United States v. Hicks*, 693 F.2d 32, 33 (5th Cir. 1982); *United States v. Warren*, 594 F.2d 1046, 1049 (5th Cir. 1979).

"When interpreting a contract entered into pursuant to federal law and to which the United States is a party, interpretation is controlled by federal common law. *Nat. Res. Def. Council v. Kempthorne*, 621 F. Supp. 2d 954, 979–80 (E.D. Cal. 2009), *decision clarified,* 627 F. Supp. 2d 1212 (E.D. Cal. 2009), *on reconsideration,* No. 1:05-CV-1207 OWW SMS, 2009 WL 2424569 (E.D. Cal. Aug. 6, 2009) citing *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir. 1999). For guidance, courts look to general principles concerning the interpretation of contracts. *Klamath,* 204 F.3d at 1210. As the Ninth Circuit explained in *Klamath*:

> A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first.

*Id*. (cleaned up); *Iron Branch Assocs., LP v. Hartford Fire Ins. Co.*, 559 F. Supp. 3d 368, 378 (D. Del. 2021); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159–60 (Del. 2010).

"If the terms of the plea agreement" are "clear and unambiguous" on their face, courts "will not look to extrinsic evidence to determine their meaning." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000); *see also*, *CKSJB Holdings LLC v. EPAM Sys., Inc.*, 837 F. App'x 901, 904-05 (3d Cir. 2020) (citing Delaware law). Here the terms at issue are the ones concerning when the proposed diversion agreement goes into effect. [3] The defendant takes the position that the entire diversion agreement, including these provisions, is unambiguous, and the government agrees.[4]  Motion at 9 ("The Diversion Agreement, like any unambiguous contract is interpreted solely by its plain language"). Because interpreting an unambiguous contract provision is a matter of law, an evidentiary hearing on the defendant's motion is unnecessary. *Iron Branch*, 559 F. Supp. 3d at 378 (Under Delaware law, "the Court must first determine whether a contract is unambiguous …" and "contract interpretation is a question of law"). Even though the defendant takes the position that the agreement is unambiguous, he nonetheless chose to submit 187 pages of extrinsic or parol evidence, including an affidavit from former counsel and multiple

---

[3] At the hearing on July 26, 2023, the Court raised whether there was a meeting of the minds as to the immunity provision in paragraph 15 of the proposed diversion agreement. In response, defense counsel made conflicting statements about his understanding of the scope of paragraph 15. First, defense counsel disagreed with government counsel that the government could bring a charge under the Foreign Agents Registration Act. Dkt. 16 at 55:5-18. Following this exchange, defense counsel asked for a brief recess in the proceeding. *Id*. at 57:1-3. When the hearing resumed, defense counsel reversed himself and said he *did* agree with the government's statement on the scope of the immunity agreement. *Id*. at 58:18-24. To the extent the Court views defense counsel's changing positions as indicative of ambiguity in the agreement, the defendant has obviously taken the position in his motion to dismiss that the entire agreement is unambiguous. In any event, the provisions at issue in his motion concern whether the agreement entered into effect. As to those provisions, and the parties agree on this, there is no ambiguity.

[4] The defendant spends three pages on a strawman argument that if the Government were to take the position that the diversion agreement was ambiguous, any ambiguity should be construed against the government. Motion at 9. The government does not take the position that the diversion agreement is ambiguous and never has.

emails and other communications between defense counsel and the former prosecution team. Dkt. 25-5. "The reviewing court must not look towards extrinsic or parol evidence to create an ambiguity in a written agreement that is otherwise clear and unambiguous." *In re Zohar III, Corp.*, 2021 WL 3793895, at *6 (D. Del. Aug. 26, 2021). Because the parties agree the diversion agreement is unambiguous, these submissions are irrelevant. *O'Neill v. United States*, 50 F.3d 677, 685 (9th Cir. 1995) ("Although the U.C.C. permits extrinsic evidence to be considered in determining whether a contract is ambiguous, once a contract is found to be unambiguous the parol evidence rule excludes statements offered to contradict a clear contract term in a final expression of agreement."); *LPPR, Inc. v. Keller Crescent Corp.*, 532 F. App'x 268, 275 (3d Cir. 2013). And because they are irrelevant, the government will not address them. This does not mean, however, that the government agrees with the version of events former defense counsel offers in his declaration. It does not. Nor does the government agree with the characterizations of the negotiations between the parties that the defendant offers in his motion.

