1  DAVID C. WEISS
2  Special Counsel
   LEO J. WISE
3  Principal Senior Assistant Special Counsel
   DEREK E. HINES
4  Senior Assistant Special Counsel
5       950 Pennsylvania Avenue NW, Room B-200
        Washington, D.C. 20530
6       Telephone:  (771) 217-6091
7       E-mail:     Leo.Wise@USDOJ.GOV, DEH@USDOJ.GOV

8  Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10          UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,          No. CR 23-cr-00599-MCS

14          Plaintiff,                  GOVERNMENT'S OPPOSITION TO
                                        DEFENDANT'S MOTION TO DISMISS
15          v.                          CONCERNING THE SPECIAL
                                        COUNSEL'S APPOINTMENT
16  ROBERT HUNTER BIDEN,

17          Defendant.                  Hearing Date:   March 27, 2024
                                        Hearing Time:   1:00 p.m.
18                                      Location:       Courtroom of the
                                                        Hon. Mark C. Scarsi
19

20

21

22          Plaintiff United States of America, by and through its counsel, hereby opposes the

23  defendant's motion to dismiss the indictment because the Special Counsel's appointment

24  is allegedly unlawful and improperly funded (Dkt. 26) (the "Motion").

25  //

26  //

27  //

28  //

1     This opposition is based upon the attached memorandum of points and authorities,

2  the filings and records in this case, and any further argument as the Court may deem

3  necessary.

4

5   Dated:   March 8, 2024            Respectfully submitted,

6                                     DAVID C. WEISS

7                                     Special Counsel

8                                     LEO J. WISE

9                                     Principal Senior Assistant Special Counsel

10

11

12                                    _____

13                                    DEREK E. HINES

14                                    Senior Assistant Special Counsel

15                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     SUMMARY ............................................................................................. 1

II.    FACTUAL AND LEGAL BACKGROUND ......................................... 1

III.   ARGUMENT ......................................................................................... 5

       A.    The Special Counsel's Appointment is Lawful. ........................... 5

       B.    The Special Counsel's Investigation is Properly Funded. ........... 9

             1.    Congress's permanent indefinite appropriation encompasses
                   this prosecution. ................................................................... 10

             2.    Even assuming the appropriation does not apply, dismissal is
                   not appropriate. .................................................................... 14

IV.    CONCLUSION ................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                          **Pages(s)**

*Bond v. United States*,
   564 U.S. 211 (2011) ...............................................................................15

*Bowsher v. Synar*,
   478 U.S. 714 (1986) .................................................................................3

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) .................................................................................8

*Collins v. Yellin*,
   141 S. Ct. 1761 (2021)...........................................................................15

*Department of Commerce v. New York*,
   139 S. Ct. 2551 (2019)...........................................................................9

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019)...........................................................6

*In re Sealed Case*,
   829 F.2d 50 (D.C. Cir. 1987)...............................................................5

*Morton v. Ruiz*,
   415 U.S. 199 (1974) .................................................................................8

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
   551 U.S. 644 (2007) .................................................................................6

*Rushen v. Spain*,
   464 U.S. 114 (1983) ...............................................................................15

*Sheila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020)...........................................................................15

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) .................................................................................8

*United States v. Bilodeau*,
   24 F.4th 705 (1st Cir. 2022) ...............................................................16

ii

*United States v. Caceres,*
  440 U.S. 741 (1979) ................................................................................8

*United States v. Concord Manag. & Consulting LLC,*
  317 F. Supp. 3d 598 (D.D.C. 2018) ........................................................8

*United States v. Isgro,*
  974 F.2d 1091 (9th Cir. 1992) ..............................................................15

*United States v. Libby,*
  429 F. Supp. 2d 27 (D.D.C. 2006) ...........................................................6

*United States v. Manafort,*
  312 F. Supp. 3d 60 (D.D.C. 2018) .......................................................8, 9

*United States v. McIntosh,*
  833 F.3d 1163 (9th Cir. 2016) ..............................................................15

*United States v. Montalvo-Murillo,*
  495 U.S. 711 (1990) ..............................................................................15

*United States v. Morrison,*
  449 U.S. 361 (1981) ..............................................................................15

*United States v. Nixon,*
  418 U.S. 683 (1974) ..........................................................................2, 12

*United States v. Pisarski,*
  965 F.3d 738 (9th Cir. 2020) ................................................................16

*United States v. Rutherford,*
  442 U.S. 544 (1979) ..............................................................................11

*United States v. Stone,*
  394 F. Supp. 3d 1 (D.D.C. 2019) ....................................................passim

