Angela M. Machala (State Bar No. 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (*pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
Kyllan J. Gilmore
KGilmore@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ROBERT HUNTER BIDEN <br><br> Defendant. | Case No. 2:23-cr-00599-MCS-1 <br><br> *Hon. Mark C. Scarsi* <br><br> **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS** <br><br> Hearing Date: March 27, 2024 <br> Time: 1:00 PM <br> Place: Courtroom 7C |

# INTRODUCTION

DOJ trumpets the principle that "the decision to prosecute is particularly ill-suited to judicial review" and asks the Court not to pull back the executive curtain. (DE37 at 8 (citations omitted).)  But there are no Wizards of Justice behind it, just ordinary men and women who feel social pressure, care about their reputations and careers, and fear for the safety of their colleagues and loved ones.  The Court needs only its own experience with these human frailties to see that, understandable though they are, they have deprived Biden of due process in this case.

DOJ responds to this in three ways.  *First*, DOJ boldly mischaracterizes the July 26 plea hearing in Delaware (where the court asked the parties to address procedural issues) and who terminated subsequent negotiations.  DOJ argues piling on charges after the hearing was just prosecution as usual because Biden "refused further negotiations" by (1) rejecting DOJ's initial counterproposals and (2) arguing DOJ was bound by a contract it signed.  (*Id.* at 6.)  DOJ can try to rewrite the record and claim its counterproposals were limited to the issues raised by the Delaware court, but it quickly proposed deleting a key substantive immunity provision that had always been central to the deal and then took out other provisions of the agreements.[1]  And DOJ denies it would only accept felonies to continue negotiating, but the July–August 2023 correspondence confirm that negotiations were *ongoing* only as to the limited procedural issues the Delaware court raised,[2] yet DOJ took off the table the misdemeanor-only agreement, the immunity provision, and a no jail sentence at the August 29 meeting with Biden's counsel, *without* Biden ever indicating he wanted to terminate the prior discussions.[3]  The obvious point was that the prosecution would accept or then charge only felonies, which they did two weeks after the meeting.

---

[1] *See* Declaration of Abbe David Lowell ("Lowell Decl."), Ex. A (chronology of events and correspondences between the parties following the July 26 plea hearing).
[2] Lowell Decl., Ex. B (August 7, 2023 letter from Biden's counsel to DOJ proposing deletion of immunity provision).
[3] Lowell Decl. at ¶ 4.  Nothing about the parties' dispute over the enforceability of the Diversion Agreement had anything to do with the procedural provisions being addressed beyond the fact it upset DOJ, which is an improper reason to bring charges.

*Second*, DOJ attacks Biden's *prima facie* case by inventing non-existent facts and legal requirements. (DE37 at 7–11.) DOJ argues Biden: (1) is different from the offenders it does not prosecute because he is accused of an unrelated gun crime and wrote a memoir about his struggles with addiction (*id.* at 9); (2) does "not provide evidence of animus by the actual prosecutors" (*id.* at 2); and (3) fails to "connect the alleged animus to any legally cognizable right that [Biden] exercised." (*Id.*) DOJ's efforts to distinguish Biden only confirm that DOJ declines to prosecute those accused of far worse conduct, and Biden cites undisputed caselaw confirming that animus need *not* originate with prosecutors and is *not* limited to retaliation against a defendant's invocation of rights. (DE27 at 10, 14–15.)

*Third*, DOJ argues the chronology does not show it "upped the ante" because it "considered" bringing these charges before agreeing not to and the proposed agreements were never finally approved. (DE37 at 12–15.) These arguments only prove Biden's point. DOJ *considering* and then declining to charge for years and proposing non-prosecution resolutions reflects its *real* view that charges were not warranted, and each time it then raised the stakes reflects it changing that decision for improper purposes. *This* is what violates Biden's rights.

