# EXHIBIT FF

# TRANSCRIPTS

**Transcript Providers**

Shows By Category:

**Return to Transcripts main page**

## The Source with Kaitlan Collins

**A.G. Garland Appoints Special Counsel For Hunter Biden Probe; Judge Issues Protective Order Barring Trump From Publicly Disclosing Sensitive Info In 2020 Election Case; Hawaii State Records: Sirens Did Not Go Off When Lahaina Fires Started Tuesday. Aired 9-10p ET**

Aired August 11, 2023 - 21:00   ET

THIS IS A RUSH TRANSCRIPT. THIS COPY MAY NOT BE IN ITS FINAL FORM AND MAY BE UPDATED.

[21:00:00]

(COMMERCIAL BREAK)

JOHN BERMAN, CNN HOST: That does it for us.

The news continues with Kaitlan Collins, and THE SOURCE.

KAITLAN COLLINS, CNN HOST: Tonight, straight from the source, the man investigating Hunter Biden, is now a Special Counsel. And Hunter Biden's attorney will respond, in his first exclusive interview.

Plus, a judge lays down the law, for Donald Trump, reminding the former President that he is now a criminal defendant, whose right to free speech is not absolute.

And the death toll, still tragically climbing, in Maui, as rescuers are now entering some of the hardest-hit neighborhoods, for the first time, most of which have been burned to the ground.

I'm Kaitlan Collins. And this is THE SOURCE.

And good evening, tonight. We start with tonight's big story, which was news that we learned, today, regarding the Special Counsel, investigating Hunter Biden. It is the same person, who has been investigating him for several years now, David Weiss, a U.S. attorney, who was appointed, I should note, by former President Trump.

But today, we heard, from Attorney General, Merrick Garland, who announced that David Weiss has now asked to be made Special Counsel.

(BEGIN VIDEO CLIP)

MERRICK GARLAND, ATTORNEY GENERAL: On Tuesday, of this week, Mr. Weiss advised me that in his judgment, his investigation had reached the stage, at which he could -- should continue his work as a Special Counsel.

Upon considering his request, as well as the extraordinary circumstances, relating to this matter, I have concluded that it is in the public interest, to appoint him.

(END VIDEO CLIP) COLLINS: And joining me now, for a first exclusive interview, since that announcement, from the Attorney General, Merrick Garland, today, is one of Hunter Biden's attorneys, Abbe Lowell.

Abbe, thank you, for being here, tonight.

First, just when did you find out, about the Attorney General's announcement, today? Did you have any idea that this was coming?

ABBE LOWELL, HUNTER BIDEN'S ATTORNEY: I think all of us found out at about the time that you all started finding out, which was somewhere between mid-morning, and the time that the Attorney General spoke.

And while we didn't know that was going to happen, given what's been happening, in the case, it wasn't a surprise that there would be some announcement, to see where this case, and the investigation, would go, from here.

COLLINS: Well, I'm assuming what you're referencing is how Hunter Biden's legal team, and David Weiss were still privately trying to negotiate, a plea deal, this week. I mean, were you surprised that David Weiss

asked to be made Special Counsel, in the middle of that?

LOWELL: I think the point of surprise, not quite right.

Here's what people should focus on, Kaitlan, that what happened today, as a practical matter, is not much different than what was the case, yesterday, or three weeks from before.

The Attorney General and Mr. Weiss both has said for weeks, months, that he had all the authority he needed, to bring any charge that was merited, at any time that was appropriate, in any place that made sense. And so, the power that a Special Counsel has is the power that he has had. So, from a practical point of view, nothing really changed. His title may change.

But you also need to remember the most important fact. And you alluded to it already.

After five years of what has to be one of the most thorough investigations, that office has ever done, started by a Republican Attorney General, given to a Republican U.S. attorney, using an experienced career set of prosecutors thought that the only charges that were appropriate, would be two misdemeanor failure to file charges, and a diverted gun charge, for the 11 days that Hunter possessed a gun. And that was after five years of painstaking investigation.

So, whatever his title is, and whatever happens next, we're confident that that should be the same conclusion. And if it's not, then something other than the facts, and the law has come into play.

COLLINS: That is a question that is still unexplained, from the Justice Department, which is why now? Why is he being made a Special Counsel now? We know it's because he asked for it. But it is still certainly a question. But you know as well as I do that Special Counsels have a lot of leeway. I mean, are you worried that this is going to become a much broader investigation than it is, right now?

[21:05:00]

LOWELL: Well, again, two things. First, his title became Special Counsel, today. His powers were the same, yesterday. So what's different? It doesn't make any difference to us, given what we understood to be the case.

