# Exhibit 3

No. 24-2333

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

ROBERT HUNTER BIDEN,

*Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:23-cr-00599-MCS

_____

## APPELLANT'S OPPOSITION TO APPELLEE'S MOTION TO DISMISS

_____

ANGELA M. MACHALA
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700
AMachala@winston.com

ABBE DAVID LOWELL
*Counsel of Record*
CHRISTOPHER D. MAN
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
(202) 282-5000
ADLowell@winston.com
CMan@winston.com

*Counsel for Defendant-Appellant Robert Hunter Biden*

April 29, 2024

**INTRODUCTION**

Biden's interlocutory appeal is narrower than the Special Counsel realizes. Biden appealed a single Order and the Special Counsel mistakenly assumes (without asking) that he is appealing all motions subject to that Order. He is not. Biden appeals denials of his motions addressing the Special Counsel's invalid appointment and funding violation of the Appropriations Clause, the Diversion Agreement immunizing Biden from prosecution, and a separation of powers violation due to congressional pressure to indict. *See* Cal.D.E.25–27. Jurisdiction exists under 28 U.S.C. §§1291, 1292(a), 1651, and pendent appellate jurisdiction.

## I. APPELLATE JURISDICTION EXISTS OVER BIDEN'S CHALLENGE TO THE SPECIAL COUNSEL'S APPOINTMENT AND APPROPRIATIONS CLAUSE CHALLENGE

Biden moved to dismiss and enjoin Special Counsel David Weiss from funding his investigation and prosecutions because he was unlawfully appointed as Special Counsel and his funding lacks an appropriation. Because the whole purpose of appointing a Special Counsel is to cure an internal conflict of interest within the U.S. government, DOJ regulations specify: "The Special Counsel *shall* be selected from *outside* the United States Government." 28 C.F.R. §600.3 (emphasis added). This regulation renders Weiss ineligible to be Special Counsel because he is U.S. Attorney for the District of Delaware. The Supreme Court found an analogous

1

regulation for appointing the Watergate Special Prosecutor binding in *United States v. Nixon*, 418 U.S. 683, 695 (1974), and *Nixon* is controlling here.[1]

Relatedly, the Special Counsel improperly funded his investigation and prosecution through an appropriation for "independent counsel,"[2] which is not applicable because Weiss is in no sense independent of the very DOJ he serves. This violates separation of powers principles and the Appropriations Clause. U.S. Const. art. I, §9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequences of Appropriations made by Law."); *see also* 31 U.S.C. §1301(d) ("A law may be construed to make an appropriation out of the Treasury . . . only if the law specifically states that an appropriation is made."). Biden sought dismissal and injunctive relief. Cal.D.E.26 at 2 (citing "*United States v. Pisarski*, 965 F.3d 738, 743 (9th Cir. 2020) (affirming injunction against further prosecution because the prosecution violated the Appropriations Clause)").

---

[1] If Judge Scarsi were correct and the Attorney General can disregard such regulations, *Nixon* was wrongly decided and America's post-Watergate history would be much different. The Special Counsel's invocation of *United States v. Morales*, 682 F. App'x 690 (10th Cir. 2017) is puzzling. It was not discussed below and is irrelevant. The Special Counsel mistakes the Petite policy at issue in *Morales* as an "internal departmental regulation." D.E.6.1 at 11. It is merely a loosely-worded guidance memorandum.

[2] The Special Counsel relies on this appropriation: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." Note to 28 U.S.C. §591 (emphasis added).

