DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
   950 Pennsylvania Avenue NW, Room B-200
   Washington, D.C. 20530
   Telephone:   (771) 217-6091
   E-mail:      Leo.Wise@USDOJ.GOV, DEH@USDOJ.GOV

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-cr-00599-MCS |
|---|---|
| Plaintiff, | |
| v. | **GOVERNMENT'S [THIRD] MOTION IN LIMINE TO EXCLUDE THE DELINQUENT PAYMENT OF DEFENDANT'S TAXES** |
| ROBERT HUNTER BIDEN, | |
| Defendant. | Hearing Date:   MAY 29, 2024<br>Hearing Time:   1:00 p.m.<br>Location:   Courtroom of the Hon. Mark C. Scarsi |

Plaintiff United States of America, by and through its counsel of record, hereby files its Motion in Limine to exclude evidence of the delinquent payment of the Defendant's individual income taxes, which were paid by a third party more than ten months after the defendant learned he was under investigation.

As an initial matter, the Ninth Circuit has consistently upheld the exclusion of evidence of remedial action taken after the taxpayer knew he was under investigation on the grounds that such evidence is irrelevant. Furthermore, the evidence should be excluded under a Federal Rule of Evidence 403 balancing test as the risk of confusing the jury would outweigh any minimal relevance to the Defendant's intent at the time he allegedly committed the crimes.

The defendant opposes this motion.

This motion is based upon the attached memorandum of points and authorities, the indictment in this case, and any further evidence and argument as the Court may deem necessary.

Dated: May 15, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/
LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

The defendant failed to pay his individual income taxes for tax years 2016, 2017, 2018 and 2019 either at the time that the taxes were due, or, in the case of the returns filed for tax years 2016 through 2018, at the time he delinquently filed his tax returns for those years. Though those taxes eventually were paid by a third-party, that evidence should be excluded as it is not relevant to the defendant's state of mind at the time the crimes were committed and, even if found to be relevant, it should be excluded as the tendency of the evidence to mislead and confuse the jury would outweigh any minimal probative value.

## I.   FACTS

In 2017 and 2018, the defendant earned millions of dollars in income. Indeed, the defendant reported on his delinquently filed returns that he earned gross total income of $2,376,436 in 2017 and $2,187,286 in 2018. ECF 1 at ¶ 27. During those years, the defendant's advisors repeatedly reminded him of his obligation to file returns and pay his taxes. *Id*. at ¶¶ 32-33, 54-56, 61, 70, 72, 74-83, 96-97. In spite of that advice, the defendant elected not to file the returns for those years at the times they were due. Further, he opted not to pay his income taxes, even though he had sufficient funds to pay some or all of the taxes at the time they were due. *Id*. at ¶¶ 69, 95. Rather, the defendant chose to fund an extravagant lifestyle. *Id*. at ¶¶ 37, 86-88, 101-104. When the defendant ultimately filed his 2017 and 2018 Forms 1040 in February 2020, and in so doing self-assessed a total of $1,202,714 in taxes, he made no payment to the IRS. *Id*. at ¶¶ 85, 99. Not only did the defendant not pay his taxes at that time, but he attempted to evade his 2018 individual income taxes by filing false returns that reported personal expenses as business expenditures and underreporting his income and tax due and owing. *Id*. at ¶¶ 117-144.

In January 2020, the defendant's accountants belatedly discovered that the defendant had never filed a 2016 Form 1040. *Id*. at ¶ 62. The accountants prepared a 2016 Form 1040 for the defendant that filed in June 2020. The defendant did not make any payment towards the self-assessed tax of $45,661. *Id*. at ¶ 47.

In July 2020, the law required the defendant to pay the taxes due and owing for the 2019 tax year. *Id*. at ¶ 154. Even though the defendant had funds available in 2020 to pay the taxes, he failed to pay any of the $197,372 self-assessed tax that he owed for that year either at the time they were due or at the time he filed the return. *Id*. at ¶¶ 156-159.

