UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT HUNTER BIDEN,<br><br>Defendant. | Case No. 2:23-cr-00599-MCS-1<br><br>**ORDER STRIKING EX PARTE APPLICATION (ECF NO. 86)** |

Defendant Robert Hunter Biden applies ex parte for a temporary restraining order ("TRO") enjoining future violations of the Appropriations Clause of the United States Constitution. (EPA 1–2, ECF No. 86.) The Government opposes the application. (Opp'n, ECF No. 96.) The Court heard oral argument on May 22, 2024.

The Court on its own motion strikes the application for two independent reasons.

## I. THE APPLICATION FAILS TO COMPLY WITH TRO RULES

The application fails to comply with the rules governing TRO applications. At the May 22 hearing, counsel for the parties agreed that Federal Rule of Civil Procedure 65 and Local Civil Rule 65-1 govern Mr. Biden's application. (May 22 Hr'g Tr. 4, ECF No. 120); *see also* C.D. Cal. Crim. R. 57-1 ("When applicable directly or by analogy, the Local Rules of the Central District of California shall govern the conduct of criminal proceedings before the District Court, unless otherwise specified."). Local Civil Rule 65-1 requires a party seeking a TRO to "submit an application, a proposed TRO, a declaration setting forth the facts and certification required by F.R.Civ.P. 65(b)(1)(A) and (B), and a proposed order to show cause why a preliminary injunction should not issue." C.D. Cal. R. 65-1.

The application fails to comply with this rule. First, Mr. Biden's proposed order fails to meet the requirements of Federal Rule of Civil Procedure 65(d) in that it does not state the reasons why it would be issued, state its specific terms, or describe the act or acts proposed to be restrained in reasonable detail. Fed. R. Civ. P. 65(d). The proposed order merely provides that a TRO of uncertain terms restraining unspecified acts is granted or denied. (*See* Proposed Order Re: Appl. 1–2, ECF No. 86-3.) And the Court cannot infer the bounds of the proposed injunctive relief from the body of the application; Mr. Biden asks for an order "enjoin[ing] future appropriations clause violations" without specifying which acts by which actors such an injunction might

restrain. (Appl. 6.) Second, Mr. Biden has not included in his submissions any proposed order to show cause why a preliminary injunction should not issue.[1]

The application is stricken for these procedural defects. *James R. Glidewell Dental Ceramics, Inc. v. Phila. Indem. Ins. Co.*, No. 8:16-cv-01155-JLS-E, 2016 U.S. Dist. LEXIS 189416, at *1 (C.D. Cal. Sept. 12, 2016) ("Parties must strictly adhere to the Local Rules of this district, and a district court has the discretion to strike any motion that fails to comply with the Local Rules."); *see Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (finding no abuse of discretion where district court declined to consider filings out of compliance with local rules, reasoning that "[t]he district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing").

## II.  THE APPLICATION IS UNTIMELY

### A.  Mr. Biden's Deadline to Seek the Relief Sought in This Application Was February 20

The application is untimely under the Court's scheduling order. Courts may set deadlines for pretrial motions. Fed. R. Crim. P. 12(c)(1). In all criminal cases before this judicial officer, the last day to hear pretrial motions is the date of the final pretrial conference. (Initial Standing Order for Criminal Cases § F.) Anticipating significant pretrial motion practice in this case, the Court set an earlier deadline for a round of pretrial motions before the final pretrial conference. At the January 11, 2024, status conference, the Court ordered the parties to file any motions then contemplated by

---

[1] The Court declines to consider the application based on these issues with the proposed orders, notwithstanding that "[p]roposed orders for motions are not required to be filed" in criminal cases in this Court. (Initial Standing Order for Criminal Cases § F.) Mr. Biden agreed that the Local Civil Rule 65-1 governs the Court's review of this rare request for injunctive relief in a criminal case, and he chose to file a proposed TRO the Court could not enter if it were to grant the application on the merits.

1  February 20, 2024. (Mins., ECF No. 17.) The Court specifically indicated that this was
2  the deadline for motions on issues the parties at that time intended to raise. (Jan. 11 Hr'g
3  Tr. 23–24, ECF No. 18.)

