Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Abbe David Lowell (admitted *pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone:   (202) 282-5000
Facsimile:    (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES<br><br>                    Plaintiff,<br><br>     vs.<br><br>ROBERT HUNTER BIDEN,<br><br>                    Defendant. | **Case No. 2:23-cr-00599-MCS-1**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S MOTION TO ENJOIN FUTURE APPROPRIATIONS CLAUSE VIOLATIONS**<br><br>Hearing Date: July 8, 2024<br>Time:               3:00 PM<br>Place:              Courtroom 7C |

## NOTICE OF MOTION AND MOTION TO ENJOIN

TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL DEREK E. HINES

PLEASE TAKE NOTICE that on July 8, 2024, at 3:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi, Defendant Robert Hunter Biden, by and through his attorneys of record, will, and hereby does, respectfully move this Court for an order enjoining future appropriations clause violations. The Special Counsel is ineligible to use the appropriation provided for Congress as a Note to 28 U.S.C. § 591: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by independent counsel appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987.  The Special Counsel should be enjoined from continuing to rely upon that appropriation for the funding of its investigation and prosecution of Mr. Biden and any funding used for that investigation or prosecution by the Special Counsel must be authorized by a valid appropriation by Congress.

Mr. Biden's motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file with the Court, the oral arguments of counsel, and such other matters as the Court may deem proper to consider.

Dated:  June 18, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Angela M. Machala*
    Angela Machala
    Abbe David Lowell
    Christopher D. Man
    *Attorneys for Robert Hunter Biden*

**INTRODUCTION**

With reference to the adage "third time's a charm," Mr. Biden again seeks to enjoin the Special Counsel's ongoing Appropriations Clause violations.  In doing so, he does not expect to change this Court's mind that there is no Appropriations Clause violation, but he does seek to vindicate his Appropriations Clause claim on appeal as is his right under 28 U.S.C. § 1292(a).  The Court may deny Mr. Biden's motion, but it should not deny his right to appeal decisions from this Court, even as to "interlocutory orders."  *Id.*; *see, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (allowing Section 1292(a) appeals of orders that explicitly deny injunctive relief or have the "practical effect" of doing so).

Mr. Biden initially moved to dismiss the indictment for an Appropriations Clause violation on February 20, 2024 (D.E.26), but the Court denied that motion on April 1, 2024 (D.E.67 at 20-32).  Mr. Biden then appealed to the Ninth Circuit, which dismissed the appeal for lack of jurisdiction under 28 U.S.C. § 1292(a) because it found Mr. Biden had not been explicit enough in requesting injunctive relief.  (C.A.9.D.E.16.1.)  Believing the Ninth Circuit motions panel erred (on that as well as other issues), Mr. Biden petitioned for rehearing and rehearing *en banc* and that petition remains pending.

Attempting to cure the stated appellate jurisdictional defect, on May 15, 2024, Mr. Biden filed an *ex parte* application explicitly seeking a restraining order against further Appropriations Clause violations (D.E.86).  He sought that relief because of the exigency of a then imminent trial schedule.  This Court struck that filing for a host of procedural reasons on June 10, 2024, including that the application should have been filed under "regular motions procedures."  (D.E.122 at 8.)  Mr. Biden now files this motion under those procedures and seeks to address the Court's timeliness concerns as well.

**ARGUMENT**

**I. MR. WEISS WAS UNLAWFULLY APPOINTED SPECIAL COUNSEL**

Special Counsel Weiss erroneously claims he is entitled to use an appropriation established in a Note to 28 U.S.C. § 591: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of

1

investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987 (emphasis added). This appropriation was established for Independent Counsels created by the Independent Counsel Act, but Mr. Weiss claims the later-created Special Counsel position is close enough under the "other law" provision. He is wrong because he must still be an "independent" counsel. Special Counsel are by design *not independent* and that is especially true of Mr. Weiss, who is ineligible even to be a Special Counsel because he is not in any sense independent of DOJ as he simultaneously serves as U.S. Attorney. In making this argument, Mr. Biden appreciates that this Court disagrees with his argument. He presents the argument for the sake of completeness.

### A     Mr. Weiss Is Ineligible To Be Appointed Special Counsel

In appointing Mr. Weiss as Special Counsel, Attorney General Merrick Garland said: "Mr. Weiss will also continue to serve as U.S. Attorney for the District of Delaware," and Mr. Weiss has done so.[1] But DOJ's regulations setting "Qualifications of the Special Counsel," provides: "The Special Counsel *shall* be selected from *outside* the United States Government." 28 C.F.R. § 600.3 (emphasis added).

