DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
    950 Pennsylvania Avenue NW, Room B-200
    Washington, D.C. 20530
    Telephone: (771) 217-6091
    E-mail: LJW@USDOJ.GOV, DEH@USDOJ.GOV

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-cr-00599-MCS |
|---|---|
| Plaintiff, | |
| v. | **GOVERNMENT'S SIXTH MOTION IN LIMINE TO EXCLUDE THE DELINQUENT PAYMENT OF DEFENDANT'S TAXES** |
| ROBERT HUNTER BIDEN, | |
| Defendant. | Hearing Date: AUGUST 21, 2024<br>Hearing Time: 1:00 p.m.<br>Location: Courtroom of the Hon. Mark C. Scarsi |

    Plaintiff United States of America, by and through its counsel of record, hereby files its Motion in Limine to exclude evidence of the delinquent payment of the defendant's individual income taxes, some of which were paid by a third party more than ten months after the defendant learned he was under investigation.

    As an initial matter, the Ninth Circuit has consistently upheld the exclusion of evidence of remedial action taken after the taxpayer knew he was under investigation on the grounds that such evidence is irrelevant. Furthermore, the evidence should be excluded under a Federal Rule of Evidence 403 balancing test as the risk of confusing the jury would outweigh any minimal relevance to the defendant's intent at the time he allegedly committed the crimes.

The defendant opposes this motion.

This motion is based upon the attached memorandum of points and authorities, the indictment in this case, and any further evidence and argument as the Court may deem necessary.

Dated: July 31, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/
LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

The defendant failed to pay his individual income taxes for tax years 2016, 2017, 2018, and 2019 either at the time that the taxes were due, or, in the cases of the returns filed for tax years 2016 through 2018, at the time he delinquently filed his tax returns for those years. Though some of those taxes eventually were paid by a third-party, that evidence should be excluded because it is irrelevant to the defendant's state of mind at the time the crimes were committed and, because the tendency of the evidence to mislead and confuse the jury would strongly outweigh any minimal probative value.

I.  **FACTS**

In 2017 and 2018, the defendant earned millions of dollars in income. Indeed, the defendant reported on his delinquently filed returns that he earned gross total income of $2,376,436 in 2017 and $2,187,286 in 2018. ECF 1 at ¶ 27. During those years, the defendant's advisors repeatedly reminded him of his obligation to file returns and pay his taxes. *Id*. at ¶¶ 32-33, 54-56, 61, 70, 72, 74-83, 96-97. In spite of that advice, the defendant elected not to file the returns for those years at the times they were due. Further, he opted not to pay his income taxes, even though he had sufficient funds to pay some or all of the taxes at the time they were due. *Id*. at ¶¶ 69, 95. Rather, the defendant chose to fund an extravagant lifestyle. *Id*. at ¶¶ 37, 86-88, 101-104. When the defendant ultimately filed his 2017 and 2018 Forms 1040 in February 2020, and in so doing, self-assessed a total of $1,202,714 in taxes, he made no payment to the IRS. *Id*. at ¶¶ 85, 99. Not only did the defendant not pay his taxes at that time, but he attempted to evade his 2018 individual income taxes by filing false returns that reported personal expenses as business expenditures and underreported his income and tax due and owing. *Id*. at ¶¶ 117-44.

In January 2020, the defendant's accountants belatedly discovered that the defendant had never filed a 2016 Form 1040. *Id*. at ¶ 62. The accountants prepared a 2016 Form 1040 for the defendant that filed in June 2020. The defendant did not make any payment towards the self-assessed tax of $45,661. *Id*. at ¶ 47.

In July 2020, the law required the defendant to pay the taxes due and owing for the 2019 tax year. *Id*. at ¶ 154. Even though the defendant had funds available in 2020 to pay the taxes, he failed to pay any of the $197,372 self-assessed tax that he owed for that year either at the time they were due or at the time he filed the return. *Id*. at ¶¶ 156-159.

The defendant first confirmed that he was aware of the criminal tax investigation that led to the charges in this case in December 2020, when he publicly released the following statement to the press: "I learned yesterday for the first time that the U.S. Attorney's Office in Delaware advised my legal counsel, also yesterday, that they are investigating my tax affairs."[1] On October 18, 2021, more than ten months after the defendant became aware that he was the target of a criminal investigation, a third party paid most, but not all, of the defendant's outstanding individual income taxes, penalties and interest for tax years 2016 through 2019. ECF 27 at 10 (the defendant incorrectly claimed he "pa[id] all his taxes and penalties in 2021"). To be clear, the defendant has never paid the taxes he owes for tax year 2018 based on his actual income, as opposed to the income he falsely underreported to the IRS. Thus, to this day, the defendant continues to owe the United States Treasury outstanding taxes for that year.

