Mark J. Geragos (SBN 108325)
Tina Glandian (SBN 251614)
Setara Qassim (SBN 283552)
GERAGOS & GERAGOS APC
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone:   (213) 625-3900
Facsimile:    (213) 232-3255

Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036-3508
Telephone:   (202) 282-5000
Facsimile:    (202) 282-5100

*Attorneys for Robert Hunter Biden*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　Defendant. | **Case No. 2:23-CR-00599-MCS-1**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF JURISDICTION** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Special Counsel's request that the Court strike this Motion (as amended) or find it untimely to avoid addressing its merits should be denied because the Motion goes to the jurisdiction of the Court and whether the Special Counsel has standing to instigate this prosecution on behalf of the United States.  Jurisdictional issues can be raised at any time, and it is important for the Court to determine the merits of Mr. Biden's jurisdictional challenge to prevent a possibly needless and costly trial.

On the merits, the Special Counsel seems to acknowledge that recent judicial opinions—namely Justice Thomas' concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347 (2024), and Judge Cannon's dismissal of an indictment by an unauthorized Special Counsel in *United States v. Trump*, 2024 WL 3404555 (S.D. Fla. July 15, 2024)—cast doubt on whether Mr. Weiss was validly appointed Special Counsel, but he states that he "disagrees with the reasoning in those opinions." (D.E.142 at 9.)  To support his position, Special Counsel Weiss repeats the same arguments that were raised by Special Counsel Jack Smith and then rejected in those opinions.  The issue is now fully briefed and it will be up to this Court, and likely higher courts, to decide whether they agree with Justice Thomas and Judge Cannon over the Special Counsel.

Special Counsel Weiss also suggests that those opinions are distinguishable because he was validly appointed as a U.S. Attorney in Delaware, unlike Special Counsel Smith who was appointed from outside the government, but the Special Counsel's own framing of this issue disproves the relevance of this distinction.  The Special Counsel correctly notes that Mr. Biden "argues only that Special Counsel Weiss cannot pursue this case in California because the 'office of a Special Counsel' was not 'established by law.'"  (D.E.142 at 7.)  That defect was decisive in the analysis by Justice Thomas and Judge Cannon, and the fact that Congress did not

establish the office of Special Counsel remains true in this case, regardless of whether the Attorney General has sought to fill that office with someone from within or outside the federal government.

## ARGUMENT

### I. THE COURT SHOULD NOT STRIKE THE MOTION

The Special Counsel urges the Court to strike the Motion based on some alleged misstatements, but there are none, and striking the Motion would be an improper remedy in any event.  First, the Special Counsel complains that Mr. Biden erred in claiming that Mr. Weiss did not bring charges against him as U.S. Attorney, but Mr. Biden already has addressed that issue, clarified that by "charges" he meant indictments, and filed an amended motion reflecting this clarification.  (*See* D.E.139.) All parties and this Court have been well-aware that Mr. Weiss filed two Informations in Delaware as U.S. Attorney as part of an effort to resolve his investigation of Mr. Biden through a diversion agreement and plea agreement (Mr. Biden asked the Court to take judicial notice of these facts) so Mr. Biden plainly was not attempting to mislead anyone that this did not happen.  Instead, his point was that after those Informations were dismissed because Mr. Weiss chose to abandon the diversion agreement and plea agreements, Mr. Weiss sought and obtained a Special Counsel appointment before obtaining any indictments.  He brought those charges in his capacity as Special Counsel, including in this jurisdiction which was beyond his normal authority as the U.S. Attorney in Delaware.  The critical point for the Motion is that this Indictment in California was brought by Mr. Weiss in his Special Counsel capacity, which is something he does not deny and for which the Motion demonstrated he had no jurisdiction to do as Delaware U.S. Attorney.

Second, although Special Counsel Weiss denies that this Indictment was brought after "unprecedented political pressure" was placed on him to abandon the diversion agreement and plea agreement and to instead prosecute Mr. Biden (D.E.142

at 2), that is exactly what happened. Mr. Biden has catalogued the political pressure exerted on Mr. Weiss, and Members of Congress have claimed credit for changing Mr. Weiss' mind. (*See* D.E.27 at 5–9, 13.) While the Special Counsel claims those Members of Congress did not influence him, the record of events suggests otherwise. When Mr. Weiss formally proposed to resolve his issues with Mr. Biden through a plea agreement to two tax misdemeanors and a diversion agreement for a gun charge, Republican Members of Congress criticized that approach, attempted to intervene to stop it, and held congressional hearings to chastise him. *See* (D.E. 27 at 5-7.) Only then did Mr. Weiss scrap the deal that his office signed, and instead seek Special Counsel status to bring the more serious felony charges in Delaware and here in California—just as his critics in Congress demanded. (*See id.* at 2 & 6.) What the Special Counsel fails to address is what other event occurred to suddenly change Mr. Weiss' position and prompt him to renege on the agreement. Between the time the agreement was reached and the time the Special Counsel brought the present indictments, there was no newly-discovered evidence and no relevant change in the law (except more favorable to defendants). Mr. Biden was not wrong in stating that pressure was placed on Mr. Weiss to indict, whether or not he states that pressure influenced his decision.

