DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
 950 Pennsylvania Avenue NW, Room B-200
 Washington, D.C. 20530
 Telephone: (771) 217-6091
 E-mail: Leo.Wise@USDOJ.GOV, DEH@USDOJ.GOV

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 23-cr-00599-MCS |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S FOURTH MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO ALLEGED IMPROPER POLITICAL INFLUENCE AND/OR CORRUPTION |
| v. | |
| ROBERT HUNTER BIDEN, | |
| Defendant. | Hearing Date: August 21, 2024<br>Hearing Time: 1:00 p.m.<br>Location: Courtroom of the Hon. Mark C. Scarsi |

 Plaintiff United States of America, by and through its counsel, hereby responds to defendant's fourth motion *in limine* to exclude reference to alleged improper political influence and/or corruption. (Dkt. 163) (the "Motion").

//

//

//

This opposition is based upon the attached memorandum of points and authorities, the attached declaration of Derek E. Hines, the filings and records in this case, and any further argument as the Court may deem necessary.

Dated: August 7, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

LEO J. WISE
Principal Senior Assistant Special Counsel

_____
DEREK E. HINES
Senior Assistant Special Counsel

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The defendant has moved to exclude six (6) different topics, framing his overall motion as a request to exclude "alleged improper political influence and/or corruption." Motion at 1. At the outset, the government notes that the defendant has accurately represented the government's position on only one of the six topics he raises. As explained below, the defendant did not even seek the government's position on four of the topics he raises and misstated the government's position on another.

The defendant provides no factual basis to support his assertion that "many exhibits" the government seeks to introduce are "outside the scope of the Indictment" other than two exhibits on an exhibit list that was provided to the defense in May 2024. Motion at 5 (referencing GX-267 and GX-262). His motion is an outdated copy-and-paste of a motion he previously filed before he asked the Court to continue the June trial date to September. The two exhibits he references in the motion are not on the amended exhibit list that the government provided to the defendant on July 18, 2024, prior to the defendant filing the instant motion on July 31, 2024. Hines Decl. at 2.

Absent from the defendant's motion is any reference to facts and evidence in the *Jencks* production that he received on May 24, 2024. Hines Decl. at 3. In Section II, the government provides a background summary of some of the evidence that will be admitted at trial related to the payments the defendant received from his foreign business dealings, which are relevant to the charges in this case. In Section III, the government addresses each of the six topics the defendant seeks to exclude. For the reasons that follow, the defendant's motion should be denied.

## II. BACKGROUND

As alleged in the indictment, the defendant's roles as a lawyer, lobbyist, consultant, and businessperson generated substantial income to him, including compensation from foreign businesses in foreign countries. Indictment, Dkt. 1 at ¶ 1, 5. His foreign business dealings included serving on the board of a Ukrainian industrial conglomerate and a

Chinese private equity fund. *Id.* at ¶ 2, 6, 8. He also entered into an oral agreement with Business Associate 1 purportedly to help a Romanian businessperson, G.P., contest bribery charges he was facing in Romania. *Id.* at ¶ 7.

The government anticipates Business Associate 1 will testify that[1]:

- Business Associate 1 and the defendant were in the lobbying and consulting business together.
- G.P. was a Romanian businessman who was under criminal investigation in Romania.
- G.P. sought to retain Business Associate 1, the defendant, and Business Associate 2, to attempt to influence U.S. government agencies to investigate the Romanian criminal investigation of G.P, and thereby cause an end to the investigation of G.P. in Romania.
- Business Associate 1 and the defendant were concerned that lobbying work might cause political ramifications for the defendant's father. Business Associate 1 and G.P. signed a "Management Services Agreement" where Business Associate 1's legal entity would purportedly provide management services to real estate properties in Romania, but that was not actually what G.P. was paying for. In reality, Business Associate 1 and G.P. agreed that Business Associate 1 would receive compensation for work by Business Associate 1, the defendant, and Business Associate 2, to attempt to influence U.S. government agencies to investigate the Romanian investigation of G.P., and Business Associate 1 would pass approximately 1/3 to the defendant as his compensation and approximately 1/3 to Business Associate 2 as his compensation.