Turning to the text of the agreement itself, and as summarized above, the very first numbered paragraph of the proposed diversion agreement stated that it would take effect when the agreement was "approved": "[t]he *term of this Agreement* shall be twenty-four (24) months, *beginning* on the date of *approval* of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14." Dkt. 25-3 at ¶1 (emphasis added). The next paragraph further provides that: "[t]he twenty-four (24) month period following *execution and approval* of this Agreement shall be known as the 'Diversion Period.'" *Id*. at ¶2 (emphasis added). And the signature page at the end of the entire agreement reflects the distinction drawn by paragraph 2 between execution by the parties and approval by the Chief U.S. Probation Officer:

*Id*. at page 9. The only signature line that has "APPROVED BY:" above it is the one for the Chief United States Probation Officer, not the United States or the defendant.

APPROVED BY:

_____

Margaret M. Bray
Chief United States Probation Officer
District of Delaware

Dated:

Dkt. 25-3 at 9. Above the signature lines for the United States and the defendant it instead says, "ON BEHALF OF." And it is axiomatic that words have meaning. If the parties intended for the agreement to come into effect when *they* approved it alone, then they would not have provided for approval by the Chief United States Probation Officer.

In sum, the plain terms of the agreement are that the agreement is executed by the parties, which the Agreement defines as the United States and the defendant. *Id*. at I. But the Agreement does not vest the parties with the exclusive power to approve the agreement. Chief United States Probation Officer Margaret Bray must approve it. And, as quoted above, paragraph 1 expressly provides that it is approval that begins the term of the agreement. Thus, the defendant's repeated assertions that the parties alone approve the agreement, not U.S. Probation, and that the parties' approval alone causes it to enter into effect, is clearly wrong.

Furthermore, defendant's subjective belief that the agreement did not require U.S. Probation's approval, is not controlling. "Delaware adheres to the 'objective' theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party." *Iron Branch*, 559 F. Supp. 3d at 378; *Osborn ex rel. Osborn*, 991 A.2d 1153 at 1159; *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997,

at *5 (Del. Ch. Apr. 29, 2005)). An objective, reasonable third party would understand that U.S. Probation would have to approve the agreement for it to go into effect, given the language in paragraphs 1 and 2 and the construction of the signature page.

"A court must not render any part of the contract mere surplusage or render any provision or term "meaningless or illusory." *Iron Branch*, 559 F. Supp. 3d at 378 (citing *Osborn ex rel. Osborn*, 991 A.2d at 1159 and *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992)). That is exactly what the defendant is inviting the Court to do because his argument that the parties' execution of the agreement brings it into effect would render the agreement's requirement of approval by U.S. Probation "mere surplusage" and make it "meaningless or illusory." *Iron Branch*, 559 F. Supp. 3d at 378.

Clearly, the Chief U.S. Probation Officer did not sign the agreement. Dkt. 24-1 at 9. And as the attached declaration makes clear, she declined to sign it when asked. *See* Exh. 1. Even though she did not sign it, the defendant claims she did in fact approve it. Once again, defendant's positions are inherently inconsistent. On the one hand, he claims that only the parties, and not U.S. Probation, had to approve the agreement. He subsequently abandons this position and claims that U.S. Probation *did* in fact approve it even though it didn't need to. Motion at 16-18.