*United States v. Trevino,*
  7 F.4th 414 (6th Cir. 2021) ...................................................................16

**Statutes**

5 U.S.C. § 310 ............................................................................................2

5 U.S.C. § 553(a)(2) ...........................................................................3, 6, 8

iii

5 U.S.C. § 701(a)(2) ......................................................................................................... 9

26 U.S.C. § 7201 ............................................................................................................... 1

26 U.S.C. § 7203 ............................................................................................................... 1

26 U.S.C. § 7206 ............................................................................................................... 1

28 U.S.C. § 533 ................................................................................................................. 2

28 U.S.C. § 591(b) ............................................................................................................ 5

28 U.S.C. § 599 ................................................................................................................. 3

28 U.S.C. § 1291(a) ......................................................................................................... 16

28 U.S.C. §§ 509 ............................................................................................................... 2

28 U.S.C. §§ 591-598 ............................................................................................... 2, 3, 10

31 U.S.C. §§ 702 ............................................................................................................... 3

Pub. L. 95-521 .................................................................................................................. 2

Pub. L. 100-202 ............................................................................................................. 1, 3

Pub. L. 103-270, sec. 2, 108 ............................................................................................. 3

Pub. L. No. 111–68 ...................................................................................................... 5, 11

U.S.C. § 509 ...................................................................................................................... 6

**Regulations**

28 C.F.R. Part 600 ......................................................................................................... 3, 6

28 C.F.R. Part 600 (2003) ............................................................................................... 13

28 C.F.R. pt. 600 ........................................................................................................... 4, 7

28 C.F.R. § 600.3 .............................................................................................................. 1

28 C.F.R. § 600.7(b) ....................................................................................................... 12

28 C.F.R. §§ 600.4 through 600.10 .............................................................................. 7, 11

iv

**Other Authorities**

38 Fed. Reg. 30,798-02 (Nov. 2, 1973) ................................................................. 2

64 Fed. Reg. 37,038-01 (July 9, 1999). ............................................................. 3, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  SUMMARY

On December 7, 2023, a federal grand jury in the Central District of California returned an indictment charging the defendant with multiple tax crimes, including failure to file or pay taxes, in violation of 26 U.S.C. § 7203 (Counts 1, 2, 3, 4, 5, and 9), attempted evasion of assessment, in violation of 26 U.S.C. § 7201 (Count 6), and filing a false and fraudulent tax return, in violation of 26 U.S.C. § 7206 (Counts 7 and 8). Dkt. 1. Defendant has now moved to dismiss this indictment on two grounds related to the Special Counsel's appointment, arguing first that the appointment itself is unlawful and second that it is funded in violation of the Appropriations Clause. Dkt. 26. These arguments are meritless and should be denied.

First, for the entire history of the United States Department of Justice ("DOJ"), the Attorney General has possessed the statutory authority to designate any officer of the Department to represent the United States in any court. The appointment of counsel from "outside the government" under 28 C.F.R. § 600.3 are not the exclusive, much less primary, source of a Special Counsel's delegated authority, nor could such a procedural regulation limit the Attorney General's statutory authority or confer any enforceable right on a defendant to dismiss his prosecution.

Second, the appropriation covers "independent counsel appointed pursuant to [the Independent Counsel statute] *or other law.*" Pub. L. 100-202, tit. II, 101 Stat. 1329, 1329-009 (1987) (emphasis added). Because the Special Counsel has been appointed by the Attorney General pursuant to statute and granted independence to conduct this prosecution, he falls squarely in the plain text of the statute.

## II.  FACTUAL AND LEGAL BACKGROUND

At the inception of the Department of Justice on June 22, 1870, Congress provided broad authority to the Attorney General to "require the solicitor-general or any officer of the Department," which included the various United States Attorneys, to "conduct and argue any case in which the government is interested, in any court of the United States"

and "to attend to the interests of the United States in any suit pending in any court of the United States, or in the courts of any State." An Act to Establish the Department of Justice, ch. 150, secs. 1 & 5, 16 Stat. 162, 162-63 (1870). Subsequently, in 1906, Congress further authorized the Attorney General to appoint Department officers to conduct criminal prosecutions as if they were U.S. Attorneys of the relevant district. *See* Act of June 30, 1906, ch. 3935, 34 Stat. 816, 816-17 (then codified at 5 U.S.C. § 310). As codified now, Title 28 unambiguously vests the Attorney General with the authority of all functions of any officer of the Department of Justice (with narrow exceptions not relevant here) and the authority to delegate such functions to any other officer. *See* 28 U.S.C. §§ 509, 510, 515; *see also* 28 U.S.C. § 533 (authorizing the Attorney General to appoint officials "to detect and prosecute crimes against the United States" and "to conduct such other investigations regarding official matters under the control of the Department of Justice … as may be directed by the Attorney General").