*Fourth*, DOJ divulges "two facts" it says "completely undermine" Biden's claims: (1) DOJ signed the Plea and Diversion Agreements ("PA," "DA") at the July 26 hearing *after* the deal was publicly condemned by Republicans; and (2) Biden "fails to explain how" DOJ could be "acting at the direction of the former President Trump or Congressional Republicans" when his father is the President and appointed the Attorney General. (*Id.* at 1.) The parties had obviously reached the agreements in question *before* they were made public and the period of outcry between the public filing and the hearing. That DOJ attended a scheduled hearing and signed documents is hardly a clincher when one considers DOJ then made limiting statements at the hearing and used the Delaware court's procedural concerns to scuttle the deal (e.g., secretly re-opening bogus corruption allegations made by Alexander Smirnov) and now fights tooth-and-nail to dispute its own signatures. As for DOJ's second "fact," Biden wholeheartedly agrees that a former

2

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

President and his supporters should not be able to subvert the integrity of DOJ or its officials, but any suggestion that this is inconceivable is belied simply by the chronology of this case. Notably, the opposition does not even *acknowledge* that DOJ started piling on tax charges right after Weiss was dragged before Congress and admitted he started fearing for the safety of his team and family. (DE27 at 7.)

DOJ concludes that, given this spattering of legal and factual distortions, Biden fails to show a "realistic likelihood" of discriminatory prosecution and DOJ need not offer any justification for its actions. (DE37 at 18.) This would be a bold position to take if the prosecution *had* a legitimate justification. But the fact that it does not is evident from its suggestion that two felony indictments are warranted because Biden bought a gun, wrote a memoir, and rejected DOJ's sudden demand that he receive no immunity against new charges and also face jail time.

## RESPONSE TO FACTUAL BACKGROUND

The opposition includes a Factual Background in which DOJ offers an inaccurate and revisionist description of the plea negotiations. (*Id.* at 2–6.)[4] DOJ says the parties "proposed two agreements to the court in the District of Delaware," but claims "[w]hen the court did not accept those agreements and asked the parties to consider certain changes, the defendant declined and insisted one of those agreements was already in effect," and "refused further negotiations." (*Id.* at 1, 6 (citing discussions in early August 2023).) The agreements made in June 2023 were not "proposed"; they were the ones Biden and the prosecutors had agreed to. The prosecution claims it sought an indictment because "no agreement was reached" and calls Biden's claim that it demanded a plea to felonies

---

[4] The first two subsections of the Factual Background describe the tax and gun offenses, mostly as an excuse to dress up Biden's failure to timely file and pay with words like "scheme" and "evade," though they are based on the same benign facts the prosecution has known and discussed with Biden for years before it decided not to prosecute. (*Id.*) The prosecution also reiterates its disapproval of Biden's life choices (as though these were crimes or otherwise any of the government's business), although this also failed to prompt DOJ to bring charges until it was looking for an excuse to do so for improper purposes. *Id.* Similarly, the prosecution faults Biden for discussing his experiences in a memoir with millions of Americans who struggle with addiction, as though engaging in this speech will somehow encourage crime and must be punished. (*Id.*)

"patently false, unsupported by evidence, and belied by his own letter and representations in his filings in the Delaware case." (*Id.* at 6.) This is all deflection and bluster.

Biden did not refuse further negotiations of the provisions identified by the Delaware court. First, DOJ's counterproposals were *not* limited to the court's procedural concerns.[5] After the exchange cited by DOJ where Biden rejected its counterproposals, *DOJ* informed Biden the deal was off and made clear it would accept or charge felonies during a meeting with Biden's counsel on August 29, 2023. Lowell Decl. at ¶ 4. This was no new proposal after failed negotiations, but an unexplained, unilateral declaration that the misdemeanor agreement was gone, that not even the immunity DOJ conceded in court on July 26 still existed, and that there could not be a non-custodial resolution. This meant that only felonies would be acceptable to the prosecutors, and none of these changes related to what the Delaware court raised. Biden's rejection of these very serious differences from the agreement already reached was not a failure to negotiate.