Once again, people need to understand that the Attorney General and he, that he, Mr. Weiss, have said for a long time that he had all the authority that he needed, to bring any charge that was appropriate, in any place.

So, what does a Special Counsel do that he couldn't do? The answer should be nothing different. As to why, now, or why he wanted this as of last Tuesday? That's a question you're going to have to ask him.

COLLINS: Yes.

LOWELL: But from our point of view, it should not change the outcome.

Who could say that they have been the subject of such a painstaking investigation, looking at every nook and cranny, in which a conclusion was two tax misdemeanors, and a diverted gun case, to turn into anything else? There's been no evidence or fact, that wasn't uncovered a week ago, that will be uncovered tomorrow.

COLLINS: So essentially, has he indicated that there are any other avenues that they're pursuing, here, beyond those tax and gun measures?

LOWELL: He hasn't said. In the proceedings that occurred, on July 26th, there were a lot of hypothetical questions that the judge asked, as to whether the agreement covered this or covered that.

But once again, when we're talking theoretically, we don't have to. You have five years, painstaking investigation, looking at every possible transaction that Mr. Biden was involved in, concluding that the only appropriate charges were two misdemeanors, and a diverted gun charge.

What could possibly change after five years? The answer is not the facts. It's not the evidence. It's not the law. So, if anything changes, people should be asking what else came into play.

COLLINS: So, are you saying that you're confident nothing will change? Or you're saying if things do change, and this does grow broader in scope? I mean, Special Counsels, they can staff up. They can have quite a budget. I mean, this could be bigger than it already is right now.

LOWELL: Well, you could have more agents that would come up with the same evidence that came up, after five years. You could have more prosecutors above you -- if you were in court, you saw that there were eight members of the U.S. Attorney's Office, in court, that day, may be seven. I don't know that you could find more bodies that would do anything different than the bodies have done, over the last five years.

So, am I confident that the conclusion should be the same? I am confident that if the prosecuting office follows

the facts and the law, as they were prepared to say, they've done, when they came to court, on July, the 26th? That there should be no different conclusion than what they already came.

And if, for whatever reason, we end up in a place, where there's something different? We know by the nature of the history of this investigation, that it did not come about, because of any new evidence, any new law, or any new fact. So therefore, I should be confident, and we should be confident that you can change a person's title, but you shouldn't be able to change their conclusion.

COLLINS: One thing that stood out to me, today, was Garland described, the investigation is ongoing, which was notable, because Chris Clark was another one of Hunter Biden's attorneys, said weeks ago that the entire thing was resolved. That was the word that he had used. I mean, what is the discrepancy there?

LOWELL: So, the proceedings on July 26th, obviously disclosed a disagreement. And the disagreement was that we said what we understood the agreement to mean, which is what Chris said.

So, let me ask you, and anybody, who's paying attention, the following question. What group of experienced attorneys would have their client plead guilty, on Monday, to a misdemeanor, believing that the prosecutors could bring a felony, on Wednesday?

So, as to what interpretation of the agreement made the most sense? I turn that question to you to answer it.

So, there's only a few comp -- possible answers to the dilemma. Either, there was a garbled communication, between the sides? Possible. It could be that somehow the prosecutors thought they were making a statement that they turned out either not to be accurate about, or not to be specific about. Or it could be, as you saw in court, that they seem to be changing their position, as the proceedings went along.

COLLINS: Well, it certainly seemed to be confusion, from the prosecutors, and from Hunter Biden's defense team, over what the agreement was, whether or not charges could be brought, in the future.

I mean, they filed papers today, the prosecutors did, basically indicating that the two sides are still at an impasse, over this.

I mean, do you now anticipate that this is going to go to trial?

LOWELL: All I can say about that is a little bit about what I said a moment ago, which is, if the prosecuting

office, that were made up of Republicans, and career prosecutors, after five years believed, the proper charges were what happened, on July 26th? Then that should be the conclusion tomorrow, next week, or in the weeks following. That's what I'm confident should happen.

[21:10:00]

And should something else happen? Then, two things. One, people need to ask, if this was the conclusion, after all this time, what changed? And it won't be the facts, and it won't be the law. And then the question is what will happen then? Then, we'll have to see.

But I'm not saying that it's not possible that what was appropriate a month ago isn't appropriate, now. We'll have to wait and see. But I can tell you that --

COLLINS: But couldn't --

LOWELL: Listen, one of the things you know about what's happened is that Hunter has done everything right. Cooperated in an investigation, provided all the information, was willing to make sure that if something was found that he did wrong, he would accept responsibility for that. And that's what he was going to do, and was willing to do.