**A.      Denial Of Injunctive Relief For The Appropriations Clause Violation Is Appealable Under 28 U.S.C. §1292(a)(1)**

Denial of injunctive relief for Appropriations Clause violations is appealable under Section 1292(a)(1): "the courts of appeals shall have jurisdiction of appeals from . . . Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions."  Below, the *Special Counsel* explained, in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), "the Ninth Circuit held that it had jurisdiction over the interlocutory appeal" where an Appropriation Clause dismissal or injunctive relief was sought.  Cal.D.E.36 at 16. In Delaware, the *Special Counsel* argued Appropriations Clause challenges are "'best seen as requests for injunctions'" and the "overwhelming weight of authority" favors an injunctive remedy.  *United States v. Biden*, No. 23-cr-00061-MN (D. Del. 2024), Del.D.E.72 at 24 (quoting *United States v. Bilodeau*, 24 F.4th 705, 711 n.6 (1st Cir. 2022)); Del.D.E.80 at 17 (Biden agreeing injunctions are a possible remedy).  The district court understood the motion sought injunctive relief. Cal.D.E.67 at 26 ("A defendant may seek to enjoin a prosecution funded in violation of the Appropriations Clause.").  This Court often finds jurisdiction to hear Appropriations Clause interlocutory appeals in criminal cases.  *See, e.g.*, *Pisarski*, 965 F.3d at 743; *United States v. Campbell*, 820 F. App'x 596 (9th Cir. 2020); *United States v. Evans*, 929 F.3d 1073, 1076 (9th Cir. 2019); *United States v. Gilmore*, 886

F.3d 1288, 1290 (9th Cir. 2018); *United States v. Zucker*, 743 F. App'x 835, 836–37 (9th Cir. 2018); *McIntosh*, 833 F.3d at 1172.

**B.      Section 1292(a)(1) Confers Jurisdiction To Consider Whether The Special Counsel Was Lawfully Appointed**

Section 1292(a)(1) jurisdiction over the Appropriations Clause injunction includes the antecedent question concerning the validity of Weiss's Special Counsel appointment, a title Weiss claims makes him "independent" of DOJ.  "28 U.S.C. § 1292(a)(1) confers jurisdiction not only over orders concerning injunctions, but also over matters inextricably bound up with the injunctive order from which appeal is taken."  *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 905 (9th Cir. 1995).  "The common thread running throughout" this Court's Section 1292(a)(1) jurisprudence is to exercise "pendent jurisdiction over those questions that implicate 'the very power the district court used to issue the rulings then under consideration.'"  *Hendricks v. Bank of Am.*, 408 F.3d 1127, 1134–35 (9th Cir. 2005) (quoting *Meredith v. Oregon*, 321 F.3d 807, 816 (9th Cir. 2003) (exercising jurisdiction over venue and personal jurisdiction claims)).

**C.      Appellate Jurisdiction Exists Over Appropriations Clause And Unlawful Appointment Issues Under 28 U.S.C. §1291**

Supreme Court "precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority."  *Seila L. LLC v. CFPB*, 591 U.S. 197, 212 (2020).  Although the harm of being subject to

unauthorized government actions "may sound a bit abstract[,] . . . this Court has made clear that it is 'a here-and-now injury.'" *Axon Enterp. v. FTC*, 598 U.S. 175, 191 (2023) (quoting *Seila*, 591 U.S. at 212). A claim exists when "an executive act . . . allegedly exceeds the official's authority." *Collins v. Yellen*, 141 S. Ct. 1761, 1791 (2021) (quoting *Seila*, 591 U.S. at 211); *see also Seila*, 591 U.S. at 211 (no need to prove "the Government's course of conduct would have been different in a 'counterfactual world' in which the Government had acted with constitutional authority").

These authority and funding challenges are appealable collateral orders. *See, e.g.*, *Free Enterp. Fund. v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) ("But petitioners object to the Board's existence, [which]. is 'collateral' to any Commission orders or rules from which review might be sought."). Biden objects "to an illegitimate proceeding" initiated by the Special Counsel. *Axon*, 598 U.S. at 189, 191. The Supreme Court, analogizing to "established immunity doctrines," explained, "[t]here, we have identified certain rights 'not to stand trial' or face other legal processes." *Id.* at 192. This injury "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191. "A proceeding that has already happened cannot be undone. Judicial review . . . would come too late to be meaningful." *Id.*

Accordingly, Biden satisfies the collateral order doctrine. Judge Scarsi's order is (1) conclusive, (2) raises important questions concerning the Special Counsel's authority collateral from the merits, and (3) causes Biden injury in being improperly forced to stand trial that is effectively unreviewable on a direct appeal (particularly if he is acquitted and has no right to appeal at all). *United States v. Williams*, 68 F.4th 564, 569 (9th Cir. 2023).