The defendant first confirmed that he was aware of the criminal tax investigation that led to the charges in this case in December 2020, when he publicly released the following statement to the press: "I learned yesterday for the first time that the U.S. attorney's office in Delaware advised my legal counsel, also yesterday, that they are investigating my tax affairs."[1] On October 18, 2021, more than ten months after the defendant became aware that he was the target of a criminal investigation, a third party paid the defendant's outstanding individual income taxes, penalties and interest for tax years 2016 through 2019. ECF 27, p. 10 (the defendant incorrectly claimed he "pa[id] all his taxes and penalties in 2021").

## II.   LEGAL STANDARD

The Ninth Circuit has consistently upheld the exclusion of late payments or late-filed returns in tax cases. See *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980); *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004); *United States v. Baras*, 624 F. App'x 560, 560-61 (9th Cir. 2015).

In *Ross*, the Ninth Circuit affirmed the district court's exclusion of evidence that the defendant late-filed returns and had offered to pay delinquent taxes "on the grounds of irrelevancy." *Ross*, 626 F.2d at 81. In *Pang*, the defendant attempted to introduce evidence that he paid the taxes due for the charged years while awaiting trial. The Ninth Circuit upheld the trial court's exclusion of the evidence in the grounds that it was irrelevant. *Pang*, 362 F.3d at 1194 ("Were the rule otherwise, tax evaders could avoid criminal prosecution simply by paying up after being caught.").

---

[1] Matt Zapotosky, Devlin Barrett and Colby Itkowitz, "Hunter Biden Confirms He is Under Federal Investigation," The Washington Post, Dec. 9, 2020, available at https://www.washingtonpost.com/national-security/hunter-biden-under-federal-investigation/2020/12/09/3b7361be-3a64-11eb-9276-ae0ca72729be_story.html.

2

This is consistent with other circuits, particularly where—as here—the belated filing or payment has been made after a target becomes aware of a criminal investigation. "[C]ourts have repeatedly affirmed the exclusion of evidence of remedial action taken after the taxpayer knows he is under investigation."[2] *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014).

Even though the Ninth Circuit has been consistent in excluding remedial action, that line of cases should not be read as creating a *per se* rule. Rather, the appropriate way to proceed is under a Rule 403 balancing test. See *Baras*, 624 Fed. Appx. at 560-61 (approving the exclusion of late payments evidence under Fed. R Evid. 403 on the grounds that it would "avoid a risk of confusing the issues and confusing the jury."). Courts have correctly recognized that whether evidence of belated payment is relevant in these sorts of cases must be evaluated on "a case-by-case basis." *See, e.g.*, *Beavers*, 756 F.3d at 1050. Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 comports with a defendant's constitutional right "to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324-27 (2006) (citations and internal quotation marks omitted); see *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (plurality opinion) (referring to Rule 403 as "familiar and unquestionably constitutional").

Federal Rule of Evidence 401 sets forth the "[t]est for [r]elevant [e]vidence," stating that "[e]vidence is relevant" if both (1) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. This Court has made clear that determinations

---

[2] See also *United States v. Radtke*, 415 F.3d 826, 840-841 (8th Cir. 2005*); United States v. McClain*, 934 F.2d 822, 834-835 (7th Cir. 1991); *Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968), cert. denied, 393 U.S. 1092 (1969); *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952), cert. denied, 344 U.S. 826 (1952); see also *United States v. Philpot*, 733 F.3d 734, 748 (7th Cir. 2013).