4        The legal basis for the application, that the prosecution violates the
5  Appropriations Clause, is in substance the same as one Mr. Biden previously raised in
6  a motion to dismiss the indictment filed on February 20. (*See generally* Appointment
7  Mot., ECF No. 26.) Given his citation of *United States v. Pisarski*, 965 F.3d 738, 743
8  (9th Cir. 2020), Mr. Biden knew at the time he filed the Appointment Motion that
9  injunctive relief was an appropriate remedy for an Appropriations Clause violation. (*See*
10 Appointment Mot. 2 (citing *Pisarski* as a decision "affirming injunction against further
11 prosecution because the prosecution violated the Appropriations Clause").) Mr. Biden
12 even argues that his citation of *Pisarski* placed a prospective, injunctive remedy at issue
13 in the Appointment Motion. (*See* Appl. 2 n.1.) But the relief Mr. Biden sought in that
14 motion was dismissal of the indictment—not an injunction precluding further
15 prosecution or wrongful expenditure of unappropriated funds by the Special Counsel.
16 (*See, e.g.*, Appointment Mot. 2 (citing *Pisarski* toward an argument that "the Indictment
17 should be dismissed"); *id.* at 7 (same); *id.* at 8 ("The Court should dismiss the
18 Indictment."); Proposed Order Re: Appointment Mot. 1, ECF No. 26-1 (proposing an
19 order granting the Appointment Motion without setting forth terms of any injunctive
20 relief); *see also* Order 3, ECF No. 98 ("[T]he record reflects that appellant did not seek,
21 and the district court did not deny, injunctive relief.").) In other words, although Mr.
22 Biden was aware in February that he could have sought an injunction, and although he
23 argues that he did seek an injunction in the Appointment Motion, he elected not to
24 request injunctive relief—explicitly or implicitly—at that time.[2] Thus, the application
25 is untimely.

---

[2] Even if the Court disagreed with the circuit panel on this point, it would be bound to accept the panel's findings. *See Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th

### B. There Is No Good Cause to Consider the Untimely Application

A court may consider an untimely pretrial motion upon a showing of good cause. Fed. R. Crim. P. 12(c)(3). "The decision whether to grant an exception to a Rule 12 waiver lies in the discretion of the district court." *United States v. Tekle*, 329 F.3d 1108, 1113 (9th Cir. 2003). To obtain relief, "a party must present a legitimate explanation for his failure to raise the issue in a timely manner." *United States v. Anderson*, 472 F.3d 662, 670 (9th Cir. 2006) (discussing predecessor to Rule 12(c)(3)). The Court questioned Mr. Biden's counsel about the timeliness of the application at the May 22 hearing. (May 22 Hr'g Tr. 4–5.) Counsel provided several responsive arguments, but none persuasively explains why Mr. Biden elected not to pursue a known injunctive remedy at the time then-known motions were due, let alone provides good cause to consider his untimely application.

Counsel argued that he understood the February deadline to pertain only to motions to dismiss, not to other motions. (*Id.* at 5.) The record is not reasonably susceptible to counsel's understanding. The February deadline pertained to "motions that you know now that you intend to bring." (Jan. 11 Hr'g Tr. 23.) The Court deliberately cast that directive broadly to avoid piecemeal motion practice and assist the parties in developing the case by resolving then-known disputes well before trial. (*See id.* at 14 ("[T]he Court's going to use its best efforts to not keep you hanging on [the February motions], to make sure that the motions are resolved by April 17, 2024.").) The deadline was not limited to motions to dismiss.

Counsel noted that courts generally do not consider equitable remedies if legal remedies are available, so a decision on the legal remedy of dismissal properly should precede a decision on injunctive relief. (May 22 Hr'g Tr. 5, 7; *accord* Appl. 3.) Counsel also asserted that, had the Court granted the Appointment Motion, injunctive relief would be unnecessary because such a ruling "would have been statement enough as to

---

Cir. 1993).