Special Counsel Weiss's appointment highlights the irregularity. His appointment stated: "Sections 600.4 to 600.10 of Title 28 of the Code of Federal Regulations are applicable to the Special Counsel." DOJ Order 5730-2023 (Aug. 11, 2023). These are the Special Counsel regulations governing the scope of the Special Counsel's authority. The Attorney General cannot pick and choose among the Special Counsel regulations.

The regulation specifying that the Special Counsel be someone chosen from *outside* the U.S. government is an important provision. After the Independent Counsel Reauthorization Act expired in 1999, Attorney General Janet Reno replaced the role of Independent Counsel with these new regulations for selecting a Special Counsel.

---

[1] Attorney General Merrick B. Garland Delivers A Statement (Aug. 11, 2023), https://www.justice.gov/opa/speech/attorney-general-merrick-b-garland-delivers-statement.

In crafting the Independent Counsel and Special Counsel roles, the struggle was to strike the right balance between independence and accountability. The Independent Counsel was a truly independent government outsider who could avoid a conflict of interest within the U.S. government. But Congress and DOJ abandoned the Independent Counsel regime precisely because it afforded Independent Counsel too much independence. Then-Deputy Attorney General Eric Holder testified that "nearly every living former attorney general" opposed reauthorizing the Independent Counsel statute:

> [The Act] vests this immense prosecutorial power in an inferior officer who is not subject to the ordinary controls of any branch of government; and . . . is not subject to the same sort of oversight or budgetary constraints that the publicly accountable Department of Justice faces day in and day out. . . . Independent counsel are largely insulated from any meaningful budget process, competing public duties, time limits, accountability to superiors and identification with the traditional long-term interests of the Department of Justice. This insulation contributes greatly to the independence of these prosecutors, but it also eliminates the incentive to show restraint in the exercise of prosecutorial power. [These factors] provide an impetus to investigate the most trivial matter to an unwarranted extreme. . . . An independent counsel who does not indict faces criticism for wasting both his time and the taxpayers' good money.[2]

DOJ explained the newly created Special Counsel position strips the former Independent Counsel role of its independence where it mattered. Despite providing limited discretion, DOJ explained: "Nevertheless, it is intended that ultimate responsibility for the matter and how it is handled will continue to rest with the Attorney General (or the Acting Attorney General if the Attorney General is personally recused in

---

[2] *The Independent Counsel Act, Hearing Before the Subcomm. on Commercial and Administrative Law, on the Judiciary*, 106th Cong. (Mar. 2, 1999) (Holder remarks), https://www.justice.gov/archive/dag/testimony/ictestimonydag.htm.

the matter); thus, the regulations explicitly acknowledge the possibility of review of specific decisions reached by the Special Counsel." 64 FR 37038-01 (July 9, 1999).

In creating a less independent Special Counsel role, DOJ's regulations preserved the Independent Counsel Act's exclusion for those U.S. government employees. *Compare* 28 U.S.C. § 593(b)(2) ("[T]he court may not appoint as an independent counsel any person who holds any office of profit or trust under the United States."), *with* 28 C.F.R. § 600.3 ("The Special Counsel shall be selected from outside the United States Government."). It defies all notions of independence from the government to appoint someone to either position who is not independent of the government, but a part of it.

## B.    DOJ Is Bound By Its Own Regulations

Although the Attorney General has broad statutory authority to appoint a Special Counsel, he is bound by DOJ's own regulations as to who may be a Special Counsel. An "agency must follow its own regulations; 'it is a well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant act.'" *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1524 (D.C. Cir. 1994) (citation omitted). Even where the Attorney General's statutory authority is "relatively unconstrained," the government concedes when regulations have "constrained the Attorney General's exercise of discretion" due to the "'well-known maxim that agencies must comply with their own regulations.'" *Andriasian v. INS*, 180 F.3d 1033, 1046 & n.22 (9th Cir. 1999) (citation omitted).

As Mr. Biden previously argued, in *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court found the Attorney General bound by his own regulations for appointing the Watergate Special Prosecutor. President Nixon claimed the power as head of the Executive Branch to derail the investigation into him or to order his Attorney General to do so, but the Court disagreed. The authority to represent the United States had been conferred upon the Attorney General who delegated that authority to the Special Prosecutor, consistent with DOJ's regulations at the time. The Supreme Court explained:

[I]t is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done

so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it. *Id.* at 696.