## II.    LEGAL STANDARD

Federal Rule of Evidence 401 sets forth the test for relevant evidence, stating that "[e]vidence is relevant" if both (1) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. Determinations of relevance under Rule 401—just like determinations of prejudice or confusion under Rule 403—must be made "in the

---

[1] Matt Zapotosky, Devlin Barrett and Colby Itkowitz, "Hunter Biden Confirms He is Under Federal Investigation," *The Washington Post*, Dec. 9, 2020, *available at* https://www.washingtonpost.com/national-security/hunter-biden-under-federal-investigation/2020/12/09/3b7361be-3a64-11eb-9276-ae0ca72729be_story.html (Exhibit 1).

2

1  context of the facts and arguments in a particular case, and thus are generally not amenable
2  to broad per se rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

3        Under Rule 403, a court "may exclude relevant evidence if its probative value is
4  substantially outweighed by a danger of one or more of the following: unfair prejudice,
5  confusing the issues, misleading the jury, undue delay, wasting time, or needlessly
6  presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 comports with a defendant's
7  constitutional right "to present a complete defense." *Holmes v. South Carolina*, 547 U.S.
8  319, 324-27 (2006) (citations and internal quotation marks omitted); see *Montana v.
9  Egelhoff*, 518 U.S. 37, 42 (1996) (plurality opinion) (referring to Rule 403 as "familiar and
10 unquestionably constitutional").

11       The Ninth Circuit has consistently upheld the exclusion of late payments or
12 late-filed returns in tax cases. *See United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980);
13 *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004); *United States v. Baras*, 624
14 F. App'x 560, 560-61 (9th Cir. 2015). In *Ross*, the Ninth Circuit affirmed the district
15 court's exclusion of evidence that the defendant late-filed his returns and offered to pay
16 delinquent taxes "on the grounds of irrelevancy." *Ross*, 626 F.2d at 81. In *Pang*, the
17 defendant attempted to introduce evidence that he paid the taxes due for the charged years
18 while awaiting trial. The Ninth Circuit upheld the trial court's exclusion of the evidence
19 in the grounds that it was irrelevant. *Pang*, 362 F.3d at 1194 ("Were the rule otherwise,
20 tax evaders could avoid criminal prosecution simply by paying up after being caught.").
21 This is consistent with other circuits, particularly where—as here—the belated filing or
22 payment has been made after a target becomes aware of a criminal investigation. "[C]ourts
23 have repeatedly affirmed the exclusion of evidence of remedial action taken after the

taxpayer knows he is under investigation." *United States v. Beavers*, 756 F.3d 1044, 1050 (7th Cir. 2014).[2]

Even though the Ninth Circuit has consistently excluded remedial action, that line of cases should not be read as creating a *per se* rule. Rather, the appropriate way to proceed is under a Rule 403 balancing test. *See Baras*, 624 Fed. Appx. at 560-61 (approving the exclusion of late payments evidence under Fed. R. Evid. 403 on the grounds that it would "avoid a risk of confusing the issues and confusing the jury."). Courts have recognized that whether evidence of belated payment is relevant in these sorts of cases must be evaluated on "a case-by-case basis." *See, e.g.*, *Beavers*, 756 F.3d at 1050.

When determining whether to permit evidence of a subsequent act, a court should consider whether this evidence has any probative value to the defendant's state of mind at the time of the alleged criminal acts, and if so, whether the evidence "unduly entangle[s] the issues or confuse[s] the jury." *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952); *Beavers*, 756 F.3d at 1050-51 (upholding exclusion of amended returns filed after learning of criminal investigation, observing that such filings had "little bearing" on state of mind at time of filing original returns). This focus on state of mind at the time of the criminal offense stems from the Supreme Court's admonition that events occurring after the completion of the tax offense—such as payment of a tax debt or reporting of income—has no legal significance. *Sansone v. United States*, 380 U.S. 343, 354 (1965) ("[T]he intent to report . . . income and pay . . . tax in the future does not vitiate the willfulness required by [26 U.S.C. § 7203]"); *see also United States v. Houser*, 754 F.3d 1335, 1351 (11th Cir. 2014) ("Section 7203 of Title 26 clearly requires the timely filing of personal income tax returns"); *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) (eventual

---

[2] *See also United States v. Radtke*, 415 F.3d 826, 840-41 (8th Cir. 2005); *United States v. McClain*, 934 F.2d 822, 834-35 (7th Cir. 1991); *Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968), *cert. denied*, 393 U.S. 1092 (1969); *United States v. Stoehr*, 196 F.2d 276, 282 (3d Cir. 1952), *cert. denied*, 344 U.S. 826 (1952); *see also United States v. Philpot*, 733 F.3d 734, 748 (7th Cir. 2013).

filing of tax returns "does not negate willfulness in [defendant's] earlier attempts to evade his income tax liability").