Third, the Special Counsel surprisingly claims that this "prosecution" began when Mr. Weiss was U.S. Attorney because Mr. Biden signed tolling agreements at that time. A prosecution begins with a charging document, not an investigation or a tolling agreement. For a party taking issue with the fact that in Mr. Biden's Motion the word "charges" was used instead of "indictment.," this is an odd assertion. A "prosecution" and a "tolling agreement" are not the same thing. The former does not begin until an indictment is filed. *See Kirby v. Illinois*, 406 U.S. 682, 690 (1972); *see also* 18 U.S.C. § 3282(a) (explaining the statute of limitations is keyed to the filing of an indictment). Mr. Weiss did not file this Indictment until he was appointed as

Special Counsel. While a tolling agreement allows the government to continue its *investigation* before seeking an indictment, a person under investigation is not deemed to be *prosecuted* while under investigation. If being investigated counted as a prosecution, the number of people prosecuted in this country would go up exponentially and many people would have been "prosecuted" without even knowing it. The word "prosecution" cannot be given the more than "inartful" meaning the Special Counsel ascribes to it. Far from a prosecution, the tolling agreements were merely a vehicle used to allow discussions between the prosecutors and Mr. Biden's counsel to continue, ultimately leading not to a prosecution but to a *non*-prosecution agreement (before the U.S. Attorney changed his mind).

Fourth, the Special Counsel claims that Mr. Biden cannot support his claim that the U.S. Attorney for this District declined to prosecute him (D.E.142 at 2); but the fact is that the U.S. Attorney in this District plainly has not prosecuted Mr. Biden. The Special Counsel objects to Mr. Biden's reliance upon a *Politico* article for this point, as though that were somehow improper, but he ignores that the *Politico* article addresses U.S. Attorney Martin Estrada's testimony before Congress. U.S. Attorney Estrada testified that a career prosecutor in his office reviewed the potential charges suggested by Mr. Weiss and recommended that he should not join in the prosecution, and that U.S. Attorney Estrada told Mr. Weiss that he would not join in the prosecution on an October 19, 2022 call. *See* D.E. 133-2 (citing to U.S. Attorney Estrada's testimony before the House Judiciary Committee[1] and stating that on October 19, he and Mr. Weiss "discussed our [Office's] analysis of facts and law to explain to him [Mr. Weiss] why we would not be cocounseling on the case…").[2] The

---

[1] The full transcript of Mr. Estrada's testimony on October 24, 2023 before the House Judiciary Committee is publicly filed as Document 1-18 in the United States District Court for the District of Columbia, case number 1:24-cv-00815-ACR.

[2] A review of Mr. Estrada's full congressional interview describes his review of the investigative file, analysis of factual and legal issues involved, and the Justice Manual guidelines before deciding not to donate resources to join this case.

U.S. Attorney has primary jurisdiction in this District and could have brought this Indictment but, despite his awareness of the potential charges Mr. Weiss identified, he did not bring charges on his own or join in this prosecution.

### A. Mr. Biden's Motion Is Timely

The Motion raises new arguments as to the jurisdictional defect in this case which the Court should address on the merits; the Court should not accept the Special Counsel's invitation to avoid doing so. The claimed misrepresentations are not what the Special Counsel asserts, and the principal case the Special Counsel relies on does not support its request. The government cites *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991), for the proposition that Appointments Clause challenges are "nonjurisdictional structural constitutional objections" (D.E.142 at 4), but he omits the rest of the sentence: "that could be considered on appeal whether or not they were ruled upon below." *Freytag*, 501 U.S. at 879. The government in *Freytag* had objected that petitioners "waived their right to challenge" the appointment of a judge because they consented to trial before the judge and did not challenge the judge's appointment until after trial, but the Supreme Court held that the constitutional challenge should be heard anyway—even though it ultimately rejected that challenge on the merits. It noted that it heard a similar challenge in *Lamar v. United States*, 241 U.S. 103 (1916), "despite the fact that it had not been raised in the District Court or in the Court of Appeals or even in this Court until the filing of a supplemental brief upon a second request for review." *Freytag*, 501 U.S. at 879 (quoting *Glidden Co. v. Zdanok*, 370 U.S 530, 536 (1962)). Thus, if the issue can be considered on appeal, even if raised for the first time there, it surely can be considered by this Court now before any appeal is taken.