---

[1] Since the defendant has failed to provide the Court with any facts related to Business Associate 1, the government is separately moving to file an exhibit under seal which is a transcript of statements by Business Associate 1, and features some of the questions the government may ask at trial. *See* Exhibit 1 (filed with separate motion).

As alleged in the indictment, Business Associate 1's entity received approximately $3,101,258, which was split roughly into thirds between the defendant, Business Associate 1, and Business Associate 2. *Id.* at ¶ 7.

As alleged in the indictment, the government will also introduce at trial evidence of the defendant's business dealings with CEFC China Energy Co. Ltd ("CEFC"), a Chinese energy conglomerate, and his compensation for his position on the board of a Ukrainian energy industrial conglomerate. This evidence will *not* include evidence that the defendant performed lobbying activity in exchange for this compensation. Rather, the evidence will show the defendant performed almost no work in exchange for the millions of dollars he received from these entities.

### III.   ARGUMENT

The first category of evidence the defendant seeks to exclude is any "reference to *allegations* that Mr. Biden (1) acted on behalf of a foreign principal to influence U.S. policy and public opinion . . ." Motion at 3 (emphasis added). The government does not intend to reference *allegations* at trial. Rather, the government will introduce the evidence described above, including that the defendant and Business Associate 1 received compensation from a foreign principal who was attempting to influence U.S. policy and public opinion and cause the United States to investigate the Romanian investigation of G.P in Romania.

Federal Rule of Evidence 401 sets forth the test for relevant evidence, stating that "[e]vidence is relevant" if both (1) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. For Count 2, the government must prove that the defendant owed taxes on his income for the calendar year ending December 31, 2017. *See* Dkt. 159-1, Gov't Proposed Instruction No. 34 (Failure to Pay). The purpose and structure of the payments and the nature of the work described above are relevant because they establish that the defendant received income when payments were made by Business

Associate 1 and the year in which the defendant earned the income. *See United States v. Hoegel*, 723 F. App'x 421, 424 (9th Cir. 2018) (unreported). Moreover, the evidence of what the defendant agreed to do and did do for G.P. demonstrates the defendant's state of mind and intent during the relevant tax years charged in the indictment. It is also evidence that the defendant's actions do not reflect someone with a diminished capacity, given that he agreed to attempt to influence U.S. public policy and receive millions of dollars pursuant to an oral agreement with Business Associate 1 in an arrangement that concealed the true nature of the work he was performing for G.P. *See id.* at Gov't Proposed Instruction No. 29.1 ("Diminished Capacity").

Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The defendant does not argue any specific statement from Business Associate 1 is unfairly prejudicial; rather, he makes a general claim that any "reference to improper political influence" is unfairly prejudicial. Business Associate 1 has not said that the defendant engaged in *improper* political influence. With respect to exhibits, the defendant does not claim that exhibits shown to Business Associate 1 risk confusion of issues or misleading the jury (nor does his motion cite to any exhibits shown to Business Associate 1). Because there is no risk of unfair prejudice, and because the relevant evidence has substantial probative value, the Court should deny the defendant's motion as to this first category of evidence.