The only evidence the defendant submits in support of his contention that U.S. Probation approved the agreement is a pretrial services report to the district court in which Ms. Bray wrote that, "[t]he United States Probation Office *recommends* the defendant as a candidate for a 24-month term of Pretrial Diversion." Dkt. 25-6. A pretrial diversion report is prepared for the Court. Ms. Bray recommending the defendant for pretrial diversion to the Court is not the same thing as Ms. Bray approving the diversion agreement. If Ms. Bray had chosen to approve the agreement she would have said so. She did not. She merely said she recommended the defendant to the Court for diversion. And when she was asked to sign the agreement, she declined. *See* Exh. 1.

11

After taking the inconsistent positions that the parties and not U.S. Probation approved the agreement, only to reverse course and claim that U.S. Probation did in fact approve it, the defendant next asserted that U.S. Probation's approval didn't amount to anything. Specifically, the defendant claimed that the "signature line for Probation reflecting its approval would indicate only that Probation approved being given the supervisory responsibility, which even then it would not have to exercise." Motion at 15-16. But this position also renders U.S. Probation's approval as "mere surplusage" and makes it "meaningless or illusory." *Iron Branch*, 559 F. Supp. 3d at 378. It is also at odds with the structure of the agreement. The signature line for U.S. Probation under "APPROVED BY" appears at the end of the agreement, on the same page as the signature lines for the parties to execute the agreement. That shows that U.S. Probation is approving the entire agreement, not just some part of it.

    *2.* <u>The approval of U.S. Probation was a condition precedent to the formation of the agreement</u>

Applying contract law principles, the approval of U.S. Probation was a condition precedent to the formation of the contract. As the Ninth Circuit explained in *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,

> Parties may make the creation of a contract subject to a condition precedent. A condition precedent is either ... an uncertain event that must happen before the contractual right accrues or the contractual duty arises. The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. There are two species of conditions precedent: conditions precedent to formation and conditions precedent to performance. Essentially, where a condition precedent to formation is not satisfied, the proposed bargain between the parties does not become a binding contract.

*Int'l Bhd. Of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020) (cleaned up); *see also W & G Seaford Assocs. v. Eastern Shore Mkts., Inc.*, 714 F.Supp. 1336, 1340 (D.Del. 1989) (citing *J. Calamari & J. Perillo*, Contracts § 11–5, at 440 (3d ed.1987)) ("A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract … "In the former situations, the contract itself does not exist unless and until the condition occurs."). As the Supreme Court's opinion in *United States v. Hyde* shows, contract law on conditions applies to plea agreements. 520 U.S. 670, 678 (1997).

The approval of U.S. Probation is a condition precedent to the formation of the agreement because paragraph 1 provides that "[t]he Agreement shall be twenty-four (24) months, *beginning on the date of approval* of this Agreement …" and the parties agreed that the Chief U.S. Probation Officer must approve the diversion agreement. Dkt. 25-3 at ¶ 1. Under contract law, "[n]o particular form of language is necessary to make an event a condition, although such words as 'on condition that, 'provided that' and 'if' are often used for this purpose. An intention to make a duty conditional may be manifested by the general nature of an agreement, as well as by specific language." Restatement (Second) of Contracts § 226 & cmt. A (Am. Law Inst. 1981). In his reply in support of his motion to dismiss the indictment based on immunity conferred by his diversion agreement filed in the District of Delaware, the defendant cites a Second Circuit case, *Sohm v. Scholastic Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) for the proposition that "conditions precedent are not readily assumed" and "conditions precedent must be 'expressed in unmistakable language'". 1:23-cr-00061-MN Dkt. 78 at 5. That is precisely what the proposed diversion agreement reflects. Paragraph 1 fell under the heading "Terms and *Conditions* of Diversion

Agreement" and specified that the term of the agreement "begin[s] on the date of *approval* of this Agreement."