In 1974, the Supreme Court approved the Attorney General's reliance on these statutes to create an office of special prosecutor within the Department after the infamous Saturday Night Massacre. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 694 (1974); *see also* Establishing the Office of Watergate Special Prosecution Force, 38 Fed. Reg. 30798-02 (Nov. 2, 1973). Four years later, Congress passed the Ethics in Government Act, which authorized a division of the U.S. Court of Appeals for the District of Columbia Circuit, upon request by the Attorney General, to appoint a special prosecutor from outside the government in certain cases. *See* Pub. L. 95-521, 92 Stat. 1824, 1867-74, 1869 (Oct. 26, 1978) (then codified at 28 U.S.C. §§ 591-598). After amending and re-enacting the overall Independent Counsel scheme in 1987, Congress passed a joint resolution on appropriations that, among its provisions, established "a permanent indefinite appropriation … within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. § 591 et seq. or other law" and providing for audits by the

Comptroller General,[1] who would report findings to the congressional appropriations committees. *See* Pub. L. 100-202, tit. II, 101 Stat. 1329, 1329-9 (Dec. 22, 1987) (codified at 28 U.S.C. § 591 note) ("the permanent appropriation"). After initial reauthorizations, Congress eventually permitted the Independent Counsel law to lapse in 1999. *See, e.g.*, Independent Counsel Reauthorization Act of 1994, Pub. L. 103-270, sec. 2, 108 Stat. 732, 732 (June 30, 1994) (as amended at 28 U.S.C. § 599).

Immediately following that sunset date, Attorney General Janet Reno promulgated regulations in 28 C.F.R. Part 600 "to replace the procedures set out in the Independent Counsel Reauthorization Act of 1994," which sought to "strike a balance between independence and accountability in certain sensitive investigations." Office of Special Counsel, 64 Fed. Reg. 37,038-01 (July 9, 1999).[2] Section 600.3 provides that "[t]he Special Counsel shall be selected from outside the United States Government." Section 600.6 vests the Special Counsel with "the full power and independent authority to exercise all investigative and prosecutorial functions of any United States Attorney" and the discretion to "determine whether and to what extent to inform or consult with the Attorney General or others within the Department about the conduct of his or her duties and responsibilities." Section 600.7 mandates compliance with Departmental practices and policies but permits the Special Counsel to bypass "the required review and approval procedures by the designated Departmental component" and "consult directly with the Attorney General," while clarifying that "[t]he Special Counsel shall not be subject to the day-to-day supervision of any official of the Department," such that only the Attorney General may set aside "a proposed investigatory or prosecutorial action" if it "so

---

[1] The Comptroller General is a Presidentially appointed, Senate-confirmed officer of the legislative branch and head of the Government Accountability Office. *See* 31 U.S.C. §§ 702, 703; *Bowsher v. Synar*, 478 U.S. 417, 718 (1986).

[2] Because the regulations related to matters of agency management and personnel, as well as rules of procedure and practice, the Attorney General was not required to subject them to the notice-and-comment procedures of the Administrative Procedures Act ("APA"). *See id.* at 37,041 (citing 5 U.S.C. § 553(a)(2), (b)(A)).

inappropriate or unwarranted under established Departmental practices." Finally, Section 600.10 provides that the regulations "are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law or equity, by any person or entity, in any matter, civil, criminal, or administrative."

Both before and after 1999, the Department of Justice has relied upon Congress's permanent appropriation to fund Special Counsel appointed outside of the Independent Counsel statute, including ones who held office as U.S. Attorneys. These appointments include:

- Robert Fiske, appointed January 20, 1994;
- John Danforth, appointed September 9, 1999;
- Sitting U.S. Attorney Patrick Fitzgerald, appointed December 30, 2004;
- Sitting U.S. Attorney John Durham, appointed Oct. 19, 2020;
- Sitting U.S. Attorney David Weiss, appointed August 11, 2023.