If Biden was not willing to agree to the prosecution's counterproposals when the deal was a deferred prosecution, why would he ever agree to a deal beyond misdemeanors, with new felony charges possible, with a no jail resolution off the table? Again, a simple chronology demonstrates that DOJ wanted out of the deal, and the only change in circumstances was not new evidence or new law, but the enormous political blowback that occurred. *See* Lowell Decl., Ex. A. DOJ then made demands it knew Biden would reject so it could pretend it had an excuse to renege and pile on charges.[6]

More importantly, the key point here is that, after a five-year investigation, DOJ determined a plea to two tax misdemeanors and a diverted charge was the appropriate

---

[5] DOJ's counterproposals amended the DA to eliminate the court's role as arbiter of breach (¶ 14), and proposed *completely deleting*, without explanation, the immunity provision (¶ 15), which was always a critical and well-negotiated component of the deal that DOJ agreed in the Delaware hearing and which covered all gun and tax offenses. *See* Lowell Decl., Ex. B. The Delaware court's concern with this immunity provision was that its wording may not afford Biden the wider protections he thought he had bargained for, yet DOJ incredibly "addressed" that concern by trying to strike it entirely.

[6] In this same vein, on August 11 at 12:00 PM, DOJ declined to give Biden's counsel an additional day to respond on DOJ's position to vacate the tax information. Roughly fifteen minutes later that day, AG Garland announced Weiss as a Special Counsel, with an Order apparently created *before* Mr. Wise had responded to Biden. *See* Lowell Decl., Ex. A.

resolution. To this day, it still offers no explanation for changing its mind. Biden seeking to enforce the DA is no excuse. This may annoy the prosecution, but refusing to engage in further plea negotiations for this reason is, itself, discriminatory prosecution.

## ARGUMENT

### I. BIDEN ALLEGES *PRIMA FACIE* SELECTIVE AND VINDICTIVE PROSECUTION

DOJ argues Biden fails to assert discriminatory prosecution because he does not identify similarly situated offenders who were not prosecuted (discriminatory effect) or evidence of discriminatory intent and animus. (DE37 at 8–10.) In support, DOJ (A) inadvertently confirms discriminatory effect, (B) invents legal requirements, (C) distorts the facts to deny it upped the ante at all, and (D) insists two "facts" are incompatible with Biden's theory, without addressing the apparent dearth of logic underlying this claim.

**A. Biden Has Shown Discriminatory Effect**

First, DOJ claims Biden "does not identify someone who is similarly situated but was not prosecuted." (DE37 at 9.) This is not a reasonable contention given the millions of taxpayers who fail to timely file and pay their taxes every year and are not charged. (DE27 at 18 n.56.) And although DOJ points to Biden's wealth and prominence, IRS's *formal policy* is to offer similarly situated high-income taxpayers notice and an avenue to resolve violations *civilly*. *See* IR-2024-56.[7] DOJ ignores these facts and instead attacks Biden's comparators, Robert Shaughnessy and Roger Stone—a transparent diversion. DOJ claims Biden is unlike his examples because:

Stone failed to pay his taxes but did timely file his returns, unlike the defendant.

Neither Shaughnessy nor Stone illegally purchased a firearm and lied on

---

[7] IR-2024-56, Feb. 29, 2024, ww.IRS.gov. As the IRS website explains, this IRS initiative involves sending letters to more than 125,000 taxpayers, primarily the most "high-income filers," who IRS has identified as having received reportable income in years 2017–2021, yet have not filed returns since 2017. Despite noting that this is "the most basic form of non-compliance, which includes *many who are engaged in tax evasion*," those receiving these letters are given the opportunity to "avoid additional follow-up notices, higher penalties as well as increasingly stronger enforcement measures." This treatment is substantially more lenient than criminal prosecution, and unlike Biden, these taxpayers have *not* already filed, squared up, and paid applicable penalties.

5

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

background check paperwork.  And neither of them wrote a memoir in which they made countless statements proving their crimes and drawing further attention to their criminal conduct.