The one thing he's not willing to do, and will never do, is to accept responsibility, or say he did something he did not. So, as the charges were filed before, that fits into his idea of accepting responsibility. Should anything change? We will wait.

But he, and we, will defend him. We will bring to the attention of the court anything that's appropriate. But I'm not, and we're not there yet. Where we are is making sure every --

COLLINS: I mean, I understand what you're saying.

LOWELL: Sorry.

COLLINS: But is anyone asking -- no one's asking Hunter Biden to accept responsibility, for something he didn't do. I mean, these are things that he has admitted that that he did.

LOWELL: Yes. But you just said, are we concerned or upset or worried that there'll be additional things, or that

there's more staff?

COLLINS: Right.

LOWELL: The answer to that is he has made very clear the mistake he made. And that's all he has made a mistake about.

And so, am I concerned? I am only concerned that a force other than facts or law would influence any additional decision. And if this prosecutor, with a new title, now continues, in doing what he's supposed to do, which is to follow the evidence, and follow the law, the conclusion should be the same.

COLLINS: When you say "Force," who are you referencing?

LOWELL: Well, what I'm referencing is, and this is not a surprise or a secret, right?

From the moment, this arrangement and agreement has been announced and filed, you have every MAGA right-wing, fanatical person, yelling, and screaming, and saying, "It's not right. And it's not fair. And it's not just."

You have the former President, trying to use Hunter Biden, as a way to excuse his own conduct.

And, at some point, that could pierce, the noise could actually be so noisy, that it'd get in the way of the facts and the law. I am confident that a responsible prosecutor would not let that happen. And we'll just have to wait and see.

COLLINS: Republicans say your client is treated differently because of what his name is. It sounds like you agree with that, but just from the reverse, in a negative way?

LOWELL: Well, here's the point about that. And you just said it.

Millions of Americans file their taxes late. Millions of Americans may or may not be in a possession of some weapon --

COLLINS: Not always to the tune of millions of dollars.

LOWELL: Well, I don't think that's right. There's a very well-known case, here in the District of Columbia, of a partner, in a law firm, who did not file his taxes for, I think, 11 years, and owed almost $8 million, and was able to resolve that, with a civil result, paying interest in penalties.

So, there have been commentators, who have pointed out that wasn't for the fact that Hunter had the last name of Biden, he might, in fact, have been treated differently.

But we understand that high-profile subjects of investigations get more scrutiny. But that doesn't change the fact that once the mistake was identified, Hunter wasn't running away from it.

On the other hand, those who think that he got some sort of sweetheart deal should look at all the other people that have committed the same offense that he was willing to take responsibility for, and see what happened to them.

COLLINS: And of course, it wasn't just the taxes. There was the gun charge, as well.

But I want to just revisit what you were saying there, when I was asking, if you're worried about how broad this could be. I mean, ask any president. And several of our last presidents, I think everyone, except Obama, has had a Special Counsel, or a Special Prosecutor. I mean, these investigations have a way of ballooning, and taking tax that they did not initially have.

Can you say with certainty that based on what you know, there's no possibility that any of Hunter Biden's foreign business dealings will, in any way, connect back to his father, the President?

LOWELL: Well, let's start with the latter. You've had dozens of members of Congress, and their staff, you've had dozen members of right-wing media, picking and trying to find the connection, between Hunter, and his business, and other family members. And they have come up with nothing, because there's nothing to come up with.

But as to your point, about Special Counsels? Remember, this is not quite the Special Counsel that you are familiar with. David Weiss was in charge of the investigation last year, the year before that, and the year before that. He is in charge of the investigation, today and tomorrow. He has a new title. His powers, in our view, are the same. The evidence hasn't changed. The law hasn't changed.

[21:15:00]

So, why after grand jury proceedings, search warrants, interviews, and proceedings that came up with two tax misdemeanors, and one diverted gun charge, for the 11 days that Hunter possessed a gun, should there be a conclusion, notwithstanding that he has a new name, that should not be the case?

COLLINS: But can you answer the question about whether or not you're -- from what you know, if you're confident that this won't, in any way, link back to the President?

LOWELL: What I know is what the evidence has revealed. I mean, that is what people should focus on.

It's not as if this started yesterday or a week. It started for five years, with so many people, in the United States, including with the power of subpoenas, as Mr. Weiss has had, to look at every transaction that Hunter was engaged in, in any place in the world in which he was engaged.

And what did they come up with? They came up with the decision that the only two charges to file were two misdemeanors, and a gun diverted charge.

Not any of the other things that the MAGA right-wing have been yelling, from money laundering, to foreign corruption, to foreign agent, none of that. It's not as if that wasn't looked into. And now, the conclusion was reached.