## II. APPELLATE JURISDICTION EXISTS OVER BIDEN'S MOTION TO DISMISS THE INDICTMENT UNDER THE DIVERSION AGREEMENT

Biden moved to dismiss under a Diversion Agreement signed by all parties in which Biden would not be prosecuted if he maintained his sobriety and complied with other conditions imposed by that Agreement.

### A. Appellate Jurisdiction Exists Over The Diversion Agreement Issues Under 28 U.S.C. §1291

The Diversion Agreement must be reviewed now or Biden will lose the very purpose of that Agreement, diversion of criminal prosecution. The denial of his motion to dismiss is (1) conclusive, (2) involves a collateral issue, and (3) is effectively unreviewable upon appeal of a final judgment; thus, a collateral order.

The Supreme Court allows an immediate appeal concerning the Fifth Amendment's Double Jeopardy Clause because it is a right not to be tried, *Abney v. United States*, 431 U.S. 651, 659–63 (1977); the right not to be prosecuted under the Diversion Agreement is no different. Such agreements are enforceable under the

6

Fifth Amendment's Due Process Clause. *See, e.g.*, *Santobello v. New York*, 404 U.S. 257, 262 (1971). The Special Counsel is wrong to minimize Diversion Agreement immunity as merely contractual, not a constitutional guarantee. D.E.6.1 at 8. The Due Process Clause is in the same Fifth Amendment as the Double Jeopardy Clause. Both recognize the fairness in not being improperly tried and should be similarly applied. Absent review now, the "diversion" in the Diversion Agreement is forever lost.

The Special Counsel wrongly claims "all circuit courts" reject plea bargain breach appeals as collateral orders. D.E.6.1 at 8. The Ninth Circuit permits such appeals. *See United States v. Morales*, 465 F. App'x 734, 736 (9th Cir. 2012) ("We also have jurisdiction over interlocutory appeals of orders denying a motion to dismiss an indictment on the ground that it was filed in breach of a plea agreement."); *United States v. Sandoval-Lopez*, 122 F.3d 797, 799–800 (9th Cir. 1997) ("As in the case of its ruling that double jeopardy does not apply, the district court's conclusion that the government is not barred by the plea agreements from subjecting the defendants to trial on the drug counts because they breached or repudiated those agreements 'constitute[s] a complete, formal, and, in the trial court, final rejection' of their claim, the elements of the claim 'are completely independent of [the defendants'] guilt or innocence,' and the defendants' rights would be 'significantly

undermined if appellate review . . . were postponed until after conviction and sentence.'") (quoting *Abney*, 431 U.S. at 659–61).

The Special Counsel invokes *United States v. Solano*, 605 F.2d 1141 (9th Cir. 1979), an earlier case than *Morales* and *Sandoval-Lopez*, but *Solano* does not undercut these later cases.   D.E.6.1 at 5–6.   Jurisdiction over an *Abney* double jeopardy claim existed in *Solano*, but it rejected the defendants' request for the "court to exercise its inherent supervisory power over district court proceedings" to review claims under plea agreements, explaining defendants "do not directly invoke the Double Jeopardy Clause," so "they are not properly the subject of an *Abney* appeal and we decline to consider them at this stage of the proceedings." *Id.* at 1142. *Solano* means only the Ninth Circuit will not use its inherent supervisory authority to review such during an *Abney* appeal.   The later *Morales* and *Sandoval-Lopez* cases show the Ninth Circuit will review such claims as collateral orders.

The Special Counsel's cites *United States v. Dederich*, 825 F.2d 1317, 1321 (9th Cir. 1987), *overruled*, *United States v. Taylor*, 881 F.2d 840, 842 (9th Cir. 1989), a case "based on a state grant of transactional immunity." D.E.6.1 at 7. Biden's case has nothing to do with immunity conferred by a separate sovereign. Moreover, Judge Reinhardt, on the *Dederich* panel, authored *Sandoval-Lopez*, and makes no mention of *Dederich* in *Sandoval-Lopez*, as it is irrelevant to the collateral order issue.