3

of relevance under Rule 401 - just like determinations of prejudice or confusion under Rule 403 - must be made "in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad per se rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

Whether evidence of a defendant's subsequent mental state, as demonstrated by a subsequent act, is of any probative value in establishing his state of mind at the time of the alleged criminal acts must be determined by the circumstances of the individual case. *Beavers*, 756 F.3d at 1050. Critically, in evaluating this issue, a court should consider whether evidence concerning the subsequent act is of any probative value in establishing his state of mind at the time of the alleged criminal acts, and if so, whether the evidence "unduly entangle[s] the issues or confuse[s] the jury." *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952); *Beavers*, 756 F.3d at 1050-51 (upholding exclusion of amended returns filed after learning of criminal investigation, observing that such filings had "little bearing" on state of mind at time of filing original returns). This focus on state of mind at the time of the criminal offense stems from the Supreme Court's admonition that events occurring after the completion of the tax offense—such as payment of a tax debt or reporting of income—is of no legal significance. *Sansone v. United States*, 380 U.S. 343, 354 (1965) ("[T]he intent to report . . . income and pay . . . tax in the future does not vitiate the willfulness required by [26 U.S.C. § 7203]"); *see also United States v. Houser*, 754 F.3d 1335, 1351 (11th Cir. 2014) ("Section 7203 of Title 26 clearly requires the timely filing of personal income tax returns"); *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) (eventual filing of tax returns "does not negate willfulness in [defendant's] earlier attempts to evade his income tax liability").

In excluding evidence of remedial tax filings and payments, courts have cautioned that what takes place "after the fact" is "often feigned and artificial." *Radtke*, 415 F.3d at 840 (quoting *Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968)). Thus, a court can and should consider the fact that "self-serving exculpatory acts performed substantially

after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime." *Radtke*, 415 F.3d at 840; *Beavers*, 756 F.3d at 1051 ("subsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution"). Therefore, where the filing of late or amended tax returns is not probative of the defendant's state of mind at the time of his filing due date or the filing of false returns, evidence concerning such filing is properly excluded. See, e.g., *Beavers*, 756 F.3d at 1051; *Radtke*, 415 F.3d at 840-41; *United States v. McClain*, 934 F.2d 822, 834 (7th Cir. 1991; *Ross*, 626 F.2d at 81.

### III.  ARGUMENT

The United States anticipates that the defense may seek to introduce, either during the cross-examination of government witnesses, or the direct examination of defense witnesses, and may attempt to present in opening, evidence regarding the delinquent payment of the defendant's individual income taxes for tax years 2016 through 2020. But the belated payment evidence, which occurred well after the payments were due and the crimes were committed and after the defendant became aware that he was under investigation, should be excluded.

The payment of the defendant's delinquent taxes in October 2021 has no bearing on whether the defendant willfully failed to pay those taxes at the time they were due or when willfulness allegedly arose in 2020. That is, the defendant should not be able to argue that he complied with his tax obligations because, after he learned he was under criminal investigation, he got a third party to pay all of taxes he should have paid years earlier. Fundamentally, the after-the-fact payment of the defendant's taxes sheds no light on his state of mind at the time he committed the charged crimes, nor does it have any other relevance to this prosecution. Rather, the belated payment should be viewed as the type of

5

1  feigned and artificial act taken "to cover up a purposeful lie in the hope of avoiding
2  prosecution." *Beavers*, 756 F.3d at 1050.
3       Even if the late payment of the defendant's outstanding taxes was somehow
4  relevant, the remediation evidence would pose a severe threat of confusing and misleading
5  the jury. That is, the jury could be led to the misimpression that the prosecution had no
6  basis as the government had been made whole. In the alternative, jurors could be confused
7  that the government had not met its burden to show that taxes were owed for the failure to
8  pay counts or that there was a tax due and owing for the evasion count. Simply put, the
9  only foreseeable use of belated payment evidence would be to encourage the jury to nullify
10 on the ground that the IRS had received whatever the defendant owed. As set forth above,
11 nullification is not a proper basis for offering evidence.

12 **IV.  CONCLUSION**

13      As the late payment of taxes is not relevant and would be more prejudicial than
14 probative, the Court should issue an order excluding such evidence.