5

what the right thing to do was." (May 22 Hr'g Tr. 5.) But a dismissal based on violations of the Appropriations Clause would not have prevented the Special Counsel from further expending resources, such as by reindicting Mr. Biden or continuing investigations into Mr. Biden's conduct. Mr. Biden does not explain why he would trust the Government to do "the right thing" in the future even had the Court dismissed the indictment for Appropriations Clause violations. Were the Court to accept Mr. Biden's position on the issue, an injunctive remedy would have been available and appropriate irrespective of the propriety of a legal remedy.[3] Counsel's explanation for Mr. Biden's decision to request legal relief before equitable relief fails to address why Mr. Biden declined to seek *both* legal and equitable relief in the Appointment Motion—especially given the broad order directing the parties to file any known pretrial motions in February.

Finally, counsel argued that the parties and the Court were aware of the injunctive remedy in briefing and deciding the Appointment Motion. Counsel contended that the Court should entertain the application now because it seeks to vindicate "an important right." (May 22 Hr'g Tr. 6–7; *see also* Appl. 2 & n.1.) Regardless of the importance of the issue, this line of reasoning provides no "legitimate explanation" for Mr. Biden's failure to request injunctive relief in the February motion. *Anderson*, 472 F.3d at 670. Contrary to Mr. Biden's position, (May 22 Hr'g Tr. 6), principles of party presentation would have prevented the Court from issuing a remedy different in kind from the one Mr. Biden sought in the motion, irrespective of references to the availability of injunctive relief in the parties' briefs and the Court's order. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020); (*see also* Appl. 2–3 (acknowledging "the

---

[3] Indeed, injunctive relief might be the *preferred* remedy for an Appropriations Clause violation. (*See* Order on Mots. to Dismiss 26, ECF No. 67); *United States v. Biden*, No. 23-61 (MN), 2024 U.S. Dist. LEXIS 67174, at *12 n.6 (D. Del. Apr. 12, 2024).

injunctive relief [Mr. Biden] seeks here is different" from the relief sought in the Appointment Motion)).

### C. The Application Otherwise Fails to Justify Consideration on the Merits

In his application, Mr. Biden invokes the standard governing ex parte relief stated in *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). (Appl. 5–6.) Applications for temporary restraining orders generally are governed by a standard unique to that type of motion—not the general standard for issuance of an ex parte order. *Compare* C.D. Cal. R. 65-1, *with id.* R. 7-19. That said, Mr. Biden notes that the Court might determine his application is a "delayed filing" for which he should show "excusable neglect." (Appl. 6.) Excusable neglect plays a role in both the *Mission Power* standard and the Federal Rule of Criminal Procedure 45(b)(1) standard for relief from a case deadline. Mr. Biden has not asked for retroactive relief from the February motion filing deadline, but given his proclivity to tell the circuit court he sought relief in the district court he did not request, Appellant's Pet. for Panel Reh'g & Reh'g En Banc at 5–6, *United States v. Biden*, No. 24-2333 (9th Cir. May 25, 2024), ECF No. 17.1, the Court liberally interprets Mr. Biden's briefing on this issue as his argument why the Court should consider the application on its merits under either the *Mission Power* standard or the Rule 45(b)(1) standard. Neither is met.

Ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power*, 883 F. Supp. at 490. A party filing an ex parte application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

Courts may provide relief from a lapsed deadline under Federal Rule of Criminal Procedure 45(b)(1)(B) "if the party failed to act because of excusable neglect."

As relevant to both standards, courts consider four factors in the excusable neglect inquiry: (1) the danger of prejudice to the opposing parties; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking relief; and (4) whether that party acted in good faith. *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also United States v. Laverty*, No. 22-10187, 2024 U.S. App. LEXIS 756, at *6–7 (9th Cir. Jan. 11, 2024) (applying *Pioneer* factors to review denial of Rule 45 motion).

Mr. Biden does not meet the ex parte standard because he presents no evidence that his case will be irreparably prejudiced if his TRO application is not heard according to regularly noticed motion procedures. As with several of his motions to dismiss, (*see, e.g.*, Order on Mots. to Dismiss 33, ECF No. 67), Mr. Biden presents virtually no evidence with his application probative of irreparable harm, (*see generally* Lowell Decl., ECF No. 86-1 (presenting assertions probative of notice to the Government of the application, not of irreparable prejudice)). And Mr. Biden presents no reason why the application itself could not be briefed and heard according to regular motion procedures. At the hearing, counsel for Mr. Biden offered no cogent explanation why he elected to present the issue by way of a TRO application and not by a duly noticed motion for preliminary injunction. (*See* May 22 Hr'g Tr. 8 (conceding the Court could consider the ex parte application as a motion for preliminary injunction).) Mr. Biden filed the application on the last day to file motions, (*compare* Criminal Standing Order § F (requiring motions to be filed 14 days prior to the final pretrial conference), *with* Appl. (filed May 15, 2024, 14 days before the then-scheduled May 29 final pretrial conference)); thus, his request for an injunction could have been presented in full and

fair adversary briefing on a regularly noticed motion schedule without any apparent irreparable prejudice.