That outcome was dictated by *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which precluded the Attorney General from exercising authority that he had delegated by regulation. The Court explained, "as long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner." *Id*. at 267; *see also Nixon*, 418 U.S. at 696 ("The Court held [in *Accardi*] that so long as the Attorney General's regulations remained operative, he denied himself the authority to exercise the discretion delegated to the Board even though the original authority was his and he could reassert it by amending the regulations."). *Nixon* also cited *Vitarelli v. Seaton*, 359 U.S. 535 (1959) (Secretary of the Interior could not discharge employee without following his own procedural regulations), and *Service v. Dulles*, 354 U.S. 363 (1957) (same for Secretary of State), which echoed this principle.

Thus, DOJ's regulations flatly precluded Attorney General Garland from appointing Mr. Weiss as Special Counsel. The Attorney General could eliminate the regulation, but, until then, the regulations are binding. Because the Indictment in this case was filed by an unauthorized Special Counsel, it must be dismissed.

## II.  DOJ VIOLATES THE APPROPRIATIONS CLAUSE BY FUNDING THIS SPECIAL COUNSEL'S INVESTIGATION AND PROSECUTIONS

The funds being spent on Special Counsel Weiss's investigation and prosecution of Mr. Biden were not appropriated by Congress. Special Counsel Weiss is not an *independent* counsel for purposes of the appropriation and that is by design. Again, the word "independent" is used to require independence from DOJ. This appropriation for "independent counsel" was created in 1987, when everyone understood that "independent" referred to the newly created Independent Counsel and the appropriation's reference to "other law" meant a role close to it in terms of independence. As noted above, the Special Counsel regulations adopted in 1999 were designed to eliminate that

5

independence.  *See* Daniel Huff, *Robert Mueller Has A Money Problem*, Wall St. J. (Mar. 24, 2019), https://www.wsj.com/articles/robert-mueller-has-a-money-problem-11553468712 (concluding the appropriation is inapplicable to Special Counsel). Regardless of whether a properly appointed Special Counsel is sufficiently "independent" to use this appropriation, a DOJ-insider like Mr. Weiss cannot be.

The Appropriations Clause is strictly enforced.  *See, e.g.*, *U.S. Dep't of Navy v. Fed. Lab. Relations Auth.*, 665 F.3d 1339, 1342 (D.C. Cir. 2012) (Kavanaugh, J.) ("Decisions of the Supreme Court and this Court have strictly enforced the constitutional requirement, implemented by federal statutes, that uses of appropriated funds be authorized by Congress.").   The Clause conveys a "straightforward and explicit command": No money "can be paid out of the Treasury unless it has been appropriated by an act of Congress."  *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (citations omitted). An appropriation must be expressly stated; it cannot be inferred or implied.  31 U.S.C. § 1301(d) ("A law may be construed to make an appropriation out of the Treasury . . . only if the law specifically states that an appropriation is made.").  A defendant has the right to challenge this separation of powers violation.  *See, e.g.*, *Collins v. Yellin*, 141 S. Ct. 1761, 1781 (2021) ("As we have explained on many prior occasions, the separation of powers is designed to preserve the liberty of all the people. . . . So whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge"); *see also Sheila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (defendant could challenge enforcement action where agency lacked authority under the Appointments Clause); *Bond v. United States*, 564 U.S. 211, 220 (2011) (defendant could challenge indictment on federalism grounds).

## III.   INJUNCTIVE RELIEF IS WARRANTED

Injunctive relief for a violation of the Appropriations Clause is warranted here. *See, e.g.*, *United States v. Pisarski*, 965 F.3d 738, 741 (9th Cir. 2020) (affirming Appropriations Clause injunction); *United States v. McIntosh*, 833 F.3d 1163, 1174 (9th Cir. 2016) (noting availability of injunctive relief for Appropriations Clause violations).

6

This Court acknowledged the availability of injunctive relief for Appropriations Clause violations, even noting it may be the preferred remedy.  D.E.122 at 6 n.3; *see also* D.E.67 at 26.  Specifically, Mr. Biden asks the Court to enjoin the Special Counsel from spending any money on the prosecution or investigation of Mr. Biden through the appropriation in Note to 28 U.S.C. § 591 and in the absence of an applicable appropriation by Congress.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC*, 555 U.S. 7, 20 (2008).  Although this Court rejected Mr. Biden's claim of an Appropriations Clause violation, Mr. Biden believes his claim has merit for the reasons explained above.  Nor is there any reason to question that the harm is irreparable.  In the Appropriations Clause injunction context, the First Circuit—citing the Ninth Circuit's decision in *McIntosh*—explained that is because "the alleged wrong is not the prosecution per se, but rather the use of federal funds . . . . Absent an injunction, the funds will be spent and cannot be unspent." *United States v. Bilodeau*, 24 F.4th 705, 712 (1st Cir. 2022).  The same is true here no matter the outcome of this case.  As to the final factor, the Ninth Circuit has repeatedly "stressed that we *presume* that a constitutional violation causes a preliminary injunction movant irreparable harm and that preventing a constitutional violation is in the public interest." *Baird v. Bonta*, 81 F.3d 1036, 1046 (9th Cir. 2023); *see also Holmes v. Harris*, 2021 WL 2272395, at *6 (C.D. Cal May 19, 2021) (explaining "the public's interest in vindicating constitutional violations" favors injunctive relief) (citing *United States v. Raines*, 362 U.S. 17, 27 (1960) ("[T]here is the highest public interest in the due observance of all the constitutional guarantees")).  That factor is easily met.

## IV.   MR. BIDEN'S MOTION IS NOT UNTIMELY

The Court struck Mr. Biden's *ex parte* application as untimely because Mr. Biden could have sought an injunction when he brought his Appropriations Clause challenge initially (D.E.122 at 4), but that should not bar Mr. Biden from seeking to enjoin *future*

constitutional violations. Such a time-bar would, in effect, immunize ongoing constitutional violations and have this Court convey a power on the Special Counsel to take *ultra vires* actions that the Constitution forbids. The Court cannot confer such a power on the Special Counsel and, accordingly, should enforce the Constitution.

The Court found that Mr. Biden's *ex parte* application time-barred by the Court's February 20, 2024 deadline for pretrial motions, finding it was not limited to motions to dismiss, but applied to any motion the parties knew they would file. D.E.122 at 5. But the parties continued to file a host of motions after that deadline, including motions *in limine*, that the parties knew they would file. Certainly, the scheduling order would not preclude motions regarding experts, to compel additional discovery, to modify conditions of release, to seek a specific jury selection process, or to preclude or strike improper testimony. It should not bar a challenge to ongoing constitutional violations either.

Critically here, Mr. Biden filed a timely motion claiming that the Appropriations Clause was violated by the February 20, 2024 deadline (D.E.26), so his legal claim of injury was timely raised. The Special Counsel states that the motion did not explicitly seek an injunction. Fair enough, but the question of remedy is considered separately from the claim and is for the court to decide. The relief provided by a court is not dependent on what a party has sought. *See, e.g.*, FRCP 54(c) (a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"). Just last week, the Supreme Court found in favor of a petitioner who brought a constitutional claim, but denied the damages remedy the petitioner sought and instead declared the appropriate remedy was prospective relief for others in the same circumstances. *U.S. Trustee v. John Q. Hammons Fall 2006, LLC.*, No. 22-1238 (U.S. June 14, 2024). In civil cases, for example, a prevailing plaintiff typically is awarded far less damages than they seek in a complaint. Particularly relevant here—they may even be awarded injunctive relief they never requested. *See, e.g.*, *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978); *see Sillas v. City of Los Angeles*, 2022 WL 17219073, at *4 (C.D. Cal. Feb. 1, 2022) (explaining pleadings do not control the remedy

a court may impose).  It is no different in criminal cases, where a defendant may seek dismissal for some prosecutorial abuse, but courts may impose a different remedy such as suppression (improperly obtained evidence), a continuance (to remedy discovery abuse), or injunctive relief (a gag-order or admonition against leaks).

Additionally, the motion sought to address *prior* Appropriations Clause violations that led to the indictment, but now Mr. Biden seeks to enjoin *future* violations of the Appropriations Clause.  As the Ninth Circuit explained: "Injunctive relief is designed to deter future misdeeds, not to punish for past conduct.  As a matter of law, therefore, plaintiffs could not obtain an injunction as to alleged past violations of their rights." *Loya v. INS*, 583 F.2d 1110, 1114 (9th Cir. 1978).

The Court seemed to agree with Mr. Biden that equitable remedies are inappropriate where legal remedies are adequate, but then quickly discounted that principle. D.E.122 at 5-6.  The Court is correct that it could find an Appropriations Clause violation and the Special Counsel could continue to break the law absent an injunction. *Id.*   Nevertheless, the Supreme Court has emphatically rejected a presumption that government officials will continue to violate the law after a court declares their conduct unlawful.  *See, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965).  In numerous cases, the Supreme Court has ordered declaratory relief finding government conduct unlawful, but refused to enjoin it because the Court assumes that government officials will comply with judicial decisions.  *See, e.g.*, *Sprint Comm's., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013); *Pfister*, 380 U.S. at 485 (addressing *Douglas v. City of Jeanette*, 319 U.S. 157 (1943), and *Murdock v. Pennsylvania*, 319 U.S. 105 (1943)).  Injunctive relief is appropriate only where government actors demonstrate they will not comply with federal court orders. *See, e.g. Pfister*, 380 U.S. at 485-86; *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016).

Mr. Biden trusts that if this Court told the Special Counsel he was violating the Appropriations Clause he would stop doing it, particularly as that would expose him to criminal penalties under the Anti-Deficiency Act.  *See* 31 U.S.C. §§ 1517, 1519.  Surely, if the Court had ruled that the Special Counsel was violating the Appropriations Clause

9

and he continued to do so, the Court would permit Mr. Biden to then seek injunctive relief. Finding a claim for such injunctive relief time-barred because it could have been brought sooner, would allow a constitutional violation to continue in perpetuity and the time-bar would serve no purpose. The same problem arises here.

The need for Mr. Biden to seek injunctive relief did not arise until after this Court refused to declare that the Special Counsel was appointed improperly and then was violating the Appropriations Clause. Mr. Biden reasonably expected that the Special Counsel would stop violating the Appropriations Clause had the Court found a violation, but instead the Court's decision gave the Special Counsel a green light to continue using the appropriation. Because Mr. Biden has been denied a legal remedy, he now must pursue an equitable remedy and then seek relief by interlocutory appeal.[3]

## CONCLUSION

The Court should enjoin the Special Counsel from continuing to fund his investigation and prosecution of Mr. Biden without an appropriation from Congress or promptly deny the motion so it can be appealed.

Dated: June 18, 2024                    Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)

---

[3] The Court described Mr. Biden moving to dismiss without explicitly seeking injunctive relief as a "tactical error" (D.E.122 at 9), but it was not, given that no need for injunctive relief was evident until the Court denied his claim for a remedy at law. Nor was it an effort to claim some improper advantage; Mr. Biden identified his claim as resting on the Appropriations Clause and noted injunctive relief as a possible remedy. Thus, there is no unfair surprise here. Congress abandoned the "hypertechnical, code-pleading regime of a prior era" by enacting the Federal Rules of Civil and Criminal Procedure. *Ashcroft v. Iqbal*, 549 U.S. 662, 678 (2009). The Supreme Court explains, "the Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure.'" *United States v. Resendiz-Ponce*, 549 US. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U. S. 374, 376 (1953)). The purpose of the rules is thwarted if courts resurrect technicalities through local rules and orders. Where constitutional rights and important separation of powers concerns are at stake, the Court should not let scheduling rules be applied in a hyper-technical fashion when there was no unfair surprise and both the Court and Special Counsel commented on the availability of injunctive relief. That is especially true in criminal cases, where a defendant should not have to suffer for mistakes by his counsel. Turning local rules and orders into snares for the unwary would multiply ineffective assistance of counsel claims.

1    AMachala@winston.com
2    WINSTON & STRAWN LLP
3    333 S. Grand Avenue, 38th Fl.
     Los Angeles, CA 90071-1543
4    Telephone: (213) 615-1700
     Facsimile:  (213) 615-1750
5
6    Abbe David Lowell (*admitted pro hac vice*)
     AbbeLowellPublicOutreach@winston.com
7    Christopher D. Man
     CMan@winston.com
8    WINSTON & STRAWN LLP
9    1901 L Street NW
     Washington, DC 20036
10   Telephone : (202) 282-5000
     Facsimile:   (202) 282-5100
11
12
     *Attorneys for Robert Hunter Biden*
13

DEFENDANT'S MOTION TO ENJOIN FUTURE APPROPRIATION CLAUSE VIOLATIONS
CASE NO. 2:23-CR-00599-MCS-1