In excluding evidence of remedial tax filings and payments, courts have cautioned that what takes place "after the fact" is "often feigned and artificial." *Radtke*, 415 F.3d at 840 (quoting *Post v. United States*, 407 F.2d 319, 325 (D.C. Cir. 1968)). Thus, a court can and should consider the fact that "self-serving exculpatory acts performed substantially after a defendant's wrongdoing is discovered are of minimal probative value as to his state of mind at the time of the alleged crime." *Radtke*, 415 F.3d at 840; *Beavers*, 756 F.3d at 1051 ("subsequent remedial actions may not be probative of the defendant's prior state of mind because such actions are equally consistent with (1) promptly correcting a genuine mistake and (2) trying to cover up a purposeful lie in the hope of avoiding prosecution"). Therefore, where the filing of late or amended tax returns is not probative of the defendant's state of mind at the time of his filing due date or the filing of false returns, evidence concerning such filing is properly excluded. *See, e.g.*, *Beavers*, 756 F.3d at 1051; *Radtke*, 415 F.3d at 840-41; *United States v. McClain*, 934 F.2d 822, 834 (7th Cir. 1991); *Ross*, 626 F.2d at 81.

### III. ARGUMENT

The United States anticipates that the defense may seek to introduce evidence regarding the delinquent payment of the defendant's individual income taxes for tax years 2016 through 2020 by a third party. But the belated payment evidence, which occurred well after the payments were due and the crimes were committed and after the defendant became aware that he was under investigation, should be excluded because it is irrelevant and because any probative value would be far outweighed by the potential for prejudice.

The defendant claims that he may introduce evidence regarding the delinquent payment for three reasons: (1) to "demonstrate that once he became sober in 2019 he made strides to begin addressing his tax delinquencies"; (2) to "explain, in a comparative fashion, the differences between his state of mind (required for the willfulness standard of

all of the charged tax violations) in prior years versus 2020 and 2021"; and (3) to "illustrate an important timeline of what happened in 2020 (when the government claims he willfully violated the tax laws) and 2021." ECF 110 at 3-4. But none of these reasons are relevant to the elements of the charged offenses.

First, the actions that the defendant—or others on his behalf—took to address his tax delinquencies in October 2021 have no bearing on his state of mind when he committed the charged offenses. The relevant time period for the charged offenses is when the defendant willfully failed to pay those taxes at the time they were due or when willfulness arose in 2020. It is plainly not relevant whether the defendant eventually complied with his tax obligations because, after he learned he was under criminal investigation, he got a third party to pay some of the taxes he should have paid years earlier. Fundamentally, the after-the-fact payment of the defendant's taxes sheds no light on his state of mind at the time he committed the charged crimes, nor does it have any other relevance to what the jury will determine at trial. *See Ross*, 626 F.2d at 81 ("[I]ntent to report income and pay tax in the future does not vitiate the willfulness" requirement for tax offenses occurring in past years.). Put simply, whatever actions the defendant may have taken to address his tax delinquencies occurred after the time period relevant to the elements of the offenses, and they should be viewed as the type of feigned and artificial act taken "to cover up a purposeful lie in the hope of avoiding prosecution." *Beavers*, 756 F.3d at 1050.

Second, the defendant's contention that the belated payment is relevant to "explain" the "difference between his state of mind in prior years versus 2020 and 2021" makes little sense. As explained, the relevant state of mind occurred *before* the date of the payment in October 2021. Why the defendant's purported efforts to pay his delinquent taxes in 2021 "explain[s]" anything about his state of mind before that date is entirely unclear. Moreover, it was a third-party who paid the defendant's taxes, not the defendant himself.

Third, the timeline of "what happened . . . in 2021," such as the October 2021 payment, is not relevant because it falls outside the scope of the conduct charged in the

indictment. *See generally* ECF 1. None of the events underlying the offenses charged occurred in 2021. The government alleges that the defendant engaged in unlawful conduct in 2020 that gave rise to some of the charges in this case, but none of the alleged conduct at issue in this case took place in 2021. Thus, the "remedial action taken" after that the relevant time period—particularly when, as here, "the taxpayer knows he is under investigation"—is properly excluded. *Beavers*, 756 F.3d at 1050 (collecting cases).

Even if the late payment of the defendant's outstanding taxes was somehow relevant, the remediation evidence would pose a severe threat of confusing and misleading the jury, and should be excluded on that basis pursuant to Rule 403. That is, the evidence could give the jury the misimpression that the prosecution had no basis as the government had been made whole, which it has not been because the defendant has not paid the taxes he owes as a result of his tax evasion in 2018. In the alternative, jurors could be confused that the government had not met its burden to show that taxes were owed for the failure to pay counts or that there was not a tax due and owing for the evasion count, which there is. The only foreseeable use of belated payment evidence would be to encourage the jury to nullify on the ground that the IRS had received whatever the defendant owed, and nullification is not a proper basis for offering evidence. Furthermore, since a third-party paid the taxes, allowing the defendant to introduce such evidence would lead to a mini-trial over who paid the taxes and their intentions. Given the risk of confusion of issues and nullification, the evidence should be excluded even if it were somehow determined to be relevant, which is not.

## IV.   CONCLUSION

As the late payment of taxes is not relevant and would be more prejudicial than probative, the Court should issue an order excluding such evidence.