The Special Counsel also misreads the word "nonjurisdictional" in *Freytag*, which is used in discussing the Supreme Court's prior decision in *Glidden*. The line

from *Freytag* is "*Glidden* expressly included Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." 501 U.S. 878-79. Both *Glidden* and *Freytag* addressed the government's claim of waiver by petitioners who did not object on Appointments Clause grounds in the lower court and, ordinarily, such waiver will bar judicial review on appeal. Nevertheless, both *Glidden* and *Freytag* did hear the claim because the waiver rule is not jurisdictional. *Glidden* made clear that the alleged Appointments Clause violation is jurisdictional: "this Court has treated the alleged defect as 'jurisdictional' and agreed to consider it on direct review even though not raised at the earliest practicable opportunity." 370 U.S. at 356. *Freytag* agreed, explaining:

> The alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation. It is true that, as a general matter, a litigant must raise all issues and objections at trial. But the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome what Justice Harlan called "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers."

501 U.S. at 879 (citation omitted). What *Freytag* described as "[t]he structural principles embodied in the Appointments Clause" are too important to be defeated by non-jurisdictional appellate waiver doctrines. *Id.* at 880.

Unlike in *Freytag*, the Appointments Clause challenge here is not directed at the tribunal, but to the Special Counsel as a litigant, which is essentially a question of standing. "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Not all government appointees have standing to litigate claims. *See id.* at 819 (explaining "[w]e have always insisted on strict compliance with this jurisdictional standing requirement" in

denying Members of Congress standing to challenge the constitutionality of the Line Item Veto Act). Mr. Biden's argument is that the Special Counsel is not the proper party to bring this Indictment. Although the Special Counsel seeks to distinguish the cases cited by Mr. Biden, the Special Counsel's description of those cases show they are on point. (D.E.142 at 4 n.2 ("*United States v. Durham*, 941 F.2d 886, 891-92 (9th Cir. 1991) (alleging that prosecutor was not authorized to bring case)").)[3]

In contrast with the Ninth Circuit decision in *Durham*, cited by Mr. Biden, the Special Counsel invokes out-of-circuit decisions in *United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001), and *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996), which found that an improperly appointed prosecutor did not pose a jurisdictional problem so long as the government itself had the power to prosecute. (D.E.142 at 5.) But that is not the law in the Ninth Circuit.

The premise of *Suescun* and *Fitzhugh* is essentially a no-harm, no-foul rule where an action by an improperly appointed prosecutor is deemed permissible if hypothetically a properly-appointed prosecutor could bring the same indictment, but the Supreme Court has expressly rejected that view The Appropriations Clause issue is not whether the government has the authority to take an action, but whether the person who decided to take a government action was properly appointed to make that decision on the government's behalf.

*Collins v. Yellin,* distinguished separation of powers cases that "involve[] a Government actor's exercise of power that the actor did not lawfully possess," including where a government official was improperly "appointed," from cases that do not. 594 U.S. 220, 258 (2021). As Justice Gorsuch explained, that is because an

---

[3] The Special Counsel is off base in citing the unpublished and non-precedential opinion in *United States v. Donziger*, No. 11-CV-691 (LAK), 2021 WL 3141893, at *53 (S.D.N.Y. July 26, 2021). The defendant there objected to the District Court appointing counsel to prosecute a contempt of court charge, but the Court explained that it has the inherent authority to prosecute contempt charges which provides jurisdiction. *Id.* That is a very different context.

Appointment Clause violation means "the officers could 'not be entrusted with executive powers' from day one, and the challenged actions were 'void.'" *Id. at* 277 (Gorsuch, J. concurring) (citations omitted). *Collins* requires that "[t]he remedy in those cases, invalidation of the unlawful actions, flows 'directly from the government actor's lack of authority to take the challenged action in the first place.'" *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 642 (5th Cir. 2022) (citation omitted). If the Special Counsel was not properly appointed, filing the Indictment did not confer jurisdiction in this Court even if some other prosecutor could have filed the same Indictment.

Accordingly, this is a jurisdictional defect, and it can timely be considered under Federal Rule of Criminal Procedure 12(b)(2); at the very least, good cause exists to consider the issue now under Rule 12(c)(3). Indeed, given that cases like *Freytag*, *Glidden,* and *Lamar* hold that Appointments Clause challenges can be raised for the first time on appeal, there is no reason for this Court not to review Mr. Biden's Motion now to prevent a possibly needless and costly trial.

Nor would it be proper to strike the motion as Special Counsel requests because the Court must consider a potential defect in its jurisdiction. The Supreme Court has made clear that "federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990) (alteration in original). Accordingly, "it is well established that the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). That obligation extends to the district courts. *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015).

It is understandable why the Special Counsel would prefer this Court not address the merits of Justice Thomas' concurring opinion in *Trump*, Judge Cannon's

dismissal of the indictment filed by Special Counsel Smith, or the arguments in Mr. Biden's Motion, but the Court should not ignore a critical threshold question as to its jurisdiction. To do so could give effect to an unconstitutional appointment of a Special Counsel and his improper prosecution. The Constitution does not give any federal court the authority to rebalance the separation of powers by overlooking Appropriations Clause violations in this way.

## II. THE SPECIAL COUNSEL'S APPOINTMENT VIOLATED THE APPOINTMENTS CLAUSE

On the merits, it is quite simply up to this Court to decide whether it agrees with Justice Thomas and Judge Cannon that the office of Special Counsel must be established by Congress before the Attorney General can appoint anyone to fill it. The Special Counsel "disagrees with the reasoning in those opinions" and has regurgitated the same explanations offered by Special Counsel Smith that both Justice Thomas and Judge Cannon found lacking. (D.E.142 at 9.) Mr. Biden stands on his briefing explaining why Justice Thomas and Judge Cannon properly rejected these very arguments.

The only purported distinction Special Counsel Weiss claims is that he was appointed as a U.S. Attorney unlike Special Counsel Smith, who was appointed from outside the government, but that changes nothing. The dispositive fact is that Congress did not create an office of Special Counsel for the Attorney General to fill. That fact does not change whether the Attorney General seeks to fill this position—which Congress did not create—with someone from within the government or outside it.

To be sure, Judge Cannon did address the statutory authority relied upon by Special Counsel Smith and she easily dispensed with it because those statutes did not provide the Attorney General authority to appoint anyone new; they merely allowed the delegation of certain functions to an existing government official. As a sitting U.S.

Attorney, the Attorney General plainly could use those same authorities to delegate certain functions to Mr. Weiss, for example, by making him a Special Assistant to U.S. Attorney Estrada with respect to a prosecution initiated by that Office. But the Attorney General went beyond delegating Mr. Weiss specific functions, instead giving him an entirely new office entitled "Special Counsel" with powers in geographic scope that exceed the power of any U.S. Attorney.

Mr. Weiss resists this reality, insisting that he "was *already* Senate-confirmed and *already* has the power of a United States Attorney" while ignoring that he was appointed and confirmed only to be the U.S. Attorney for the *District of Delaware*. (D.E.142 at 11.) The President appointed and the Senate confirmed a *different* person to be the U.S. Attorney in the Central District of California, with the authority to decide what cases would be prosecuted in this District. Government appointees are not fungible. The appointments process fills positions on an office-by-office basis, based on who the President and Senate believe are right for that particular office. The President and Senate envisioned that Mr. Weiss would make charging decisions and prosecute cases in Delaware only, not on the other side of the country in California. They appointed and confirmed U.S. Attorney Estrada to do that. It is not the Attorney General but the President and Senate who decide who should have which job, and the Appointments Clause does not give the Attorney General the authority to make that call or to take a musical chairs approach to appointments. In short, Congress did not create the position of Special Counsel or entrust anyone with the powers held by such office. Thus, the Attorney General had no constitutional authority to create such an office and then fill it with someone of his choice.

## CONCLUSION

The Court should dismiss the Indictment.

Dated: August 2, 2024                    Respectfully submitted,

/s/ *Mark J. Geragos*
Mark J. Geragos (SBN 108325)
Tina Glandian (SBN 251614)
Setara Qassim (SBN 283552)
GERAGOS & GERAGOS APC
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

/s/ *Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750


Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Counsel for Robert Hunter Biden*

1-28 shown in margin

# CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, I filed the foregoing Reply Brief with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ *Mark J. Geragos*
Mark J. Geragos

*Counsel for Robert Hunter Biden*

12
DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF JURISDICTION
CASE NO. 2:23-CR-00599-MCS-1