In his second and third categories, the defendant asks that the Court exclude "allegations that Mr. Biden . . . (2) *violated* FARA, and (3) *improperly* coordinated with the Obama Administration . . ." Motion at 2 (emphasis added). The government was asked a different question by the defendant when he requested its position on categories 2 and 3. The defendant asked for the government's position on introducing "testimony, evidence, suggestion that Mr. Biden was acting on behalf of a foreign principal to influence US

4

policy or public opinion, including *any references* to FARA or *alleged coordination* with the Obama/Biden administration." Hines Decl. at 4, Exh. 2. However, in their motion, the defense's request is narrower, asking the Court only to exclude "reference to *allegations*" that the defendant "(2) *violated* FARA" and "(3) *improperly* coordinated with the Obama Administration." Motion at 2 (emphasis added). The government does not intend to reference *allegations* that the defendant *violated* FARA or *improperly* coordinated with the Obama Administration. However, as the defense is aware from the *Jencks* production it received on May 24, 2024, and exhibits in the government's amended exhibit list it received on July 18, 2024, the government will introduce evidence that Business Associate 1 structured a business relationship in an effort to avoid having to register as a foreign agent, and that the defendant and his business partners did reach out to government officials, specifically the United States Department of State. That evidence is relevant because it establishes that the defendant received income, when he earned the income, and his state of mind was not consistent with someone with a diminished capacity. The introduction of that evidence, however, does not mean that the government will also reference *allegations* that the defendant *violated* FARA and that contacts with government officials were *improper*; such allegations are not relevant to the charges in this tax case. The defendant's motion as to these issues is therefore moot.

In his fourth and fifth categories, the defendant asks the Court to exclude "allegations that Mr. Biden . . . (4) received direct compensation from any foreign state" and "(5) received compensation for actions taken by his father that impacted national or international politics." Motion at 2. The defendant never asked the government for its position on these two categories. Hines Decl. at 4, Exh. 2. The government can confirm it does not intend to introduce evidence in this tax case of *direct* compensation from a foreign *state* or evidence that the defendant received compensation for actions taken by his father that impacted national or international politics. The defendant's motion as to these issues is moot.

5

In his sixth category, the defendant asks the Court to exclude "allegations that Mr. Biden . . . (6) funneled money to his father or any related alleged corruption." Here, the defendant misrepresents the position of the government by claiming the government opposes this request. On May 17, 2024, defense counsel asked for the government's position on "Exclud[ing] evidence/testimony about a theory that Mr. Biden was trying to funnel money to Joe Biden (or anything else related to Joe Biden and alleged corruption)." Hines Decl. at 4, Exh. 2. The government responded on May 21, 2024, and confirmed, "We do not intend to introduce evidence/argue that the defendant was trying to funnel money to Joe Biden." *Id.* The defendant's motion claims the government opposes this request, but it does not. The Court can therefore deny that aspect of the motion as moot.

## IV.    CONCLUSION

As explained above, the defendant did not ask for the government's position on four of the topics he raises and has misstated the government's position on another; in light of the government's response, the Court should deny as moot the defendant's motion as to those five topics. With respect to his first topic, "allegations that Mr. Biden (1) acted on behalf of a foreign principal to influence U.S. policy and public opinion," the defendant did receive compensation from a foreign principal to attempt to influence U.S. policy and public opinion, as alleged in the indictment, and this evidence is relevant and not unfairly prejudicial. Accordingly, the government respectfully requests that the Court deny the defendant's motion as to the first topic.

**DECLARATION OF DEREK E. HINES**

I, Derek E. Hines, declare as follows:

1. I am Senior Assistant Special Counsel and represent the government in the prosecution of <u>United States of America v. Robert Hunter Biden</u>, No. CR 23-cr-00599-MCS.

2. An Amended Exhibit List was provided to the defendant on or about July 18, 2024.

3. A discovery production containing *Jencks* materials, including statements of Business Associate 1, was provided to the defendant on or about May 24, 2024.

4. On Friday, May 17, 2024, at 6:54 PM, counsel for the defendant sent an email to government counsel requesting the government's position on various motions in limine. On Monday, May 20, 2024, at 4:32 PM, counsel for the government responded to this email and provided the government's positions. A true and correct copy of these two emails are attached as Exhibit 2.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed in the Commonwealth of Pennsylvania on August 7, 2024.

_____
DEREK E. HINES
Senior Assistant Special Counsel