II.   TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.     The term of this Agreement shall be twenty-four (24) months, beginning on the date of approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.     The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

Dkt. 25-3 at 1. The term of the agreement is expressly "conditioned" on approval of the agreement. And, as described in detail above, approval is given by the Chief of U.S. Probation for the District of Delaware. *Id.* at 9. The diversion period does not begin until the agreement is approved, and the very next paragraph, paragraph 2, distinguished between "execution" and "approval." If the parties alone both executed and approved the agreement, the former would render the latter redundant. And such a reading of the agreement would violate the contract principle that "[a] court must not render any part of the contract mere surplusage." *Iron Branch*, 559 F. Supp. 3d at 378.

If any doubt about the distinction between execution and approval were possible, construction of the signature page at the very end of the agreement reinforced that "approval" would not occur until Margaret M. Bray, Chief United States Probation Office, signed the agreement. As cited above, her signature alone appears under "APPROVED BY" in capital letters. Moreover, paragraph 10, labeled "Additional *Conditions* Applicable to Diversion Period" specified that the defendant must "[b]e subject to pretrial diversion supervision as directed by the U.S. Probation and Pretrial Services Office in this

14

District"—a "condition" that could not occur without the U.S. Probation's approval, as the agreement itself specified.

Indeed, as described above, defense counsel demonstrated this contemporaneous understanding of the condition at the plea hearing on July 26, 2023. There, the Court asked the government to summarize the terms of the diversion agreement. Reading from the agreement, government counsel stated, "Roman two describes the terms and conditions of the agreement. Paragraph 1 provides it's for a two-year period, **twenty-four months beginning on the date of approval of this agreement, and that would be when the chief probation officer, Ms. Bray, signs it**, unless there is a breach as set forth in paragraphs 13 and 14." Dkt. 25-2 at 83 (emphasis added). When the government completed its summary of the diversion agreement, the Court asked the defendant's counsel, "any corrections you want to make?" *Id*. at 90. Defense counsel responded, "No, Your Honor." *Id.*

The defendant makes much of the fact that the parties signed the agreement at the beginning of the hearing on July 26, 2023. But a contract does not exist if a condition precedent to its formation has not occurred even if the parties to the proposed contract have signed the instrument. *See, e.g., Int'l Bhd. Of Teamsters v. NASA Servs., Inc.*, 957 F. at 1043. Thus, the fact that the defendant and the government signed the agreement does not mean it went into effect.

In his reply in support of his motion to dismiss in the Delaware case, the defendant asserts that "it is the prosecution's burden to prove the existence of a condition precedent." 23-00061-MN Dkt. 78 at 4. That is incorrect. The case that the defendant cites in support of that argument, *Mellon Bank N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1007 (3d Cir. 1980), says the opposite. In *Mellon Bank*, the Third Circuit held, and the defendant quoted this, that "[t]he generally accepted rule is that the burden of proof in regard to a condition precedent is on the party alleging the breach of the conditional promise." *Id*. In *Mellon Bank*, Mellon Bank sued Aetna for breach of contract and Aetna asserted, as a

defense, that a condition precedent had not occurred. The Third Circuit held that the district court had "incorrectly placed the burden of proof on Aetna to establish" the existence of the condition precedent and held that it was Mellon Bank, as the party claiming breach, that bore the burden of establishing the condition precedent. *Id*.

The defendant also misunderstands the next case he cites in his reply brief in the Delaware case in support of his incorrect assertion that the prosecution bears the burden of proving the existence of a condition precedent, *Shareholder Rep. Servs. LLC v. Shire Holdings*, 23-00061-MN 78 at 4. In that case, the Delaware Court of Chancery held:

> Typically, the party seeking to enforce the contract must prove each element of its breach of contract claim by a preponderance of the evidence. Contracts that contain conditions, however, require another layer of analysis when allocating the burden of proof. Where a contractual obligation is subject to a "condition precedent," that obligation will only mature on satisfaction of a contractually specified condition. In that situation, the party seeking to enforce that obligation bears the burden of proving that the condition has been satisfied in order to establish the first element of a claim for breach of contract—the existence of a contractual obligation.

No. CV 2017-0863-KSJM, 2020 WL 6018738, at *17 (Del. Ch. Oct. 12, 2020), aff'd, 267 A.3d 370 (Del. 2021).

In this case, it is the defendant who is claiming that the government breached the diversion agreement by indicting him, so it is his burden to prove that the condition precedent to formation, approval by the Chief of U.S. Probation in the District of Delaware, has been satisfied. And he has failed to do so. The only purported factual support he offers is the pretrial services report where Ms. Bray wrote "[t]he United States Probation Office *recommends* the defendant as a candidate for a 24-month term of Pretrial Diversion." Dkt. 25-6. That is not proof that she approved the proposed diversion agreement. Just the opposite. That establishes that she was not approving the agreement

and was instead only making a recommendation to the court. And as Exh. 1 makes clear, when Ms. Bray was asked to approve the agreement by signing it in court she declined to do so.  *See* Exh. 1.

**B. Because The Diversion Agreement Never Entered Into Effect, the Government Was Free to Withdraw It**

Because the diversion agreement never entered into effect, the government was free to withdraw it, which it did on August 9, 2023. "As a general rule … either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court." *United States v. Savage*, 978 F.2d 1136, 1137–38 (9th Cir. 1992). "The general rule, however, is subject to a detrimental reliance exception. Even if the agreement has not been finalized by the court, defendant's detrimental reliance on a prosecutorial promise in plea bargaining could make a plea agreement binding. *Id.* (internal quotations omitted).

The Third Circuit's decision in *United States v. Gonzalez*, 918 F.2d 1129 (3d Cir. 1990) is also instructive on the issue of withdrawal of a plea agreement by the government, given the facts and circumstances of this case. In *Gonzalez*, the government offered the defendant and his two codefendants a wired plea, in other words, each defendant's plea agreement was conditioned on the other two defendants also pleading guilty. One of the defendants rejected the offer and the government withdrew the offer as to all three. After conviction at trial, the defendant argued that "basic fairness should compel the government to be held to the terms of the agreement it had reached with him, since he was ready, willing, and able to plead guilty to count one as required by the agreement." *Id.* at 1133. The Third Circuit rejected the defendant's argument reasoning that "[t]he proposal, however, was subject to a condition precedent—that all three must plead guilty in order for there to be an agreement" and concluded *"*the agreements should not be enforced when one of the conditions to the agreement (unanimous agreement) is not met." *Id.*

17

As reflected in both opinions, the Ninth and Third Circuits have adopted the "prevailing doctrine" that the government "may withdraw from a plea bargain agreement at any time prior to, but not after, the actual entry of the guilty plea by the defendant or other action by him constituting detrimental reliance upon the agreement." WAYNE L. LAFAVE, CRIMINAL LAW § 21.2(c) (6th ed. 2017).  That same section of LaFave expressly blesses withdrawal "where the plea bargain was specifically conditioned on some future event which did not come to pass." Thus, the government can withdraw if a condition precedent to the formation of the contract is not satisfied.

The defendant claims, "In exchange for Mr. Biden giving up various rights— including his Fifth Amendment right to remain silent by agreeing to the Statement of Facts drafted by the prosecution and numerous restrictions on his liberty—the prosecution agreed to provided [sic] him sweeping immunity." Motion at 1. In other words, he asserts that he has relied, to his detriment, on the proposed diversion agreement. He has not.

First, the defendant has not given up his right to remain silent in exchange for anything in the proposed diversion agreement. The factual statement that he agreed to concerning the tax offenses was not contained in the proposed diversion agreement. It was contained in the proposed plea agreement. Dkt. 25-4 at 7-10. And the defendant himself acknowledged that his decision to enter into the plea agreement and agree to its statement of facts was not based on the proposed diversion agreement. Specifically, at the July 26, 2023 hearing, the defendant was asked by the court as part of the Rule 11 colloquy, "are you relying on the promise in the Diversion Agreement not to prosecute you in connection with your agreement to accept the Memorandum of Plea Agreement and plead guilty?" to which the defendant replied, "No, Your Honor.' Dkt. 25-2 at 45:8-12. And, again, the statement of facts concerning the tax offenses was contained in the Memorandum of Plea Agreement, not in the proposed Diversion Agreement. The court then asked the defendant "And so if you had no immunity from the government through that Diversion Agreement and the government could bring felony tax evasion charges or drug charges against you,

would you still enter the plea agreement and plead guilty to these tax charges," to which the defendant again replied, "Yes, Your Honor." *Id*. at 45-13-18. Now the defendant takes the opposite position—that he agreed to the statement of facts contained in the plea agreement concerning his taxes "in exchange" for the immunity contained in the proposed diversion agreement. Motion at 1, 19. The doctrine of judicial estoppel, which the defendant tries unsuccessfully to invoke against the prosecution in his motion, prevents him from making this about face. Motion at 18. As the defendant acknowledged in his motion, judicial estoppel is particularly warranted when "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing part if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). That is certainly what the defendant is trying to do here. The defendant's assertion that, "The prosecution used the immunity promised by the Diversion Agreement to elicit Mr. Biden's agreement with the facts it wrote and waiver of rights with respect to gun (and tax and drug) charges, which Mr. Biden then elaborated upon in response to extensive questioning from the Court," Motion at 18, is directly contradicted by what the defendant told the court under oath as quoted above. And to be clear, the "extensive questioning from the court occurred after the defendant had told the court that he was not relying on the immunity provision in the proposed Diversion Agreement in deciding to plead guilty and admit to the facts contained in the plea agreement.[5] In any event, like with any failed plea, Federal Rule of Evidence 410 bars the use in evidence of "any statement made in the course of any proceeding under Federal Rule of Criminal Procedure 11 regarding a plea of guilty …" So, the defendant's admissions as part of the Rule 11 colloquy cannot be used against him, even without the immunity contemplated in the proposed Diversion Agreement.

---

[5] The court went through the specific terms of the Memorandum of Plea Agreement with the defendant in open court, including the statement of facts contained in the Memorandum of Plea Agreement and asked the defendant questions about some of those facts. *See* Dkt. 25-2 at 60:6-82:8.

Second, the defendant incorrectly asserts that, "Mr. Biden also agreed not to exercise his Second Amendment right to possess a firearm during the diversion period (*which he could otherwise do because he has not used illicit substances in more than four years*)." Motion at 3-4 (emphasis added). That is not true. The defendant is prohibited from possessing a firearm as a standard condition of his pretrial release like other criminal defendants. *See* 23-00061-MN Dkt. 15. That's not something he agreed to. The Court's Order of July 26, 2023, specifically provides that "the defendant must (k) not possess a firearm, destructive device, or other weapon." It is that order of the Court that restricts his rights under the Second Amendment, not the proposed diversion agreement that never went into effect.

Third, the defendant claims he has "agree[d] to supervision by Probation and drug testing and treatment as directed by Probation," pursuant to the diversion agreement. Motion at 4. He has not. Probation is supervising the defendant, including requiring him to undergo drug testing and treatment pursuant to the Order setting his pretrial conditions of release, not the proposed diversion agreement that never went into effect. See 23-00061-MN Dkt. 15. It is that order of the Court that *requires* him to be supervised by Probation and *requires* him to submit to drug testing and treatment as directed by Probation, not the proposed diversion agreement that never went into effect. Nor has he agreed to these conditions. They were imposed by the court.

In sum, the defendant has shown no detrimental reliance on the withdrawn Diversion Agreement because there is none.

## IV.    CONCLUSION

The defendant's motion to dismiss the indictment based on immunity conferred by his diversion agreement should be denied.