*See Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560, at *3 n.11 (Comp. Gen. Sept. 30, 2004); Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Dec. 30, 2003); Letter from James B. Comey, Acting Attorney General, to Patrick J. Fitzgerald, United States Attorney (Feb. 6, 2004)[3]; Att'y Gen. Order 4878-2020 (Oct. 19, 2020); Att'y Gen. Order 5730-2023 (Aug. 11, 2023). The appointment letters of Special Counsel Fitzgerald excluded him from the provisions of 28 C.F.R. pt. 600 altogether, while the appointment orders of Special Counsel Durham and Weiss specify that §§ 600.4 to 600.10 are "applicable to the Special Counsel." But all three appointment orders relied on the Attorney General's statutory authority, not § 600.3.

After Special Counsel Fitzgerald's appointment, the Government Accountability Office ("GAO") issued a formal decision concluding that the Department could use the

---

[3] Both letters are available at https://www.justice.gov/archive/osc/documents/2006_03_17_exhibits_a_d.pdf.

permanent appropriation to fund a Special Counsel who held a position as a U.S. Attorney and continued to do so during his investigation. *See Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560 (Comp. Gen. Sept. 30, 2004). In line with the statute, the GAO transmitted this decision to the appropriations committees of both Houses of Congress. Since receiving the GAO's analysis, Congress has neither amended nor rescinded the permanent appropriation. Rather, in 2009 Congress lifted GAO's audit duty, deeming its review of the permanent appropriation unnecessary. *See* Pub. L. No. 111–68, § 1501(d), 123 Stat. 2023, 2041 (2009).

## III.   ARGUMENT

Contrary to defendant's assertions, the Special Counsel's appointment conforms to the law in all respects, and the plain text of the permanent appropriation, confirmed by historical practice and legislative audit, applies to this prosecution.

### A.   The Special Counsel's Appointment is Lawful

Defendant argues, in essence, that § 600.3 occupies the entire field for—and thus substantively limits—the Attorney General's statutory powers of delegation. That argument is simply wrong under every lens.

As discussed above, the Attorney General's statutory authority to delegate prosecutions to Department officers predated—and then survived—the specific statutory mechanism for Independent Counsel through the now-lapsed Ethics in Government Act, which first contained the limitation to appointing a special prosecutor from outside of government service. *See* 92 Stat. at 1869. Notably, even when it existed, the Independent Counsel statute contemplated appointment of an outside prosecutor only in cases involving a very narrowly defined category of investigative targets. *See, e.g.*, 92 Stat. at 1868 (then codified at 28 U.S.C. § 591(b)). Courts have routinely recognized that the Act did not affect the Attorney General's plenary power to empower independent Special Counsel. *See In re Sealed Case*, 829 F.2d 50, 52-53, 55-58 (D.C. Cir. 1987) (noting Independent Counsel Lawrence Walsh possessed *both* authority under the Ethics in Government Act

5

*and* authority delegated by the Attorney General under §§ 509, 510, 515, and 533); *United States v. Libby*, 429 F. Supp. 2d 27, 34 (D.D.C. 2006) (noting that after letting the Independent Counsel statute lapse, Congress "certainly could have acted to prevent further delegation of such authority if it had wanted to, but it did not."). The principle that these two statutory schemes operated independently, without abrogating each other, accords with the familiar presumption against implicitly repealing an existing statute. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007) (cleaned up).

So too the regulations: while 28 C.F.R. Part 600 certainly provides one mechanism by which the Attorney General may appoint a Special Counsel, nothing in it purports to be the exclusive means by which he might do so. To the contrary, the regulations do not purport to control *all* delegations of authority, with whatever grant of independence the Attorney General deems appropriate, to current officers of the Department. Moreover, "[t]he Attorney General, an officer appointed by the President with the advice and consent of the Senate, has the authority to rescind at any time the Office of Special Counsel regulations or otherwise render them inapplicable to the Special Counsel." *In re Grand Jury Investigation*, 916 F.3d 1047, 1052 (D.C. Cir. 2019). The Attorney General may "revise or repeal" the regulations, *id.* (citing 5 U.S.C. § 553(a)(2), (b)(A), (b)(B), (d)(3)), and "retain[s] plenary supervisory authority of the Special Counsel under 28 U.S.C. § 509," *id.* Indeed, the Attorney General may revise the regulations through the appointment order for special counsel. *Id.* Defendant ignores this plenary authority entirely.

Here, the Attorney General invoked §§ 509, 510, 515, and 533 to confer independence and autonomy on the Special Counsel and further determined that he would make "[s]ections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations … applicable to the Special Counsel." Att'y Gen. Order 5730-2023, at 2. Thus, the Attorney General incorporated the substance of these provisions into the appointment order as the terms of the delegation—but he did not, in fact, rely on § 600.3 for the appointment itself. Defendant's assertion that "[t]he Attorney General had no lawful basis to pick and choose

what parts of an integrated regulation to apply" is followed by no citation—and for good reason.[4] The statutes provide the Attorney General with near-absolute discretion over the delegation of functions within the Department of Justice. *See* §§ 509, 510, 515, 533. Nothing in those statutes prevents the Attorney General from specifying under what terms and with what scope he will delegate independent authority to a Special Counsel. In this case, as with nearly all Special Counsel to date, that the Attorney General chose to make applicable the provisions of 28 C.F.R. §§ 600.4 through 600.10 means just that: the delegation of authority carries with it the substantive and procedural requirements of those provisions. Section 600.3—which the Attorney General neither referenced nor invoked—has nothing to do with the appointment and delegated authority under which the Special Counsel here acts.

As defendant acknowledges, these arguments have already been presented to the district court in Delaware. *See* Dkt. 26, at 6. In his reply there, defendant expressly conceded (as he must) the breadth of the Attorney General's statutory authority—but then argued that authority does not permit the Attorney General to call his appointee a "Special Counsel" or, somehow, to impose the same independence, authority, or obligations that the regulations do on an appointee. *See* Reply at 1, *United States v. Biden*, 1:23-cr-61 (D. Del. filed Jan. 30, 2024), ECF No. 80. Indeed, he conceded that Patrick Fitzgerald was properly appointed outside of 28 C.F.R. pt. 600. This concession reveals defendant's argument to be an ephemeral grasp at empty formalism. Under defendant's strained reasoning, had the Attorney General simply copied and pasted the substantive text of §§ 600.4 through 600.10 into the appointment order without citing the regulations and then called Mr. Weiss an "Independent Prosecutor," the appointment would be a fully legitimate exercise of the Attorney General's statutory authority.

---

[4] Nor is an "integrated regulation" a term of art with a defined meaning: None of the incorporated sections cross-reference § 600.3 or rely on its provisions for any purpose.

The regulations defendant claims limit the Attorney General's authority in this matter have the same source as Special Counsel Weiss's appointment: the federal statutes. That the Attorney General decided to grant parallel independent authority and procedural limitations as defined in the regulations does not mean that the regulations can flow upstream and displace the Attorney General's authority to invoke the statutes directly, rather than § 600.3. Specifically, in addition to the specific disclaimer of enforceability in § 600.10, the regulations in Part 600 are "a matter relating to agency management or personnel" as well as "rules of agency organization, procedure, or practice," which are not subject to notice-and-comment rulemaking under the APA. 5 U.S.C. § 553(a)(2), (b)(A); *cf.* Office of Special Counsel, 64 Fed. Reg. at 37,041; *see also United States v. Concord Manag. & Consulting LLC*, 317 F. Supp. 3d 598, 615-17 (D.D.C. 2018). Because they fall into this category, however, the Supreme Court has made clear that they are not "binding or have the force of law." *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979) (citing *Morton v. Ruiz*, 415 U.S. 199, 232-35 (1974)).[5] Thus, purported violations of their terms, even if a violation is assumed, is simply not a basis on which to dismiss a criminal indictment. *See United States v. Manafort*, 312 F. Supp. 3d 60, 75-79 (D.D.C. 2018) (holding the Special Counsel regulations are internal procedures only); *see also United States v. Caceres*, 440 U.S. 741, 754 (1979) (holding that an IRS agent's violation of an internal procedural regulation could not trigger the exclusionary rule without a concomitant constitutional violation).

Defendant also argues that dismissal is necessary under *Nixon*. As the D.C. district court observed in rejecting a similar argument, the claim "lifts one sentence from [*Nixon*]," which "concerned a different regulation, promulgated for a different purpose, and the case does not stand for the proposition that the regulations at issue should be read to confer any

---

[5] This distinction alone disposes of defendant's citation to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), in which the invoked provisions were "[r]egulations with the force and effect of law." *Id.* at 265.

8

enforceable rights on the defendant." *Manafort*, 312 F. Supp. 3d at 76. After analyzing the cases at length, Judge Jackson explained that in the context of the specific dispute between the President and the Special Prosecutor over the availability of executive privilege and the validity of the Special Prosecutor's subpoena, the Supreme Court held only that the President and the Attorney General could not themselves continue to exercise the discretion that had been delegated by regulation to the Special Counsel. *See id.* at 77-78. That is not the case here, where a criminal defendant is attempting to enforce internal agency regulations by challenging the delegation in the first instance.

Indeed, under the APA, judicial review is not even available over an "agency action" that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This prohibition applies to decisions where the "the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," and has been held to encompass such decisions as non-prosecution decisions and employment decisions involving national security interests. *See Department of Commerce v. New York*, 139 S. Ct. 2551, 2568 (2019) (citing cases). The decision here falls squarely within that category. In fact, few conceivable decisions are *less* susceptible to judicial second-guessing than this one: the Attorney General made a personal determination to appoint the prosecutor he concluded was most appropriate to wield the delegated authority and independence of a Special Counsel in an investigation and prosecution of the son of the sitting President.

For 150 years, the Attorney General has had plenary authority to empower one of his officers to litigate particular cases in federal court. Defendant offers no persuasive reason as to why that authority has not been properly exercised here.

## B. The Special Counsel's Investigation is Properly Funded

Under the Appropriations Clause, "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const., art. I, § 9, cl.7. Defendant contends that the Special Counsel's funding for this case was not approved by

Congress. To the contrary, well-established decisions of the executive, legislative, and judicial branches all confirm the applicability of the permanent independent counsel appropriation here.

       1.    <u>Congress's permanent indefinite appropriation encompasses this prosecution.</u>

Defendant argues that the permanent appropriation is limited to independent counsel under the now-lapsed Independent Counsel Act. As Judge Jackson observed about a similar challenge, this argument "ignores the plain language." *United States v. Stone*, 394 F. Supp. 3d 1, 18 (D.D.C. 2019). Specifically, Congress created a "permanent indefinite appropriation … to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or *other law*." *Stone*, 394 F. Supp. 3d at 18 (quoting 101 Stat. 1329).

As explained above, the Attorney General has ample statutory authority—the relevant "other law"—to appoint a sitting U.S. Attorney as Special Counsel and, in this case, has conferred on that Special Counsel independence within the meaning of the appropriation. As recounted above, to date, three Attorneys General (or Acting Attorneys General) have used this permanent appropriation to fund Special Counsels who were (a) appointed other than through the Ethics in Government Act and (b) sitting U.S. Attorneys at the time. As Judge Jackson observed, "[t]he General Accounting Office (GAO), an 'independent agency within the legislative branch' that serves Congress, has conducted audits and reported to Congress that other special attorneys appointed after the expiration of section 591 have been supported with funds from the permanent appropriation." *Stone*, 394 F. Supp. 3d at 22 (citations omitted); *see infra* (discussing the GAO's analysis). After receiving these GAO reports, Congress has left undisturbed the practice, which the plain language of the appropriation facially encompasses. In fact, beyond merely not disturbing the practice that the GAO endorsed, Congress then amended the law in 2009 to lift the GAO's audit duty altogether. *See* Pub. L. No. 111–68, § 1501(d), 123 Stat. 2023, 2041

(2009). In short, while repealing other portions of the statute relating to GAO oversight, Congress still chose not to rescind the permanent appropriation, indicating the appropriation is being used as intended. *See United States v. Rutherford*, 442 U.S. 544, 554 n.10 (1979) ("[O]nce an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned." (cleaned up)). Those actions would make little sense under defendant's theory that the statute is limited solely to the Independent Counsel Act or to "outside" Special Counsel.

Defendant cannot persuasively claim that the phrase "independent counsel" in the permanent appropriation excludes Special Counsel. An "independent counsel" is "[a]n attorney hired to provide an unbiased opinion about a case or to conduct an impartial investigation; esp., an attorney appointed by a governmental branch or agency to investigate alleged misconduct within that branch or agency." *Black's Law Dictionary* 426 (10th ed. 2014). Here, the Attorney General appointed the Special Counsel with the broad independence found in the provisions incorporated into the appointment order. *See* 28 C.F.R. § 600.4. Although the Special Counsel remains subject to the Attorney General's ultimate control, he also retains "a substantial degree of independent decisionmaking," *Office of Special Counsel*, 64 Fed. Reg. 37,038, 37,039-37,040 (July 9, 1999), and is not part of the regular Department chain of command or "subject to the day-to-day supervision of any official of the Department," 28 C.F.R. § 600.7(b).

Defendant reads "independent counsel" as if it refers solely to *outside* counsel. But, as *Stone* notes, the permanent appropriation does not require the same limitations as were in the Independent Counsel statute. "The phrase 'other law' sweeps broadly, and sections 509, 510, and 515 are surely 'other law' under which special attorneys—including special counsel who investigate the President—may be appointed." *Stone*, 394 F. Supp. 3d at 20 (noting that the Special Counsel appointed to investigate and prosecute President Nixon

and the Iran/Contra matter were appointed under §§ 509, 510, and 515, and citing *Nixon*, 418 U.S. at 694-95). Defendant also contends that Special Counsel Weiss cannot fall within the permanent appropriation because of the authority that the Attorney General retains over Special Counsel. But *Stone* rightly rejected that argument: "[T]he fact that the regulation calls for a certain level of oversight and compliance with the policies and procedures of the Department of Justice does not mean a special counsel is not 'independent' as that term is generally understood and as it was used in the permanent appropriation." 394 F. Supp. 3d at 21. Again, "there is nothing in the language of the provision itself that would support defendant's attempt to narrow the appropriation to cover only specially appointed lawyers who operate under terms identical to those in the much-criticized Ethics in Government Act. And it is the language of the Congressional authorization, and not the level of autonomy the lawyer enjoys, that controls." *Id*. And the provisions in the Special Counsel Regulation made applicable here "expressly recognizes and provides for the independence of the specially appointed lawyer." *Id*.

The GAO's analysis—which Congress has received to effectuate its oversight responsibilities—accords with the reasoning in *Stone* that the permanent indefinite appropriation is not limited to counsel appointed pursuant to the lapsed Independent Counsel Act. The GAO noted that when Special Counsel Fitzgerald was appointed, he was a sitting U.S. Attorney and "continued to perform his duties as a U.S. Attorney after his appointment as Special Counsel." *Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560, at 1 (Comp. Gen. Sept. 30, 2004). The GAO explained that it has a "responsibility to audit" the "use of the account to finance Special Counsel Fitzgerald's activities, and the provisions of 28 C.F.R. Part 600 (2003)," and the GAO concluded that "we do not object to the use of the permanent indefinite appropriation to fund Special Counsel Fitzgerald's expenses." *Id*. at 2. "[T]he permanent indefinite appropriation does not require that a Special Counsel be appointed from outside the government," and such special counsel falls within "other law" under the

appropriation. *Id*. Moreover, "the Part 600 regulations are not substantive and may be waived by the Department." *Id*. The GAO "agree[d] with the Department that the same statutory authorities that authorize the Attorney General (or Acting Attorney General) to delegate authority to a U.S. Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation." *Id*. at 7. The GAO likewise agreed that the "Part 600 [regulation] is not a substantive (legal) limitation on the authority of the Acting Attorney General to delegate departmental functions to Special Counsel Fitzgerald." *Id*. Nowhere did the GAO conclude that only "outside" regulatory special counsel, or statutory special counsel appointed under the Independent Counsel Act, had the requisite level of independence necessary to fall within the terms of the permanent indefinite appropriation.[6]

The government anticipates that defendant will argue, as he did in his Delaware reply, that the GAO opinion and *Stone* favor his interpretation of the appropriation. But these arguments hold no water. Defendant called it "decisive" that the GAO opinion approved of Special Counsel Fitzgerald's appointment only because of the complete exclusion of the Part 600 regulations. The opposite is true: Although the GAO indicated that Special Counsel Fitzgerald's exclusion from Part 600 altogether "contribute[d] to [his] independence," 2004 WL 2213560, at *3, it also noted that it had not objected to the use of the permanent appropriation to fund Special Counsel who were appointed under Part 600. *See id.* at *3 n.11, *4 n.17. It therefore clearly did not view the narrow Attorney General oversight defined in those regulations to undermine the appointed official's authority as an "independent counsel" under the appropriation's plain language. Likewise,

---

[6] Given that Congress saw fit to sunset the Independent Counsel Act—which prioritized independence of the special counsel over the Attorney General's prerogatives to administer the Department of Justice—defendant cannot credibly argue that Congress nonetheless insisted that *only* that lapsed degree of independence could satisfy the terms of the permanent appropriation, which it left in place.

defendant suggested that *Stone* approved of Special Counsel Mueller's appointment only because it was an outside appointment under the regulations. Again, that is not true: the district court focused specifically on the degree of oversight contemplated by §§ 600.6 and 600.7 and concluded "a review of the regulation does not indicate that an attorney covered by its terms is so hamstrung that he or she cannot be said to fall within the broad category of 'independent counsel' Congress intended to fund." *Stone*, 394 F. Supp. 3d at 21-22. In short, these authorities demonstrate that neither (a) appointment from "outside" the government nor (b) complete exclusion from Attorney General oversight as contemplated by §§ 600.6 and 600.7 is necessary to be deemed "independent counsel" within the meaning of the appropriation. By conferring on the Special Counsel here "full power and independent authority" (§ 600.4) to conduct this investigation and prosecution, the Attorney General rendered the Special Counsel an "independent counsel" under the appropriation.

Congress unambiguously authorized the use of the permanent appropriation for independent counsels appointed under "other law," not merely those appointed under the Ethics in Government Act. Several Attorneys General have since used that appropriation to fund sitting U.S. Attorneys who have been made special counsel with broad authority and independence inside the Department of Justice. That practice has been audited and endorsed by the GAO and reported to Congress, which has taken no action to amend or rescind the appropriation. The only judicial authority to consider the question has also approved it. All three branches of government have therefore squarely rejected defendant's theory.

2.   Even assuming the appropriation does not apply, dismissal is not appropriate.

It is a "general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," including the government's interest in prosecution and the public's interest in the

14

administration of criminal justice. *United States v. Morrison*, 449 U.S. 361, 364-65 (1981) (holding that dismissal of the indictment is "plainly inappropriate" for violations of Fourth, Fifth, and Sixth Amendment rights because "[t]he remedy in criminal cases is limited to denying the prosecution the fruits of its transgression"); *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 721-22 (1990) (rejecting overbroad remedy that did not target the specific harm); *Rushen v. Spain*, 464 U.S. 114, 119-20 (1983) ("The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred."); *see also United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992) ("Dismissal of an indictment with prejudice is the most severe sanction possible.... In deciding whether to dismiss an indictment, a court must not only determine whether a defendant has suffered actual prejudice, it must also limit its consideration to those events that actually bear upon the grand jury's decision to indict."). Here, the "errors" of which defendant complains would not preclude prosecution altogether, because the government could simply transition to a funding source other than the permanent appropriation.

Defendant asserts, with no analysis, that "[a] prosecution that is made in violation of the Appropriations Clause must be dismissed." Dkt. 26, at 8. Neither of his two principal cited cases support that proposition. In fact, they and cases relying on them contradict it.[7]

In *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit held that an appropriations rider prevented DOJ from using funds to prosecute individuals who acted in "strict compliance" with state laws permitting medical marijuana. Notably, however, the Ninth Circuit remanded for an evidentiary hearing on compliance and

---

[7] The "see also" Supreme Court cases defendant cites following this statement deal with Article III standing, not remedy. *See Collins v. Yellin*, 141 S. Ct. 1761, 1780 (2021); *Sheila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *Bond v. United States*, 564 U.S. 211, 220 (2011). The government assumes for purposes of this response that defendant has standing. But what remedy is available if the Court finds a violation of the Appropriations Clause is a wholly distinct analysis. *See, e.g.*, *Collins*, 141 S. Ct. at 1781 (observing that the scope of relief turns on the harm attributable to a constitutional violation).

expressly declined to decide what remedy existed in a criminal prosecution if a violation of the Appropriations Clause had occurred. *See id.* at 1179. However, the posture of the case is instructive: the Ninth Circuit held that it had jurisdiction over the interlocutory appeal only because the defendant had requested either dismissal of the indictment *or* an injunction against the prohibited use of funds. *See id.* at 1171-72; *see also* 28 U.S.C. § 1291(a) (permitting interlocutory appeals from decisions regarding injunctive relief). Again, in defendant's second cited case, the Ninth Circuit affirmed the district court after it "enjoined the government from spending additional funds on the prosecution" after "finding that Pisarski and Moore strictly complied with California's medical marijuana laws." *United States v. Pisarski*, 965 F.3d 738, 740 (9th Cir. 2020).[8]

Unlike those defendants, however, defendant cannot claim that prosecuting him *at all* violates a congressional prohibition on the use of appropriated funds; instead, his argument is only that one specific appropriation is not available. Thus, even if this Court were to agree with defendant, enjoining the Special Counsel from using the permanent appropriation would not prevent the Special Counsel from using other appropriated funds to pursue the prosecution. Because the Court cannot grant more relief than is warranted by an alleged constitutional violation, the nature of defendant's objection cannot support dismissal.

## IV.   CONCLUSION

Both of defendant's attacks on the appointment of the Special Counsel and on the funding used for this prosecution and investigation conflict with statutory text and well-established historical practice. The Court should deny his motion.

---

[8] Two other circuits likewise did not dismiss the indictment. *See United States v. Bilodeau*, 24 F.4th 705, 711 n.6 (1st Cir. 2022); *United States v. Trevino*, 7 F.4th 414, 421-22 (6th Cir. 2021).

16