(DE37 at 9.)  Except that Count 9 charges Biden with failure to pay taxes despite *timely* filing his return, and although DOJ may suggest the government cares more about filings than money, both Stone and Biden are accused of failing to pay taxes for multiple years and tax evasion in 2018.  Stone, however, also evaded taxes in 2019 and committed other crimes, including hiding his assets from criminal forfeiture and threatening witnesses, public officials, and a judge—crimes that, unlike the gun charges, *are* relevant to the tax offenses (that DOJ nevertheless permitted Stone to resolve civilly).[8]  And the suggestion that Biden's memoir justifies prosecution deserves nothing but ridicule;[9] the government has no legitimate interest in punishing Biden for discussing issues of public concern or deterring others from doing the same.  More importantly, Stone *actually wrote a memoir about his criminal actions.*[10]  In short, DOJ's half-hearted effort to distinguish Biden from his exemplars only highlights how DOJ generally resolves even more serious cases without criminal penalties.  This is discriminatory effect.

**B. DOJ Invents Legal Requirements To Challenge The *Prima Facie* Case**

    **i.  Biden need not show intent or animus originates with DOJ**

The animus of those pushing DOJ to prosecute Biden is not debatable, so DOJ argues "the defendant must show vindictiveness on the part of those who made the

---

[8] *Stone*, No. 21-cv-60825, DE 1 ¶¶ 40-53 (accusing Stone of seeking to shelter his wealth from criminal forfeiture); *Bill Barr Repeatedly Lied, Under Oath, About Judge Amy Berman Jackson*, https://www.emptywheel.net/; *United States v. Stone*, Case 1:19-cr-00018-ABJ DE 260 (Verdict Form).  It is particularly ironic that DOJ would try to use Biden's gun charge under a statute expressly reserved to protect public safety—to justify criminal tax charges when only Stone was charged with endangering anyone.

[9] DOJ acts like, rather than honestly describe his struggles, Biden published his memoir to brag about his crimes, which is particularly absurd considering the memoir mentions neither the gun he is accused of purchasing nor his failure to pay his taxes.

[10] *See* Marcy Wheeler, *David Weiss is Smoking Roger Stone's Witness-Tampering Gun*, Emptywheel (Mar. 11, 2024), https://www.emptywheel.net/2024/03/11/david-weiss-is-smoking-roger-stones-witness-tampering-gun/.  This included an introduction repeating the false claims at the core of his 2019 convictions for threats and intimidation, and Stone even litigated whether his memoir was covered by the gag order the judge issued in response to his threats.  *See Stone*, No. 1:19-cr-00018, DE61 (S.D. Fl.).

6

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

charging decision." (DE37 at 10 (quoting *United States v. Edmonds*, 103 F.3d 822, 826 (9th Cir. 1996)).) Biden short-circuited this argument in his MTD—whether animus originates with charging officials or another, due process is violated if it plays a role in a charging decision. (DE27 at 10; *accord* DE37 at 10 n.6 (defendant must show "the government undertook a particular course of action at least *in part* 'because of'" the alleged discriminatory intent) (citations omitted) (emphasis added).)[11]

### ii. Biden need not have exercised a specific right (though he did)

The opposition next invents a requirement that Biden show he is being charged because he exercised a legal right. (DE37 at 10–11.) Biden foresaw this argument as well and cited clear law holding that prosecution based on improper motive violates due process regardless of who it is directed at or why. (DE27 at 14–15.) Upping the ante right after the exercise of a right indicates vindictiveness and may warrant extra scrutiny, but cases explicitly recognize vindictiveness whenever charges are brought based on personal or institutional interests rather than legitimate enforcement objectives. *Id.*

Moreover, the opposition ignores the rights Biden *did* identify, including the right (1) not to be targeted because of his political or familial affiliations and (2) to challenge DOJ's bad faith efforts to withdraw from a binding contract. Both influenced DOJ's charging decisions either directly or through third parties, and DOJ does not even *address* the latter. (DE37 at 10–11.) Instead, DOJ argues Biden fails to establish "causation" between any rights he exercised and the charges. *Id.* at 11. But, as noted, Biden's exercise of each of the rights above played a clear causal role in the events leading to this case.

### iii. A presumption of vindictiveness arises from the plea negotiations

One of DOJ's core arguments is that "[t]he filing of additional charges after a failed plea negotiation cannot establish [] a presumption [of vindictiveness]." (*Id.* at 8.) This is not a "failed plea negotiation" case; an agreement *had* been reached. The law is that, even where there is no actual animus, merely charging or upping the ante after certain events

---

[11] And why would it not? It would be nonsensical to suggest, for example, that a racist prosecutor violates a defendant's rights by charging him because of his race, but not if he charges him because a racist politician threatened to have him removed and forced him to.

7

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

raises a presumption that must be rebutted. (DE27 at 15.) DOJ appeals to cases holding only that, because prosecutors can threaten to increase charges if a defendant refuses a plea, doing so after a defendant rejects a plea does not automatically raise the presumption. (DE37 at 16–18.) Here, Biden *accepted* the terms proposed. Having gotten exactly what it wanted, there was no valid reason for DOJ to raise felonies, and the fact it did so immediately after the deal blew up raises a presumption of vindictiveness.

### C. DOJ Distorts The Facts And Timeline

Having misstated the legal requirements, DOJ proceeds to mangle the facts and chronology of charging decisions. (DE37 at 12–13.) First, DOJ makes the perplexing claim that because it once considered felony charges, it never determined they were unwarranted, even though DOJ declined to charge for years and then agreed to a misdemeanor plea deal. (*Id.* at 12.) Next, DOJ argues the deferred prosecution agreements that *it proposed* were never finally approved by the right parties. DOJ still fails to grasp these claims. The agreement was not just "proposed," it was signed. DOJ's June agreements after *years* of investigating and discussing the charges reflect DOJ's true view that prosecution is unwarranted, just as its subsequent demands reflect it deviated from this view for improper purposes. This is what violates due process.

DOJ turns to Biden's "patently false" claim that it would accept only felonies to continue plea negotiations in Delaware, again relying on (1) correspondence indicating Biden rejected DOJ's initial counterproposals (while negotiations were ongoing) and (2) DOJ's outrage at Biden's suggestion that it is bound to a contract it signed. (*Id.* at 14.) The actual "patently false" suggestion here is that DOJ was going to do anything less than offer or charge only felonies (as they soon did) after taking the misdemeanor/diversion agreements, the immunity provisions, and the no jail recommendation off the table at the August 29 meeting. DOJ never again offered a misdemeanor deal. It then incredulously states that it was Biden who discontinued negotiations. *See supra* at 3–4.[12] Regardless,

---

[12] DOJ's claim that Biden "concedes in his motion" that "he shut down negotiations" is baffling considering the cited passage notes *DOJ's* admission to refusing further negotiations because Biden tried to enforce his rights. (DE37 at 15 (citing DE27 at 17).)

8

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS

DOJ still fails to appreciate that it is its lack of legitimate prosecutorial justification for the abrupt pivot from misdemeanors to felonies following political backlash that exposes this prosecution as discriminatory and requires its dismissal.[13]

### D. The Prosecution's "Two Facts" Are No Ace-In-The-Hole

DOJ stakes its case on "two undisputable facts that rebut Defendant's claims": (1) DOJ signed the PA and DA after initial public condemnation and (2) Trump is not president. (DE37 at 15–16.)[14] The agreements were reached weeks *before* the hearing, which DOJ was already committed to attending to advocate for the deal, and it was quick to dispute those signatures and try and use the court's questions as an excuse to renege. Moreover, Biden never claimed any one event was responsible for DOJ's actions— instead, he identified a whole series of events, both before and after the hearing (DE27 at 6–7), that culminated in Congress subpoenaing Weiss and him fearing for his family's safety, a fact the opposition conspicuously ignores as it mocks the idea that DOJ could ever be influenced by third parties. Finally, if the fact that DOJ reports to the President inoculated DOJ from influence by former presidents or the others, we would not be here.

### II. THE PROSECUTION FAILS TO REBUT BIDEN'S *PRIMA FACIE* CASE

DOJ concludes its discussion by dismissing its failure to justify its actions as unnecessary given its view that Biden has not met his burden. (DE37 at 18.) DOJ can pretend otherwise, but it has already exposed its losing hand. DOJ waxes about its

---

DOJ also argues that because Biden referred to DOJ reneging on the plea deal as a "focus[]" of his challenge, all the allegations about events before that are "irrelevant." (DE37 at 12, n.8.) DOJ cannot be that myopic; Biden has been clear that DOJ has been violating his rights since it began investigating based on Trump's animus in 2018.

[13] DOJ also argues the New York Times report of Weiss's express admission cannot "satisfy the defendant's burden of producing 'clear evidence' of discriminatory intent and animus by prosecutors." (DE37 at 11.) Whether this allegation carries the day or not, it is plainly evidence of discriminatory intent and effect. And DOJ's claim that "there is nothing discriminatory about the comment itself" because "'[m]ere selectivity in prosecution creates no constitutional problem'" is a bizarre defense of unconstitutional prosecution. (*Id.* (citations omitted).) Selectively choosing who to charge is not what demonstrates discriminatory prosecution, but rather charging someone when similar offenders would not be. The statement attributed to Weiss admits exactly that.

[14] DOJ repeats its strange (uncited) claim in Delaware that an "inference" is not "clear evidence" or "objective evidence." (DE37 at 12.) An inference of animus (specifically, that here it is more likely than not) is what the evidence must support.

evidence of the gun crimes, insists it "considered" felonies before agreeing not to charge them, and suggests it must punish public discussion of addiction. But none of these show this case rests on a valid basis or rebuts the mountain of evidence suggesting otherwise.

### III. THE COURT MUST RESTORE SEPARATION OF POWERS AND, IF IT DOES NOT DISMISS, ORDER DISCOVERY AND A HEARING

DOJ resorts to the long-debunked fallacy that prosecutorial discretion grants it immunity from judicial review to argue the Court cannot dismiss based on separation of powers, but Biden's cases hold otherwise. (DE37 at 19.) DOJ also chooses this part of its brief to argue its indictment of Alexander Smirnov suggests it is not a puppet of the GOP (perhaps DOJ's whole inspiration for bringing that indictment). (*Id.*) Biden never suggested DOJ is a puppet of the GOP, but that DOJ has caved to political pressure several times in ways that specifically violate Biden's rights. And DOJ indicting someone who falsely accused Biden of serious crimes does not prove it is treating him fairly. Instead, it calls into question why DOJ reopened long debunked allegations by Smirnov in July 2023 (as it was reneging on its agreements with Biden) when, having gone down that rabbit hole, DOJ was then forced to defend its actions by charging Smirnov with offenses it could have bought years earlier. Finally, DOJ argues the standard to obtain discovery and a hearing is not much lower, but it *is* lower, and DOJ cannot complain about "diverting prosecutors' resources" (*id.*), when it has committed untold sums to charge Biden for crimes no one else in his shoes would be charged with. If outright dismissal is unwarranted, discovery should be permitted, and a hearing should be held. Constitutional violations are obvious on the record, but there is also far more to be uncovered in this case.

### CONCLUSION

Based on the foregoing, the Indictment should be dismissed, or in the alternative, the Court should permit discovery and an evidentiary hearing on these issues.

| | | |
|---|---|---|
| 1 | Dated: March 18, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ Angela M. Machala* |
| | | Angela M. Machala (SBN: 224496) |
| 4 | | AMachala@winston.com |
| 5 | | WINSTON & STRAWN LLP |
| | | 333 South Grand Avenue |
| 6 | | Los Angeles, CA 90071 |
| 7 | | Tel.: (213) 615-1700 |
| | | Fax: (213) 615-1750 |
| 8 | | |
| 9 | | Abbe David Lowell (*pro hac vice*) |
| | | Christopher D. Man |
| 10 | | Kyllan J. Gilmore |
| 11 | | WINSTON & STRAWN LLP |
| | | 1901 L Street NW |
| 12 | | Washington, DC 20036 |
| 13 | | Tel.: (202) 282-5000 |
| | | Fax: (202) 282-5100 |
| 14 | | AbbeLowellPublicOutreach@winston.com |
| 15 | | *Attorneys for Robert Hunter Biden* |

11

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE
PROSECUTION AND BREACH OF SEPARATION OF POWERS – CASE NO. 2:23-CR-00599-MCS