So, do I know that that will change in the future? It shouldn't change. This is not a new Special Counsel. This is an investigation that's gone on, for five years, leading to only those particular charges. So, how should it be different, tomorrow? It shouldn't be.

COLLINS: Hunter Biden was pretty frustrated, last month, from our reporters, in the courtroom, when that plea deal was falling apart, in real-time. I mean, you were in the room as well.

What was his reaction, when Merrick Garland came out, or Attorney General Garland came out, today, and announced that he was being elevated, to Special Counsel? LOWELL: His reaction was in the following order.

First, I don't understand the difference, because he had all the authority, yesterday, and he has the same authority, today.

Second, this is the man, who has been conducting an investigation, who is a Republican, appointed by a

Republican attorney general, and had no motive to turn away, from any wrongdoing, he found, after he and his professional staff have looked at everything Mr. Biden had done.

And the third is if it's the same guy, who's looked at the same evidence, now with a new title? The result shouldn't be any different.

COLLINS: The only thing that is different that we can determine, as of this moment, is that he does have -- he is empowered to write a report. And Merrick Garland has said he will make as much of that report public as possible.

Do you expect that you'd be surprised by anything in that report?

LOWELL: No, quite --

COLLINS: Or the public would?

LOWELL: Quite the opposite. The report will be a terrific vehicle, to point out that all the crazy allegations, made by people, with a partisan bent, are not the case, that the facts only supported the charge of failure, to file, that Mr. Biden himself was prepared to concede, admit and state facts that would be in that report that could sustain, that which he was willing to take responsibility for.

So, bring on the report, because the report, if it is done, based on the facts of five years of investigation, will show the world that all these other crazy charges have no merit. And that which should have occurred, on July 26th, was the only conclusion that represented, again, I'm sorry to keep saying it, the real facts and the real law.

COLLINS: All right. Well, we know you have a noon deadline, to respond to those prosecutors. We'll see what that response is.

Abbe Lowell, thank you, for your time, tonight, and for joining us.

LOWELL: I'm glad to be able to be here.

COLLINS: We have more ahead, with the central player, in this investigation.

[21:20:00]

(COMMERCIAL BREAK)

COLLINS: Moments ago, we heard exclusively, from Hunter Biden's attorney, about the elevation, of a Special Counsel, to his investigation. It's the same prosecutor, who was already investigating Hunter Biden, and has been for several years. That's David Weiss. He was appointed by former President Trump. But given the fact that he has now been made Special Counsel, something he requested of Attorney General Merrick Garland, on Tuesday, Hunter Biden's attorney says they believe politics could be at play.

(BEGIN VIDEO CLIP)

LOWELL: From the moment, this arrangement and agreement has been announced and filed, you have every MAGA right-wing, fanatical person, yelling, and screaming, and saying, "It's not right. And it's not fair. And it's not just."

You have the former President, trying to use Hunter Biden, as a way to excuse his own conduct.

And, at some point, that could pierce, the noise could actually be so noisy, that it'd get in the way of the facts and the law.

(END VIDEO CLIP)

COLLINS: Joining me now is Gary Shapley. He worked for the IRS, for 14 years, as a Supervisory Agent, the first IRS whistleblower, to come forward, we should note, and who testified, before a House committee, last month alleging, political bias, in that Hunter Biden investigation.

Gary, thank you, for being here, tonight.

Are you satisfied with today's decision, to elevate David Weiss, to a Special Counsel?

GARY SHAPLEY, IRS WHISTLEBLOWER IN HUNTER BIDEN CASE, SPECIAL AGENT FOR THE IRS CRIMINAL INVESTIGATION UNIT: So yes, thanks for having me, Kaitlan.

So, reason why we came forward, especially Ziegler and I, was because we saw things in this investigation that we had not seen, in our history, with the IRS criminal investigation, and it just demanded that we come

forward, or we wouldn't be meeting our oath of office.

So, the announcement today, really vindicated Special Agent Ziegler, and I, well coming forward. And because some of these issues that were basically admitted to, today, were the crux of why we came forward.

So, when the Attorney General Garland comes today -- comes forward today, and what he did is he admitted that the American people were misled, by what DOJ continually told them, about this investigation.

And so, it is what it is. You ask for a Special Counsel, and you get it. But I don't, you know, and the most important thing is that the American people have confidence, in this investigation. And that they know that each person is treated the same, under the law.

And I don't know how DOJ can conclude that United States Attorney, Weiss, has that confidence, to the American people, and that this Special Counsel appointment, is really going to resolve any issues. COLLINS: But Gary, he did not -- he didn't admit anything, when he came out. He restated that he does have the independence that David Weiss has claimed he has had, to charge this forever, to investigate, take this where this investigation goes. He said that David Weiss had simply asked him to be named a Special Counsel.

[21:25:00]

SHAPLEY: Well, Kaitlan, I think it is an admission by him, because, on October 7th, 2022, he said that he had to go to D.C. U.S. Attorney, President Biden-appointed U.S. attorney, meaning he wasn't the deciding official. He even said that on that day.

Then, we know that he had to go to California, to that President Biden U.S. attorney, and we learned that -- we were told that he also turned him down.

And then, we have Attorney General Garland, in front of Congress, on April 26th, 2022, and March 1st, 2023, telling Congress, and the American people, that they can have confidence, in this investigation, because it's being ran by a Trump appointee, and he has the charging authority.

So, if he has that charging authority, why does he need to be given this Special Counsel authority? And it's just confusing.

COLLINS: Well, you said he was told that he was -- you were told that he was turned down. Who told you

that?

SHAPLEY: United States Attorney, Weiss, October 7th, 2022. I documented that right then.

COLLINS: Told you that he had been turned down?

SHAPLEY: That's correct, by D.C. U.S. attorney. And that then he requested Special Counsel authority from Maine DOJ. They denied it, and told him to follow the process.

That is evidence that's corroborated. There were seven people there. Two people at that meeting have corroborated what happened so far. And there has been no contradictions that what he said, during that day, is not accurate.

COLLINS: Well, I think, there's confusion, here, because you said that you, after this meeting, that you had asked about it and that Weiss stated he is not the deciding person, on whether charges are filed.

But he has said the opposite of that. I mean, he told Jim Jordan, in a letter, "I have been granted ultimate authority over this matter, including responsibility for deciding" when, where, and whether, "to file charges." And he says he stands by what he wrote.

I mean, are you are you saying that he's lying here?

SHAPLEY: All I know, is what he told us, on October 7th that I documented right then that I sent to a supervisor. They confirm that that's what was said on October 7th.

And then, you have the June 7th letter, before our testimony, the House Ways and Means Committee, was released, where United States Attorney Weiss says he has full authority.

After our testimony is released, and he realizes what was released by House Ways Means Committee? In the June 30th letter, he says again, that he has that full authority.

But in the next paragraph, he immediately says, "But my authority is geographically limited to Delaware." And then he says, well, he has to partner, is departmental practice, to partner with a U.S. attorney of venues elsewhere.

And that's what we're really seeing here. We're seeing a correction, by DOJ, because the statements that they've said all along are not consistent, with the decision that was just made, by Attorney General Garland, or he wouldn't have had to make it.

COLLINS: Well, it's just -- I mean, it's Biden-appointed Attorney General agreeing that he had the ability to charge wherever, with the Trump-appointed U.S. attorney agreeing that.

One thing this does compel is a written report, and that will be made public, at least most of it, according to Attorney General Garland. Will that be sufficient for you?

SHAPLEY: Look, the American people have to have confidence that this investigation is fair.

And you have United States Attorney, Weiss, who has investigated this, for five years. And the plea deal that he approved? As soon as it went to an objective party, the judge, the court, immediately was found to be lacking, and it fell apart, for lack of better words, and reading what's in the public record.

So like, I don't know how now we can -- we have any confidence that Weiss is now going to go, and look at this independently. He is not independent. We have provided evidence to --

COLLINS: Why is he not independent?

SHAPLEY: -- to House Ways and Means Committee, and House Oversight Committee about --

COLLINS: By definition, he is independent.

SHAPLEY: Well, he's still the U.S. attorney in Delaware. And we've provided multiple pieces of evidence to show that he's provided preferential treatment that they stymied investigative steps. That's all under United States Attorney Weiss.

So, is he now going to not stymie the investigative steps? I don't think that that is likely to occur.

COLLINS: It's just remarkable to hear because, I mean, it's, he's a U.S. -- he's a Trump-appointed U.S. attorney. And you're saying he's giving preferential treatment to Hunter Biden.

We have a lot more questions for you. Unfortunately, Gary Shapley, we are out of time. But thank you, for

joining us, tonight, and hope you come back.

SHAPLEY: Thank you, Kaitlan.

COLLINS: Ahead, as Trump is pumping up the volume, on his legal troubles, the judge that is overseeing his election interference case is warning that if he inflames it more, he might go to trial sooner.

[21:30:00]

(COMMERCIAL BREAK)

COLLINS: The federal judge, overseeing Trump's trial, on election interference charges, issued a limited protective order, today, that essentially bars the ex-President, from publicly disclosing any sensitive evidence, when prosecutors hand that over to his attorneys.

This came, in the first hearing, where it was Trump's attorneys, and Judge Chutkan, in the room.

At one point, she warned his attorneys, Trump was out there, that like every American, he does have a First Amendment right to free speech. But that right is not absolute. She said, in a criminal case, such as this one, the defendant's free speech is subject to the rules.

She also said that the more inflammatory statements that someone makes, could be potentially Trump, who has been making many comments, about this case, could potentially taint the jury pool. And that means the case would go to trial faster.

Joining me now, David Kelley, former U.S. Attorney, for the Southern District of New York; and John Dean, of course, the former White House counsel to President Nixon.

Thank you both, for being here.

I mean, David, let me get your reaction, first, because listening to the judge, today, have this warning, about essentially, "If you keep speaking out in these, even ambiguous statements, and potentially intimidating witnesses, tainting the jury pool, this trial could happen a lot faster than it is right now."

[21:35:00]

DAVID KELLEY, FORMER U.S. ATTORNEY, SOUTHERN DISTRICT OF NEW YORK: Yes, I think the most important thing, about today, is that the judge painted, in very bright red lines, what the boundaries are, and laid down the rules, as to how they need to play within those boundaries. And the failure to do so is going to result in consequences.

Some of the consequences may be a speedier trial. Some of the consequences may be even worse than that. I mean look what happened to, in the FTX case, today, where SBF, the defendant, in that case, got put in jail.

So, there's some serious consequences here. And I think the judge made it very clear that there are rules here. And she's going to proceed, in this case, as she would in any criminal case, notwithstanding the fact that this particular defendant has a unique day job, insofar is he's running for president.

COLLINS: Yes. John, I mean, that was a huge part of it, as well, was talking about his day job, because you kept hearing Trump's attorneys argue about how he is a 2024 candidate. He has these things that he's commenting, talking about, what if he says something, about Pence that's included in the evidence.

And she made clear that she's not viewing him, as a former President, or a 2024 candidate, but as a criminal defendant.

JOHN DEAN, FORMER NIXON WHITE HOUSE COUNSEL, CNN CONTRIBUTOR, AUTHOR, LECTURER, AND COLUMNIST: Very clear, the reporting on that was pretty uniform that she made, she's not going to have the campaign, run in her courtroom, or during this trial, nor does she want this trial, to become a part of that.

So, she said she's there, to give justice, and not to run a campaign. So, I think that is going to make it tougher, for Trump, to play that game.

COLLINS: David, what does it say to you about how quickly this could move? You think Trump is going to be, on the campaign trail, and in the courthouse, at trial, potentially?

KELLEY: I think it's very possible. Look, from the, you know, starting last week, I've come out and said that I didn't think -- in fact, I think it was with you. And I didn't think it was going to start before the election. But I think it may well.

Look, the discovery in this case is not terribly complicated. The defense lawyers have already indicated that they know what motions they're going to file. That can get done on a pretty fast schedule.

So, I don't think it's going to happen, in January. I'm skeptical about whether it's going to happen, before November, but it's certainly possible.

COLLINS: John, just given your history, and what you've seen, from up close, at the White House, just looking back, in a bigger picture, at the moment that we're in, where this moment happened, today, a typical simple procedure became this big skirmish, between the two sides? Next week, we could see action, in Georgia, potential indictment there, we're expecting as many as a dozen? I mean, what do you make of it all?

DEAN: Well, I make that we've got very competent counsel, on both sides, who are going to try to cover their turf, as well as they can. And I've seen many court battles that play out. And we've got here, a judge, who knows how to control her courtroom. And I think she will. So, I think the fact that she's not making this, the White House, on trial, or a president on trial, but Donald Trump, defendant Trump, Mr. Trump, if you will, in her words? I think that makes it realistic, and doesn't make it the theater that Trump would like to have.

COLLINS: We'll see what it looks like, going forward. I mean, certainly setting the stage today.

John Dean, David Kelley, thank you both.

DEAN: Thank you.

COLLINS: Up next, with the latest, on the devastating wildfires, in Maui, Senator Brian Schatz is going to join us. New reporting is emerging about the emergency sirens that weren't activated as those blaze grew.

[21:40:00]

(COMMERCIAL BREAK)

COLLINS: Tonight, at least 67 people have now died, in the catastrophic wildfires, in Maui.

We're also getting dramatic new video in, which appears to show people, trying to escape the flames, in the waters, along the Lahaina shoreline. You can see this dramatic video here. Obviously, the winds were incredibly strong. A U.S. Coast Guard spokesperson said it looks like it was taken, from the area, where they

did eventually rescue 17 people.

For those asking, of course, how you can help, we have a lot of information on that on CNN.com.

But also tonight, I spoke with Senator from Hawaii, Brian Schatz, on what he has seen firsthand, on the ground.

(BEGIN VIDEOTAPE)

COLLINS: And joining me now is Senator Brian Schatz.

Senator, thank you for being here.

I mean, you've been on the island. Can you just tell us what you saw, and how dire the situation is, from your view?

SEN. BRIAN SCHATZ (D-HI): Thanks for having me, Kaitlan.

And thanks to everybody, across the country, and across the world, for caring so much about Maui and Hawaii. And the outpouring of support and money is really essential, at this point.

It is not an exaggeration to characterize it as similar to a warzone. It is like a multiple bombing runs, happened in Lahaina Town. It is flattened. There is almost nothing left. There are very few structures standing. There are melted engine blocks. There are cars ripped apart. It is a mess. It is a total rebuild.

And there are people, on West Maui that came out unscathed, their homes are intact. And we're trying to restore electricity, and telecommunications and vehicular access, for all of them. But it is every bit as bad as the pictures.

COLLINS: Do you think you've gotten to see the full extent of it? Because we are seeing the pictures, we're seeing the drone footage. But now that teams are going in there, do you think we'll have a fuller view, of what's actually been hit, in this?

SCHATZ: Well, I think we know the geographic area that was hit. Because we have satellite images, and lots of drones have done flyovers. And I was on Front Street, Lahaina Town yesterday. We walked the whole length of

it. So, on that level, we do know.

[21:45:00]

But it is also fair to say that we don't know the total mortality count, because we're waiting on the FEMA experts, and technicians, who are arriving, today, to start searching individual structures that have been destroyed. And we do unfortunately anticipate that the death count will rise, on a daily basis, as those properties are cleared.

COLLINS: One thing, looking back on, in the aftermath that the Hawaii Emergency Management said that Maui's warning sirens didn't go off, when the fire started. I mean, there have been a lot of questions raised about that. Who do you hold responsible for that?

SCHATZ: Well, I think there's going to be time for an after-action analysis and, if necessary, any accountability measures.

But we have to understand, Hawaii is very well prepared for hurricanes. We've had Iniki and Iwa and of course, volcanic eruptions, on Hawaii Island. We've had floods.

We've had a few wildfires, but nothing that attacked a town like this. So, it just wasn't in sort of the realm of possibility that wildfires, in West Maui, would essentially jump the highway, and attack the town of Lahaina, within a matter of less than an hour.

And if you see these videos, on social media, it's really true. People had to make very quick choices, to evacuate. Some of them, just directly into Lahaina. Harbor, with their families. Five people hanging onto a surfboard, waiting for the Coast Guard.

So, there may be improvements that the Hawaii Emergency Management Agency or anyone else needs to look at making, on a going-forward basis. But this was really unprecedented. I do think this is likely to be the new normal, with extensive droughts, that we need to be prepared for wildfires, not just in Hawaii, but across the country.

But, right now, we're still recovering. We are -- that there is still -- we're not -- we haven't gotten the fire totally under control. We do not know the death count. And Lahaina Town is also a toxic mess, right now, until we're able to clear the debris. COLLINS: Yes, I mean, we're waiting to learn more about that. Senator,

of course, we're thinking of you, and all of your neighbors, with everything that's happening. And we will continue to do so, and to check in.

Thank you, for your time, tonight.

SCHATZ: Thank you.

(END VIDEOTAPE)

COLLINS: And if you're watching, and you want to be able to help, you can go to CNN.com/impact, or you can text HAWAII to 707070, to donate.

We'll be right back, in a moment.

[21:50:00]

(COMMERCIAL BREAK)

COLLINS: Many, not all 2024 Republican hopefuls are descending on Iowa, this weekend, for the State Fair, including former President Trump, who will be there, tomorrow.

Joining me here, tonight, not in Iowa, former Senior Adviser to Mitch McConnell, Scott Jennings; and former New York congressman, Max Rose.

Thank you both, for being here.

Sorry, there's not any fried food for you.

But I am interested in how everyone goes. Trump is actually going tomorrow. He hasn't spent a ton of time there, I think six times, or so, since he announced he was running. He'll be in the State, tomorrow. I mean, is it still the same old Iowa, as it was, in the sense of Trump hasn't been there as much as the other candidates, but he's well ahead of them in the polling.

SCOTT JENNINGS, CNN POLITICAL COMMENTATOR, FORMER SPECIAL ASSISTANT TO

PRESIDENT GEORGE W. BUSH, FORMER SENIOR ADVISER TO SEN. MITCH MCCONNELL: Yes. And he's not the traditional back-slapping sort of rural type candidate. But they do like him. They love him, in fact. And he's done well, in Iowa.

And the Trump people, if you talk to them, they really believe they have a very high floor, in Iowa, and that they're going to be very difficult to beat, because of it. They remind you that in 2020, there was an Iowa primary, and they got all these votes. And so, they really are quite confident about their position, particularly given the fragmentation below them.

So, I don't think he has to do quite as much as everybody else. But he's in quite a strong position there, right now.

COLLINS: Can we just talk about what the scene, though, is going to look like, tomorrow? I mean, Trump is going. He's taking all the Florida congresspeople, who have endorsed him. Ron DeSantis is going. He's bringing the Iowa legislators, who have endorsed him, kind of this like, show-off, essentially, I don't even know --

MAX ROSE, FORMER SPECIAL ASSISTANT TO SECRETARY OF DEFENSE: Sure.

COLLINS: -- you'd want to call that.

ROSE: It was actually quite beautiful, when you think about it.

COLLINS: Is it?

ROSE: But yes -- no. Look, you have DeSantis, coming from this gigantic state. You have a former Vice President, a former President. And nonetheless, in the beauty of our presidential primary politics, they all have to descend on this little State Fair, and engage in quintessential local retail politics.

What you really see there is that they can't hide any longer. Part of this Republican field is really the parade of the socially-awkward. It's why DeSantis is, not --

COLLINS: Pence is with a butter cow there.

ROSE: Pence is another great example of that.

And you just can't hide, in this type of retail politics. It's person- to-person, door-to-door, in some instances, pork chop on a stick, in other instances. And it's actually quite a beautiful thing.

COLLINS: One person, who is obviously deeply influential, is the Governor, Kim Reynolds. And she has been hosting these fair-side chats, a play on fireside chats, with all the candidates. Trump is one, who is not going. I believe Christie is the other.

She was asked essentially, about the idea that Trump has been lashing out at her. He's upset that she has been hosting, that DeSantis is going around with them, which she does with all the candidates, I should note.

But he said this -- she said this, about whether or not that affects how she handles this.

(BEGIN VIDEO CLIP)

GOV. KIM REYNOLDS (R-IA): It's so early. People are paying so much attention to the national polls. And I can tell you, it's just not reflective of kind of what I'm hearing, from Iowans, as I'm traveling around.

Our job is not to pick the winner necessarily, but to start to narrow the field. And that's really what the caucus has done.

Well, let's see. I mean, I don't think you should ever say -- never say never, never, you know? I just will wait and see what happens. But I've made it clear, you know, I'm, you know, probably looking at neutral, especially at the beginning of this. It's naturally going to start to narrow. And then, we'll take a look at, you know, where it's at. So, it's early for that.

(END VIDEO CLIP)

COLLINS: Never say never, on endorsing a candidate. You think she could potentially?

JENNINGS: Well, if she did, it would be big news, although probably not definitive, given the way this race is going.

I mean, some of these candidates have picked up some, below her, some other pretty influential state official. DeSantis, I saw him out the other day with the President of the Senate, Amy Sinclair, who's pretty popular

person, as well.

[21:55:00]

So, there are some people dipping in. But if she got into it, it would be a major story. It's just at this point I think she did say correctly. Iowa, it's early. And you do get some late breaking there, from time to time. So, my guess is she's trying to --

COLLINS: But I think the question --

JENNINGS: -- to be a fair, neutral arbiter, you know?

COLLINS: Yes. And Senator Joni Ernst tries to do the same thing. But I mean, has she -- did Trump make a mistake, by attacking her, publicly, in the way that he did? I mean, he took credit --

JENNINGS: Right.

COLLINS: -- for her reelection success, I mean, which she has said was up to Iowans, not to Donald Trump.

ROSE: Well, the rules of normal politics don't seem to apply to Donald Trump here.

But what we do see is that the elephant in the room, with this primary, is that they don't want to attack Donald Trump, because of the fact that they're afraid of alienating his base. Of course, what voter are they ever going to win, by not attacking him, right?

On the same hand, though, if Donald Trump were not to win this primary, could we ever imagine him, not endorsing the eventual nominee?

This is utterly insane, what's going on, in the end. And we're going to see this constant play, here, of Donald Trump eventually winning the nomination, unless someone steps in, and does something big. And her nomination, or her endorsement, excuse me, is not going to be it.

COLLINS: We'll see.

Max Rose, Scott Jennings, thank you both. And thank you so much, for joining us, tonight, for such a breaking

news hour.

Laura Coates is up next.

(COMMERCIAL BREAK)