In a footnote, the Special Counsel tries to explain away *Morales* and *Sandoval-Lopez* as cases involving a separate double jeopardy claim, which Biden does not raise. But that is no answer because there must be jurisdiction over each claim. Neither *Morales* nor *Sandoval-Lopez* hold that jurisdiction over a plea bargain claim depends on a separate double jeopardy claim. If true, *Solano* would have been decided the other way because a double jeopardy claim existed there too.

After finding jurisdiction over the double jeopardy claim, citing *Abney*, *Morales* then says, "[w]e *also* have jurisdiction over interlocutory appeals of orders denying a motion to dismiss an indictment on the ground that it was filed in breach of a plea agreement," citing *Sandoval-Lopez*. *Morales*, 465 F. App'x at 736 (emphasis added). As to the double jeopardy *and* plea bargain immunity claim in *Sandoval-Lopez*, the Court explained "*both* claims involve the same concerns and are subject, for the same reasons, to the collateral-order rule of *Cohen*." 122 F.3d at 799 (emphasis added).[3]

---

[3] The Special Counsel invokes the unpublished district court opinion in *United States v. Foakes*, 2023 WL 2394533, at *2 (N.D. Cal. Mar. 6, 2023). D.E.6.1 at 6. In *dicta*, *Foakes* misread *Solano* as a bar to interlocutory review of a breached plea agreement, but then recognized *Sandoval-Lopez* was inconsistent with that reading and explained, "[t]o the extent *Sandoval-Lopez* can be read as authorizing interlocutory appeal of a standalone claim of breach of plea agreement in some circumstances, this case is distinguishable," because defendant would stand trial on other counts involving the same evidence and was seeking "far more than the benefit of his plea bargain." 2023 WL 2394533, at *2–3. None of these factors are present in Biden's case.

Although some other Circuits reach a different conclusion as to plea bargains, none of the cases the Special Counsel cites involve diversion agreements. The "diversion" in such agreements is a diversion from prosecution, in exchange a defendant incurs certain obligations (e.g., maintaining sobriety). While some courts construe immunity in a plea agreement as immunity from conviction, Biden's Diversion Agreement specifically states, under the heading "Agreement Not to Prosecute," that "[t]he United States agrees not to criminally *prosecute* Biden. . . ." (¶15 (emphasis added).) That is the "promise [that] must be fulfilled," *Santobello*, 404 U.S. at 262, and the right not to be prosecuted is forever lost if there is a trial, whatever its result. The diversion agreement here is akin to cases where the prosecution of minors is diverted to the juvenile justice system, the denial of which is an appealable collateral order. *See, e.g.*, *United States v. Mendez*, 28 F.4th 1320, 1323–24 (9th Cir. 2022); *In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) (Garland, J., on panel); *United States v. Doe*, 49 F.3d 859, 865 (2d Cir. 1995); *Gov't of V.I. in Int. of A.M.*, 34 F.3d 153, 156 (3d Cir. 1994) (noting the D.C., Fourth, Eighth and Eleventh Circuits agree).

## B. Mandamus Jurisdiction Exists Over The Diversion Agreement Issues

If the Court finds appellate jurisdiction lacking, the Court should grant mandamus. 28 U.S.C. §1651; *Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc) (after finding no appealable order: "We can, however, as we have done in

past similar situations, treat the notice of appeal as a petition for a writ of mandamus and consider the issues under the factors set forth in *Bauman*."). Mandamus is evaluated under the *Bauman* factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new and important problems, or issues of law of first impression.

*Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (citations omitted). The third *Bauman* factor—clear error—"is the most important." *In re Swift Transp. Co. Inc.*, 830 F.3d 913, 916 (9th Cir. 2016). Not all factors must be present. *See, e.g.*, *In re Kirkland*, 75 F.4th 1030, 1048 (9th Cir. 2023) (granting mandamus based on third and fifth factors alone); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (finding appeal invalid as a collateral order, but treating it as a request for mandamus and granting mandamus even when factors four and five were not present).

All *Bauman* factors are present here. Judge Scarsi clearly erred by inventing his own interpretation of the contract—one rejected by all parties—and then misapplying his unique interpretation to reach the wrong result. The parties signed the Diversion Agreement and agree the prosecution below is barred by its immunity provision, if the Agreement is in effect, but they dispute whether it is in effect.

The debate is over the meaning of an unsigned signature line for Probation marked "APPROVED BY," when Probation is not a party to the Agreement and no term of the Agreement requires Probation to do anything.  The first paragraph of the Diversion Agreement identifies the Parties as solely the prosecution and Biden, with no mention of Probation.  The second paragraph says the Agreement is effective upon "execution and approval" of the Agreement.  There is no mention of Probation in either paragraph, and no Agreement paragraph requires approval from Probation. Biden must agree to supervision by Probation, but Probation is not required to do anything.  The question is whether the signature line gives Probation veto power over the Agreement by the Parties, rather than approving its supervision authority.

Biden argues it is plain that when the Agreement identifies the "Parties" and then uses the approved and executed language, it means approved and executed by the Parties.  It cannot mean "approved" by Probation, which is not even mentioned at that point in the Agreement.  Moreover, all contracts must be "approved" by the parties and, while that alone can form a contract (i.e., oral contracts), an agreement that specifies "execution" requires the parties' signatures.  Probation's signature is merely an acknowledgment that it "approves" *its* supervisory authority.  Instead, the Special Counsel argues Probation's approval was an unsatisfied condition precedent to the formation of the contract.

Judge Scarsi correctly understood Ninth Circuit law construes such agreements under their plain language, when possible, but (especially when drafted by the government) if there is any "ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government ordinarily must bear responsibility for any lack of clarity. Construing ambiguities in favor of the defendant makes sense in light of the parties['] respective bargaining power and expertise." Cal.D.E.67 at 10 (quoting *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000)). Judge Scarsi also correctly quoted this Court explaining, "[t]he fact that the parties dispute a contracts meaning does not establish that the contract is ambiguous . . . ," but he omitted the remainder of this Court's sentence: "it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.* at 11 (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). Judge Scarsi erred in applying this principle.

To be sure, Judge Scarsi correctly rejected the Special Counsel's contention that the Agreement established a condition precedent to the formation of the Agreement. Conditions precedent must "be expressed in unmistakable language" and should "jump[] out at you." *Id.* at 17 (citations omitted). No such language exists, and Paragraph 19 undercuts a role for Probation in approving the Agreement, as it expressly allows the Parties alone to modify the Agreement (expanding

13

Probation's supervisory authority or eliminating it altogether) without Probation's consent. *Id.* Thus, "the Probation Officer did not need to approve the Diversion Agreement for its formation to be perfected." *Id.* at 19; *see also* Del.7/26/23 Tr. at 46 (there is no "role of probation [in] weighing . . . the benefit of the bargain") (Special Counsel).)

Finding the Agreement in effect, when all parties acknowledge that would bar Biden's prosecution, should end the matter in Biden's favor. But Judge Scarsi ignored the parties' positions and invented his own interpretation, where the Diversion Agreement is in effect, but the Diversion Period would not begin until Probation signed the Agreement.[4] Judge Scarsi described his interpretation as a "Schrödinger's cat-esque construction" in which the Agreement simultaneously appears both dead and alive. *Id.* at 20. There can be no better way of saying the Agreement is ambiguous.

Judge Scarsi erred by giving up his role as an unbiased umpire calling balls and strikes, and by attempting to be a better Special Counsel than the attorney appointed to that position. Doing so violated what the Supreme Court describes as "the principle of party presentation" where courts are the "neutral arbiter of matters

---

[4] The Diversion Period is a 24-month period in which Biden must comply with various conditions, including his willingness to be supervised by Probation. After Biden completes the Diversion Period, the government must dismiss the indictment within 30 days.

the parties present." The Supreme Court unanimously reversed the Ninth Circuit

under this principle in *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020).

After *Sineneng-Smith*, the Supreme Court has reiterated this doctrine. *Students for*

*Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 342

n.21 (2023); *DHS v. Thuraissigiam*, 591 U.S. 103, 127 (2020).

Since *Sineneng-Smith*, this Court explains: "Our circuit has repeatedly

admonished that we cannot 'manufacture arguments for an appellant. . . .'" *Melnik*

*v. Dzurenda*, 14 F.4th 981, 988 n.2 (9th Cir. 2021). "A district court should not try

to help the government carry its burden . . . . The principle of party presentation

instead requires the court to 'rely on the parties to frame the issues for decision.'"

*Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023) (quoting *Sineneng-Smith*, 590

U.S. at 375).

Judge Scarsi has been reversed for ignoring this principle before. In *Jones v.*

*L.A. Central Plaza*, *LLC*, plaintiffs filed a claim that proceeded through discovery to

summary judgment. 74 F.4th 1053 (9th Cir. 2023). Ignoring the evidence presented

at summary judgment, Judge Scarsi dismissed the case by identifying defects in the

complaint. Judge Scarsi erred by advocating his own ground for dismissal. *Id.* at

1058.

Citing *Sineneng-Smith*, this Court explained: "In our adversary system, it is

generally up to the parties to decide, within the parameters of the applicable

procedural rules, what particular relief they wish to seek, what type of motion they wish to present to obtain that relief, and which arguments they wish to make in support." *Id*. Judge Scarsi made the issue "even more problematic" by acting *sua sponte*, providing "no notice whatsoever that it planned to dispose of the case in this novel and unjustifiable manner." *Id.* at 1060–61; *see also Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 825 F. App'x 440, 441 (9th Cir. 2020) (reversing where "district court crafted [a] theory *sua sponte*" to rule in plaintiffs' favor on a contract claim, even though the parties had not "argued, or even 'so much as hinted'" at it and, "at their hearing, Plaintiffs still did not advance the theory on which the district court relied.") (citation omitted).

Here, Judge Scarsi floated his theory by the Special Counsel, who refused to endorse it. 3/27/24 Tr. at 23–24; 25; 46–47. This Court strictly enforces the party presentation principle when there is an intentional waiver. *See Melnik*, 14 F.4th at 988 n.2 ("arguments for Defendants that they did not make and, indeed, affirmatively rejected"); *Walker v. City of Riverside*, 859 F. App'x 126, 128 (9th Cir. 2021) ("Plaintiffs did not challenge" an issue and "eschewed any claim" concerning); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1140 (9th Cir. 2022) ("resuscitate claims that the parties expressly disavowed below"); *Trudeau v. Google LLC*, 816 F. App'x 68, 70 n.1 (9th Cir. 2020) ("abandoned").

16

Illustrating one danger in ignoring the party presentation principle, Judge Scarsi reached the wrong conclusion about where his unbriefed theory would lead. If Judge Scarsi were right, and the Diversion Agreement existed but the Diversion Period had not yet begun, Biden would still be entitled to immunity. The stand-alone "Agreement Not To Prosecute" provision in Paragraph 15 is not keyed to the Diversion Period; it kicks in once the Agreement is formed. Other provisions specifically apply to the Diversion Period (e.g., Paragraph 10 addresses "Additional Conditions Applicable to Diversion Period," Paragraph 4 obligates the government to dismiss within 30 days of completing the Diversion Period).

Construing the Agreement otherwise renders it nonsensical. If immunity is keyed to the Diversion Period, the prosecution could sign the Agreement and prosecute before Probation signs or two years after, when the Diversion Period expires and the statute of limitations has not run on all charges. That would render the immunity promised Biden illusory. Again, any ambiguity must be construed in Biden's favor.

Mandamus is warranted because Judge Scarsi violated the party presentation principle, and the Agreement is at least ambiguous as the parties—and another district court—all reject his interpretation.[5] This is an incredibly important issue to

---

[5] Considering a nearly identical motion, Judge Noreika erred by fully adopting the Special Counsel's condition precedent theory. *United States v. Biden*, No. 23-cr-00061-MN (D. Del. 2024), Del.D.E.97. While Biden rejects her interpretation, the

Biden that would decisively end the case against him,[6] and Judge Scarsi's repeated

violation of the party presentation principle warrants mandamus.

### C. Pendent Appellate Jurisdiction Exists Over The Diversion Agreement Issues

Pendent jurisdiction is another basis for this Court to review this claim.  "The

exercise of pendent appellate jurisdiction is favored if it will 'likely terminate the

entire case, sparing both this court and the district court from further proceedings

and giving the parties a speedy resolution.'"  *KiSKA Constr. Corp.-U.S.A. v. Wash.*

*Metro. Area Transit Auth.*, 167 F.3d 608, 611 (D.C. Cir. 1999) (citation omitted).  It

is especially appropriate to decide a pendent issue that is "fairly easy" when the

---

disagreement between the lower courts demonstrates the Agreement is ambiguous.
To her credit, Judge Noreika considered Judge Scarsi's interpretation, but she
followed the party presentation rule and refused to consider it.  *Id.* at 14 n.5 ("Neither
of those issues nor that law was raised by the parties before this Court.").

[6] Mandamus is favored when an issue is important.  *See Cheney v. U.S. Dist. Ct.*,
542 U.S. 367, 379 (2004) (interference with government functions); *In re Landry*,
83 F.4th 300, 304–05 (5th Cir. 2023) (protecting elections).  Here, the Special
Counsel reneged on its plea and diversion agreements with Biden after an onslaught
of congressional pressure.  That pressure was fueled by a Russian intelligence
operation that sought to meddle in the U.S. Presidential election to favor former
President Trump over President Biden by encouraging the Special Counsel to
prosecute the President's son before the election. *See, e.g.*, *United States v. Smirnov*,
2:24-mj-00166-DJA, D.E.15 at 24 (D. Nev. Feb. 20, 2024) (Special Counsel
emphasizing the role of the Russian intelligence operation).  Though the Special
Counsel indicted the Russian disinformation agent for lying about Biden, *United
States v. Smirnov*, 2:24-cr-00091-ODW, D.E.1 (C.D. Cal. filed Feb. 14, 2024), he is
doing exactly what Russia wanted by bringing two prosecutions against Biden and
eagerly seeking to get them tried before the election.

principal issue poses "a difficult and complicated task." *Id.* The Diversion

Agreement immunity issue is clear and would conclusively resolve this case.

## III. APPELLATE JURISDICTION EXISTS OVER BIDEN'S SEPARATION OF POWERS CLAIM

### A. Appellate Jurisdiction Exists Over The Separation of Powers Claim Under 28 U.S.C. §1291

Biden raises a rare separation of powers claim, but one that numerous

Attorneys General starting with Attorney General Robert Jackson have recognized

as viable. Cal.D.E.27 at 19; Del.D.E.63 at 16–20 (extensive quotes); *United States*

*v. Mardis*, 670 F. Supp. 2d 696, 701 (W.D. Tenn. 2009), *aff'd*, 600 F.3d 693 (6th

Cir. 2010); *see also D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1246–47

(D.C. Cir. 1971); *Pillsbury Co. v. FTC*, 354 F.2d 952 (5th Cir. 1966). Such

separation of powers claims are rare because DOJ historically refuses to discuss

pending cases with Congress and maintains the confidentiality of its files on pending

cases precisely because DOJ would face criticism, and motions to dismiss any

indictment, where Congress has overborn the Executive Branch's independent

charging decision. Nevertheless, the record demonstrates that is what happened

here.

Republican Chairmen of three House Committees exploded in outrage when

the Diversion Agreement and proposed Plea Agreement were announced. The

prosecution then promptly blew up the proposed Plea Agreement and reneged on the

Diversion Agreement that it signed, and these Chairmen publicly declared victory in forcing the prosecution's hand. Del.D.E.63 at 3–4. After the Special Counsel indicted the gun charges in Delaware, Congress took the unprecedented step of demanding the Special Counsel testify about his investigation and prosecution of Biden. Weiss complied and after being badgered at the interview by House Republicans for not more aggressively prosecuting Biden, he buckled again and indicted Biden a second time on nine tax charges in California. The House Chairmen claimed credit for this too. *Id.* at 4.

While the Special Counsel claims he did not cave under pressure and the House Chairmen are lying, the House Chairmen are more credible. When left to his own judgment after a thorough, five-year investigation, Weiss proposed resolving the gun charges with a Diversion Agreement and a recommended no-jail-time Plea Agreement to two tax misdemeanors. Consequently, we know what Weiss initially deemed the correct resolution of this case absent congressional pressure. It is only after the House Chairmen demanded in Summer 2023 that Weiss reverse course and charge felonies that he did so. The timing says it all, and the House Chairmen said the quiet part out loud in admitting their accomplishment.

As noted above, the Supreme Court in *Axon* recognized separation of powers claims as collateral orders. 598 U.S. at 193. This Court also allows collateral appeals of separation of powers claims. *See United States v. Williams*, 68 F.4th 564,

569–70 (9th Cir. 2023); *United States v. Claiborne*, 727 F.2d 842, 844–45 (9th Cir. 1984).

The Special Counsel invokes *United States v. Cisneros*, 169 F.3d 763 (D.C. Cir. 1999), in claiming not all separation of powers claims involve a right not to be tried, and an explicit constitutional guarantee of a right not to be tried is needed. D.E.9 at 13–14.  The *Cisneros* court was in no position to opine on which constitutional guarantees convey a right not to be tried, as that defendant's separation of powers claim did not rest upon any specific clause in the Constitution.  169 F.3d at 766.  *Cisneros* does not address the Take Care Clause addressed by Biden.  U.S. Const. art. II, §3.  The language the Special Counsel quotes is *dicta*, has never been followed by this Court, and is no longer good law, after more recent Supreme Court decisions, including *Axon*, say the opposite.  *See* 598 U.S. at 192–93.

## B. Pendent Appellate Jurisdiction Exists Over The Separation of Powers Issues

Exercising pendent appellate jurisdiction is warranted here because "pendent jurisdiction [extends to] questions that implicate 'the very power the district court used to issue the rulings then under consideration.'" *Hendricks*, 408 F.3d at 1134–35 (9th Cir. 2005) (quoting *Meredith*, 321 F.3d at 816).  The exercise of pendent appellate jurisdiction is favored if it will "likely terminate the entire case, sparing both this court and the district court from further proceedings and giving the parties a speedy resolution.'" *KiSKA Constr.*, 167 F.3d at 611 (citation omitted).

21

## CONCLUSION

This Court has jurisdiction over Biden's interlocutory appeal.

Dated: April 29, 2024

Respectfully submitted,

s/ *Angela M. Machala*
ABBE DAVID LOWELL
  *Counsel of Record*
CHRISTOPHER D. MAN
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
(202) 282-5000
ADLowell@winston.com
CMan@winston.com

ANGELA M. MACHALA
WINSTON & STRAWN LLP
333 S. Grand Avenue
Los Angeles, CA 90071
(213) 615-1700
AMachala@winston.com

*Counsel for Defendant-Appellant Robert Hunter Biden*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing response was filed electronically on April 29, 2024, and will, therefore, be served electronically upon all counsel.

s/ *Angela M. Machala*
Angela M. Machala

## CERTIFICATE OF COMPLIANCE

I certify that this 5,196-word opposition complies with the word length limit permitted by Ninth Circuit Rules 27-1(1)(d) and 32-3(2), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and the accompanying documents authorized by Rule 27(a)(2)(B). This opposition complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

s/ *Angela M. Machala*
Angela M. Machala