Mr. Biden contends he "is not at fault for creating this crisis, as this application is sought in response to a ruling by the Ninth Circuit issued [the day prior]." (Appl. 6.) The Court disagrees. Mr. Biden is the author of the crisis of which he complains in that he believes he made a tactical error of presenting his Appropriations Clause challenge to this Court by way of a motion to dismiss and not by a motion for an injunction before the February deadline to file then-known motions. Although the Court anticipated an appeal of any order on the pretrial motions and specifically invited briefing on the issue of interlocutory appealability, (Jan. 11 Hr'g Tr. 30), Mr. Biden declined the invitation and filed motions that led to an order not reviewable on an interlocutory basis, (*see* Order 1). That Mr. Biden apparently only became aware of his tactical error after proceedings in the Ninth Circuit made clear that he took a jurisdictionally defective appeal, and that he did not preserve in the district court a basis for pursuing an interlocutory appeal of the Appropriations Clause issue, offers no justification for ex parte relief.

Finally, Mr. Biden fails to demonstrate excusable neglect. Even accepting Mr. Biden's argument regarding the lack of risk of prejudice to the Government, (Appl. 6), the other factors sharply weigh against Mr. Biden. Mr. Biden knew injunctive relief was an appropriate remedy for the asserted Appropriations Clause violation but declined to seek it for nearly three months. As set forth repeatedly above, Mr. Biden offers no credible reason why he declined to present a request for injunctive relief to the Court back in February. Mr. Biden had full control over the pretrial motions he filed at that time, but he chose not to file a motion that invited an immediately reviewable order. Further, excusable neglect should not be found if the mistake at issue is "one feigned for some tactical reason." *Pincay*, 389 F.3d at 860 (Berzon, J., concurring). Mr. Biden has made clear his intent to use a denial of his TRO application on its merits to pursue an interlocutory appeal that might divest this Court of jurisdiction to bring the case to

trial without delay. Appellant's Pet. for Panel Reh'g & Reh'g En Banc, *supra*, at 6 n.3; (Appl. 2; *see also* May 22 Hr'g Tr. 59 (representing that Mr. Biden will make "no request of the Ninth Circuit to change [the trial] date," but noting that the circuit court will "rule whether we have a good basis or not" to pursue a jurisdiction-divesting interlocutory appeal before trial)). While the Court appreciates the zealous advocacy animating Mr. Biden's gambit, the public interest in a speedy trial demands that the Court refuse to play ball. *See Barker v. Wingo*, 407 U.S. 514, 519 (1972) ("[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."). On balance, the *Pioneer* factors weigh against a finding of excusable neglect that might support relief under *Mission Power* or Rule 45(b)(1).

### D. Declining to Consider the Application Is Appropriate

In sum, the application is untimely, and there is no cause for relief under Rule 12(c)(3), Rule 45(b)(1), or *Mission Power*. The untimeliness of the application presents another independent reason for striking it. *See* Fed. R. Crim. P. 12(c)(3) (vesting district courts with discretion not to consider an untimely pretrial motion); *e.g.*, *United States v. Baker*, No. CR 22-102-BLG-DLC, 2024 U.S. Dist. LEXIS 13719, at *10–11 (D. Mont. Jan. 25, 2024) (declining to consider untimely motion to dismiss); *United States v. Castro*, No. 2:19-cr-00295-GMN-NJK, 2022 U.S. Dist. LEXIS 173930, *7–10 (D. Nev. Sept. 24, 2022) (affirming magistrate judge's order striking untimely motion to suppress).

///

### III. CONCLUSION

The application is stricken. The Court does not address the merits of the application and neither grants nor denies injunctive relief based on its substance.

**IT IS SO ORDERED.**

Dated: June 10, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE