1

```
11:44:31  1          IN THE UNITED STATES DISTRICT COURT

        2            FOR THE DISTRICT OF DELAWARE

        3

        4  UNITED STATE OF AMERICA, )
                                    )
        5               v.          ) Criminal Action
                                    ) No. 23cr61(MN)
        6  ROBERT HUNTER BIDEN,     )
                                    )
        7          Defendant.       )

        8

        9
                        Friday, May 24, 2024
       10               12:00 p.m.
                        Pretrial Conference
       11

       12               Courtroom 4A
                        844 King Street
       13               Wilmington, Delaware

       14

       15
           BEFORE:  THE HONORABLE MARYELLEN NOREIKA
       16            United States District Court Judge

       17

       18

       19  APPEARANCES:

       20

       21          OFFICE OF THE SPECIAL COUNSEL
                   BY:  DEREK E. HINES, ESQ.
       22          BY:  LEO WISE, ESQ.

       23

       24                 Counsel for the Plaintiff

       25
```

2

APPEARANCES CONTINUED:

DALTON & ASSOCIATES, P.A.
BY:  BARTHOLOMEW J. DALTON, ESQ.
BY:  CONNOR DALTON, ESQ.

-and-

WINSTON & STRAWN LLP
BY:  ABBE DAVID LOWELL, ESQ.
BY:  DAVID KOLANSKY, ESQ.

Counsel for the Defendant

_ _ _ _ _ _ _ _ _ _ _ _

12:05:59  THE COURT:  All right.  Good morning, everyone.
12:06:24  Please be seated.
12:06:27  All right.  So everyone is prepared to proceed?
12:06:28  Mr. Hines?
12:06:34  MR. HINES:  Yes, Your Honor.
12:06:35  THE COURT:  Mr. Lowell?
12:06:36  MR. LOWELL:  Yes, ma'am.
12:06:37  THE COURT:  All right.  Okay.
12:06:38  We're here for the pretrial conference.  We have
12:06:39  a number of Motions in Limine, nine from the government,
12:06:43  four from the Defendant.  Before turning to the trial

3

12:06:50  logistics and discussing anything else that you all want to
12:06:55  discuss, I wanted to rule on at least some of the Motions in
12:06:58  Limine that are pending before me.
12:07:00  A number of them are actually I think pretty
12:07:05  straightforward given that there was minimal objection.  So
12:07:10  let me just run through those.  There are a few that I will
12:07:14  want to get to towards the end where I might want some
12:07:18  argument and may need some time to consider them.  But let's
12:07:21  go through the ones that I can.
12:07:25  Government Motion in Limine number 1 to exclude
12:07:28  Defendant from arguing or suggesting that the government
12:07:30  must show he used controlled substances on the day he
12:07:33  purchased the firearm.  Defendant opposes, arguing that the
12:07:38  government must prove his drug use on the day of purchase.
12:07:45  I disagree.  Defendant is charged under Section 922(g)(3),
12:07:49  which prohibits a person who is an unlawful user of, or
12:07:54  addicted to, any control substance from possessing a firearm
12:07:58  that traveled in interstate commerce.  And he's charged also
12:08:00  with making false statements regarding his drug use, thus
12:08:03  for each of the three counts of the indictment the
12:08:06  government must establish that Defendant was an unlawful
12:08:08  user of, or addicted to, a controlled substance.  Addicted
12:08:12  and user are defined in the implementing regulations for the
12:08:18  Gun Control Act as not limited to the use of drugs on a
12:08:21  particular day or within a matter of days or weeks before,

4

12:08:25  but rather that the unlawful use has occurred recently
12:08:29  enough to indicate that the individual is actively engaged
12:08:32  in such conduct.  And that is the Code of Federal
12:08:36  Regulations, 27 CFR Section 478.11.
12:08:41  In fact, in the next sentence, it says that a
12:08:44  person may be an unlawful user even though the substance is
12:08:49  not being used at the precise time the person seeks to
12:08:51  acquire a firearm or receives or possesses a firearm.
12:08:56  Now, I understand because I glanced through the
12:09:01  Defendant's pretrial brief that there is a concern that that
12:09:07  regulation doesn't apply here.  I will say that at least in
12:09:16  the Third Circuit from *United States v. Cheeseman*, 600 F.3d
12:09:23  270, the Third Circuit has cited that regulation in
12:09:27  connection with an offense under Section 922(g)(3), so as I
12:09:32  understand the current status of the Third Circuit law, it
12:09:34  is appropriate to look to that regulation, and thus I will
12:09:38  do so.
12:09:38  Additionally, to the extent that Defendant
12:09:41  relies on *Daniels*, I'll say that that reliance is misplaced.
12:09:48  *Daniels* addressed an as applied constitutional challenge,
12:09:53  not the merits of the underlying offense.  The
12:09:56  constitutionality of the statute as applied to this
12:09:59  Defendant is not an issue for this jury, and it is not as of
12:10:02  now an issue that has been raised before me.
12:10:05  To the extent that that issue is ever properly

5

12:10:09 **1** before me, it will be for me to address and not the jury.
12:10:12 **2** So therefore, I am going to grant the government's Motion in
12:10:16 **3** Limine number 1.
12:10:17 **4**     Government's Motion in Limine number 2 seeks to
12:10:23 **5** admit portions of the Defendant's memoir and exclude other
12:10:24 **6** self-serving and irrelevant portions of the same book.
12:10:28 **7** Defendant partially opposes.  Defendant agrees that the
12:10:31 **8** government should be allowed to admit excerpts that contain
12:10:34 **9** his admissions about substance use, but argues that the
12:10:37 **10** government should not be allowed to redact information on
12:10:40 **11** those pages that it deems irrelevant.  Rather Defendant
12:10:44 **12** argues that the Rule of Completeness under Rule 106 mandates
12:10:48 **13** that he be allowed to seek the admission of additional
12:10:51 **14** relevant sentences or passages from that same page so long
12:10:56 **15** as the statements meet the other requirements for relevance
12:11:00 **16** and prejudice.
12:11:02 **17**     I agree.  So the motion will be granted in part.
12:11:06 **18** The pages offered by the government may be admitted, but the
12:11:09 **19** motion is denied to the extent that the government seeks to
12:11:12 **20** admit a page from Defendant's memoir without giving him the
12:11:17 **21** opportunity to seek the admission of additional relevant
12:11:20 **22** sentences or passages from that same page subject to the
12:11:24 **23** Rule of Completeness so long as the statements made meet
12:11:27 **24** other requirements for relevance and prejudice.  The
12:11:30 **25** excerpts by the way still need to come in through a witness.

6

12:11:33 **1**     Now, that being said, I will note that no one
12:11:36 **2** has provided me with un-redacted pages from the book, so I
12:11:40 **3** can't tell you at this point whether I view any of the
12:11:43 **4** redacted portions to be properly admissible on the Rule of
12:11:50 **5** Completeness or the relevance and prejudice, but I do think
12:11:53 **6** it's unfair that Defendant wouldn't be given an opportunity
12:11:57 **7** to establish that.
12:11:58 **8**     So to the extent Defendant believes those
12:12:00 **9** portions should be admitted, counsel may request their
12:12:03 **10** admission but must make that request outside the presence of
12:12:06 **11** the jury.
12:12:07 **12**     Okay.  We're going to skip Motion in Limine
12:12:12 **13** number 3 for a minute because I want some more argument on
12:12:15 **14** that one.
12:12:17 **15**     Government's Motion in Limine number 4 to
12:12:19 **16** exclude evidence and argument that Delaware State
12:12:22 **17** authorities did not charge the Defendant.  The Defendant
12:12:25 **18** states that he does not oppose the motion but argues that he
12:12:30 **19** should be allowed to seek the admission of, or ask questions
12:12:33 **20** concerning the Delaware State Police Incident Report as long
12:12:37 **21** as there are redactions to statements regarding
12:12:39 **22** non-prosecution or case closing.
12:12:41 **23**     So, I know I said I was skipping the other one
12:12:45 **24** because I had questions, but I had more questions on that
12:12:50 **25** one.

7

12:12:50 **1**     Let me ask this of the Defendant.  I don't
12:12:53 **2** really understand what that means.  So --
12:12:56 **3**     MR. LOWELL:  Want me to -- can you hear me okay?
12:12:59 **4**     THE COURT:  I can.
12:13:00 **5**     MR. LOWELL:  What I mean is, what we mean is
12:13:03 **6** that there will be a state police officer who arrives on the
12:13:09 **7** scene in October of 2018, will take a statement, will have
12:13:13 **8** an Incident Report and say whatever that person says on the
12:13:19 **9** stand about that.  The issue is the question, for example,
12:13:25 **10** is after you took the statement of so and so, when was the
12:13:29 **11** next time, if any, that you sought any other information
12:13:34 **12** from that witness, be it Mr. Biden, be it Mr. Biden's
12:13:39 **13** brother's widow, and the answer to that might be never.
12:13:43 **14**     Then the other issue might be when is it that
12:13:45 **15** you provided the information that you obtained that day, the
12:13:49 **16** gun, the other things to the possession of the federal law
12:13:52 **17** enforcement authorities, that could be three years later.
12:13:58 **18** It's just part of the chain and part of understanding the
12:14:01 **19** statements that were made.  It is not to say and you closed
12:14:04 **20** the case without charges, it's not that.  It's just, I don't
12:14:09 **21** -- without knowing what their testimony will be, it does
12:14:11 **22** seem to me I should be able to complete the story as to
12:14:14 **23** where things ended up and when.
12:14:16 **24**     THE COURT:  What is the relevance of when was it
12:14:18 **25** provided to the federal authorities?

8

12:14:24 **1**     MR. LOWELL:  Well, among other reasons, for
12:14:26 **2** example, one piece of evidence the government has proffered
12:14:28 **3** is a leather pouch of which they have testing to which that
12:14:32 **4** was obtained back in October.  It was kept in state
12:14:36 **5** facilities I think for five years.  And so there is an issue
12:14:40 **6** of chain of custody.  There is an issue of whether or not
12:14:42 **7** the material on it had been tampered between that.  It's not
12:14:47 **8** like it came into the possession of the government
12:14:50 **9** immediately.  So just tracing for purposes of chain of
12:14:53 **10** custody will be a legitimate relevant traditional sense of
12:14:57 **11** asking about a piece of evidence.
12:14:59 **12**     THE COURT:  All right.  Respond.
12:15:00 **13**     MR. HINES:  So it seems like Mr. Lowell is
12:15:03 **14** drawing a distinction between tracing dates for chain of
12:15:06 **15** custody purposes and statements.  Statements in the absence
12:15:09 **16** thereof are not admissible to prove any fact at issue.  With
12:15:12 **17** respect to the brown leather pouch --
12:15:14 **18**     THE COURT:  Statements?
12:15:15 **19**     MR. HINES:  By the Defendant or by officers
12:15:18 **20** thereafter whether or not they did anything.  The first part
12:15:21 **21** of his argument was in the months and years that followed,
12:15:26 **22** the officers did not do anything additional to talk to
12:15:29 **23** Mr. Biden or other people involved in the incident.  That's
12:15:34 **24** -- the trial involves what happened in 2018, around this
12:15:36 **25** time period, not thereafter and what wasn't done.  So I

9

```
12:15:40  1   would say that is not relevant.
12:15:41  2           With respect to this brown leather pouch, there
12:15:43  3   is no issue with chain of custody.  The history of the brown
12:15:46  4   leather pouch is it was obtained in October of 2018, put
12:15:52  5   into evidence in Delaware State Police evidence locker,
12:15:58  6   stayed in sealed evidence --
12:15:59  7           THE COURT:  Why can't he ask about that?
12:16:02  8           MR. HINES:  He can ask about when did the FBI
12:16:06  9   obtain the brown leather pouch.
12:16:07 10           THE COURT:  Why can't he ask the police officer,
12:16:09 11   when did you give it to him so that we have a complete chain
12:16:13 12   from someone handed the policeman the pouch, the policeman
12:16:17 13   did X with pouch, then somebody else gave it to the federal
12:16:22 14   government, that's fine; right?
12:16:23 15           MR. HINES:  That date is fine.  What isn't and
12:16:26 16   what we think he wants to use this for and that's to argue
12:16:29 17   that nothing was done in the history of the case between the
12:16:31 18   episode and later.
12:16:33 19           THE COURT:  To suggest that there was no
12:16:34 20   prosecution without saying it.
12:16:36 21           MR. HINES:  Correct.
12:16:36 22           MR. LOWELL:  I'm not going to do that, Judge.
12:16:38 23           THE COURT:  All right.  Thank you.
12:16:39 24           Okay.  So with respect to that one, I am going
12:16:42 25   to grant the government's motion as to any reference that
```

10

```
12:16:45  1   the Delaware State Police did not charge the Defendant.  I
12:16:49  2   am also going to preclude Defendant from arguing or
12:16:52  3   mentioning anything about the fact that all relevant events
12:16:56  4   in this case took place in 2018 and prosecutors did not
12:17:00  5   bring any charges against the Defendant until five years
12:17:03  6   later.  That seems to be only relevant to a claim of
12:17:07  7   selective prosecution and I have already ruled that that is
12:17:10  8   not an issue in this case.
12:17:11  9           As to the chain of custody, it seems like the
12:17:15 10   parties are in agreement as to appropriate questions that
12:17:19 11   would be to be establish the chain of custody, or in your case,
12:17:22 12   Mr. Lowell, to question whether the chain of custody is
12:17:25 13   sufficient.  So my ruling granting that motion does not
12:17:31 14   preclude you from asking questions about the chain of
12:17:32 15   custody.
12:17:33 16           Government's Motion in Limine number 5, to
12:17:37 17   exclude argument and questioning regarding any purported
12:17:39 18   defects in institution of prosecution of this case.
12:17:42 19   Defendant does not oppose, so I am going to grant the
12:17:46 20   motion.
12:17:46 21           That being said, to the extent that defense
12:17:48 22   counsel believes that a question about a witness 's
12:17:51 23   experience, competence or bias could include whether that
12:17:55 24   witness has ever investigated, worked on or testified in a
12:17:58 25   case such as the one being tried, or whether a witness has
```

11

```
12:18:00  1   previously made or written an extrajudicial statement that
12:18:04  2   would include reference to bringing these charges or other
12:18:07  3   gun charges, counsel must raise the issue with me outside
12:18:11  4   the hearing of the jury before asking any such questions.
12:18:14  5   Because I just don't know what they would be, so it's easier
12:18:17  6   to deal with it outside the presence of the jury.
12:18:19  7           MR. LOWELL:  And, again, one of the problems
12:18:21  8   that you and I and the government will have is we're trying
12:18:24  9   to figure out what a witness will say before they say it and
12:18:26 10   I will definitely do what you just said.
12:18:28 11           THE COURT:  Thank you.
12:18:28 12           Motion in Limine number 6, to exclude argument
12:18:32 13   and questioning related to Defendant being law abiding and
12:18:36 14   sober since 2019, as irrelevant and improper reverse
12:18:40 15   character evidence under Rule 404.  The Defendant does not
12:18:45 16   oppose, so I am going to grant this motion.
12:18:47 17           To the extent this Defendant testifies and
12:18:49 18   counsel believes that a question that would naturally come
12:18:51 19   up during the testimony regarding his sobriety and law
12:18:56 20   abiding behavior, again, I ask that counsel raise the issue
12:19:00 21   with me outside the hearing of the jury before asking any
12:19:03 22   such questions.
12:19:04 23           MR. LOWELL:  No problem with that, Judge.  Just
12:19:05 24   one little caveat on that.  Again, it's an if Mr. Biden
12:19:09 25   takes the stand, and I can't imagine there would be not a
```

12

```
12:19:12  1   question about that subject.  We will raise it with you
12:19:17  2   before, but I'm asking you in advance because if he does
12:19:20  3   take the stand, it should be a question about his life,
12:19:23  4   especially because the book, for example, is written in a
12:19:28  5   retrospective way after he is sober.  That's the premise of
12:19:33  6   it for him to go backwards.  I will raise that with Your
12:19:36  7   Honor when it happens.
12:19:37  8           THE COURT:  You can raise that with me when it
12:19:38  9   happens.
12:19:38 10           Government Motion in Limine number 7, to exclude
12:19:41 11   argument, evidence, and questioning relating to the
12:19:44 12   constitutionality of the firearm statute the Defendant is
12:19:47 13   charged under.  The Defendant did not respond to the motion,
12:19:49 14   so I am going to grant the motion as unopposed.  There
12:19:53 15   should be no questioning, argument, reference to or
12:19:56 16   statements of any kind questioning the constitutionality of
12:20:00 17   the statute.  I have ruled on the facial challenge that was
12:20:03 18   raised and if there is later an as applied challenge with
12:20:07 19   respect to this Defendant, that will be for me to address
12:20:09 20   and not the jury.
12:20:10 21           Government's motion in --
12:20:12 22           MR. LOWELL:  Before you get to that, I think you
12:20:15 23   said it was not a response.  I think the Government's motion
12:20:17 24   indicated that we had no response, I hope it didn't, I don't
12:20:20 25   remember now, we didn't disagree.
```

13

12:20:22 1      THE COURT:  It may have.  I'm sorry, I was
12:20:24 2  looking at opening paper/responsive paper and there was
12:20:28 3  none.
12:20:29 4      MR. LOWELL:  All right.
12:20:29 5      THE COURT:  There were lots of motions that said
12:20:31 6  there was no objection, but then there was this short
12:20:35 7  response filed, so that's what I was looking for.
12:20:36 8      Government's Motion in Limine number 8, to
12:20:39 9  exclude argument and questioning regarding Defendant's
12:20:42 10 potential punishment, plea negotiations and diversion
12:20:46 11 agreement, or the July 26, 2023 hearing.  Defendant does not
12:20:49 12 oppose, and I am going to grant the motion.
12:20:52 13     To the extent Defendant believes the government
12:20:54 14 has opened the door to questioning on this issue, again, I
12:20:57 15 ask that counsel raise the issue with me outside the hearing
12:21:01 16 of the jury before asking any such questions.
12:21:03 17     All right.  I am going to skip government's
12:21:06 18 Motion in Limine number 9 for the moment because I have some
12:21:11 19 additional questions on that, and move to Defendant's Motion
12:21:14 20 in Limine number 1, which is to exclude argument,
12:21:18 21 questioning and reference to the pending tax charges against
12:21:24 22 the Defendant in California or the proceedings in that case.
12:21:27 23 The government disagrees that use of the phrase "tax
12:21:34 24 investigation" would be prejudicial to Defendant, but is
12:21:36 25 willing to use the phrase "criminal investigation" instead.

14

12:21:40 1  The government also argues that it should be allowed to
12:21:43 2  cross-examine the Defendant about his taxes if he testifies.
12:21:47 3      Okay.  What I didn't understand, Mr. Hines, I
12:21:50 4  did have one question on this.  The government's paper said
12:21:54 5  something like well, we need it in order to explain where
12:21:58 6  documents came from.  I don't know what you're talking about
12:22:01 7  or what types of documents that would be, so what's an
12:22:05 8  example so that I can evaluate the statement, or the
12:22:10 9  argument that you made?
12:22:11 10     MR. HINES:  So, for example, I know we'll get to
12:22:14 11 this argument later, the 1006 summary chart, and the
12:22:17 12 information law enforcement received for that was during the
12:22:21 13 course of the tax investigation in response to search
12:22:23 14 warrants that authorized searches for tax-related crimes
12:22:27 15 which law enforcement then obtained pursuant to those
12:22:31 16 warrants.
12:22:32 17     We would want to specify for the jury that this
12:22:34 18 came from a criminal investigation.  We don't need to say
12:22:37 19 tax, but the jury has to understand like how law enforcement
12:22:41 20 legally got these documents into their possession, mainly
12:22:46 21 the stuff that was produced from AppleLink, as well as other
12:22:51 22 information from the Defendant's laptop.
12:22:53 23     THE COURT:  Thoughts?
12:22:55 24     MR. LOWELL:  If it is because they want to show
12:22:56 25 that there is a basis for it to come in their possession,

15

12:23:00 1  they don't have to refer to anything in California, tax or
12:23:03 2  anything.  We're not contesting, so we can find a way if
12:23:06 3  that becomes an issue, we're not challenging the way
12:23:10 4  Mr. Hines just said to not be prejudiced to say there is
12:23:13 5  another criminal investigation, a tax investigation, we got
12:23:15 6  this in some other way, we just need to deal with the fact
12:23:18 7  that law enforcement obtained this pursuant to proper
12:23:23 8  authorization, period.
12:23:24 9      THE COURT:  So as long as there is no question
12:23:26 10 that you can say law enforcement got this through
12:23:29 11 appropriate procedures and defense counsel is not going to
12:23:34 12 say anything contrary to that, isn't that enough for you?
12:23:37 13     MR. HINES:  Yes, Your Honor.
12:23:38 14     THE COURT:  Okay.  So with that I am going to
12:23:40 15 grant the motion.  I don't think there is a need for the
12:23:42 16 government to refer to the tax case or investigation in
12:23:45 17 explaining where documents came from in this case.  So there
12:23:49 18 should be no reference to the tax charges or criminal
12:23:52 19 proceedings pending out in California.
12:23:53 20     And the parties can work on language that makes
12:23:59 21 clear that whatever evidence was obtained through warrants
12:24:02 22 or otherwise was done through proper chains so there is no
12:24:06 23 question what the jury has as to whether it was somehow done
12:24:09 24 improperly.
12:24:10 25     To the extent, however, that the Defendant

16

12:24:12 1  testifies and the government believes that it should be
12:24:15 2  allowed to use evidence relating to the tax matters to probe
12:24:18 3  his credibility, or other issues that may come up, counsel
12:24:22 4  should seek permission from me outside the presence of the
12:24:27 5  jury before asking those questions.
12:24:27 6      Okay.  Defendant's Motion in Limine number 2, to
12:24:30 7  exclude argument, questions and references relating to child
12:24:37 8  support proceedings in Arkansas, or Mr. Biden's discharge
12:24:40 9  from the Navy in 2014.  The government partially opposes
12:24:45 10 this motion, agreeing not to reference either of these
12:24:48 11 topics unless the Defendant opens the door through his own
12:24:51 12 testimony.
12:24:51 13     So with that, I am going to grant the motion as
12:24:45 14 essentially unopposed.  But again, to the extent the
12:24:58 15 Defendant testifies and the government believes it should be
12:25:00 16 allowed to use evidence related to the child support
12:25:03 17 proceedings or the Navy discharge, counsel should seek
12:25:07 18 permission from me outside the presence of the jury before
12:25:10 19 doing so.
12:25:11 20     ==Defendant's Motion in Limine number 3, to==
12:25:15 21 ==exclude argument, questions and references relating to any==
12:25:18 22 ==statement Mr. Biden made at the July 26, 2023 hearing in==
12:25:23 23 ==this matter.  So this one seems to overlap with the==
12:25:27 24 ==government's eighth Motion in Limine, which was largely==
12:25:31 25 ==unopposed, but the government says it does not intend to==

---

**17**

12:25:34 1  introduce Defendant's statements from the July 26, 2023
12:25:38 2  hearing, "outside the limits of Federal Rule of Criminal
12:25:43 3  Procedure 11(f) and Federal Rule of Evidence 410."  So it
12:25:48 4  seemed like everyone was on the same page about keeping out
12:25:52 5  statements from that hearing, but this proviso, I can't tell
12:25:56 6  if you're taking that back or what.  So is there some
12:26:01 7  scenario that you think you might use those statements?
12:26:05 8        MR. HINES:  Yes.  So 410, I believe it's (b)(1),
12:26:08 9  either (b)(1) or (b)(2), provides if the defense brings it
12:26:12 10  up, essentially opens the door, we would be able to rebut
12:26:16 11  that and address it through his statements.  That's the
12:26:18 12  scenario we're envisioning.  If he were --
12:26:21 13        THE COURT:  So just for example, during that
12:26:24 14  hearing there was a diversion agreement and I know that's
12:26:27 15  the subject of motions, but there was a statement of facts,
12:26:30 16  and to the extent that in that statement of facts the
12:26:33 17  Defendant admitted things like that he falsified, you know,
12:26:37 18  he made a statement on the form and he knew it wasn't true,
12:26:42 19  that kind of thing, you are not planning to put that in
12:26:45 20  unless the Defendant gets up and testifies somehow contrary
12:26:49 21  to that?
12:26:50 22        MR. HINES:  That, or if defense counsel argues
12:26:54 23  in a manner that's inconsistent with respect to him making a
12:26:57 24  statement at that hearing in that manner, that limited
12:26:59 25  subset.  So we don't envision this happening at trial, we

---

**18**

12:27:03 1  just want to make it very clear that we aren't agreeing
12:27:06 2  there is no scenario under which that could come up.
12:27:08 3        THE COURT:  Just to make it clear, you are not
12:27:11 4  saying that if they argue that there is a question as to
12:27:13 5  whether he did so, that's not bringing it in, you're saying
12:27:16 6  if Mr. Lowell got up and said he has never said -- he said
12:27:20 7  that he never signed that form, he never even saw that form,
12:27:23 8  then you might seek to add it?
12:27:25 9        MR. HINES:  Correct, Your Honor.
12:27:26 10        THE COURT:  Anything you want to add?
12:27:30 11        MR. LOWELL:  Yes.  The exception to the Rule 410
12:27:39 12  talks about there being a false statement charge, not any
12:27:42 13  charge that's in 18 United States Code.
12:27:44 14        THE COURT:  Right.
12:27:45 15        MR. LOWELL:  So I think to get the protection
12:27:46 16  that's supposed to happen in Rule 11 and 410, it is not
12:27:50 17  supposed to invade even that.  If Mr. Biden were to testify
12:27:56 18  and I don't know what he would say, but it's not what
12:27:59 19  Mr. Hines said because of what I just told you about the
12:28:01 20  parameters of a false statement case, then we probably would
12:28:04 21  have to come and see you, Judge, because at that point
12:28:08 22  Mr. Biden would explain what happened on July 26th.  We
12:28:13 23  don't necessarily want that to happen, but they can't have a
12:28:16 24  one-way lane on that is what I'm saying.
12:28:17 25        THE COURT:  Right.  It seems to me that there

---

**19**

12:28:18 1  are a number of issues that may become more contested should
12:28:22 2  Mr. Biden decide to testify, and we're going to have to
12:28:25 3  address those.  I do think -- I mean, I understand that you
12:28:28 4  might want to know in advance, but some of it depends on
12:28:32 5  what people can tell me that they're going to see from what
12:28:37 6  other witnesses testify to and what you would expect her
12:28:40 7  would ask him.
12:28:41 8        What I will do with this motion is similar to
12:28:45 9  what I have done previously, and also with the government's
12:28:49 10  motion on the July hearing which is I am going to grant it.
12:28:57 11        MR. LOWELL:  I'm sorry, Judge, I needed to check
12:28:59 12  to make sure I didn't say something.
12:29:01 13        THE COURT:  I appreciate that.
12:29:03 14        I am going to grant it and say that to the
12:29:06 15  extent either side believes that a door has been opened that
12:29:09 16  would allow anything from the July 26, 2023, hearing to come
12:29:13 17  in, counsel shall raise the issue with me outside the
12:29:16 18  hearing of the jury before asking any questions.
12:29:18 19        Defendant's Motion in Limine number 4 to exclude
12:29:23 20  argument, questions and references to spending on an
12:29:26 21  extravagant lifestyle during the time period where he was
12:29:30 22  struggling with addiction.  The government opposes this one,
12:29:33 23  first noting that the focus of its case-in-chief will not be
12:29:37 24  on any such extravagant lifestyle.  Instead the government
12:29:40 25  anticipates offering evidence that the Defendant was

---

**20**

12:29:42 1  spending large sums of cash on drugs and drug paraphernalia,
12:29:46 2  withdrawing large sums of cash from locations consistent
12:29:50 3  with descriptions in his book, withdrawing cash prior to
12:29:55 4  purchasing a firearm with $900 in cash.  On this motion I am
12:29:57 5  going to grant it in part and deny it in part.  I am
12:30:00 6  granting the motion to extent the Defendant seeks to
12:30:02 7  preclude the government from phrasing the evidence as having
12:30:05 8  an extravagant lifestyle or introducing evidence to solely
12:30:09 9  establish the Defendant was spending lots of money on
12:30:12 10  hotels, et cetera.  But I am denying the motion as it
12:30:15 11  relates to the government introducing argument and evidence
12:30:18 12  regarding the Defendant obtaining and spending large amounts
12:30:20 13  of cash on drugs, drug paraphernalia, and otherwise
12:30:26 14  consistent with drug-related activity that may be relevant
12:30:28 15  in this case to showing that he was addicted to or an
12:30:32 16  unlawful user of drugs.
12:30:34 17        MR. LOWELL:  On that one may I say one sentence?
12:30:36 18        THE COURT:  You may.
12:30:37 19        MR. LOWELL:  I don't even disagree that's what I
12:30:40 20  understand they're now doing in terms of cash, but we will
12:30:42 21  raise with you at the appropriate time the time period in
12:30:45 22  which, for example, large sums of cash were withdrawn as
12:30:48 23  opposed to it being 2014 or '15 as opposed to 2018 when this
12:30:52 24  event occurred, number one.
12:30:55 25        Number two, as you will recognize, there is not

---

21

```
12:30:57   1   going to be an indication on a debit card or an ATM that the
12:31:01   2   cash is being withdrawn for drugs.  It will be a debit card
12:31:06   3   for whatever and there will be other explanations, so that's
12:31:09   4   what they're asking.  If they were going to seek evidence
12:31:11   5   that such and such day, X amount of cash was withdrawn,
12:31:16   6   there is no objection to that.  As to them characterizing it
12:31:20   7   unless they have evidence to link it up, then that's where
12:31:22   8   --
12:31:22   9            THE COURT:  We all know that circumstantial
12:31:24  10   evidence is powerful evidence in cases and to the extent
12:31:27  11   that they have other circumstantial evidence that would
12:31:31  12   suggest that any type of large cash withdraw was related to
12:31:35  13   drug activity, then I suppose they can raise it and you can
12:31:39  14   object.
12:31:39  15            MR. LOWELL:  Right.  And again, of course what
12:31:41  16   will be in context to Your Honor and to the jury that he
12:31:45  17   didn't have a credit card at the time, so yes, I understand.
12:31:48  18            THE COURT:  Okay.  Next we have the government's
12:31:54  19   motion to exclude proposed defense experts.  Government
12:31:57  20   seeks to exclude the testimony of four proposed expert
12:32:00  21   witnesses likely to be called by Defendant on three grounds.
12:32:03  22   The first ground is the expert notices were untimely.  I
12:32:06  23   suppose that that may have been that they were untimely, but
12:32:10  24   given the history of this case and our discussion at the
12:32:12  25   last hearing, I am not going to find these expert notices
```

22

```
12:32:16   1   were untimely.
12:32:17   2            Next, the government argues that the notices
12:32:20   3   failed to comply with the requirements of Rule 16.  So let
12:32:25   4   me ask the defense counsel, Rule 16 says that the contents
12:32:31   5   of the disclosure must include a complete statement of all
12:32:38   6   opinions that the Defendant will elicit from the witness in
12:32:42   7   the Defendant's case-in-chief and the bases and reasons for
12:32:46   8   them.  I don't see how the disclosures that I have seen meet
12:32:53   9   that requirement.  So what's your position?
12:32:57  10            MR. LOWELL:  I thought that the government's
12:33:00  11   point was that we had not found yet where any of our experts
12:33:04  12   had provided testimony, not that it was not clear from our
12:33:09  13   disclosure what it was they were going to testify about.  I
12:33:13  14   don't know what specifically Your Honor is pointing to, but
12:33:16  15   for example, I'll start with -- I don't know, I'll start
12:33:20  16   with the lab person, the government identified DEA or some
12:33:24  17   other government agent to do lab analysis of residue.  We
12:33:28  18   have provided them with our expert that would indicate what
12:33:31  19   wasn't done on that sample.  And we have an issue of whether
12:33:38  20   or not we can even date the residue.  And I thought that was
12:33:40  21   pretty clear, Judge.
12:33:42  22            THE COURT:  Right.  But it's supposed to give
12:33:44  23   what opinions he will give and the bases and reasons for
12:33:48  24   them.  This is an analysis of I suppose the government's
12:33:58  25   expert's examination, an analysis of the accuracy and
```

23

```
12:34:04   1   reliability of it, a description of the jury of the possible
12:34:09   2   samples.  Okay.  None of this is very specific, a
12:34:12   3   description of the jury about how materials would be
12:34:14   4   affected by age.  Well, what is his opinion?
12:34:18   5            MR. LOWELL:  Judge, on that, I should have
12:34:19   6   started with the fact that the government made that motion
12:34:22   7   two days ago, it's twenty-six pages long.  I know the
12:34:31   8   government preferred to have all these motions heard, but we
12:34:31   9   have not had a chance to respond to that.  We have done what
12:34:34  10   we could do as I indicated and promised you I would do last
12:34:37  11   time I was standing here and I have caught up pretty well.
12:34:40  12   I might be able to respond to that.  We had made a
12:34:43  13   supplement to the government yesterday on the issue of the
12:34:48  14   testimony or trials or events in which we would like to be
12:34:52  15   able to respond to them and do that, and we would do that
12:34:56  16   very promptly.  But you said as we left, you know, you guys
12:34:59  17   work it out and try to make sure that you're getting things
12:35:03  18   done.  We have done a pretty good job of catching up, but we
12:35:02  19   have not had that for more than thirty-six hours and have
12:35:06  20   not had a chance to respond.
12:35:07  21            THE COURT:  I will give you that opportunity to
12:35:09  22   respond.  Let me give you some guidance, which is, this does
12:35:14  23   not meet the requirements of the rules.  Okay?  So perhaps
12:35:21  24   it makes sense that you respond and I can address it after I
12:35:32  25   get your response and any reply the government has.  When do
```

24

```
12:35:37   1   you think you will be responding?
12:35:38   2            MR. LOWELL:  I think we can get that in on the
12:35:41   3   28th, the day right after Memorial Day, Tuesday.  We might
12:35:45   4   be able to get it to you, or the Court, or the government on
12:35:48   5   Memorial Day, but I'm sure we can get it to you on Tuesday.
12:35:52   6   And I'm pretty sure we can do that.
12:35:55   7            THE COURT:  Well, I will not rule on that one at
12:36:00   8   this moment because I agree that you should have an
12:36:03   9   opportunity to respond.  I don't know what was in any
12:36:07  10   supplemental disclosures and whether that would suffice to
12:36:12  11   address the government's concerns, so I will let the
12:36:17  12   briefing play out on that and then after I get the briefing,
12:36:18  13   I will decide it as expeditiously as I can.
12:36:21  14            MR. LOWELL:  One question on that, Judge, is
12:36:22  15   that the government's motion is twenty-six pages, I believe.
12:36:25  16   We have been on motions on limine using your rule of four
12:36:28  17   pages.  I don't know that I need twenty-six pages to respond
12:36:31  18   to our supplement, but I wanted to ask the Court permission
12:36:35  19   to go beyond your four page rule?
12:36:39  20            THE COURT:  You have that.  And any motion, any
12:36:44  21   response, in one of your responses, I need to have any
12:36:50  22   supplemental disclosures that you would be proposing,
12:36:55  23   because if I only have what I have right now, it's going to
12:36:58  24   be a waste of my time to look at it if the government agrees
12:37:02  25   that other information is more complete.
```

25

```
12:37:09  1          Okay.  I think that's everything -- oh, no, it's
12:37:20  2   not.  We still have two motions in limine, Motion in Limine
12:37:24  3   number 3, and Motion in Limine number 9.
12:37:27  4          Okay.  So with respect to Motion in Limine
12:37:31  5   number 3, that is the chart, government's Motion in Limine
12:37:38  6   number 3, to admit a Rule 1006 summary chart and for a
12:37:42  7   determination that the underlying evidence being summarized
12:37:46  8   is authentic.  The chart is a summary of over 18,000 pages
12:37:51  9   of evidence obtained from Defendant's iCloud account, laptop
12:37:55 10   and hard drive pursuant to several search warrants.
12:37:58 11   Defendant does not appear to oppose the motion as to the
12:38:01 12   admission of the chart as a summary of the voluminous
12:38:05 13   information.  Do I have that correct?
12:38:07 14          MR. LOWELL:  You do.
12:38:07 15          THE COURT:  The Defendant also does not appear
12:38:09 16   to challenge the authenticity of the data collected as being
12:38:13 17   what law enforcement received on December 9th, 2019, from
12:38:17 18   John Paul Mac Isaac and from Apple: correct?
12:38:20 19          MR. LOWELL:  Also true.
12:38:22 20          THE COURT:  Defendant disputes, however, that
12:38:25 21   the data is authentic as to being Defendant's data as he
12:38:29 22   used and stored it prior to Mr. Mac Isaac having possession
12:38:34 23   of it.
12:38:35 24          Okay.  So from the government, is your motion
12:38:38 25   seeking to have me say that the underlying data is authentic
```

26

```
12:38:44  1   as of the date law enforcement collected it, or when
12:38:49  2   Defendant possessed it?  And I couldn't really tell because
12:38:52  3   in your papers -- I mean, certainly there is some that I
12:38:57  4   think you argue with the Apple 3, Apple 4 is independently
12:39:02  5   corroborated as of some time, and there is other data that
12:39:06  6   you say will be corroborated based on other witness
12:39:10  7   testimony.  But I couldn't -- what is it that you're asking
12:39:14  8   for in your motion?
12:39:16  9          MR. HINES:  So we are asking, Your Honor, for an
12:39:18 10   authentication ruling from the date law enforcement received
12:39:22 11   it.
12:39:22 12          THE COURT:  And they don't oppose that?
12:39:23 13          MR. LOWELL:  Correct.
12:39:24 14          THE COURT:  Okay.
12:39:25 15          MR. LOWELL:  No, Judge, I don't want to waste
12:39:27 16   the Court's time, but I wanted to just make clear that
12:39:33 17   Mr. Mac Isaac states he received data on April 12th, I
12:39:37 18   think, of 2019.  The government didn't come into its
12:39:39 19   possession until December of that same year.  Mr. Mac Isaac
12:39:44 20   has stated on numerous occasions that he accessed the data,
12:39:47 21   copied it, opened files, et cetera.
12:39:49 22          THE COURT:  How would you put that into
12:39:51 23   evidence?
12:39:56 24          MR. LOWELL:  I'm not going to be the one to put
12:39:56 25   that into evidence.  I am going to say that the
```

27

```
12:39:57  1   government -- we might be able to agree on a particular text
12:40:00  2   or a particular communication.  The government wanted a
12:40:04  3   ruling, as I understood it, that said everything in their
12:40:07  4   possession was created or obtained by Mr. Biden prior to it
12:40:12  5   coming into their possession and that's not true.  So it may
12:40:16  6   have to be either on a communication-by-communication basis,
12:40:20  7   which we can do with them, but it's not up to me, Judge, to
12:40:23  8   say what they got on December 19th is something that I have
12:40:26  9   to prove was not what Mr. Biden put there three years
12:40:30 10   earlier.
12:40:31 11          THE COURT:  No, no, and I don't mean to suggest
12:40:32 12   that.  What I was looking at was in your papers, and you
12:40:37 13   have like a quote from The Washington Post who quotes from
12:40:40 14   some other expert.  That all seemed like hearsay upon
12:40:46 15   hearsay upon hearsay, so I didn't really understand what you
12:40:50 16   were suggesting that -- I mean, everybody seems to agree now
12:40:54 17   that it's okay to summarize voluminous information in the
12:40:59 18   chart and the information in the chart is accurate and
12:41:02 19   authentic as of the date that the government received it.
12:41:07 20   The Defendant may want to question whether some of the
12:41:13 21   information in the chart is actually things that the
12:41:17 22   Defendant texted or said or whatever, right?
12:41:23 23          MR. LOWELL:  Correct.
12:41:24 24          THE COURT:  But what I'm trying to figure out,
12:41:26 25   and maybe this is something we'll just have to deal with
```

28

```
12:41:29  1   piece by piece at the trial, is you're not suggesting that
12:41:32  2   you're going to be like someone is going to be on the stand
12:41:35  3   and you're like well, you read The Washington Post article:
12:41:38  4   right?
12:41:38  5          MR. LOWELL:  No, Your Honor.  Again, just to be
12:41:41  6   as clear as I can be, and it probably wasn't four sentences
12:41:44  7   ago, I'm not doing that.  But as I said, there could be a
12:41:49  8   particular communication which as -- not hearsay upon
12:41:54  9   hearsay upon hearsay, but even in the litigation that
12:41:58 10   occurred in which Mr. Mac Isaac is involved.  There have
12:42:03 11   been issues that there were changes to the data prior to it
12:42:07 12   getting in the hands of the government, that's all I can
12:42:09 13   say, when the government got what they got in December, then
12:42:13 14   they have a summary chart based on that, and we don't
12:42:16 15   disagree about that.
12:42:17 16          THE COURT:  I understand.  And all I'm saying is
12:42:20 17   I would just suggest that if you were going to say that
12:42:23 18   there were changes to the document based on admissions that
12:42:26 19   were given in a different case that the government doesn't
12:42:28 20   have access to, that you cannot suggest than changes that
12:42:33 21   were not the subject of admissions were made, right?  As
12:42:40 22   long as there is a foundation to what the changes were.
12:42:42 23          MR. HINES:  Your Honor, one point of
12:42:43 24   clarification I would like to add, too, if I may.  So the
12:42:45 25   summary chart, as Your Honor has read, summarizes stuff from
```

29

| | |
|---|---|
| 12:42:49 | 1  Apple.  John Paul Mac Isaac, has nothing to do with that |
| 12:42:53 | 2  data for that production. |
| 12:42:54 | 3          THE COURT:  I understood that.  And as I |
| 12:42:56 | 4  understood, that's where the real contest comes in, not from |
| 12:43:01 | 5  the iCloud, I guess unless the iCloud was backed up at some |
| 12:43:05 | 6  time during August. |
| 12:43:06 | 7          MR. HINES:  So it comes from two devices that |
| 12:43:08 | 8  Hunter Biden had, his phone and his iPad, that were backed |
| 12:43:12 | 9  up to Apple.  John Paul Mac Isaac never had custody of that |
| 12:43:16 | 10  phone or the iPad at this store.  He had the laptop.  That |
| 12:43:21 | 11  stuff that is on the summary chart has nothing to do with |
| 12:43:25 | 12  what Mr. Lowell is alleging from The Washington Post.  What |
| 12:43:29 | 13  we're using on the laptop are messages that will be |
| 12:43:32 | 14  corroborated by a witness in this case who will testify that |
| 12:43:36 | 15  she sent those messages and received those messages and then |
| 12:43:39 | 16  a couple of other messages which we have noted on page 3 of |
| 12:43:44 | 17  our reply.  Where there was other corroboration, for |
| 12:43:48 | 18  example, a message that shows that he's in Wilmington, |
| 12:43:50 | 19  Delaware and made an ATM withdraw, that shows that as well. |
| 12:43:55 | 20  This isn't some vast array of messages from John Paul Mac |
| 12:44:01 | 21  Isaac that the Defendant alleges without evidence that he |
| 12:44:03 | 22  planted into his laptop.  To be clear, we've asked for |
| 12:44:08 | 23  reciprocal discovery over and over again.  They made this |
| 12:44:11 | 24  claim in the media that the laptop wasn't true.  We haven't |
| 12:44:14 | 25  seen one scintilla, not one message that that isn't true |

30

| | |
|---|---|
| 12:44:18 | 1  from the data that law enforcement turned over.  And they |
| 12:44:21 | 2  can't raise that issue in any meaningful way at trial |
| 12:44:25 | 3  because there is no evidence of it.  We want to make that |
| 12:44:28 | 4  clear in our reply, the data coming in, and we don't believe |
| 12:44:30 | 5  there is any basis for Mr. Lowell to make these kinds of-- |
| 12:44:34 | 6          THE COURT:  I understand, but do you disagree if |
| 12:44:36 | 7  he wants to ask, look, he dropped off the laptop in April, |
| 12:44:39 | 8  you got it in December, that he can ask that? |
| 12:44:42 | 9          MR. HINES:  He can ask that timing question, |
| 12:44:44 | 10  absolutely, Your Honor. |
| 12:44:45 | 11          THE COURT:  All right. |
| 12:44:45 | 12          MR. LOWELL:  And one more thing, Judge.  I think |
| 12:44:47 | 13  there may be -- I have no quarrel with the point if they |
| 12:44:51 | 14  have a witness that said I sent this or received this |
| 12:44:54 | 15  message, of course that's fine.  It's just that it seems to |
| 12:44:57 | 16  me their point was they wanted a broad stroke agreement or |
| 12:45:01 | 17  stipulation that the data is all authentic as opposed to -- |
| 12:45:06 | 18          THE COURT:  And can be tied to Mr. Biden? |
| 12:45:09 | 19          MR. LOWELL:  Yes.  And so I can't make that |
| 12:45:11 | 20  because we know to the contrary.  I think your point about |
| 12:45:14 | 21  there might be individual things to raise, if we find that, |
| 12:45:17 | 22  we will, but I don't have a disagreement with what you and |
| 12:45:20 | 23  Mr. Hines just said. |
| 12:45:20 | 24          THE COURT:  Okay.  And I guess we can address |
| 12:45:23 | 25  that to the extent it comes up in trial.  So as I understand |

31

| | |
|---|---|
| 12:45:30 | 1  it, the government is asking for a ruling that the summary |
| 12:45:35 | 2  of voluminous messages is appropriate under the Federal Rule |
| 12:45:39 | 3  of Evidence 1006.  Defendant doesn't object to that.  So I |
| 12:45:45 | 4  will allow this as a summary chart.  The government is |
| 12:45:47 | 5  seeking to have this chart authenticated as of the date that |
| 12:45:51 | 6  the government received the laptop into federal -- some |
| 12:45:58 | 7  federal agent's custody.  The Defendant does not disagree |
| 12:46:01 | 8  with that.  So I will grant the motion to the extent that is |
| 12:46:04 | 9  what the motion is seeking. |
| 12:46:06 | 10          With respect to whether particular messages on |
| 12:46:11 | 11  there can be challenged, we will have to take that on a |
| 12:46:14 | 12  case-by-case basis at the trial. |
| 12:46:16 | 13          MR. HINES:  Your Honor, on point two that you |
| 12:46:19 | 14  just read for your ruling, it's the laptop and the Apple |
| 12:46:21 | 15  iCloud because the Apple iCloud came into the custody of law |
| 12:46:25 | 16  enforcement independently of the laptop.  I wanted to make |
| 12:46:29 | 17  sure that was our request as well. |
| 12:46:31 | 18          THE COURT:  Thank you for that clarification. |
| 12:46:32 | 19          MR. LOWELL:  One other thing as to what you |
| 12:46:34 | 20  pointed out in terms of the book.  We raised the issue of |
| 12:46:37 | 21  completeness for their 1006 chart, which we will also talk |
| 12:46:41 | 22  to them about. |
| 12:46:42 | 23          THE COURT:  If there is stuff that you want to |
| 12:46:44 | 24  add. |
| 12:46:45 | 25          MR. LOWELL:  If not, we will proffer our own |

32

| | |
|---|---|
| 12:46:46 | 1  1006 if we can't agree. |
| 12:46:48 | 2          THE COURT:  Okay.  All right.  Then we get to |
| 12:46:59 | 3  Motion in Limine number 9 to admit certified ATF Form 4473, |
| 12:47:04 | 4  and exclude evidence of the annotated version of Form 4473. |
| 12:47:11 | 5          So, there are apparently two versions of the ATF |
| 12:47:17 | 6  Form 4473, and that is the -- that's the form that anyone |
| 12:47:22 | 7  who wants to buy a gun has to fill out, right? |
| 12:47:26 | 8          MR. HINES:  There is a certified form, and then |
| 12:47:28 | 9  there is a form that was turned in years later that was |
| 12:47:30 | 10  annotated. |
| 12:47:32 | 11          THE COURT:  Right.  I'm just saying ATF Form |
| 12:47:36 | 12  4473 is something someone has to fill out if they want to |
| 12:47:39 | 13  purchase a gun? |
| 12:47:40 | 14          MR. HINES:  Correct. |
| 12:47:41 | 15          THE COURT:  The original version of Form 4473 |
| 12:47:44 | 16  was e-mailed to the ATF on October 26, 2018, and the |
| 12:47:49 | 17  annotated or, the Defendant would say, altered, annotated, |
| 12:47:54 | 18  I'm not choosing a word here to favor anybody, I'm just |
| 12:47:57 | 19  trying to distinguish the two forms, the second version of |
| 12:48:01 | 20  the form is a physical copy of the form that was apparently |
| 12:48:04 | 21  in the gun shop owner's files, and obtained from the gun |
| 12:48:09 | 22  shop owner in September of 2021 when it was requested by ATF |
| 12:48:13 | 23  in connection with an investigation.  Correct? |
| 12:48:16 | 24          MR. HINES:  Correct. |
| 12:48:17 | 25          THE COURT:  Okay.  So that second form |

33

12:48:20 1   essentially was in the files, but nothing was done with it
12:48:24 2   or would have been done with it except for this
12:48:27 3   investigation?
12:48:28 4          MR. HINES:  Correct.
12:48:29 5          THE COURT:  Okay.  Now, the second version of
12:48:31 6   the form contained two markings not present on the original
12:48:35 7   certified version, one was the seller's transactional serial
12:48:39 8   number had been added to the top right-hand corner; and two,
12:48:44 9   and I think this is the one that's more contended in this
12:48:49 10  case, the words "DE Vehicle Registration" in all caps
12:48:55 11  were added to line 18B in the section which was to be filled
12:49:00 12  out by the sender.
12:49:01 13         The government seeks to admit the original
12:49:05 14  certified version of the form and exclude the second
12:49:08 15  version.  Specifically as to the second version, the
12:49:13 16  government argues the actions taken by employees of
12:49:17 17  StarQuest after the form was filled out by the Defendant do
12:49:19 18  not make any element of the charged offenses more or less
12:49:23 19  likely and are therefore not relevant and should be
12:49:27 20  excluded.
12:49:27 21         The government also argues that even if the
12:49:29 22  suggestion that the gun should never have been sold to the
12:49:32 23  Defendant because he did not present correct ID were
12:49:36 24  relevant, the probative value of that fact is substantially
12:49:39 25  outweighed by a danger of confusing the jury, and should be

34

12:49:43 1   excluded under Federal Rule of Evidence 403.
12:49:46 2          Now, Defendant does not dispute the
12:49:48 3   admissibility of the original form that was e-mailed to ATF,
12:49:52 4   so I will grant the motion that the original is admissible.
12:49:55 5          Now, as to the remainder of the motion,
12:49:58 6   Defendant argues that the second version of the form goes to
12:50:01 7   the credibility of gun shop employees who saw Defendant fill
12:50:05 8   out and sign the form.
12:50:07 9          So from the government, let me ask you, how are
12:50:11 10  you planning to prove that the Defendant filled out and
12:50:14 11  signed the form with the false statement that is at issue
12:50:18 12  here?  Are you calling witnesses from the gun shop?  Are you
12:50:21 13  calling someone to look at the handwriting?  What is it that
12:50:24 14  you're going to do?
12:50:26 15         MR. HINES:  There are a number of ways we will
12:50:28 16  prove it was him.  The witness we are calling will primarily
12:50:32 17  prove -- this is Gordon Cleveland.  He is the gun shop
12:50:38 18  salesman who showed Mr. Biden the firearm at his request
12:50:40 19  when he surveyed the store, picked out what he wanted, sold
12:50:43 20  him some other items, sat with him, or stood with him I
12:50:47 21  should say, in the store as he went through Section A,
12:50:50 22  writing his name, his address, all the other information
12:50:54 23  there, his height, weight, his date of birth, and then
12:50:54 24  watched him as he went through and checked the boxes on the
12:51:01 25  form, including the box that says, you know, are you an

35

12:51:05 1   unlawful user of, or addicted to any controlled substance,
12:51:08 2   and Mr. Biden checked no.
12:51:10 3          So Mr. Cleveland is the one that saw him in the
12:51:14 4   store that day and will testify to him filling out this
12:51:17 5   form.  The crime that's charged in Counts One and Two
12:51:21 6   related to this false statement --
12:51:22 7          THE COURT:  Don't get into the rest of the
12:51:24 8   argument, let's stick with my questions for now.
12:51:28 9          So you are planning to call Mr. Cleveland.  And
12:51:33 10  he is going to say I watched the Defendant fill out the
12:51:38 11  form.  I wrote down -- did he write down -- I noticed that
12:51:45 12  with Mr. Lowell's motion, he gave me a color copy of the
12:51:51 13  form, which was nice.  So is he going to be able to testify
12:51:58 14  who wrote stuff in red, blue, black, whatever?
12:52:01 15         MR. HINES:  Yes, he will.  He will testify that
12:52:03 16  Mr. Biden filled out Section A, which is the section that
12:52:06 17  can only be completed by the buyer.  And he will testify
12:52:10 18  that he signed the form.  You can see his signature on the
12:52:13 19  third page of the form.  And then he will testify that Jason
12:52:17 20  Turner filled out Section B of the form.  Jason Turner is
12:52:26 21  another employee of StarQuest.
12:52:28 22         THE COURT:  And who filled out -- oh, Section B.
12:52:34 23         MR. HINES:  Correct, Section B.
12:52:36 24         THE COURT:  It looks like the same person who
12:52:38 25  makes their zeros like that, but some are in black and some

36

12:52:41 1   are in red.
12:52:44 2          MR. HINES:  Correct.  Based on the information
12:52:46 3   the government has, he will testify that Mr. Turner
12:52:49 4   completed Section B of the form.
12:52:52 5          THE COURT:  Okay.  So are you calling anyone
12:52:56 6   else from the gun store?
12:52:58 7          MR. HINES:  No, Your Honor.
12:52:58 8          THE COURT:  And so the argument that I
12:53:03 9   understand from the Defendant is does the fact that you are
12:53:12 10  calling a witness from the gun shop who says I saw him check
12:53:20 11  the box and yet there was another subsequent form that had
12:53:29 12  changes made to it.  Does that put into question, well,
12:53:32 13  gosh, were other changes made such as, you know, I don't
12:53:37 14  know, adding his signature, adding his checks, doing
12:53:41 15  something like that?  Does that put his credibility into
12:53:44 16  play?
12:53:45 17         MR. HINES:  So two responses to that.  For one,
12:53:48 18  we have the benefit of the certified form sent in an e-mail
12:53:50 19  in October of 2018 knowing that there could have been no
12:53:54 20  changes made after that date beyond the Delaware vehicle
12:53:58 21  registration that was annotated years later.  And nothing
12:54:00 22  was known at that time period.  Mr. Cleveland will testify
12:54:04 23  in this case that as to what was completed by Mr. Biden.
12:54:11 24  It's our understanding he has no knowledge what Mr. Palimere
12:54:14 25  did years later, and that's why we went and interviewed

37

12:54:18 1   Mr. Palimere and provided the Court with the 302 and defense
12:54:22 2   counsel with 302, because Mr. Palimere's account is it was
12:54:25 3   done at his direction by another employee.  Again, another
12:54:29 4   employee who is not testifying in this case.  And
12:54:32 5   Mr. Cleveland did not do that, and he explicitly said that.
12:54:36 6           THE COURT:  So then let me ask you, sir, respond
12:54:40 7   to that.  And then I have some other questions for how this
12:54:44 8   is going to work, because you have subpoenaed these other
12:54:47 9   folks?
12:54:48 10          MR. LOWELL:  Correct.
12:54:48 11          THE COURT:  Okay.  What I'm trying to understand
12:54:51 12  is if the government says Mr. Cleveland is the one who saw
12:54:55 13  this and the gun shop owner, Mr. Palimere.
12:55:01 14          MR. HINES:  Correct.
12:55:02 15          THE COURT:  The gun shop owner says I never saw
12:55:07 16  Mr. Biden do that, but I did write in that we had a
12:55:17 17  different form of ID than we did, and that was a lie, let's
12:55:19 18  assume he says that, but I don't know, we did write that in,
12:55:24 19  what is the relevance of that to the question as to whether
12:55:31 20  -- so Palimere had nothing to do with the form until --
12:55:35 21  assuming, until after -- you can tell me I'm wrong, until
12:55:39 22  after -- like let's say we have the form and Cleveland gets
12:55:44 23  up and he says this is all Mr. Biden.  This is all
12:55:50 24  Mr. Turner.  This is all me.  Then Palimere isn't -- he
12:55:57 25  didn't do anything with the form.  So what is the

38

12:55:59 1   relevance -- let's assume that he's the one who had the
12:56:03 2   other stuff added, what's the relevance of that to the
12:56:05 3   question of whether Mr. Biden checked the box and made a
12:56:08 4   false statement?
12:56:09 5           MR. LOWELL:  To start off with, Judge, Palimere
12:56:13 6   did have access and involvement with the form on the very
12:56:16 7   date in question, and the government didn't just say that.
12:56:18 8   Mr. Cleveland sees what Mr. Biden has in a form of ID.  He
12:56:24 9   walks -- and knows it's not a valid form of identification.
12:56:27 10  He includes Mr. Palimere right then.  He goes into the back
12:56:32 11  room and has a conversation with him.
12:56:34 12          THE COURT:  Wait, I get it, I get it --
12:56:34 13          MR. LOWELL:  And he brings the form in as well,
12:56:37 14  and the passport.  Mr. Palimere is involved on the day in
12:56:40 15  question.
12:56:41 16          THE COURT:  Right.  But here is my question.  So
12:56:45 17  you say in your reply that the second version is relevant to
12:56:49 18  the Count Two false statement.  And I apologize, I'm just
12:56:56 19  going to shortcut because I understand there is a difference
12:56:58 20  in factual -- like who was involved in the form.  You're
12:57:02 21  saying we think Mr. Palimere was involved in the form and
12:57:05 22  the government is saying no, Mr. Cleveland is going to say
12:57:09 23  he's not and you want to test that.  Okay.
12:57:11 24          So just so I understand the dispute here, it
12:57:14 25  doesn't seem like the question is whether Mr. Biden was at

39

12:57:17 1   the shop and bought the gun, it's the form that you're
12:57:20 2   concerned about, right?
12:57:21 3           MR. LOWELL:  Yes, which is for two reasons, one
12:57:24 4   of which we've already said.
12:57:26 5           THE COURT:  Is what you're suggesting that he
12:57:29 6   did not fill out the original form with his personal
12:57:31 7   information like his Social Security number, check the boxes
12:57:35 8   and sign it?
12:57:36 9           MR. LOWELL:  It's our view that we are allowed
12:57:38 10  to question Mr. Cleveland and Mr. Palimere as to whether or
12:57:41 11  not they are the ones who did something on the form,
12:57:45 12  including on the issue of the boxes.  I can't sit here and
12:57:47 13  tell you what Mr. Biden will say if he takes the stand.  I
12:57:51 14  can tell you that given what the documents have provided us
12:57:53 15  in discovery raises the question as you asked initially, who
12:57:58 16  wrote what on the form and when.
12:58:00 17          THE COURT:  So is there evidence that could
12:58:01 18  properly be in the record that suggests that Mr. Biden
12:58:05 19  didn't check the box, sign the form, fill it out, or is it a
12:58:12 20  credibility issue where you are questioning whether the
12:58:15 21  person who saw him do it is credible?
12:58:19 22          MR. LOWELL:  It is a little of both, but it's
12:58:22 23  mostly the second.  By that I mean, for example, you asked
12:58:26 24  about Count Two, Judge.  It is not the faxing of the form
12:58:30 25  that Mr. Biden is accused of in Count Two.  The Count Two

40

12:58:35 1   requirement is that a record -- a false statement is put on
12:58:39 2   a record which has to be kept by the gun store.  Has to be.
12:58:44 3   If there had not been the event on October 23rd, nothing of
12:58:48 4   that form would have ever been sent to the ATF.  It was only
12:58:51 5   when the gun was thrown out and it was recovered that that
12:58:54 6   was done.  The crime is to have a false statement on a form
12:58:57 7   that's kept by the store.
12:58:59 8           THE COURT:  For Count Two?
12:59:00 9           MR. LOWELL:  For Count Two, and so that makes,
12:59:03 10  for example, what happened to that form when law enforcement
12:59:06 11  gets it in 2021 at the core of that count to begin with,
12:59:09 12  because if it had been any other piece of evidence, had it
12:59:13 13  been you're supposed to keep the drugs, you're supposed to
12:59:15 14  keep the gun, you're supposed to keep something, and we now
12:59:19 15  know that they tampered with it in between, that's a very
12:59:22 16  germane and relevant area of inquiry.
12:59:25 17          As to the issue of credibility, because
12:59:28 18  Mr. Cleveland confers with Mr. Palimere on the day as to
12:59:33 19  what should be on the form and what shouldn't and whether
12:59:36 20  they can accept this or accept that, what they should tell
12:59:38 21  Mr. Biden, what they shouldn't tell Mr. Biden, that makes
12:59:42 22  Mr. Palimere a relevant witness and because he's a relevant
12:59:45 23  witness in talking to Mr. Cleveland.  What Mr. Palimere says
12:59:49 24  not just goes to what he was allowing to happen on the form,
12:59:53 25  which may or may not have been properly filled out that day,

41

| | |
|---|---|
| 12:59:56 | 1  but then Mr. Palimere's credibility. |
| 12:59:58 | 2          And now that we know that neither the gun store, |
| 13:00:01 | 3  Mr. Cleveland who accepted an ID that he shouldn't have |
| 13:00:05 | 4  accepted, Mr. Palimere who alters the form years later, it |
| 13:00:08 | 5  doesn't seem to have anything happen to them and they're |
| 13:00:10 | 6  witnesses, that goes to bias.  The government is giving them |
| 13:00:13 | 7  a break. |
| 13:00:14 | 8          THE COURT:  Right.  But what is the bias?  Is |
| 13:00:17 | 9  the bias that they -- I mean, what I'm trying to figure out |
| 13:00:24 | 10 is are you saying that all this stuff with Social Security |
| 13:00:30 | 11 numbers, height and weight, addresses, birth dates, and the |
| 13:00:34 | 12 checks, was done by someone else? |
| 13:00:38 | 13         MR. LOWELL:  The evidence will likely be that |
| 13:00:42 | 14 handwriting in the top part is Mr. Biden's.  And then after |
| 13:00:45 | 15 that, you won't be able to tell who puts a checkmark in a |
| 13:00:50 | 16 box and who does the DE registration thereafter, unless they |
| 13:00:55 | 17 testify and they say they do.  But Judge, you're |
| 13:00:57 | 18 predetermining the ability -- I don't mean you're doing it, |
| 13:01:01 | 19 you're asking it, and I'm saying I have the right to |
| 13:01:04 | 20 question Mr. Cleveland and Mr. Palimere who is now in the |
| 13:01:07 | 21 activity on what is going on in that form on the day it |
| 13:01:10 | 22 happened. |
| 13:01:10 | 23         THE COURT:  The reason I'm asking is because the |
| 13:01:12 | 24 government's assertion that what matters is what was on -- |
| 13:01:20 | 25 what your client put on the form.  And that's what I'm |

42

| | |
|---|---|
| 13:01:23 | 1  trying to understand so that I can -- let me just read |
| 13:01:27 | 2  exactly what the government's position was because I'm |
| 13:01:29 | 3  trying to evaluate that. |
| 13:01:31 | 4          So the government's position was that actions |
| 13:01:55 | 5  taken by employees after the form was filled out by the |
| 13:02:01 | 6  Defendant do not make any element of the charged offenses |
| 13:02:06 | 7  more or less likely, and are therefore not relevant.  And |
| 13:02:11 | 8  I'm trying to understand, so you are saying, one, we don't |
| 13:02:15 | 9  know if the actions they're talking -- we don't know -- |
| 13:02:20 | 10 I mean, are you disputing that the actions were taken -- |
| 13:02:24 | 11 that took place, I mean, clearly the additions to the form |
| 13:02:27 | 12 were done later because it wasn't on the e-mailed version, |
| 13:02:31 | 13 right? |
| 13:02:31 | 14         MR. LOWELL:  Yes.  And on the e-mail version, |
| 13:02:33 | 15 the e-mail version doesn't get completed and sent to the |
| 13:02:37 | 16 ATF. |
| 13:02:37 | 17         THE COURT:  Normally. |
| 13:02:38 | 18         MR. LOWELL:  And not that day, days later.  And |
| 13:02:42 | 19 days later.  And so as I'm suggesting to Your Honor, the |
| 13:02:46 | 20 fact that the government says that however many days later |
| 13:02:51 | 21 when it was asked of the gun shop, they then faxed, and I |
| 13:02:55 | 22 think it's fourteen days later, fourteen days later, it's |
| 13:02:59 | 23 not contemporaneous, so raising what happens in those |
| 13:03:04 | 24 fourteen days is part of the issue here because we now know |
| 13:03:08 | 25 that Mr. Cleveland and Mr. Palimere had conversations on |

43

| | |
|---|---|
| 13:03:11 | 1  that day.  They didn't send the form that day.  There is a |
| 13:03:15 | 2  fourteen-day gap at the very least.  And now we know what |
| 13:03:18 | 3  they have done later and it might reflect what they have |
| 13:03:21 | 4  done in that fourteen days.  And the point is they're going |
| 13:03:24 | 5  to take the stand and talk about it.  It seems to me that |
| 13:03:27 | 6  that is the issue that is normally in any way that I can |
| 13:03:30 | 7  imagine germane to both the subsequent count, their |
| 13:03:33 | 8  credibility as to what happened on that day, their |
| 13:03:36 | 9  credibility as to when and if they did what they did to the |
| 13:03:39 | 10 form, and as I said, if they violated the rules, which |
| 13:03:41 | 11 apparently they have done, whether or not they are or are |
| 13:03:44 | 12 not subject when they take the stand, including |
| 13:03:47 | 13 Mr. Cleveland, is something that goes to their bias.  If the |
| 13:03:51 | 14 government authorities that regulate gun sales such as |
| 13:03:55 | 15 Mr. Biden is charged with having violated with 922, the gun |
| 13:03:59 | 16 shop owner violated 922, so consequently, that's subject for |
| 13:04:05 | 17 examination. |
| 13:04:05 | 18         MR. HINES:  That's a selective argument I'm |
| 13:04:07 | 19 hearing there -- |
| 13:04:08 | 20         THE COURT:  I'm little concerned about selective |
| 13:04:21 | 21 prosecution, but I understand it goes to bias. |
| 13:04:22 | 22         MR. LOWELL:  I didn't mean selective, I'm sorry, |
| 13:04:19 | 23 Judge, I am not suggesting that it's selective, that's not |
| 13:04:19 | 24 the point, the point is, just the way they have given people |
| 13:04:22 | 25 immunity, which they have, they gave Mr. Palimere a proffer |

44

| | |
|---|---|
| 13:04:26 | 1  agreement last week after we were in your court on the |
| 13:04:29 | 2  status conference.  And Mr. Hines said all these things |
| 13:04:32 | 3  about why this is such a great piece of evidence because it |
| 13:04:35 | 4  shows Mr. Biden gave two forms of identification. |
| 13:04:38 | 5          MR. HINES:  I didn't say that -- |
| 13:04:39 | 6          MR. LOWELL:  I'm talking about the fact that if |
| 13:04:41 | 7  the government gives a benefit to a witness that is subject |
| 13:04:44 | 8  to examination. |
| 13:04:45 | 9          THE COURT:  Okay.  Let me ask you this.  You |
| 13:04:47 | 10 mentioned two folks from the gun shop.  You have subpoenaed |
| 13:04:52 | 11 them.  Presumably Mr. Cleveland if he comes to the stand, |
| 13:04:56 | 12 you would just cross-examine him, right, and not call him |
| 13:04:59 | 13 pursuant to subpoena? |
| 13:05:00 | 14         MR. LOWELL:  Yes, ma'am, if he's coming. |
| 13:05:02 | 15         THE COURT:  And then Mr. Palimere, if he didn't |
| 13:05:04 | 16 show up, your plan would be to subpoena him? |
| 13:05:07 | 17         MR. LOWELL:  Yes.  We have had the Court issue a |
| 13:05:10 | 18 subpoena for him at our request.  I don't know if he's been |
| 13:05:13 | 19 served yet or not. |
| 13:05:14 | 20         THE COURT:  Okay.  You also -- there is like -- |
| 13:05:17 | 21 I didn't even look at them because the clerk's office deals |
| 13:05:21 | 22 with subpoenas.  There are like four others.  Are any of |
| 13:05:25 | 23 those other folks gun store people you're going to call? |
| 13:05:28 | 24         MR. LOWELL:  No, Your Honor.  There is |
| 13:05:30 | 25 Mr. Palimere for the reason I said.  And Mr. Palimere has |

45

13:05:34 1 implicated Mr. Turner who did Mr. Palimere's bidding on that
13:05:38 2 day and thereafter, those are the three gun shop employees.
13:05:43 3      MR. HINES:  Your Honor, while we're talking
13:05:44 4 about defense witnesses, because I think it highlights
13:05:47 5 exactly the nullification the defense is trying to inject in
13:05:51 6 this case.  We turned over in discovery messages that
13:05:54 7 Mr. Palimere had with other individuals, one person who is a
13:05:57 8 resident in Florida, another person is another gun owner
13:06:01 9 related type person, nothing to do with this case, and the
13:06:04 10 messages in 2020 and thereafter when Mr. Palimere
13:06:10 11 was -- messages will speak for themselves, but my summary
13:06:14 12 is, you know, he was suggesting that nothing was done with
13:06:18 13 this event and otherwise should have, and that Mr. Biden was
13:06:21 14 receiving protection.
13:06:23 15      THE COURT:  You're saying they're going to
13:06:26 16 improperly try to say oh, this guy was, I don't know,
13:06:30 17 influenced by Russia or Republicans or somebody to say all
13:06:34 18 this?
13:06:34 19      MR. HINES:  Exactly.  They want to turn this
13:06:38 20 into a side show.  One is Michael Elward, and the other is
13:06:41 21 Michael Furia, literally not a percipient witness in this
13:06:47 22 case, it's from events in 2018.
13:06:48 23      THE COURT:  Are you going to move to quash those
13:06:50 24 subpoenas?  How does that work?
13:06:52 25      MR. HINES:  We just got them, and I saw in their

46

13:06:54 1 trial brief and what they said in response to our Motion in
13:06:57 2 Limine yesterday what I believe they're intending to call
13:07:00 3 these people for.  So I think all this underscores our
13:07:03 4 request is to keep it to the facts that matter --
13:07:07 5      THE COURT:  Right.  And I sort of understand
13:07:09 6 what you're saying with respect to some of these other
13:07:12 7 issues, and if you want to move to quash, and you have that
13:07:16 8 brief and let them respond, that's fine, I will address
13:07:19 9 that.
13:07:20 10      What I'm concerned about is, and so if we're
13:07:23 11 going to get out there with like -- with things that go far
13:07:27 12 afield and do fall into the prejudice, I can address those
13:07:31 13 and make a determination.
13:07:33 14      The issue that Mr. Lowell, though, is focused on
13:07:38 15 here is not -- is not, you know, crazy conspiracy theory,
13:07:43 16 it's you made a change.  The whole idea is did this man, who
13:07:48 17 you want to charge with a crime, X a box and make a false
13:07:53 18 statement.  And he's saying look, you have one guy who comes
13:07:57 19 in and says I saw him do it.  But why can't I question his
13:08:02 20 -- why can't I question his credibility and say well, did
13:08:07 21 you really see him do it?  And you knew that the passport
13:08:13 22 wasn't really going to cut it, and you asked about that.
13:08:17 23 Like, I don't know that any of that is really, you know -- I
13:08:28 24 don't know what a jury would think of any of that, but why
13:08:33 25 can't he just try and impeach the guy?

47

13:08:36 1      MR. HINES:  So he can certainly ask
13:08:42 2 Mr. Cleveland, the witness who sold him the gun and watched
13:08:42 3 him fill out Section A of the form, questions to see if
13:08:45 4 Mr. Cleveland is making it up that Mr. Biden actually filled
13:08:48 5 out that section of the form and making it up that somehow
13:08:51 6 --
13:08:51 7      THE COURT:  But also that goes more to Count
13:08:53 8 One.  What Mr. Lowell is talking about, though, is Count
13:08:57 9 Two, which is you lied on a form that someone was required
13:09:02 10 to keep.  And he's saying well, let's say -- I mean, you're
13:09:06 11 saying he lied on a form that someone else had no
13:09:09 12 compunction about making changes to without his knowledge,
13:09:13 13 and does that sort of undercut the claim?  I don't know.
13:09:17 14      MR. HINES:  Not at all.  Mr. Cleveland is the
13:09:20 15 salesperson who saw him fill out Section A.  What
13:09:23 16 Mr. Palimere, a person who was not involved in the actual
13:09:26 17 sale, did years later with respect to another section that's
13:09:29 18 supposed to be completed by firearms licensees only has no
13:09:34 19 relevance to whether Mr. Biden completed the crime in this
13:09:38 20 case in October of 2018, the crime was complete at the
13:09:42 21 moment he signed that certification.
13:09:44 22      THE COURT:  But the question is, what did that
13:09:45 23 certification say at that moment.  And I guess is it fair to
13:09:53 24 let him ask some questions about that?
13:09:59 25      MR. LOWELL:  Whenever it's appropriate, Judge.

48

13:10:02 1      MR. HINES:  I would just say that whether or not
13:10:04 2 Mr. Biden showed up with a Delaware vehicle registration for
13:10:08 3 the car that he showed up in has no bearing on the falsity
13:10:12 4 of his statement whether or not he was an unlawful user or
13:10:18 5 addict, there is no correlation whatsoever.
13:10:20 6      With respect to Mr. Cleveland when he testifies,
13:10:23 7 you can ask the types of questions, did Mr. Biden in fact
13:10:27 8 fill this out, did someone else do it, did you see it filled
13:10:31 9 out.  But to bring in evidence of a form that's created two
13:10:34 10 years later, annotated by someone unrelated, is not even in
13:10:38 11 the witness stand and ask Mr. Cleveland if that had some
13:10:42 12 bearing on what he saw that day is just hearsay and it's
13:10:45 13 irrelevant, it has nothing to do with what the charges are
13:10:49 14 in this case.
13:10:49 15      THE COURT:  Let me hear from you, Mr. Lowell.
13:10:52 16      MR. LOWELL:  I want to clear the brush.  There
13:10:55 17 is no attempt in any of this to create a claim of some vast
13:11:02 18 conspiracy that includes Russia, et cetera, no.
13:11:05 19      THE COURT:  I was trying not to -- I was
13:11:08 20 thinking of things you said in your papers when you said
13:11:11 21 this laptop was compromised in Russia or something, and so I
13:11:17 22 was trying not to make stuff up, I was trying to do
13:11:20 23 something that you had suggested, but not saying you were
13:11:23 24 going to put it in at trial.
13:11:25 25      MR. LOWELL:  All I want to add to whatever I

49

13:11:26 **1** just said, I don't understand when special counsel says
13:11:33 **2** something about it's hearsay, it's not hearsay depending on
13:11:36 **3** whether or not Mr. Cleveland will say he said it or
13:11:39 **4** Mr. Palimere will say he said it.  I can't address that.
13:11:42 **5** What I can address, again, is Mr. Palimere was involved in
13:11:45 **6** the issues on the day of the sale.  Mr. Palimere had the
13:11:48 **7** form between the time of the sale and the time the events
13:11:51 **8** occurred in which the form was sent on to the ATF.  That is
13:11:55 **9** something that is not contested.
13:11:58 **10**                In addition to which, I understand the special
13:12:02 **11** counsel's office can try to sanitize by, for example,
13:12:05 **12** calling it annotated, but also sanitize by just calling
13:12:09 **13** Mr. Cleveland knowing full well that Mr. Palimere had a very
13:12:13 **14** important conversation with Mr. Cleveland on the day the gun
13:12:16 **15** was bought that puts Mr. Palimere in the events of that day
13:12:19 **16** concerning the elements of the crime, number one.
13:12:21 **17**                But also, Judge, they then go interview him, and
13:12:25 **18** when they interview him after I raised this with Your Honor
13:12:29 **19** and said this form is much more complicated than special
13:12:34 **20** counsel indicates it is, two days later they interview him
13:12:37 **21** and he gave them misinformation that day according to the
13:12:43 **22** Form 302.  He says he was involved in 2021 because the press
13:12:47 **23** was after him.  It turns out Mr. Palimere invited the press
13:12:51 **24** to become involved in this case --
13:12:52 **25**                THE COURT:  I get it, you said some of that

50

13:12:54 **1** stuff in your papers.  What I am going to do on this one is
13:12:57 **2** I am going to withhold ruling and take this under
13:13:01 **3** advisement.  I need to understand how this whole thing is
13:13:05 **4** going to play out including with witnesses.  Are you calling
13:13:08 **5** these people from Florida?
13:13:09 **6**                MR. LOWELL:  No, if Mr. Palimere -- I didn't
13:13:11 **7** know that I was going to call -- well, I was thinking we
13:13:14 **8** were going to call Mr. Palimere, I wasn't sure.  Now given
13:13:17 **9** what he told the government, the witnesses will be the gun
13:13:20 **10** shop owners, the gun shop seller, and none of the other
13:13:24 **11** witnesses, and we will withdraw those two subpoenas based on
13:13:28 **12** Mr. Palimere testifying so I can clear that up.  I didn't
13:13:33 **13** know, Judge, until three days ago or whatever it was what
13:13:36 **14** Mr. Palimere said, and Mr. Palimere directed the falsity to
13:13:40 **15** be put on the form, I had no idea.
13:13:42 **16**                THE COURT:  Okay.  So I am going to take this
13:13:44 **17** one under advisement.  So he's withdrawn two of his
13:13:48 **18** subpoenas.  If you have issues with any of the other
13:13:51 **19** subpoenas that you want me to address before trial, file a
13:13:53 **20** motion.
13:13:54 **21**                MR. HINES:  Thank you, Your Honor.
13:13:55 **22**                THE COURT:  Okay.  So those are the motions.
13:14:02 **23** There is still a motion for an injunction outstanding.  I
13:14:05 **24** know it's out there and briefing is underway and when I get
13:14:08 **25** that briefing, I will address it.

51

13:14:10 **1**                MR. LOWELL:  I'm sorry, something else on the
13:14:12 **2** MIL's before we pass them when you're ready.
13:14:15 **3**                THE COURT:  Sure.  I was just going to ask --
13:14:18 **4**                MR. LOWELL:  One the government said, two things
13:14:21 **5** you said.  I want to be clear, your reference to the CFR, I
13:14:25 **6** assume it will be for the full CFR you see in your papers
13:14:29 **7** and the trial brief response?  There is language in there
13:14:31 **8** what an addict is and what a user is.  The Court is going to
13:14:35 **9** use the reg.  We ask that you use the entire reg, that's
13:14:38 **10** one.
13:14:38 **11**                THE COURT:  Any objection?
13:14:39 **12**                MR. HINES:  Yes, Your Honor.  We wanted to
13:14:40 **13** request that we use an instruction that's been blessed by
13:14:43 **14** the Court, and specifically we're asking for the Eighth
13:14:46 **15** Circuit model jury instruction.  We're not proceeding on the
13:14:49 **16** theory of that first part, the person who uses a controlled
13:14:53 **17** substance has lost the power of self control with reference
13:14:57 **18** to the use of the controlled substance, someone grabbed a
13:15:00 **19** gun and went and done something violent.  There is multiple
13:15:03 **20** theories under that regulation under which the Defendant
13:15:05 **21** could be considered --
13:15:07 **22**                THE COURT:  Is this a jury instruction fight?
13:15:09 **23**                MR. HINES:  Yes, this is a jury instruction
13:15:10 **24** fight.
13:15:10 **25**                THE COURT:  Do I have to deal with a jury

52

13:15:12 **1** instruction fight at the pretrial conference, or you're
13:15:15 **2** saying I do because of all the evidence that they're going
13:15:18 **3** to try to put in?
13:15:20 **4**                MR. HINES:  I think what -- why I think
13:15:22 **5** Mr. Lowell is raising this now is because in opening, he may
13:15:25 **6** address -- not citing instructions, I'm sure he won't do
13:15:31 **7** that, but suggest that someone has lost the power of self
13:15:34 **8** control, which is not in the Eighth Circuit model jury
13:15:38 **9** instructions.  It's not accepted in *Turnbull* or all the
13:15:40 **10** other cases that we've cited.  What they have honed in on
13:15:44 **11** are portions of that regulation that are applicable here to
13:15:47 **12** the Defendant, so we merely ask the Court use the exact
13:15:51 **13** Eighth Circuit model jury instruction.
13:15:53 **14**                MR. LOWELL:  Judge, my response so far is just
13:15:56 **15** this, I don't always agree with they say I am going to do
13:15:59 **16** before I do it, I am not using that in opening statement.
13:16:03 **17** But Your Honor basically said you were looking at the law,
13:16:06 **18** you looked at the Third Circuit, you looked at the Third
13:16:09 **19** Circuit made reference to the regulation.  The regulation is
13:16:11 **20** the regulation in its entirety.  The Eighth Circuit is not
13:16:15 **21** this circuit.  They want to pick part of that regulation
13:16:18 **22** that suits them and exclude part of that regulation that
13:16:21 **23** doesn't.  It will then be -- I don't know what evidence will
13:16:23 **24** come in through them and their witnesses, but I'm just
13:16:26 **25** asking the Court, if you are going to rely on the --

53

13:16:29 1    THE COURT:  You're asking me when I ruled, did I
13:16:33 2 mean to say the entire regulation is coming in.  I did not
13:16:36 3 address that issue.  I did not consider that issue, so I
13:16:39 4 cannot say yes to that issue, but I will take a look at that
13:16:42 5 issue.
13:16:42 6    MR. LOWELL:  So all we're asking is if that is
13:16:45 7 informing the Court or will inform the jury, the government
13:16:48 8 shouldn't be allowed to pick and choose what part of the
13:16:51 9 regulation they think works.
13:16:52 10    THE COURT:  Right.  I will take a look at it.
13:16:54 11 As I understand the government's position they want to pick
13:16:57 12 and choose the portions of the regulations that they're
13:16:59 13 actually relying on in order to prove guilt.  There is
13:17:03 14 probably lots of things that are in regulations that your
13:17:06 15 client didn't do and aren't relevant, because it doesn't
13:17:10 16 apply to what's actually being -- he's being accused of.
13:17:14 17    MR. LOWELL:  One more point on that is only
13:17:16 18 this, of course the government, we agree that's what's at
13:17:19 19 issue here, Defendant, Mr. Biden's knowingly and
13:17:22 20 intelligently state of mind when he says and does things,
13:17:25 21 and so if a regulation informs that, it could, I don't know
13:17:29 22 what all the evidence will be, but part of the evidence will
13:17:32 23 be that if you're going to hold him responsible to what part
13:17:35 24 of the regulation says, I don't mean you, but I don't know
13:17:39 25 what it's going to end up.  It seems to me there is a part

54

13:17:42 1 of that regulation that will conform to the evidence as to
13:17:46 2 what was happening to him, that becomes germane.  I
13:17:49 3 understand we're at a pretrial conference --
13:17:51 4    THE COURT:  I understand, but what I'm also
13:17:53 5 concerned about is instruction to the jury about what
13:17:55 6 regulations mean or what the law means which seems like it's
13:17:59 7 outside of the bounds of what lawyer argument addresses.  So
13:18:02 8 I will go back and look at the papers that I already have on
13:18:05 9 that issue because I was not appreciating that aspect of it,
13:18:09 10 and if I have more questions, I will let you know.
13:18:12 11    MR. LOWELL:  Thank you.
13:18:12 12    And the other thing I just wanted to point out
13:18:14 13 on Motion in Limine number 1 is what you had said in your
13:18:19 14 ruling on your constitutional challenge on the as applied
13:18:22 15 part, and you said when it becomes relevant, we can make
13:18:25 16 that.  And of course we don't know that until the evidence
13:18:28 17 comes in.  I didn't think you were saying I need to make the
13:18:31 18 motion before we get to a Rule 29 on the issue because as
13:18:35 19 applied, as Your Honor pinpointed out, can't occur until we
13:18:39 20 know the facts and this is a good example as to when use
13:18:41 21 occurred.  When in the law is it developing?  Is it
13:18:46 22 contemporaneous for somebody to be buying a gun and using?
13:18:50 23 Those are issues that you're grappling with, I know, in the
13:18:53 24 jury instruction as we have submitted them, and you are
13:18:55 25 looking at them, but that is -- I guess I'm trying to make

55

13:18:58 1 sure --
13:18:59 2    THE COURT:  You're making sure you didn't waive
13:19:01 3 an as applied challenge.
13:19:02 4    MR. LOWELL:  You said we had that right.
13:19:03 5    THE COURT:  A few words, I got it, that's what
13:19:06 6 you wanted.  And I have not made that determination that you
13:19:11 7 have waived it and, in fact, I think as we said in our
13:19:13 8 brief, in our opinion that --
13:19:17 9    MR. LOWELL:  You would entertain it --
13:19:20 10    THE COURT:  From what we saw it's usually fact
13:19:23 11 based.  But that doesn't mean you should be trying to elicit
13:19:26 12 facts to support that in front of the jury if they are not
13:19:28 13 relevant to other issues in front of the jury.
13:19:30 14    MR. LOWELL:  Right.  And I can say yes to that
13:19:33 15 easily.  But, for example, there is testimony that's going
13:19:36 16 to come in from their witnesses as to when, for example,
13:19:39 17 Mr. Biden was theoretically using what.  By definition that
13:19:44 18 will go to an issue of whether it was contemporaneous in
13:19:47 19 some fashion or not.
13:19:49 20    THE COURT:  I'm just saying if it's not relevant
13:19:51 21 to the issues that are here, then it doesn't come in.
13:19:55 22    MR. LOWELL:  I understand that.
13:19:56 23    THE COURT:  In front of the jury.  If it is
13:19:58 24 relevant to their issues, then --
13:20:00 25    MR. LOWELL:  Okay.  You'll have no problem with

56

13:20:03 1 me about that issue.
13:20:04 2    THE COURT:  Okay.  Anything else on motions in
13:20:06 3 limine?
13:20:07 4    MR. HINES:  No, Your Honor.  Thank you.
13:20:11 5    THE COURT:  Okay.  So some miscellaneous issues
13:20:11 6 and trial logistics.  So let me get an idea of the scope of
13:20:16 7 the trial.  The government list nine witnesses and
13:20:20 8 anticipates calling several other witnesses on its witness
13:20:23 9 list and may call those in case-in-chief or rebuttal.  Is
13:20:27 10 that still the plan?
13:20:28 11    MR. HINES:  Yes, Your Honor.  Per the Court's
13:20:30 12 order we brought a witness list today for the defense and
13:20:33 13 for Your Honor.  We have twelve witnesses listed on that
13:20:36 14 list, and it's possible, given that the parties have agreed
13:20:41 15 to stipulate that one issue, it might end up being eleven
13:20:45 16 witnesses or so.
13:20:46 17    THE COURT:  Okay.  Can we see that?  And these
13:20:48 18 are all live, we don't have depositions like I do in civil
13:20:52 19 trials?
13:20:53 20    MR. HINES:  Correct.
13:20:57 21    THE COURT:  We call them bedtime stories.
13:21:08 22    Okay.  And Defendant, Mr. Lowell, I understand
13:21:15 23 your case will -- what you do in your case may change
13:21:21 24 throughout trial.  Currently are you just thinking the gun
13:21:27 25 shop owner?

13:21:29 1     MR. LOWELL:  Judge, first of all, I just got
13:21:31 2 this and that's when we're supposed to get it, so I didn't
13:21:34 3 know.
13:21:35 4     THE COURT:  Okay.
13:21:36 5     MR. LOWELL:  I will say to you that our
13:21:37 6 witnesses -- I have no concept of if we're going to have a
13:21:42 7 case-in-chief, and I wouldn't.  As often the case the
13:21:46 8 Defendant doesn't have to have one.  So seeing this will
13:21:49 9 help me decide that.  If we have a case-in-chief, depending
13:21:54 10 on this list, and putting aside the possibility of Mr. Biden
13:21:57 11 testifying, we will have witnesses in that regard.
13:22:00 12 Partially it will depend on the decision you make on
13:22:03 13 experts, that will be two, given that Mr. Palimere has
13:22:07 14 admitted when I was trying to figure out when I was trying
13:22:10 15 to figure out what he has done, I don't need a handwriting
13:22:13 16 expert.
13:22:13 17     THE COURT:  That's helpful, one less thing for
13:22:15 18 me to decide.
13:22:16 19     MR. LOWELL:  But it kind of depends on what
13:22:19 20 happens with Mr. Palimere.
13:22:20 21     THE COURT:  I got it.  So Mr. Detweiler is the
13:22:23 22 one who may or may not be testifying?
13:22:28 23     MR. LOWELL:  And likely not.
13:22:29 24     THE COURT:  And then with respect to the
13:22:30 25 clinicians, you would only be calling one of those?

13:22:33 1     MR. LOWELL:  Correct.  It was a question of who
13:22:35 2 was available, so there would be one.
13:22:39 3     THE COURT:  And then you have the chemical
13:22:40 4 residue guy?
13:22:41 5     MR. LOWELL:  Yes.  And even that, Judge,
13:22:44 6 depending on whether or not --
13:22:45 7     THE COURT:  What happens in cross and stuff like
13:22:47 8 that.
13:22:47 9     MR. LOWELL:  Correct, that may or may not be
13:22:49 10 necessary.  And then in addition the other possible witness
13:22:53 11 is depending on what the list is, for example, from some on
13:22:56 12 the government's list could be people who had contact with
13:22:59 13 Mr. Biden in the period of time of what's going on in this
13:23:02 14 case, say from sometime in 2018 through the time of the
13:23:08 15 deposition as to what happened and what his state was and
13:23:11 16 what his state of mind was, but I can't say that yet.
13:23:14 17     THE COURT:  Okay.  No --
13:23:18 18     MR. LOWELL:  And I don't think that would be
13:23:21 19 more than two or three witnesses for that period of time.
13:23:24 20     THE COURT:  So what I'm trying to figure out,
13:23:26 21 and the reason I asked that is not because I want to pin you
13:23:30 22 down, but because we originally talked about this being a
13:23:32 23 three- to five-day trial, and when I ask questions from the
13:23:35 24 voir dire, I tell folks how long they are going to be here.
13:23:45 25 So --

13:23:52 1     MR. LOWELL:  Just on that, Judge, I wanted to
13:23:53 2 remind the Court and counsel for the government that I
13:23:56 3 didn't say -- I said the opposite, I said I don't know that
13:23:59 4 it will take, depending on how long voir dire is going to
13:24:02 5 be, whether the government's estimate is correct.
13:24:05 6     THE COURT:  I'm not holding you to it, I get it,
13:24:08 7 but I want to tell the jury something.  Right?  Because I
13:24:11 8 can't say you're going to be here for a month, that seems
13:24:15 9 unfair if nobody thinks they're going to be here for a
13:24:20 10 month, but I don't want to say they're going to be here for
13:24:23 11 two days if then there are going to be scheduling conflicts.
13:24:25 12 My question is what do you want me to tell them?
13:24:28 13     MR. LOWELL:  Can I consult with counsel for a
13:24:31 14 second?
13:24:32 15     THE COURT:  You may.
13:24:43 16     MR. LOWELL:  I think either way, Judge, I think
13:24:45 17 if you said to them without regard to selection, it will go
13:24:50 18 possibly two weeks, the first week and the second week.
13:24:53 19     THE COURT:  Without regard to --
13:24:55 20     MR. LOWELL:  From the moment testimony begins, I
13:24:57 21 believe there could be one, two, three, four, five, six,
13:25:00 22 seven or eight trial days.
13:25:02 23     THE COURT:  Okay.  I'm sorry about the math
13:25:06 24 here.  It's confusing me.  So let's assume the worst and
13:25:15 25 that the jury selection finishes on Wednesday, June 5th, you

13:25:20 1 want me to tell them they would need to be available until
13:25:24 2 June 19th, or you want me to tell them they would need to be
13:25:28 3 available until June 14th?
13:25:30 4     MR. LOWELL:  I have to do the math on that.  I
13:25:31 5 have to do the calendar.  3rd, 10th, 10, 11, 12, 13, 14.  I
13:25:38 6 can't predict.  I think you could for the purposes of jury
13:25:42 7 selection say this case should take between two and three
13:25:47 8 trial weeks, no later than the third week, so it would be
13:25:49 9 more like the 19th, not the 14th.
13:25:51 10     MR. HINES:  So if their case is three times as
13:25:53 11 long as ours, then it could take that long, but we have
13:25:57 12 twelve witnesses.  If we start on Wednesday, it is possible
13:26:00 13 we could go into Monday.  We think it's approximately three
13:26:03 14 days of case-in-chief for us.
13:26:05 15     THE COURT:  I get it.  And I understand.  I
13:26:08 16 think he's being conservative.  What I don't want to happen
13:26:14 17 is we lose jurors after they spend time dealing with this
13:26:19 18 issue and then they say you only told me two weeks and I'm
13:26:22 19 going on vacation next week.
13:26:24 20     MR. LOWELL:  I think the 14th is a very
13:26:26 21 reasonable projection, but that can --
13:26:29 22     THE COURT:  14th.  So we can say something like
13:26:32 23 through the 14th, but there is some chance it may go into
13:26:35 24 the following week, that you may be here the following week?
13:26:38 25     MR. LOWELL:  I think that's fair.  I don't think

61

| | | |
|---|---|---|
| 13:26:40 | 1 | our case will take twice or three times as long.  Again, you |
| 13:26:43 | 2 | have done this a long time, I have done this a bit of time, |
| 13:26:47 | 3 | people's projections about how long witness questioning |
| 13:26:51 | 4 | sometimes is wrong, but yes, I think you said it correct. |
| 13:26:53 | 5 | THE COURT:  Okay.  That is helpful.  Okay. |
| 13:26:58 | 6 | MR. HINES:  Your Honor, can I just ask, you're |
| 13:27:01 | 7 | sitting on Friday, correct, the Fridays of each week? |
| 13:27:04 | 8 | THE COURT:  We're a five day a week kind of |
| 13:27:07 | 9 | court. |
| 13:27:07 | 10 | MR. HINES:  Thanks, Your Honor. |
| 13:27:09 | 11 | THE COURT:  So in my civil trials, and in the |
| 13:27:19 | 12 | criminal trials that I have had to date, we have had the |
| 13:27:25 | 13 | parties provide to us electronic versions of all trial |
| 13:27:30 | 14 | exhibits that they know as of now that they intend to offer. |
| 13:27:37 | 15 | Is that something that you could get to us by |
| 13:27:40 | 16 | noon on Friday, May 31st? |
| 13:27:43 | 17 | MR. HINES:  I can get it to you today because |
| 13:27:45 | 18 | your order says that the parties shall exchange exhibit |
| 13:27:48 | 19 | lists and bring exhibits, so I have that for the Court |
| 13:27:51 | 20 | today. |
| 13:27:51 | 21 | THE COURT:  Even electronically? |
| 13:27:53 | 22 | MR. HINES:  Electronically, I have a USB drive |
| 13:27:56 | 23 | that our support team has put together. |
| 13:27:58 | 24 | THE COURT:  Mr. Lowell, are there exhibits that |
| 13:28:00 | 25 | you know -- I don't know, do you -- |

62

| | | |
|---|---|---|
| 13:28:02 | 1 | MR. HINES:  May I pass this up? |
| 13:28:04 | 2 | THE COURT:  You may.  Do you guys exchange |
| 13:28:07 | 3 | exhibits or not?  I don't know how it works. |
| 13:28:09 | 4 | MR. HINES:  Yes, your order said we should do |
| 13:28:11 | 5 | that today. |
| 13:28:12 | 6 | MR. LOWELL:  Yes, so the answer to Your Honor's |
| 13:28:14 | 7 | question is we will provide the government with our best |
| 13:28:19 | 8 | guess of what our case-in-chief exhibits might be and it's |
| 13:28:22 | 9 | not many, but of course we have no obligation to provide the |
| 13:28:25 | 10 | government with our cross-exam, so we will do that.  And we |
| 13:28:28 | 11 | can give the government that at the end of the day today and |
| 13:28:32 | 12 | provide it to the Court as well.  I don't know -- |
| 13:28:35 | 13 | THE COURT:  That's fine, I only need it by next |
| 13:28:37 | 14 | Friday. |
| 13:28:37 | 15 | MR. LOWELL:  Well, you'll have it in plenty of |
| 13:28:40 | 16 | time. |
| 13:28:40 | 17 | THE COURT:  What I would ask, to the extent it's |
| 13:28:42 | 18 | feasible for the cross-examination stuff, we don't accept |
| 13:28:46 | 19 | paper copies of binders because I just wind up here behind a |
| 13:28:50 | 20 | mountain of binders.  Okay?  So what I typically do is I |
| 13:28:54 | 21 | just keep them, I have all of the exhibits, they're labeled |
| 13:28:58 | 22 | electronically, you know, PTX 1 through whatever, DTX 1 |
| 13:29:03 | 23 | through whatever, if there is joint exhibits, JTX 1 through |
| 13:29:06 | 24 | whatever, however you want to call them, government's |
| 13:29:09 | 25 | exhibit, I don't care, but if I hit sort on my list they |

63

| | | |
|---|---|---|
| 13:29:15 | 1 | come up in the way they do. |
| 13:29:16 | 2 | If you are going to have documents that you use |
| 13:29:19 | 3 | for cross, is there a way that you can submit possible |
| 13:29:25 | 4 | documents to us that you would use?  You don't have to give |
| 13:29:28 | 5 | them to the other side in advance, but could you give them |
| 13:29:31 | 6 | to us so that I have them, and then when a dispute comes up, |
| 13:29:35 | 7 | it just makes it more efficient for me to look at. |
| 13:29:39 | 8 | MR. LOWELL:  Just one minute.  Let me speak to |
| 13:29:42 | 9 | somebody who understands documents. |
| 13:29:44 | 10 | THE COURT:  I understand if there is something |
| 13:29:45 | 11 | random that comes up. |
| 13:29:47 | 12 | MR. LOWELL:  I'm sure we can do that, Your |
| 13:29:50 | 13 | Honor.  It may end up being that we can't give it to you all |
| 13:29:54 | 14 | in advance, but we would give it to you in advance of the |
| 13:29:57 | 15 | witness -- |
| 13:29:58 | 16 | THE COURT:  That's what I was thinking, if we |
| 13:30:00 | 17 | know someone is going to be called on Monday, if you could |
| 13:30:03 | 18 | by Monday morning at 7:00 a.m. generally get them to us. |
| 13:30:06 | 19 | MR. LOWELL:  Or the night before. |
| 13:30:08 | 20 | THE COURT:  Or the night before get them to us |
| 13:30:10 | 21 | so we can have them loaded and it tends to make things go |
| 13:30:14 | 22 | more smoothly. |
| 13:30:15 | 23 | MR. LOWELL:  That I'm sure we can get it to the |
| 13:30:17 | 24 | Court with your understanding that we are giving them to |
| 13:30:19 | 25 | you. |

64

| | | |
|---|---|---|
| 13:30:20 | 1 | MR. HINES:  Your Honor, on one exhibit with |
| 13:30:21 | 2 | respect to the audio book and the book, I want the Court to |
| 13:30:25 | 3 | know that our paralegal has snipped the audio portions to be |
| 13:30:29 | 4 | the portions we highlighted in the book for efficiency, we |
| 13:30:34 | 5 | can move, we don't have to spend a lot of time locating them |
| 13:30:38 | 6 | in large segments.  Your Honor left open the possibility |
| 13:30:42 | 7 | that the Defendant might raise completeness type questions. |
| 13:30:46 | 8 | If we were to accommodate that in our trial exhibit, that |
| 13:30:49 | 9 | takes some time so we would need to know that soon -- |
| 13:30:51 | 10 | MR. LOWELL:  I think we can tell the government |
| 13:30:53 | 11 | what we think by the middle of next week for sure. |
| 13:30:56 | 12 | THE COURT:  If there is a dispute, it may be |
| 13:30:58 | 13 | that the completeness aspect is they can use it on cross, |
| 13:31:02 | 14 | but you guys can see if you can work that out. |
| 13:31:04 | 15 | MR. HINES:  Okay, Your Honor. |
| 13:31:05 | 16 | MR. LOWELL:  One other point that we put in our |
| 13:31:07 | 17 | paper, and I'll also explain whether the Motion in Limine |
| 13:31:10 | 18 | was talked about, I think irrelevant or self serving, we |
| 13:31:15 | 19 | will not be seeking statements of Mr. Biden unless it's out |
| 13:31:18 | 20 | of his own mouth if he were to take the stand for the truth |
| 13:31:21 | 21 | of the matter, but of course state of mind is relevant, |
| 13:31:24 | 22 | they're using it for both.  I think we will work with the |
| 13:31:28 | 23 | government to have completeness, but I wanted to point out |
| 13:31:31 | 24 | that there are other admissibility issues in terms of |
| 13:31:35 | 25 | whether or not an out-of-court statement by the Defendant is |

65

13:31:38 **1** admissible for another reason.

13:31:39 **2**        MR. HINES:  We have addressed that rule in our

13:31:40 **3** reply.  It doesn't apply here because it's not then existing

13:31:45 **4** --

13:31:45 **5**        THE COURT:  I would say that those types of

13:31:48 **6** statements are not going to come in subject to my proviso

13:31:54 **7** that if you think there is a reason that they should come

13:31:56 **8** in, you should ask before you do it.

13:31:58 **9**        MR. LOWELL:  Yes, Judge, but again, just so

13:32:00 **10** they're clear, I'm not suggesting that for what he wrote in

13:32:04 **11** 2021, I'm asking that there are statements he makes in 2018

13:32:09 **12** right in the midst of the one they're using, so it's not an

13:32:13 **13** after the fact, it's in the fact, that's the question.  I

13:32:17 **14** think I understood him to say wait, you can't use his book

13:32:20 **15** excerpts because it doesn't go to his state of mind at the

13:32:24 **16** time.  Statements he made in the very same text that they're

13:32:27 **17** raising could go to that issue.

13:32:29 **18**        THE COURT:  I don't know what you're talking

13:32:30 **19** about and I don't rule on evidentiary exhibits in generic

13:32:34 **20** general terms, so if there is something to that effect and

13:32:37 **21** you want to use it, then I guess you should tell the

13:32:39 **22** government and you guys can decide.  It might come up in

13:32:43 **23** what they ask you to add to the chart, I don't know.

13:32:48 **24**        MR. LOWELL:  Exactly.

13:32:49 **25**        THE COURT:  And if there is a dispute on that --

66

13:32:51 **1**        MR. HINES:  We're happy to work with defense if

13:32:53 **2** there is that completeness issue.  I don't think that rule

13:32:56 **3** -- I'll talk with Mr. Lowell offline, but that rule doesn't

13:32:59 **4** apply here, but we're happy to work with the defense.

13:33:02 **5**        THE COURT:  If you can't agree, then you can

13:33:05 **6** raise it.

13:33:06 **7**        Okay.  Witness binders.  We do not accept

13:33:08 **8** witness binders for my court reporter, my clerk, or me.  If

13:33:11 **9** you want to give them to the witnesses, that's probably a

13:33:17 **10** good idea.  If you do, I will tell you that like on

13:33:20 **11** cross-examinations when people keep going up and back with

13:33:23 **12** exhibits, juries despise that, especially with Covid.  They

13:33:26 **13** feel like people are breathing on them unnecessarily.  So

13:33:30 **14** you can do it however you're comfortable doing, but with

13:33:33 **15** respect to like walking up and back with exhibits, juries

13:33:39 **16** hate it.

13:33:39 **17**        MR. LOWELL:  I have a question.  I have not

13:33:41 **18** appeared in this court before.  Usually these days exhibits

13:33:45 **19** are presented electronically on the screen, et cetera.

13:33:49 **20**        THE COURT:  So the way I do it is the witness

13:33:53 **21** has a book, and if you're trying to put an exhibit into

13:33:59 **22** evidence, you need to get -- you need to offer the exhibit

13:34:03 **23** into evidence before you can show it on the screen to the

13:34:07 **24** jury.  So that's why I'm saying the witness has a book

13:34:10 **25** because otherwise there is no way you can say to the

67

13:34:13 **1** witness, what's DTX-25.

13:34:15 **2**        MR. LOWELL:  In other words, in this courtroom,

13:34:16 **3** there is not the device by which the Court, counsel and a

13:34:20 **4** witness will look at an exhibit to identify it before it's

13:34:24 **5** published to the jury?

13:34:28 **6**        THE COURT:  No.

13:34:29 **7**        MR. LOWELL:  There is not that?  On

13:34:31 **8** cross-examination, that's a challenge because I can't tell

13:34:34 **9** in advance.  I don't want to give a witness, especially an

13:34:38 **10** adverse witness a book of what he or she or they are going

13:34:41 **11** to be cross-examined about before that happens so I can --

13:34:44 **12**        THE COURT:  Most of the time -- look, if you

13:34:47 **13** want, just keep walking back and forth, but what usually

13:34:51 **14** happens is right as the witness is about to be crossed, they

13:34:55 **15** get a binder and it's not like they're going to be sitting

13:34:59 **16** up there reading through everything because you're going to

13:35:02 **17** start asking questions.  And then you ask them a question,

13:35:05 **18** you say, do you recognize that, yes, I do, you know, that's

13:35:09 **19** a form that you signed or whatever you're going to ask, and

13:35:12 **20** then you say I offer that into evidence and then you put it

13:35:15 **21** on the screen.  It's not --

13:35:17 **22**        MR. LOWELL:  I understand.  I am used to the

13:35:19 **23** other way of doing it, but I have been in many courtrooms

13:35:22 **24** that are different.  I will figure out a way to work within

13:35:24 **25** this Court's ability and what you just said.

68

13:35:31 **1**        THE COURT:  I appreciate that.

13:35:33 **2**        If you know ahead of time that you have

13:35:35 **3** objections to a witness or an exhibit that's going to be

13:35:37 **4** offered, try to bring those to our attention in the morning

13:35:41 **5** before the witness will testify.  Typically what I do is I

13:35:44 **6** say like, if, for example, the government is going to call a

13:35:49 **7** particular witness and you say we know they're going to use

13:35:52 **8** an exhibit that we object to with that witness, I would try

13:35:56 **9** to bring that to my attention in the morning.  Just, again,

13:35:59 **10** to make the time that the jurors -- we are compelling

13:36:03 **11** citizens of our state to come in here.  I try to make things

13:36:05 **12** as efficient as possible so we use time when they're not

13:36:09 **13** here to deal with objections.

13:36:11 **14**        MR. HINES:  Yes, Your Honor.

13:36:12 **15**        MR. LOWELL:  Yes, Your Honor.

13:36:13 **16**        THE COURT:  Okay.  So I ask if you can you do

13:36:16 **17** that so we don't have to just have them sitting over there

13:36:20 **18** doing nothing while we fight about -- you guys fight about

13:36:23 **19** what is going to come in or not.

13:36:26 **20**        We already talked about the days for trial.

13:36:31 **21** Trial will start on Monday, June 3rd.  Jury selection will

13:36:36 **22** take place that morning and will proceed as discussed during

13:36:41 **23** the May 14th status conference.  Recall we are bringing up

13:36:44 **24** to 250 citizens in five waves of fifty starting the morning

13:36:49 **25** of June 3rd.  The second wave -- so the first wave I think

69

13:36:52 1  is supposed to report at 7:30 with the idea that we would
13:36:58 2  start the process around 8:30, to the extent that we can.
13:37:02 3          The second one will come that day at noon.  And
13:37:08 4  then Tuesday at 8:30, Wednesday at noon -- I'm sorry,
13:37:14 5  Tuesday at 8:30 and 12:00, and Wednesday at 8:30.  And I am
13:37:21 6  anticipating presentation of evidence to begin right after
13:37:22 7  the jury is seated unless we finish jury selection at the
13:37:25 8  end of the day.
13:37:26 9          Any issue with that?
13:37:28 10         MR. HINES:  No, Your Honor.
13:37:29 11         MR. LOWELL:  No, Your Honor.
13:37:29 12         THE COURT:  All right.  We will plan then on
13:37:32 13 subsequent trial days we start at 9:00 a.m., and you should
13:37:36 14 be prepared to present evidence to the jury until at least
13:37:39 15 4:30.  Sometimes juries like to go a little bit longer.
13:37:42 16 We'll go at least to 4:30, or if you can finish up a witness
13:37:46 17 in the next fifteen minutes, we can go to 4:45, that's
13:37:51 18 flexible, but at least 4:30.  We do a fifteen-minute break
13:37:55 19 in the morning and one in the afternoon.
13:37:56 20         All right.  Voir dire --
13:37:58 21         MR. LOWELL:  Before you get there, Judge, again,
13:38:01 22 I don't know, how long do you give the jurors and personnel
13:38:04 23 for lunch?
13:38:04 24         THE COURT:  That was actually a good question.
13:38:07 25 Lunch, we typically give them about an hour.  And we tend to

70

13:38:11 1  bring in lunch because if we let them go out for lunch, then
13:38:14 2  it takes extra time because they have to get back in through
13:38:18 3  security.  We will do an hour.  If it turns out that we need
13:38:21 4  to give them more time because there are issues, we can
13:38:24 5  address that, but that's my plan.
13:38:26 6          Voir dire.  I described some of this at the
13:38:30 7  May 14th status conference and I will explain the process in
13:38:33 8  more detail now.
13:38:34 9          Prospective jurors when they come in, they would
13:38:38 10 be randomized when they arrive and assigned a number 1
13:38:42 11 through 50 for each wave.  25 will sit in the back over
13:38:46 12 here, and 25 will sit in the back on the other side.  Each
13:38:50 13 juror will wear a number.  And each juror will be provided
13:38:53 14 with a sheet that includes the voir dire questions and a pen
13:38:57 15 or pencil so that each may keep track of any yes answers on
13:39:01 16 their own when I read the questions aloud.
13:39:04 17         The jury will then move to Courtroom 4B next
13:39:08 18 door, and we will bring in one juror at a time through this
13:39:13 19 door over here if they have answered yes to any questions so
13:39:17 20 that we can conduct further questioning.
13:39:19 21         If the juror did not answer yes to any question,
13:39:22 22 they will automatically be in the pool of thirty-two and
13:39:25 23 subject to preemptory strikes.  Those people will remain in
13:39:29 24 4B until we're ready for preemptories, or they are told to
13:39:32 25 come back because we need more time to finish selecting the

71

13:39:36 1  jury.
13:39:37 2          So with respect to the voir dire, we're going to
13:39:42 3  give you our thoughts on the proposed voir dire.  In
13:39:46 4  general, I think I'm going to ask the questions that you
13:39:48 5  asked me to do so, but what I am planning to do is you have
13:39:53 6  questions on there that are not yes/no questions, and
13:39:57 7  they're sort of subquestions.  If you answered yes to a
13:40:00 8  question, there is a subquestion.
13:40:01 9          My plan would be to just ask the yes or no
13:40:05 10 question with those other questions being asked in follow-up
13:40:08 11 when the jurors come in.  So I don't even -- let me see if I
13:40:17 12 have an example.
13:40:18 13         Okay.  Proposed question.  "Have any of you
13:40:24 14 heard or read anything about this case or the underlying
13:40:27 15 investigation from the news, social media, or any other
13:40:30 16 source?"  That would be my question.  To the extent that
13:40:32 17 someone answered yes to that question when they came in, we
13:40:37 18 would ask them about what they heard.  We would ask what
13:40:40 19 news outlet, internet site, or social media source generally
13:40:48 20 speaking, where do you get your news, those would be
13:40:50 21 questions that you all could appropriately ask if you all
13:40:54 22 wanted to, but I wouldn't ask them in the general voir dire.
13:40:58 23         Thoughts?
13:40:59 24         MR. HINES:  That's fine with us.
13:41:01 25         MR. LOWELL:  I think that's fine, also, Your

72

13:41:03 1  Honor.
13:41:03 2          THE COURT:  Okay.  And then as I just said,
13:41:07 3  those are questions you could ask.  If you want me, I can
13:41:10 4  ask those subsets and you can follow-up.  My plan would be
13:41:14 5  to allow -- I usually welcome the jury in and ask them what
13:41:20 6  they answered yes to and ask them some standard, some
13:41:24 7  introductory questions and then allow the attorneys to ask
13:41:28 8  any further follow-up.
13:41:28 9          I am planning to do that here, but as I tell
13:41:32 10 people in all my cases, if it's abused and it starts
13:41:36 11 dragging on too long and things, questions become prying,
13:41:41 12 then I will stop that and the Third Circuit allows me to
13:41:45 13 just ask the questions subject to the Federal Rules.  So I
13:41:50 14 don't think that's going to be an issue, but I always tell
13:41:52 15 people that so that they're not surprised if I were to take
13:41:56 16 off the ability.
13:42:02 17         Prospective jurors who are questioned but not
13:42:07 18 excused for cause, we're going to bring them in.  We have
13:42:10 19 Juror Number 1 comes in, ask questions, there is no motion
13:42:13 20 to strike for cause, that person would go back into the
13:42:16 21 courtroom and stay.  And we will keep doing that until we
13:42:20 22 have thirty-two prospective jurors upon which to exercise
13:42:24 23 preemptories.
13:42:24 24         Now, if it turns out that we get, you know,
13:42:31 25 twenty-five jurors from the morning fifty, I'll probably

73

| | | |
|---|---|---|
| 13:42:36 | 1 | have them stick around or maybe tell them -- anyone who |
| 13:42:40 | 2 | hasn't been stricken to come back Tuesday morning.  But if |
| 13:42:45 | 3 | we are able to get thirty-two on Monday, that would be |
| 13:42:51 | 4 | great, they could just -- we would just start immediately. |
| 13:42:53 | 5 | If we can't get thirty-two until Tuesday or Wednesday, then |
| 13:42:57 | 6 | we'll just have anyone who hasn't been stricken told to |
| 13:43:02 | 7 | report back at some time. |
| 13:43:03 | 8 | MR. LOWELL:  May I ask one question on that, |
| 13:43:05 | 9 | Judge?  Maybe I didn't understand.  I don't know that you |
| 13:43:07 | 10 | have ever said, there will be four alternates? |
| 13:43:10 | 11 | THE COURT:  So we were thinking two.  I was |
| 13:43:15 | 12 | thinking fourteen jurors, but if you want -- |
| 13:43:20 | 13 | MR. HINES:  We would agree that four alternates, |
| 13:43:22 | 14 | if they can fit would be appropriate in this case just in |
| 13:43:25 | 15 | the event there is an issue. |
| 13:43:27 | 16 | MR. LOWELL:  I just didn't know.  And depending |
| 13:43:29 | 17 | on the number, the question then becomes the number of |
| 13:43:32 | 18 | preemptories, I guess generally it would be ten and six? |
| 13:43:35 | 19 | THE COURT:  So it's ten and six. |
| 13:43:37 | 20 | MR. LOWELL:  And I assume two? |
| 13:43:38 | 21 | THE COURT:  And each get one for the alternates, |
| 13:43:41 | 22 | so when I have a jury of fourteen, I do ten and six and one |
| 13:43:44 | 23 | for the alternates.  I guess here, what would we do, ten and |
| 13:43:49 | 24 | six? |
| 13:43:49 | 25 | MR. LOWELL:  Two and two -- |

74

| | | |
|---|---|---|
| 13:43:50 | 1 | THE COURT:  And then two and two.  So then we |
| 13:43:53 | 2 | would need more than thirty-two. |
| 13:43:56 | 3 | MR. LOWELL:  Which is why I asked.  I wasn't |
| 13:43:59 | 4 | sure. |
| 13:43:59 | 5 | THE COURT:  We would need thirty-six?  Okay.  So |
| 13:44:03 | 6 | we keep going until we get to thirty-six. |
| 13:44:07 | 7 | And Mark, will you figure out what we're going |
| 13:44:10 | 8 | to do with the jurors? |
| 13:44:11 | 9 | MR. LOWELL:  Also, I'm sorry to keep asking |
| 13:44:13 | 10 | questions, but may I ask one more? |
| 13:44:15 | 11 | THE COURT:  The reason you're here is to ask the |
| 13:44:17 | 12 | questions. |
| 13:44:17 | 13 | MR. LOWELL:  Does the Court inform the |
| 13:44:19 | 14 | alternates of who they are or don't? |
| 13:44:22 | 15 | THE COURT:  Yes. |
| 13:44:23 | 16 | MR. LOWELL:  Thank you. |
| 13:44:24 | 17 | THE COURT:  Do you have a preference? |
| 13:44:26 | 18 | MR. LOWELL:  That is my preference for obvious |
| 13:44:29 | 19 | reasons. |
| 13:44:29 | 20 | THE COURT:  Okay.  So once we have thirty-six |
| 13:44:37 | 21 | jurors, we'll do preempt strikes.  And usually what we do |
| 13:44:42 | 22 | is we have the jurors sit in the back when you're doing the |
| 13:44:45 | 23 | strikes.  But they will have their numbers on so you can see |
| 13:44:49 | 24 | them.  We generally set them up in numbered order, so if you |
| 13:44:52 | 25 | want to look at, oh, wait, who is number 6, you can see who |

75

| | | |
|---|---|---|
| 13:44:57 | 1 | number 6 is. |
| 13:44:57 | 2 | MR. LOWELL:  And then on the preemptory strikes, |
| 13:45:01 | 3 | I take it alternating? |
| 13:45:02 | 4 | THE COURT:  Yes.  Typically what we do is there |
| 13:45:04 | 5 | is a clipboard that will list thirty-six jurors, my deputy |
| 13:45:10 | 6 | will have a clipboard and he'll walk it back and forth |
| 13:45:13 | 7 | between the counsel tables.  The first twelve jurors on the |
| 13:45:16 | 8 | list after preemptories will be the deliberating, and the |
| 13:45:19 | 9 | final four will be the alternates. |
| 13:45:23 | 10 | I think usually, am I right, Mark, does the |
| 13:45:28 | 11 | Defendant, you do two strikes, one strike? |
| 13:45:31 | 12 | MR. LOWELL:  I think, we figure out the math, |
| 13:45:33 | 13 | because it's ten/six, it would be two, and then whatever, |
| 13:45:37 | 14 | but then at some point it's one and one. |
| 13:45:39 | 15 | THE COURT:  Exactly.  Exactly.  A lot of math. |
| 13:45:46 | 16 | All right.  As I said, we're reviewing the |
| 13:45:49 | 17 | proposed voir dire and preliminary jury instructions.  We'll |
| 13:45:53 | 18 | get you edits next week.  I already talked to you about the |
| 13:45:57 | 19 | open-ended questions. |
| 13:45:58 | 20 | MR. HINES:  I'm sorry to interrupt.  Just before |
| 13:46:00 | 21 | we leave jury selection, is it the Court's practice that the |
| 13:46:03 | 22 | parties will receive juror lists in advance and if so, |
| 13:46:07 | 23 | approximately when would we receive those? |
| 13:46:09 | 24 | THE COURT:  I think it's Thursday.  Is that |
| 13:46:11 | 25 | right, Mark?  Thursday. |

76

| | | |
|---|---|---|
| 13:46:13 | 1 | MR. LOWELL:  Thank you.  And I think what I read |
| 13:46:15 | 2 | is that that gives you some basic information about their |
| 13:46:19 | 3 | name and where they are and their occupation? |
| 13:46:22 | 4 | THE COURT:  I think it's their name, maybe the |
| 13:46:25 | 5 | town they live in or their Zip code, their profession, and |
| 13:46:29 | 6 | their level of education. |
| 13:46:32 | 7 | MR. LOWELL:  I think that's right.  And the |
| 13:46:34 | 8 | reason I'm asking, among other reasons is given the close |
| 13:46:37 | 9 | community of Delaware knowing where they worked or even |
| 13:46:40 | 10 | where they were educated would be a follow-up question if |
| 13:46:43 | 11 | they know the Defendant or his family as an example.  So we |
| 13:46:47 | 12 | can get that you said in the middle of the week, that's |
| 13:46:49 | 13 | helpful. |
| 13:46:50 | 14 | THE COURT:  You're not getting their education |
| 13:46:51 | 15 | in the middle of the week, because I don't have that. |
| 13:46:55 | 16 | MR. LOWELL:  I mean where they went to school. |
| 13:46:57 | 17 | THE COURT:  I don't have that.  So I don't have |
| 13:46:58 | 18 | it, that means you're not going to get it until the jurors |
| 13:47:01 | 19 | are here. |
| 13:47:02 | 20 | MR. LOWELL:  Okay. |
| 13:47:02 | 21 | THE COURT:  When I said education, I meant |
| 13:47:04 | 22 | level.  So it will say like high school, two years of |
| 13:47:07 | 23 | college, college, post college. |
| 13:47:15 | 24 | MR. LOWELL:  I understand. |
| 13:47:16 | 25 | THE COURT:  Okay.  Government, you are |

77

13:47:18 1 responsible for bringing enough pens or pencils and enough
13:47:21 2 copies of the voir dire for the prospective jurors, about
13:47:24 3 250 people.  If possible have those delivered to the clerk's
13:47:28 4 office by noon on Friday the 31st.
13:47:31 5      Side-bars.  So I don't know if anyone has any
13:47:36 6 preference on this.  We can do -- we can do a side-bar over
13:47:42 7 here.  Sometimes -- it doesn't look like there is that many
13:47:47 8 people here, but sometimes when it gets really crowded over
13:47:50 9 here, we just walk out into the hall.  I don't know how that
13:47:53 10 works with like security details and stuff like that, but
13:47:56 11 does anyone have any thoughts on side-bars?  How many people
13:48:00 12 do you think would be coming up to argue things?
13:48:04 13      MR. HINES:  For the government, just Mr. Wise
13:48:06 14 and I will be going up to side-bar.  And I take it in this
13:48:11 15 Court there is not a lavaliere mic or something that the
13:48:14 16 Defendant listens to what's going on at side-bar, we would
13:48:17 17 have concern if he came up to side-bar if that is a practice
13:48:20 18 as well as two counsel of their choosing.
13:48:25 19      MR. LOWELL:  I think if we had a side-bar, it
13:48:27 20 would be myself, possibly another counsel and, of course,
13:48:29 21 Mr. Biden has a right to be there.  Depending on what it is,
13:48:34 22 he might or might not.  It wouldn't be more than those
13:48:38 23 three.  We don't have a husher or something that makes a
13:48:41 24 background noise so no one can hear?
13:48:43 25      THE COURT:  We have that.  We can make the

78

13:48:45 1 noise.
13:48:45 2      MR. LOWELL:  So it's not a question of the
13:48:47 3 noise.
13:48:47 4      THE COURT:  It was a question of sometimes when
13:48:49 5 we have defendants that we don't want wandering around the
13:48:53 6 courtroom, or that are not free to wander around the
13:48:59 7 courtroom, we don't want to make that obvious, so we have a
13:49:02 8 headset for them.
13:49:04 9      MR. LOWELL:  I see what you're saying.
13:49:05 10 Obviously it's not an issue here.  It would be no more than
13:49:09 11 three of us and two of them.  That should be accommodated
13:49:12 12 over there.  If there is a reason for going into the
13:49:15 13 hallway, we'll work that out.
13:49:18 14      THE COURT:  Okay.  Court closing.  Closing the
13:49:20 15 court.  I am disinclined to close the courtroom.  And the
13:49:24 16 Third Circuit has a high standard to meet for sealing the
13:49:26 17 courtroom.  Anyone anticipate asking to close the courtroom?
13:49:30 18      MR. HINES:  No, Your Honor.
13:49:31 19      MR. LOWELL:  No, Your Honor.
13:49:31 20      THE COURT:  Good.  If anyone ask or that
13:49:33 21 changes, you have to ask in advance so we can get a ruling
13:49:36 22 on it.  But as I said, the Third Circuit standard is pretty
13:49:41 23 high.  It's kind of -- it's very difficult to meet.
13:49:49 24      Okay.  I know, a question, so it looks like --
13:49:52 25 we're probably going to have room in the courtroom, but I

79

13:49:55 1 was asked whether you or your team wants us to reserve the
13:49:59 2 front row for you, the front row in the back, so you can put
13:50:07 3 documents and stuff there.  Do you want the front row?
13:50:09 4      MR. LOWELL:  I'm sorry, I'm just confused.  We
13:50:13 5 can put our documents to the extent in front of the bar, I
13:50:17 6 think, if that's what you're asking.  You're not asking
13:50:20 7 whether there should be reserved seats for the defense team?
13:50:23 8      THE COURT:  Yes, that's what I'm asking.  Would
13:50:25 9 you like me to do that?
13:50:28 10      MR. LOWELL:  We would like part of a row and we
13:50:30 11 have to talk to our security folks as well.
13:50:32 12      THE COURT:  Do you guys care?
13:50:35 13      MR. HINES:  If they have a row?  No.  We would
13:50:37 14 like a row as well.
13:50:38 15      THE COURT:  To put documents and stuff.  Usually
13:50:40 16 what happens is folks hide their documents back there and
13:50:43 17 they have people hand them to them, because that row is
13:50:47 18 wider.
13:50:47 19      MR. LOWELL:  That works fine.
13:50:48 20      THE COURT:  So we will reserve the front row for
13:50:51 21 each side.  If you need access to the courtroom --
13:51:01 22      MR. LOWELL:  To the extent that we're going to
13:51:03 23 display documents, publish them after, I was trying to
13:51:06 24 figure out, we would set our person who will do that at our
13:51:25 25 table and plug it in that way, is that how it works?

80

13:51:15 1      THE COURT:  Sure.  However you want to do it.  I
13:51:17 2 don't actually know.  I always had people who did it when I
13:51:20 3 was a lawyer and now I don't even see the people who do it.
13:51:24 4 Sure.  Whoever you want.  Usually what happens is there is
13:51:28 5 some kind of trial setup and they either get into our system
13:51:31 6 and they can show it up there and it shows on the TVs in
13:51:35 7 front of you and the TV up here, and I have a TV down here,
13:51:38 8 or you can just put it on the Elmo and it goes to all those
13:51:42 9 places as well.
13:51:44 10      MR. LOWELL:  I think ours is not an Elmo, in
13:51:46 11 case somebody came up, it would be prepared in advance.  And
13:51:50 12 the jury doesn't have any monitors in the box, they only
13:51:52 13 have that?
13:51:53 14      THE COURT:  Yes.
13:51:54 15      MR. LOWELL:  All right.
13:51:55 16      THE COURT:  Any questions from you on that?
13:51:56 17      MR. HINES:  No, Your Honor.
13:52:02 18      MR. LOWELL:  I have some other questions when
13:52:03 19 you're done.
13:52:04 20      THE COURT:  All right.  If you all need access
13:52:06 21 to the courtroom to set up for trial, you may do so on
13:52:10 22 Friday, May 31st, starting at 3:00 p.m. Coordinate with my
13:52:14 23 staff, either Ms. Smith or Mr. Buckson.  And that is all
13:52:17 24 that I had.
13:52:21 25      MR. LOWELL:  One last question.  I don't know if

81

13:52:27 1 counsel, special counsel has their offices here or near by.
13:52:32 2 Could we have access to someplace as well in the courthouse
13:52:36 3 for the things like breaks and lunch, is that something we
13:52:40 4 can have?
13:52:40 5         THE COURT:  Sure.  The clerk's office, there are
13:52:43 6 attorney conference rooms.  If you walk out the door, there
13:52:46 7 is one on that side and one on that side.  You can go in the
13:52:50 8 clerk's office there and reserve them.  I don't know that --
13:52:53 9 I mean, sometimes when there is lots of trials going on, we
13:52:57 10 often have many, many trials going on and it's hard to get
13:53:00 11 those, but my guess is that you can get them and if you have
13:53:04 12 a problem with that, then why don't you ask the clerk's
13:53:09 13 office to make some arrangements because I understand you
13:53:14 14 wouldn't want to just be sitting out in the hall.
13:53:16 15         MR. LOWELL:  Right, I will do that.  I assume we
13:53:19 16 hopefully will get that one.
13:53:20 17         THE COURT:  If you can't get that one, just ask
13:53:22 18 the clerk's office what they can do.
13:53:24 19         MR. LOWELL:  And then the question, I'll ask
13:53:27 20 whether we can keep materials there, you wouldn't be doing
13:53:31 21 other things so we can keep materials in the courtroom over
13:53:34 22 night?
13:53:34 23         THE COURT:  We lock the courtroom overnight as
13:53:36 24 soon as everyone leaves.  Mr. Buckson will lock the
13:53:40 25 courtroom and it will remain untouched overnight, so that's

82

13:53:43 1 fine.  I don't know about the attorney conference rooms.
13:53:46 2 You would have to ask the clerk's office.  So usually what
13:53:49 3 happens, you get the key in the morning and you give the key
13:53:52 4 back in the afternoon, but I don't really know how that
13:53:56 5 works.
13:53:57 6         Anything else?
13:53:57 7         MR. HINES:  No, Your Honor.
13:53:59 8         MR. LOWELL:  One issue, Judge, that -- two more,
13:54:02 9 maybe I have to deal with it or somebody else, in terms of
13:54:05 10 the jury when it is picked, it was our preference that like
13:54:10 11 we do it the way they do it, they show up and they come into
13:54:12 12 the courthouse the way they have.  There is some issue as to
13:54:18 13 whether they should be transported from another location.  I
13:54:21 14 would prefer that their lives stay as normal as possible.
13:54:23 15         MR. HINES:  So on Wednesday, I asked for
13:54:26 16 counsel's position on this, and they hadn't given it back to
13:54:29 17 me so I didn't raise this.  But we requested what's referred
13:54:33 18 to as a Jury Transportation and Management order.  I
13:54:36 19 proposed it to counsel and wanted to get their position
13:54:39 20 before I proposed it to the Court.  It is sort of a standard
13:54:41 21 order that the marshals use in certain cases that allows
13:54:45 22 them to provide essentially transportation from the
13:54:48 23 courthouse to an offsite parking lot so the jurors can park
13:54:54 24 there.  The location is not disclosed and then they can get
13:54:57 25 into the courthouse without sort of people, you know,

83

13:55:03 1 inundating them on the courthouse steps.  That was a
13:55:05 2 consideration that we were going to ask the Court to
13:55:08 3 consider in this case.  It's a standard order that the
13:55:12 4 marshals use.  I'm happy to provide it, but I was first
13:55:14 5 waiting to see if defense counsel had a position on it.
13:55:17 6         THE COURT:  If you want to make that motion,
13:55:19 7 I'll certainly take a look at it.  The one thing that you
13:55:23 8 said about making their lives, or changing their lives less,
13:55:29 9 as little as you possibly can is parking is a real problem
13:55:33 10 around here, so when you said they could park someplace
13:55:37 11 else, my guess is the jurors would be thrilled with that.
13:55:40 12 But anyway's, what is your position on that?
13:55:42 13         MR. LOWELL:  My position is I trust to follow
13:55:44 14 your instructions not to talk to anybody and I trust Your
13:55:47 15 Honor is going to tell the media to leave them alone and I
13:55:50 16 think that's what we need to do.
13:55:52 17         MR. HINES:  Our primary concern is people
13:55:54 18 following the jurors as they leave the building, and I'll
13:55:57 19 leave it at that.  But one way to mitigate against any
13:56:02 20 concerns there is that they are dropped at an offsite
13:56:07 21 location that no one knows about and they don't get followed
13:56:12 22 home directly from the courthouse.
13:56:13 23         MR. LOWELL:  We live in a strange and sometimes
13:56:16 24 not a particularly good world, but I don't know how real
13:56:18 25 that threat is.  But I would say that anything that makes

84

13:56:22 1 them feel that there is something more going on in their
13:56:26 2 lives than is necessary can affect them in ways that we
13:56:30 3 don't even know about in a case and I would prefer that not
13:56:33 4 to happen if at all possible.
13:56:35 5         THE COURT:  Why don't you submit whatever you
13:56:38 6 want to submit to me and I'll think about it.  I don't think
13:56:43 7 we need to deal with anything until we -- we certainly don't
13:56:50 8 need to deal with it today, though I understand the marshals
13:56:54 9 will probably need some time to prepare.
13:56:56 10         MR. HINES:  Yes, Your Honor.  As far as the
13:56:58 11 submission, I intend to provide it in the e-mail to the
13:57:01 12 Court, copy in the counsel.  I notice in the J 6 case in the
13:57:05 13 District of Columbia, those orders were docketed on the
13:57:08 14 docket and they were directed to the marshal.  I'll submit
13:57:11 15 it in an e-mail to Your Honor with copies to the defense
13:57:16 16 counsel.
13:57:16 17         THE COURT:  That would be fine.
13:57:17 18         Anything else we need to address?
13:57:19 19         MR. LOWELL:  I don't think so, Judge.
13:57:20 20         MR. HINES:  No, Your Honor.  Thank you very
13:57:21 21 much.
13:57:22 22         THE COURT:  Thank you very much.
13:59:05 23         COURT CLERK:  All rise.  Court is adjourned.
24         (Court adjourned at 1:59 p.m.)
25

1          I hereby certify the foregoing is a true and

     accurate transcript from my stenographic notes in the proceeding.

2

3             /s/ Dale C. Hawkins

            Official Court Reporter

4            U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$900** [1] - 20:4

**'**

**'15** [1] - 20:23

**/**

**/s** [1] - 85:3

**1**

**1** [9] - 3:10, 5:3, 13:20, 54:13, 62:22, 62:23, 70:10, 72:19
**10** [1] - 60:5
**1006** [5] - 14:11, 25:6, 31:3, 31:21, 32:1
**106** [1] - 5:12
**10th** [1] - 60:5
**11** [2] - 18:16, 60:5
**11(f** [1] - 17:3
**12** [1] - 60:5
**12:00** [2] - 1:10, 69:5
**12th** [1] - 26:17
**13** [1] - 60:5
**14** [1] - 60:5
**14th** [7] - 60:3, 60:9, 60:20, 60:22, 60:23, 68:23, 70:7
**16** [2] - 22:3, 22:4
**18** [1] - 18:13
**18,000** [1] - 25:8
**18B** [1] - 33:11
**19th** [3] - 27:8, 60:2, 60:9
**1:59** [1] - 84:24

**2**

**2** [2] - 5:4, 16:6
**2014** [2] - 16:9, 20:23
**2018** [11] - 7:7, 8:24, 9:4, 10:4, 20:23, 32:16, 36:19, 45:22, 47:20, 58:14, 65:11
**2019** [3] - 11:14, 25:17, 26:18
**2020** [1] - 45:10
**2021** [4] - 32:22, 40:11, 49:22, 65:11
**2023** [4] - 13:11, 16:22, 17:1, 19:16
**2024** [1] - 1:9
**23cr61(MN** [1] - 1:5
**23rd** [1] - 40:3
**24** [1] - 1:9
**25** [2] - 70:11, 70:12

**250** [2] - 68:24, 77:3
**26** [5] - 13:11, 16:22, 17:1, 19:16, 32:16
**26th** [1] - 18:22
**27** [1] - 4:4
**270** [1] - 4:13
**28th** [1] - 24:3
**29** [1] - 54:18

**3**

**3** [7] - 6:13, 16:20, 25:3, 25:5, 25:6, 26:4, 29:16
**302** [3] - 37:1, 37:2, 49:22
**31st** [3] - 61:16, 77:4, 80:22
**3:00** [1] - 80:22
**3rd** [3] - 60:5, 68:21, 68:25

**4**

**4** [3] - 6:15, 19:19, 26:4
**403** [1] - 34:1
**404** [1] - 11:15
**410** [4] - 17:3, 17:8, 18:11, 18:16
**4473** [5] - 32:3, 32:4, 32:6, 32:12, 32:15
**478.11** [1] - 4:4
**4:30** [3] - 69:15, 69:16, 69:18
**4:45** [1] - 69:17
**4A** [1] - 1:12
**4B** [2] - 70:17, 70:24

**5**

**5** [1] - 10:16
**50** [1] - 70:11
**5th** [1] - 59:25

**6**

**6** [4] - 11:12, 74:25, 75:1, 84:12
**600** [1] - 4:12

**7**

**7** [1] - 12:10
**7:00** [1] - 63:18
**7:30** [1] - 69:1

**8**

**8** [1] - 13:8

**844** [1] - 1:12
**8:30** [4] - 69:2, 69:4, 69:5

**9**

**9** [3] - 13:18, 25:3, 32:3
**922** [2] - 43:15, 43:16
**922(g)(3** [2] - 3:15, 4:14
**9:00** [1] - 69:13
**9th** [1] - 25:17

**A**

**a.m** [2] - 63:18, 69:13
**ABBE** [1] - 2:7
**abiding** [2] - 11:13, 11:20
**ability** [3] - 41:18, 67:25, 72:16
**able** [9] - 7:22, 17:10, 23:12, 23:15, 24:4, 27:1, 35:13, 41:15, 73:3
**absence** [1] - 8:15
**absolutely** [1] - 30:10
**abused** [1] - 72:10
**accept** [4] - 40:20, 62:18, 66:7
**accepted** [3] - 41:3, 41:4, 52:9
**access** [5] - 28:20, 38:6, 79:21, 80:20, 81:2
**accessed** [1] - 26:20
**accommodate** [1] - 64:8
**accommodated** [1] - 78:11
**according** [1] - 49:21
**account** [2] - 25:9, 37:2
**accuracy** [1] - 22:25
**accurate** [2] - 27:18, 85:1
**accused** [2] - 39:25, 53:16
**acquire** [1] - 4:8
**Act** [1] - 3:24
**Action** [1] - 1:5
**actions** [4] - 33:16, 42:4, 42:9, 42:10
**actively** [1] - 4:2
**activity** [3] - 20:14, 21:13, 41:21
**actual** [1] - 47:16
**add** [6] - 18:8, 18:10, 28:24, 31:24, 48:25,

65:23
**added** [3] - 33:8, 33:11, 38:2
**addict** [2] - 48:5, 51:8
**addicted** [5] - 3:17, 3:22, 20:15, 35:1
**addiction** [1] - 19:22
**adding** [2] - 36:14
**addition** [2] - 49:10, 58:10
**additional** [4] - 5:13, 5:21, 8:22, 13:19
**additionally** [1] - 4:18
**additions** [1] - 42:11
**address** [18] - 5:1, 12:19, 17:11, 19:3, 23:24, 24:11, 30:24, 34:22, 46:8, 46:12, 49:4, 49:5, 50:19, 50:25, 52:6, 53:3, 70:5, 84:18
**addressed** [2] - 4:20, 65:2
**addresses** [2] - 41:11, 54:7
**adjourned** [2] - 84:23, 84:24
**admissibility** [2] - 34:3, 64:24
**admissible** [4] - 6:4, 8:16, 34:4, 65:1
**admission** [5] - 5:13, 5:21, 6:10, 6:19, 25:12
**admissions** [3] - 5:9, 28:18, 28:21
**admit** [6] - 5:5, 5:8, 5:20, 25:6, 32:3, 33:13
**admitted** [4] - 5:18, 6:9, 17:17, 57:14
**advance** [9] - 12:2, 19:4, 63:5, 63:14, 67:9, 75:22, 78:21, 80:11
**adverse** [1] - 67:10
**advertisement** [1] - 50:17
**advisement** [1] - 50:3
**affect** [1] - 84:2
**affected** [1] - 23:4
**afield** [1] - 46:12
**afternoon** [2] - 69:19, 82:4
**age** [1] - 23:4
**agent** [1] - 22:17
**agent's** [1] - 31:7
**ago** [3] - 23:7, 28:7, 50:13
**agree** [9] - 5:17, 24:8,

27:1, 27:16, 32:1, 52:15, 53:18, 66:5, 73:13
**agreed** [1] - 56:14
**agreeing** [2] - 16:10, 18:1
**agreement** [5] - 10:10, 13:11, 17:14, 30:16, 44:1
**agrees** [2] - 5:7, 24:24
**ahead** [1] - 68:2
**alleges** [1] - 29:21
**alleging** [1] - 29:12
**allow** [4] - 19:16, 31:4, 72:5, 72:7
**allowed** [9] - 5:8, 5:10, 5:13, 6:19, 14:1, 16:2, 16:16, 39:9, 53:8
**allowing** [1] - 40:24
**allows** [2] - 72:12, 82:21
**alone** [1] - 83:15
**aloud** [1] - 70:16
**altered** [1] - 32:17
**alternates** [6] - 73:10, 73:13, 73:21, 73:23, 74:14, 75:9
**alternating** [1] - 75:3
**alters** [1] - 41:4
**AMERICA** [1] - 1:4
**amount** [1] - 21:5
**amounts** [1] - 20:12
**analysis** [3] - 22:17, 22:24, 22:25
**annotated** [7] - 32:4, 32:10, 32:17, 36:21, 48:10, 49:12
**answer** [3] - 7:13, 62:6, 70:21
**answered** [4] - 70:19, 71:7, 71:17, 72:6
**answers** [1] - 70:15
**anticipate** [1] - 78:17
**anticipates** [2] - 19:25, 56:8
**anticipating** [1] - 69:6
**anyway's** [1] - 83:12
**apologize** [1] - 38:18
**appear** [2] - 25:11, 25:15
**APPEARANCES** [2] - 1:19, 2:1
**appeared** [1] - 66:18
**Apple** [7] - 25:18, 26:4, 29:1, 29:9, 31:14, 31:15
**AppleLink** [1] - 14:21
**applicable** [1] - 52:11
**applied** [6] - 4:20,

4:22, 12:18, 54:14, 54:19, 55:3
**apply** [4] - 4:11, 53:16, 65:3, 66:4
**appreciate** [2] - 19:13, 68:1
**appreciating** [1] - 54:9
**appropriate** [7] - 4:16, 10:10, 15:11, 20:21, 31:2, 47:25, 73:14
**appropriately** [1] - 71:21
**April** [3] - 26:17, 29:6, 30:7
**area** [1] - 40:16
**argue** [4] - 9:16, 18:4, 26:4, 77:12
**argues** [3] - 5:9, 5:12, 6:18, 14:1, 17:22, 22:2, 33:16, 33:21, 34:6
**arguing** [3] - 3:11, 3:13, 10:2
**argument** [20] - 3:8, 6:13, 6:16, 8:21, 10:17, 11:12, 12:11, 12:15, 13:9, 13:20, 14:9, 14:11, 16:7, 16:21, 19:20, 20:11, 35:8, 36:8, 43:18, 54:7
**Arkansas** [1] - 16:8
**arrangements** [1] - 81:13
**array** [1] - 29:20
**arrive** [1] - 70:10
**arrives** [1] - 7:6
**article** [1] - 28:3
**aside** [1] - 57:10
**aspect** [2] - 54:9, 64:13
**assertion** [1] - 41:24
**assigned** [1] - 70:10
**ASSOCIATES** [1] - 2:3
**assume** [6] - 37:18, 38:1, 51:6, 59:24, 73:20, 81:15
**assuming** [1] - 37:21
**ATF** [9] - 32:3, 32:5, 32:11, 32:16, 32:22, 34:3, 40:4, 42:16, 49:8
**ATM** [2] - 21:1, 29:19
**attempt** [1] - 48:17
**attention** [2] - 68:4, 68:9
**attorney** [2] - 81:6, 82:1
**attorneys** [1] - 72:7
**audio** [2] - 64:2, 64:3

**authentic** [5] - 25:8, 25:21, 25:25, 27:19, 30:17
**authenticated** [1] - 31:5
**authentication** [1] - 26:10
**authenticity** [1] - 25:16
**authorities** [4] - 6:17, 7:17, 7:25, 43:14
**authorization** [1] - 15:8
**authorized** [1] - 14:14
**automatically** [1] - 70:22
**available** [3] - 58:2, 60:1, 60:3

**B**

**b)(1** [2] - 17:8, 17:9
**b)(2** [1] - 17:9
**backed** [2] - 29:5, 29:8
**background** [1] - 77:24
**backwards** [1] - 12:6
**bar** [6] - 77:6, 77:14, 77:16, 77:17, 77:19, 79:5
**bars** [2] - 77:5, 77:11
**BARTHOLOMEW** [1] - 2:4
**based** [6] - 26:6, 28:14, 28:18, 36:2, 50:11, 55:11
**bases** [2] - 22:7, 22:23
**basic** [1] - 76:2
**basis** [4] - 14:25, 27:6, 30:5, 31:12
**bearing** [2] - 48:3, 48:12
**become** [3] - 19:1, 49:24, 72:11
**becomes** [4] - 15:3, 54:2, 54:15, 73:17
**bedtime** [1] - 56:21
**BEFORE** [1] - 1:15
**begin** [2] - 40:11, 69:6
**begins** [1] - 59:20
**behavior** [1] - 11:20
**behind** [1] - 62:19
**believes** [7] - 6:8, 10:22, 11:18, 13:13, 16:1, 16:15, 19:15
**benefit** [2] - 36:18, 44:7
**best** [1] - 62:7
**between** [7] - 8:7, 8:14, 9:17, 40:15,

49:7, 60:7, 75:7
**beyond** [2] - 24:19, 36:20
**bias** [6] - 10:23, 41:6, 41:8, 41:9, 43:13, 43:21
**bidding** [1] - 45:1
**Biden** [37] - 7:12, 8:23, 11:24, 16:22, 18:17, 18:22, 19:2, 27:4, 27:9, 29:8, 30:18, 34:18, 35:2, 35:16, 36:23, 37:16, 37:23, 38:3, 38:8, 38:25, 39:13, 39:18, 39:25, 40:21, 43:15, 44:4, 45:13, 47:4, 47:19, 48:2, 48:7, 55:17, 57:10, 58:13, 64:19, 77:21
**BIDEN** [1] - 1:6
**Biden's** [4] - 7:12, 16:8, 41:14, 53:19
**binder** [1] - 67:15
**binders** [4] - 62:19, 62:20, 66:7, 66:8
**birth** [2] - 34:23, 41:11
**bit** [2] - 61:2, 69:15
**black** [2] - 35:14, 35:25
**blessed** [1] - 51:13
**blue** [1] - 35:14
**book** [12] - 5:6, 6:2, 12:4, 20:3, 31:20, 64:2, 64:4, 65:14, 66:21, 66:24, 67:10
**bought** [2] - 39:1, 49:15
**bounds** [1] - 54:7
**box** [7] - 34:25, 36:11, 38:3, 39:19, 41:16, 46:17, 80:12
**boxes** [1] - 34:24, 39:7, 39:12
**break** [2] - 41:7, 69:18
**breaks** [1] - 81:3
**breathing** [1] - 66:13
**brief** [5] - 4:10, 46:1, 46:8, 51:7, 55:8
**briefing** [4] - 24:12, 50:24, 50:25
**bring** [8] - 10:5, 48:9, 61:19, 68:4, 68:9, 70:1, 70:18, 72:18
**bringing** [4] - 11:2, 18:5, 68:23, 77:1
**brings** [2] - 17:9, 38:13
**broad** [1] - 30:16
**brother's** [1] - 7:13

**brought** [1] - 56:12
**brown** [4] - 8:17, 9:2, 9:3, 9:9
**brush** [1] - 48:16
**Buckson** [2] - 80:23, 81:24
**building** [1] - 83:18
**buy** [1] - 32:7
**buyer** [1] - 35:17
**buying** [1] - 54:22
**BY** [6] - 1:21, 1:21, 2:4, 2:4, 2:7, 2:7

**C**

**calendar** [1] - 60:5
**California** [3] - 13:22, 15:1, 15:19
**cannot** [2] - 28:20, 53:4
**caps** [1] - 33:10
**car** [1] - 48:3
**card** [3] - 21:1, 21:2, 21:17
**care** [2] - 62:25, 79:12
**case** [47] - 6:22, 7:20, 9:17, 10:4, 10:8, 10:11, 10:18, 10:25, 13:22, 15:16, 15:17, 18:20, 19:23, 20:15, 21:24, 22:7, 28:19, 29:14, 31:12, 33:10, 36:23, 37:4, 45:6, 45:9, 45:22, 47:20, 48:14, 49:24, 56:9, 56:23, 57:7, 57:9, 58:14, 60:7, 60:10, 60:14, 61:1, 62:8, 71:14, 73:14, 80:11, 83:3, 84:3, 84:12
**case-by-case** [1] - 31:12
**case-in-chief** [7] - 19:23, 22:7, 56:9, 57:7, 57:9, 60:14, 62:8
**cases** [4] - 21:10, 52:10, 72:10, 82:21
**cash** [10] - 20:1, 20:2, 20:3, 20:4, 20:13, 20:20, 20:22, 21:2, 21:5, 21:12
**catching** [1] - 23:18
**caught** [1] - 23:11
**caveat** [1] - 11:24
**certain** [1] - 82:21
**certainly** [4] - 26:3, 47:1, 83:7, 84:7
**certification** [2] - 47:21, 47:23

**certified** [5] - 32:3, 32:8, 33:7, 33:14, 36:18
**certify** [1] - 85:1
**cetera** [4] - 20:10, 26:21, 48:18, 66:19
**CFR** [3] - 4:4, 51:5, 51:6
**chain** [10] - 7:18, 8:6, 8:9, 8:14, 9:3, 9:11, 10:9, 10:11, 10:12, 10:14
**chains** [1] - 15:22
**challenge** [7] - 4:20, 12:17, 12:18, 25:16, 54:14, 55:3, 67:8
**challenged** [1] - 31:11
**challenging** [1] - 15:3
**chance** [2] - 23:9, 23:20, 60:23
**change** [2] - 46:16, 56:23
**changes** [9] - 28:11, 28:18, 28:20, 28:22, 36:12, 36:13, 36:20, 47:12, 78:21
**changing** [1] - 83:8
**character** [1] - 11:15
**characterizing** [1] - 21:6
**charge** [5] - 6:17, 10:1, 18:12, 18:13, 46:17
**charged** [7] - 3:15, 3:18, 12:13, 33:18, 35:5, 42:6, 43:15
**charges** [7] - 7:20, 10:5, 11:2, 11:3, 13:21, 15:18, 48:13
**chart** [15] - 14:11, 25:5, 25:6, 25:8, 25:12, 27:18, 27:21, 28:14, 28:25, 29:11, 31:4, 31:5, 31:21, 65:23
**check** [4] - 19:11, 36:10, 39:7, 39:19
**checked** [3] - 34:24, 35:2, 38:3
**checkmark** [1] - 41:15
**checks** [2] - 36:14, 41:12
**Cheeseman** [1] - 4:12
**chemical** [1] - 58:3
**chief** [7] - 19:23, 22:7, 56:9, 57:7, 57:9, 60:14, 62:8
**child** [2] - 16:7, 16:16
**choose** [2] - 53:8, 53:12

**choosing** [2] - 32:18, 77:18
**Circuit** [12] - 4:12, 4:13, 4:15, 51:15, 52:8, 52:13, 52:18, 52:19, 52:20, 72:12, 78:16, 78:22
**circuit** [1] - 52:21
**circumstantial** [2] - 21:9, 21:11
**cited** [2] - 4:13, 52:10
**citing** [1] - 52:6
**citizens** [2] - 68:11, 68:24
**civil** [2] - 56:18, 61:11
**claim** [4] - 10:6, 29:24, 47:13, 48:17
**clarification** [2] - 28:24, 31:18
**clear** [13] - 15:21, 18:1, 18:3, 22:12, 22:21, 26:16, 28:6, 29:22, 30:4, 48:16, 50:12, 51:5, 65:10
**clearly** [1] - 42:11
**clerk** [1] - 66:8
**CLERK** [1] - 84:23
**clerk's** [7] - 44:21, 77:3, 81:5, 81:8, 81:12, 81:18, 82:2
**Cleveland** [25] - 34:17, 35:3, 35:9, 36:22, 37:5, 37:12, 37:22, 38:8, 38:22, 39:10, 40:18, 40:23, 41:3, 41:20, 42:25, 43:13, 44:11, 47:2, 47:4, 47:14, 48:6, 48:11, 49:3, 49:13, 49:14
**client** [2] - 41:25, 53:15
**clinicians** [1] - 57:25
**clipboard** [2] - 75:5, 75:6
**close** [3] - 76:8, 78:15, 78:17
**closed** [1] - 7:19
**closing** [3] - 6:22, 78:14
**Code** [2] - 4:3, 18:13
**code** [1] - 76:5
**collected** [2] - 25:16, 26:1
**college** [3] - 76:23
**color** [1] - 35:12
**Columbia** [1] - 84:13
**comfortable** [1] - 66:14
**coming** [5] - 27:5, 30:4, 44:14, 53:2,

77:12
**commerce** [1] - 3:18
**communication** [4] - 27:2, 27:6, 28:8
**communication -by- communication** [1] - 27:6
**community** [1] - 76:9
**compelling** [1] - 68:10
**competence** [1] - 10:23
**complete** [5] - 7:22, 9:11, 22:5, 24:25, 47:20
**completed** [6] - 35:17, 36:4, 36:23, 42:15, 47:18, 47:19
**completeness** [5] - 31:21, 64:7, 64:13, 64:23, 66:2
**Completeness** [3] - 5:12, 5:23, 6:5
**complicated** [1] - 49:19
**comply** [1] - 22:3
**compromised** [1] - 48:21
**compunction** [1] - 47:12
**concept** [1] - 57:6
**concern** [3] - 4:10, 77:17, 83:17
**concerned** [4] - 39:2, 43:20, 46:10, 54:5
**concerning** [2] - 6:20, 49:16
**concerns** [2] - 24:11, 83:20
**conduct** [2] - 4:3, 70:20
**Conference** [1] - 1:10
**conference** [8] - 2:23, 44:2, 52:1, 54:3, 68:23, 70:7, 81:6, 82:1
**confers** [1] - 40:18
**conflicts** [1] - 59:11
**conform** [1] - 54:1
**confused** [1] - 79:4
**confusing** [2] - 33:25, 59:24
**connection** [2] - 4:14, 32:23
**CONNOR** [1] - 2:4
**consequently** [1] - 43:16
**conservative** [1] - 60:16
**consider** [3] - 3:8, 53:3, 83:3

**consideration** [1] - 83:2
**considered** [1] - 51:21
**consistent** [2] - 20:2, 20:14
**conspiracy** [2] - 46:15, 48:18
**constitutional** [2] - 4:20, 54:14
**constitutionality** [3] - 4:22, 12:12, 12:16
**consult** [1] - 59:13
**contact** [1] - 58:12
**contain** [1] - 5:8
**contained** [1] - 33:6
**contemporaneous** [3] - 42:23, 54:22, 55:18
**contended** [1] - 33:9
**contents** [1] - 22:4
**contest** [1] - 29:4
**contested** [2] - 19:1, 49:9
**contesting** [1] - 15:2
**context** [1] - 21:16
**CONTINUED** [1] - 2:1
**contrary** [3] - 15:12, 17:20, 30:20
**control** [3] - 3:17, 51:17, 52:8
**Control** [1] - 3:24
**controlled** [5] - 3:12, 3:22, 35:1, 51:16, 51:18
**conversation** [2] - 38:11, 49:14
**conversations** [1] - 42:25
**Coordinate** [1] - 80:22
**copied** [1] - 26:21
**copies** [3] - 62:19, 77:2, 84:15
**copy** [3] - 32:20, 35:12, 84:12
**core** [1] - 40:11
**corner** [1] - 33:8
**correct** [21] - 9:21, 18:9, 25:13, 25:18, 26:13, 27:23, 32:14, 32:23, 32:24, 33:4, 33:23, 35:23, 36:2, 37:10, 37:14, 56:20, 58:1, 58:9, 59:5, 61:4, 61:7
**correlation** [1] - 48:5
**corroborated** [2] - 26:5, 26:6, 29:14
**corroboration** [1] - 29:17
**counsel** [27] - 6:9, 10:22, 11:3, 11:18,

11:20, 13:15, 15:11, 16:3, 16:17, 17:22, 19:17, 22:4, 37:2, 49:1, 49:20, 59:2, 59:13, 67:3, 75:7, 77:18, 77:20, 81:1, 82:19, 83:5, 84:12, 84:16
**COUNSEL** [1] - 1:20
**Counsel** [2] - 1:23, 2:9
**counsel's** [2] - 49:11, 82:16
**Count** [8] - 38:18, 39:24, 39:25, 40:8, 40:9, 47:7, 47:8
**count** [2] - 40:11, 43:7
**Counts** [1] - 35:5
**counts** [1] - 3:20
**couple** [1] - 29:16
**course** [8] - 14:13, 21:15, 30:15, 53:18, 54:16, 62:9, 64:21, 77:20
**COURT** [173] - 1:1, 2:15, 2:20, 2:22, 7:4, 7:24, 8:12, 8:18, 9:7, 9:10, 9:19, 9:23, 11:11, 12:8, 13:1, 13:5, 14:23, 15:9, 15:14, 17:13, 18:3, 18:10, 18:14, 18:25, 19:13, 20:18, 21:9, 21:18, 22:22, 23:21, 24:7, 24:20, 25:15, 25:20, 26:12, 26:14, 26:22, 27:11, 27:24, 28:16, 29:3, 30:6, 30:11, 30:18, 30:24, 31:18, 31:23, 32:2, 32:11, 32:15, 32:25, 33:5, 35:7, 35:22, 35:24, 36:5, 36:8, 37:6, 37:11, 37:15, 38:12, 38:16, 39:5, 39:17, 40:8, 41:8, 41:23, 42:17, 43:20, 44:9, 44:15, 44:20, 45:15, 45:23, 46:5, 47:7, 47:22, 48:15, 48:19, 49:25, 50:16, 50:22, 51:3, 51:11, 51:22, 51:25, 53:1, 53:10, 54:4, 55:2, 55:5, 55:10, 55:20, 55:23, 56:2, 56:5, 56:17, 56:21, 57:4, 57:17, 57:21, 57:24, 58:3, 58:7, 58:17, 58:20, 59:6, 59:15, 59:19, 59:23, 60:15,

60:22, 61:5, 61:8, 61:11, 61:21, 61:24, 62:2, 62:13, 62:17, 63:10, 63:16, 63:20, 64:12, 65:5, 65:18, 65:25, 66:5, 66:20, 67:6, 67:12, 68:1, 68:16, 69:12, 69:24, 72:2, 73:11, 73:19, 73:21, 74:1, 74:5, 74:11, 74:15, 74:17, 74:20, 75:4, 75:15, 75:24, 76:4, 76:14, 76:17, 76:21, 76:25, 77:25, 78:4, 78:14, 78:20, 79:8, 79:12, 79:15, 79:20, 80:1, 80:14, 80:16, 80:20, 81:5, 81:17, 81:23, 83:6, 84:5, 84:17, 84:22, 84:23
**court** [8] - 44:1, 61:9, 64:25, 66:8, 66:18, 78:14, 78:15, 84:23
**Court** [24] - 1:16, 24:4, 24:18, 37:1, 44:17, 51:8, 51:14, 52:12, 52:25, 53:7, 59:2, 61:19, 62:12, 63:24, 64:2, 67:3, 74:13, 77:15, 82:20, 83:2, 84:12, 84:24, 85:3, 85:4
**Court's** [4] - 26:16, 56:11, 67:25, 75:21
**courthouse** [6] - 81:2, 82:12, 82:23, 82:25, 83:1, 83:22
**Courtroom** [1] - 1:12, 10:17
**courtroom** [13] - 67:2, 72:21, 78:6, 78:7, 78:15, 78:17, 78:25, 79:21, 80:21, 81:21, 81:23, 81:25
**courtrooms** [1] - 67:23
**Covid** [1] - 66:12
**crazy** [1] - 46:15
**create** [1] - 48:17
**created** [2] - 27:4, 48:9
**credibility** [9] - 16:3, 34:7, 36:15, 39:20, 40:17, 41:1, 43:8, 43:9, 46:20
**credible** [1] - 39:21
**credit** [2] - 21:17
**crime** [6] - 35:5, 40:6, 46:17, 47:19, 47:20,

49:16
**crimes** [1] - 14:14
**criminal** [5] - 13:25, 14:18, 15:5, 15:18, 61:12
**Criminal** [1] - 1:5, 17:2
**cross** [10] - 14:2, 44:12, 58:7, 62:10, 62:18, 63:3, 64:13, 66:11, 67:8, 67:11
**cross-exam** [1] - 62:10
**cross-examination** [2] - 62:18, 67:8
**cross-examinations** [1] - 66:11
**cross-examine** [2] - 14:2, 44:12
**cross-examined** [1] - 67:11
**crossed** [1] - 67:14
**crowded** [1] - 77:8
**current** [1] - 4:15
**custody** [11] - 8:6, 8:10, 8:15, 9:3, 10:9, 10:11, 10:12, 10:15, 29:9, 31:7, 31:15
**cut** [1] - 46:22

**D**

**Dale** [1] - 85:3
**DALTON** [3] - 2:3, 2:4, 2:4
**danger** [1] - 33:25
**Daniels** [2] - 4:19, 4:20
**data** [12] - 25:16, 25:21, 25:25, 26:5, 26:17, 26:20, 28:11, 29:2, 30:1, 30:4, 30:17
**date** [10] - 9:15, 22:20, 26:1, 26:10, 27:19, 31:5, 34:23, 36:20, 38:7, 61:12
**dates** [2] - 8:14, 41:11
**DAVID** [2] - 2:7, 2:7
**days** [17] - 3:25, 23:7, 42:18, 42:19, 42:20, 42:22, 42:24, 43:4, 49:20, 50:13, 59:11, 59:22, 60:14, 66:18, 68:20, 69:13
**DE** [2] - 33:10, 41:16
**DEA** [1] - 22:16
**deal** [8] - 11:6, 15:6, 27:25, 51:25, 68:13, 82:9, 84:7, 84:8
**dealing** [1] - 60:17

**deals** [1] - 44:21
**debit** [2] - 21:1, 21:2
**December** [5] - 25:17, 26:19, 27:8, 28:13, 30:8
**decide** [5] - 19:2, 24:13, 57:9, 57:18, 65:22
**decision** [1] - 57:12
**deems** [1] - 5:11
**defects** [1] - 10:18
**Defendant** [73] - 1:7, 2:9, 2:25, 3:11, 3:13, 3:15, 3:21, 4:18, 4:23, 5:7, 5:11, 6:6, 6:8, 6:17, 7:1, 8:19, 10:1, 10:2, 10:5, 10:19, 11:13, 11:15, 11:17, 12:12, 12:13, 12:19, 13:11, 13:13, 13:22, 13:24, 14:2, 15:25, 16:11, 16:15, 17:17, 17:20, 19:25, 20:6, 20:9, 20:12, 21:21, 22:6, 25:11, 25:15, 25:20, 26:2, 27:20, 27:22, 29:21, 31:3, 31:7, 32:17, 33:17, 33:23, 34:2, 34:6, 34:7, 34:10, 35:10, 36:9, 42:6, 51:20, 52:12, 53:19, 56:22, 57:8, 64:7, 64:25, 75:11, 76:11, 77:16
**Defendant's** [10] - 4:10, 5:5, 5:20, 13:9, 13:19, 14:22, 17:1, 22:7, 25:9, 25:21
**defendant's** [3] - 16:6, 16:20, 19:19
**defendants** [1] - 78:5
**defense** [15] - 10:21, 15:11, 17:9, 17:22, 21:19, 22:4, 37:1, 45:4, 45:5, 56:12, 66:1, 66:4, 79:7, 83:5, 84:15
**defined** [1] - 3:23
**definitely** [1] - 11:10
**definition** [1] - 55:17
**DELAWARE** [1] - 1:2
**Delaware** [9] - 1:13, 6:16, 6:20, 9:5, 10:1, 29:19, 36:20, 48:2, 76:9
**deliberating** [1] - 75:8
**delivered** [1] - 77:3
**denied** [1] - 5:19
**deny** [1] - 20:5

**denying** [1] - 20:10
**deposition** [1] - 58:15
**depositions** [1] - 56:18
**deputy** [1] - 75:5
**DEREK** [1] - 1:21
**described** [1] - 70:6
**description** [2] - 23:1, 23:3
**descriptions** [1] - 20:3
**despise** [1] - 66:12
**detail** [1] - 70:8
**details** [1] - 77:10
**determination** [3] - 25:7, 46:13, 55:6
**Detweiler** [1] - 57:21
**developing** [1] - 54:21
**device** [1] - 67:3
**devices** [1] - 29:7
**difference** [1] - 38:19
**different** [3] - 28:19, 37:17, 67:24
**difficult** [1] - 78:23
**dire** [10] - 58:24, 59:4, 69:20, 70:6, 70:14, 71:2, 71:3, 71:22, 75:17, 77:2
**directed** [2] - 50:14, 84:14
**direction** [1] - 37:3
**directly** [1] - 83:22
**disagree** [6] - 3:15, 12:25, 20:19, 28:15, 30:6, 31:7
**disagreement** [1] - 30:22
**disagrees** [1] - 13:23
**discharge** [2] - 16:8, 16:17
**disclosed** [1] - 82:24
**disclosure** [2] - 22:5, 22:13
**disclosures** [3] - 22:8, 24:10, 24:22
**discovery** [3] - 29:23, 39:15, 45:6
**discuss** [1] - 3:2
**discussed** [1] - 68:22
**discussing** [1] - 3:1
**discussion** [1] - 21:24
**disinclined** [1] - 78:15
**display** [1] - 79:23
**dispute** [5] - 34:2, 38:24, 63:6, 64:12, 65:25
**disputes** [1] - 25:20
**disputing** [1] - 42:10
**distinction** [1] - 8:14
**distinguish** [1] - 32:19

**DISTRICT** [2] - 1:1, 1:2
**District** [3] - 1:16, 84:13, 85:4
**diversion** [2] - 13:10, 17:14
**docket** [1] - 84:14
**docketed** [1] - 84:13
**document** [1] - 28:18
**documents** [13] - 14:6, 14:7, 14:20, 15:17, 39:14, 63:2, 63:4, 63:9, 79:3, 79:5, 79:15, 79:16, 79:23
**done** [24] - 8:25, 9:17, 15:22, 15:23, 19:9, 22:19, 23:9, 23:18, 33:1, 33:2, 37:3, 40:6, 41:12, 42:12, 42:3, 43:4, 43:11, 45:12, 51:19, 57:15, 61:2, 80:19
**door** [7] - 13:14, 16:11, 17:10, 19:15, 70:18, 70:19, 81:6
**down** [4] - 35:11, 58:22, 80:7
**dragging** [1] - 72:11
**drawing** [1] - 8:14
**drive** [2] - 25:10, 61:22
**dropped** [2] - 30:7, 83:20
**drug** [6] - 3:14, 3:19, 20:1, 20:13, 20:14, 21:13
**drug-related** [1] - 20:14
**drugs** [6] - 3:24, 20:1, 20:13, 20:16, 21:2, 40:13
**DTX** [1] - 62:22
**DTX-25** [1] - 67:1
**during** [6] - 11:19, 14:12, 17:13, 19:21, 29:6, 68:22

**E**

**e-mail** [5] - 36:18, 42:14, 42:15, 84:11, 84:15
**e-mailed** [3] - 32:16, 34:3, 42:12
**easier** [1] - 11:5
**easily** [1] - 55:15
**edits** [1] - 75:18
**educated** [1] - 76:10
**education** [3] - 76:6, 76:14, 76:21
**effect** [1] - 65:20

**efficiency** [1] - 64:4
**efficient** [2] - 63:7, 68:12
**eight** [1] - 59:22
**eighth** [1] - 54:18
**Eighth** [4] - 51:14, 52:8, 52:13, 52:20
**either** [6] - 16:10, 17:9, 19:15, 27:6, 59:16, 80:5, 80:23
**electronic** [1] - 61:13
**electronically** [4] - 61:21, 61:22, 62:22, 66:19
**element** [2] - 33:18, 42:6
**elements** [1] - 49:16
**eleven** [1] - 56:15
**elicit** [2] - 22:6, 55:11
**Elmo** [2] - 80:8, 80:10
**Elward** [1] - 45:20
**employee** [3] - 35:21, 37:3, 37:4
**employees** [4] - 33:16, 34:7, 42:5, 45:2
**end** [6] - 3:7, 53:25, 56:15, 62:11, 63:13, 69:8
**ended** [2] - 7:23, 75:19
**enforcement** [12] - 7:17, 14:12, 14:15, 14:19, 15:7, 15:10, 25:17, 26:1, 26:10, 30:1, 31:16, 40:10
**engaged** [1] - 4:2
**entertain** [1] - 55:9
**entire** [2] - 51:9, 53:2
**entirety** [1] - 52:20
**envision** [1] - 17:25
**envisioning** [1] - 17:12
**episode** [1] - 9:18
**especially** [3] - 12:4, 66:12, 67:9
**ESQ** [6] - 1:21, 1:21, 2:4, 2:4, 2:7, 2:7
**essentially** [4] - 16:14, 17:10, 33:1, 82:22
**establish** [4] - 3:21, 6:7, 10:11, 20:9
**estimate** [1] - 59:5
**et** [4] - 20:10, 26:21, 48:18, 66:19
**evaluate** [2] - 14:8, 42:3
**event** [4] - 20:24, 40:3, 45:13, 73:15
**events** [5] - 10:3, 23:14, 45:22, 49:7,

49:15
**Evidence** [3] - 17:3, 31:3, 34:1
**evidence** [43] - 6:16, 8:2, 8:11, 9:5, 9:6, 11:15, 12:11, 15:21, 16:2, 16:16, 19:25, 20:7, 20:8, 20:11, 21:4, 21:7, 21:10, 21:11, 25:7, 25:9, 26:23, 26:25, 29:21, 30:3, 32:4, 39:17, 40:12, 41:13, 44:3, 48:9, 52:2, 52:23, 53:22, 54:1, 54:16, 66:22, 66:23, 67:20, 69:6, 69:14
**evidentiary** [1] - 65:19
**exact** [1] - 52:12
**exactly** [6] - 42:2, 45:5, 45:19, 65:24, 75:15
**exam** [1] - 62:10
**examination** [5] - 22:25, 43:17, 44:8, 62:18, 67:8
**examinations** [1] - 66:11
**examine** [2] - 14:2, 44:12
**examined** [1] - 67:11
**example** [19] - 7:9, 8:2, 12:4, 14:8, 14:10, 17:13, 20:22, 22:15, 29:18, 39:23, 40:10, 49:11, 54:20, 55:15, 55:16, 58:11, 68:6, 71:12, 76:11
**except** [1] - 33:2
**exception** [1] - 18:11
**excerpts** [3] - 5:8, 5:25, 65:15
**exchange** [2] - 61:18, 62:2
**exclude** [16] - 3:10, 5:5, 6:16, 10:17, 11:12, 12:10, 13:9, 13:20, 16:7, 16:21, 19:19, 21:19, 21:20, 32:4, 33:14, 52:22
**excluded** [2] - 33:20, 34:1
**excused** [1] - 72:18
**exercise** [1] - 72:22
**exhibit** [9] - 61:18, 62:25, 64:1, 64:8, 66:21, 66:22, 67:4, 68:3, 68:8
**exhibits** [11] - 61:14, 61:19, 61:24, 62:3,

62:8, 62:21, 62:23, 65:19, 66:12, 66:15, 66:18
**existing** [1] - 65:3
**expect** [1] - 19:6
**expeditiously** [1] - 24:13
**experience** [1] - 10:23
**expert** [6] - 21:20, 22:22, 21:25, 22:18, 27:14, 57:16
**expert's** [1] - 22:25
**experts** [3] - 21:19, 22:11, 57:13
**explain** [4] - 14:5, 18:22, 64:17, 70:7
**explaining** [1] - 15:17
**explanations** [1] - 21:3
**explicitly** [1] - 37:5
**extent** [20] - 4:18, 4:25, 5:19, 6:8, 10:21, 11:17, 13:13, 15:25, 16:14, 17:16, 19:15, 20:6, 21:10, 30:25, 31:8, 62:17, 69:2, 71:16, 79:5, 79:22
**extra** [1] - 70:2
**extrajudicial** [1] - 11:1
**extravagant** [3] - 19:21, 19:24, 20:8

**F**

**F.3d** [1] - 4:12
**facial** [1] - 12:17
**facilities** [1] - 8:5
**fact** [14] - 4:5, 8:16, 10:3, 15:6, 23:6, 33:24, 36:9, 42:20, 44:6, 48:7, 55:7, 55:10, 65:13
**facts** [5] - 17:15, 17:16, 46:4, 54:20, 55:12
**factual** [1] - 38:20
**failed** [1] - 22:3
**fair** [2] - 47:23, 60:25
**fall** [1] - 46:12
**false** [10] - 3:19, 18:12, 18:20, 34:11, 35:6, 38:4, 38:18, 40:1, 40:6, 46:17
**falsified** [1] - 17:17
**falsity** [2] - 48:3, 50:14
**family** [1] - 76:11
**far** [3] - 46:11, 52:14, 84:10
**fashion** [1] - 55:19

**favor** [1] - 32:18
**faxed** [1] - 42:21
**faxing** [1] - 39:24
**FBI** [1] - 9:8
**feasible** [1] - 62:18
**federal** [5] - 7:16, 7:25, 9:13, 31:6, 31:7
**Federal** [6] - 4:3, 17:2, 17:3, 31:2, 34:1, 72:13
**few** [2] - 3:6, 55:5
**fifteen** [2] - 69:17, 69:18
**fifteen-minute** [1] - 69:18
**fifty** [2] - 68:24, 72:25
**fight** [5] - 51:22, 51:24, 52:1, 68:18
**figure** [10] - 11:9, 27:24, 41:9, 57:14, 57:15, 58:20, 67:24, 74:7, 75:12, 79:24
**file** [1] - 50:19
**filed** [1] - 13:7
**files** [3] - 26:21, 32:21, 33:1
**fill** [9] - 32:7, 32:12, 34:7, 35:10, 39:6, 39:19, 47:3, 47:15, 48:8
**filled** [10] - 33:11, 33:17, 34:10, 35:16, 35:20, 35:22, 40:25, 42:5, 47:4, 48:8
**filling** [1] - 35:4
**final** [1] - 75:9
**fine** [10] - 9:14, 9:15, 30:15, 46:8, 62:13, 71:24, 71:25, 79:19, 82:1, 84:17
**finish** [3] - 69:7, 69:16, 70:25
**finishes** [1] - 59:25
**firearm** [7] - 3:13, 3:17, 4:8, 12:12, 20:4, 34:18
**firearms** [1] - 47:18
**first** [9] - 8:20, 19:23, 21:22, 51:16, 57:1, 59:18, 68:25, 75:7, 83:4
**fit** [1] - 73:14
**five** [7] - 8:5, 10:5, 58:23, 59:21, 61:8, 68:24, 72:25
**five-day** [1] - 58:23
**flexible** [1] - 69:18
**Florida** [2] - 45:8, 50:5
**focus** [1] - 19:23

**focused** [1] - 46:14
**folks** [6] - 37:9, 44:10, 44:23, 58:24, 79:11, 79:16
**follow** [5] - 71:10, 72:4, 72:8, 76:10, 83:13
**follow-up** [4] - 71:10, 72:4, 72:8, 76:10
**followed** [2] - 8:21, 83:21
**following** [3] - 60:24, 83:18
**FOR** [1] - 1:2
**foregoing** [1] - 85:1
**Form** [6] - 32:3, 32:4, 32:6, 32:11, 32:15, 49:22
**form** [64] - 17:18, 18:7, 32:6, 32:8, 32:9, 32:20, 32:25, 33:6, 33:14, 33:17, 34:3, 34:6, 34:8, 34:11, 34:25, 35:5, 35:11, 35:13, 35:18, 35:19, 35:20, 36:4, 36:11, 36:18, 37:17, 37:20, 37:22, 37:25, 38:6, 38:8, 38:9, 38:13, 38:20, 38:21, 39:1, 39:6, 39:11, 39:16, 39:19, 39:24, 40:4, 40:6, 40:10, 40:19, 40:24, 41:4, 41:21, 41:25, 42:5, 42:11, 43:1, 43:10, 47:3, 47:5, 47:9, 47:11, 48:9, 49:7, 49:8, 49:19, 50:15, 67:19
**forms** [2] - 32:19, 44:4
**forth** [2] - 67:13, 75:6
**foundation** [1] - 28:22
**four** [10] - 2:25, 21:20, 24:16, 24:19, 28:6, 44:22, 59:21, 73:10, 73:13, 75:9
**fourteen** [7] - 42:22, 42:24, 43:2, 43:4, 73:12, 73:22
**fourteen-day** [1] - 43:2
**free** [1] - 78:6
**Friday** [6] - 1:9, 61:7, 61:16, 62:14, 77:4, 80:22
**Fridays** [1] - 61:7
**front** [9] - 55:12, 55:13, 55:23, 79:2, 79:3, 79:5, 79:20, 80:7

**full** [2] - 49:13, 51:6
**Furia** [1] - 45:21

**G**

**gap** [1] - 43:2
**general** [3] - 65:20, 71:4, 71:22
**generally** [3] - 71:19, 73:18, 74:24
**generic** [1] - 65:19
**germane** [3] - 40:16, 43:7, 54:2
**given** [11] - 3:5, 6:6, 21:24, 28:19, 39:14, 43:24, 50:8, 56:14, 57:13, 76:8, 82:16
**glanced** [1] - 4:9
**Gordon** [1] - 34:17
**gosh** [1] - 36:13
**government** [74] - 2:24, 3:10, 3:11, 3:14, 3:21, 5:8, 5:10, 5:18, 5:19, 8:2, 8:8, 9:14, 11:8, 12:10, 13:13, 13:23, 14:1, 15:16, 16:1, 16:9, 16:15, 16:25, 19:22, 19:24, 20:7, 20:11, 21:19, 22:2, 22:16, 22:17, 23:6, 23:8, 23:13, 23:25, 24:4, 24:24, 25:24, 26:18, 27:1, 27:2, 27:19, 28:12, 28:13, 28:19, 31:1, 31:4, 31:6, 33:13, 33:16, 33:21, 34:9, 36:3, 37:12, 38:7, 38:22, 41:6, 42:20, 43:14, 44:7, 50:9, 51:4, 53:7, 53:18, 56:7, 59:2, 62:7, 62:10, 62:11, 64:10, 64:23, 65:22, 68:6, 76:25, 77:13
**Government's** [1] - 12:23
**government's** [24] - 5:2, 5:4, 6:15, 9:25, 10:16, 12:21, 13:8, 13:17, 14:4, 16:24, 19:9, 21:18, 22:10, 22:24, 24:11, 24:15, 25:5, 41:24, 42:2, 42:4, 53:11, 58:12, 59:5, 62:24
**grabbed** [1] - 51:18
**grant** [13] - 5:2, 9:25, 10:19, 11:16, 12:14, 13:12, 15:15, 16:13,

19:10, 19:14, 20:5, 31:8, 34:4
**granted** [2] - 5:17
**granting** [2] - 10:13, 20:6
**grappling** [1] - 54:23
**great** [2] - 44:3, 73:4
**ground** [1] - 21:22
**grounds** [1] - 21:21
**guess** [10] - 29:5, 30:24, 47:23, 54:25, 62:8, 65:21, 73:18, 73:23, 81:11, 83:11
**guidance** [1] - 23:22
**guilt** [1] - 53:13
**gun** [33] - 7:16, 11:3, 32:7, 32:13, 32:21, 33:22, 34:7, 34:12, 34:17, 36:6, 36:10, 37:13, 37:15, 39:1, 40:2, 40:5, 40:14, 41:2, 42:21, 43:14, 43:15, 44:10, 44:23, 45:2, 45:8, 47:2, 49:14, 50:9, 50:10, 51:19, 54:22, 56:24
**Gun** [1] - 3:24
**guy** [4] - 45:16, 46:18, 46:25, 58:4
**guys** [6] - 23:16, 62:2, 64:14, 65:22, 68:18, 79:12

### H

**hall** [2] - 77:9, 81:14
**hallway** [1] - 78:13
**hand** [2] - 33:8, 79:17
**handed** [1] - 9:12
**hands** [1] - 28:12
**handwriting** [3] - 34:13, 41:14, 57:15
**happy** [3] - 66:1, 66:4, 83:4
**hard** [2] - 25:10, 81:10
**hate** [1] - 66:16
**Hawkins** [1] - 85:3
**headset** [1] - 78:8
**hear** [3] - 7:3, 48:15, 77:24
**heard** [3] - 23:8, 71:14, 71:18
**hearing** [14] - 11:4, 11:21, 13:11, 13:15, 16:22, 17:2, 17:5, 17:14, 17:24, 19:10, 19:16, 19:18, 21:25, 43:19
**hearsay** [9] - 27:14, 27:15, 28:8, 28:9,

48:12, 49:2
**height** [2] - 34:23, 41:11
**help** [1] - 57:9
**helpful** [3] - 57:17, 61:5, 76:13
**hereby** [1] - 85:1
**hide** [1] - 79:16
**high** [3] - 76:22, 78:16, 78:23
**highlighted** [1] - 64:4
**highlights** [1] - 45:4
**HINES** [69] - 1:21, 2:19, 8:13, 8:19, 9:8, 9:15, 9:21, 14:10, 15:13, 17:8, 17:22, 18:9, 26:9, 26:13, 28:23, 29:7, 30:9, 31:13, 32:8, 32:14, 32:24, 33:4, 34:15, 35:15, 35:23, 36:2, 36:7, 36:17, 37:14, 43:18, 44:5, 45:3, 45:19, 45:25, 47:1, 47:14, 48:1, 50:21, 51:12, 51:23, 52:4, 56:4, 56:11, 56:20, 60:10, 61:6, 61:10, 61:17, 61:22, 62:1, 62:4, 64:1, 64:15, 65:2, 66:1, 68:14, 69:10, 71:24, 73:13, 75:20, 77:13, 78:18, 79:13, 80:17, 82:7, 82:15, 83:17, 84:10, 84:20
**Hines** [6] - 2:18, 14:3, 15:4, 18:19, 30:23, 44:2
**history** [3] - 9:3, 9:17, 21:24
**hit** [1] - 62:25
**hold** [1] - 53:23
**holding** [1] - 59:6
**home** [1] - 83:22
**honed** [1] - 52:10
**Honor** [43] - 2:19, 12:7, 15:13, 18:9, 21:16, 22:14, 26:9, 28:5, 28:23, 28:25, 30:10, 31:13, 36:7, 42:19, 44:24, 45:3, 49:18, 50:21, 51:12, 52:17, 54:19, 56:4, 56:11, 56:13, 61:6, 61:10, 63:13, 64:1, 64:6, 64:15, 68:14, 68:15, 69:10, 69:11, 72:1, 78:18, 78:19, 80:17, 82:7, 83:15,

84:10, 84:15, 84:20
**Honor's** [1] - 62:6
**HONORABLE** [1] - 1:15
**hope** [1] - 12:24
**hopefully** [1] - 81:16
**hotels** [1] - 20:10
**hour** [2] - 69:25, 70:3
**hours** [1] - 23:19
**Hunter** [1] - 29:8
**HUNTER** [1] - 1:6
**husher** [1] - 77:23

### I

**iCloud** [5] - 25:9, 29:5, 31:15
**ID** [4] - 33:23, 37:17, 38:8, 41:3
**idea** [5] - 46:16, 50:15, 56:6, 66:10, 69:1
**identification** [2] - 38:9, 44:4
**identified** [1] - 22:16
**identify** [1] - 67:4
**imagine** [2] - 11:25, 43:7
**immediately** [2] - 8:9, 73:4
**immunity** [1] - 43:25
**impeach** [1] - 46:25
**implementing** [1] - 3:23
**implicated** [1] - 45:1
**important** [1] - 49:14
**improper** [1] - 11:14
**improperly** [2] - 15:24, 45:16
**IN** [1] - 1:1
**Incident** [2] - 6:20, 7:8
**incident** [1] - 8:23
**include** [2] - 10:23, 11:2, 22:5
**includes** [3] - 38:10, 48:18, 70:14
**including** [4] - 34:25, 39:12, 43:12, 50:4
**inconsistent** [1] - 17:23
**independently** [2] - 26:4, 31:16
**indicate** [2] - 4:2, 22:18
**indicated** [2] - 12:24, 23:10
**indicates** [1] - 49:20
**indication** [1] - 21:1
**indictment** [1] - 3:20
**individual** [2] - 4:2, 30:21

**individuals** [1] - 45:7
**influenced** [1] - 45:17
**inform** [2] - 53:7, 74:13
**information** [14] - 5:10, 7:11, 7:15, 14:12, 14:22, 24:25, 25:13, 27:17, 27:18, 27:21, 34:22, 36:2, 39:7, 76:2
**informing** [1] - 53:7
**informs** [1] - 53:21
**inject** [1] - 45:5
**injunction** [1] - 50:23
**inquiry** [1] - 40:16
**instead** [2] - 13:25, 19:24
**institution** [1] - 10:18
**instruction** [8] - 51:13, 51:15, 51:22, 51:23, 52:1, 52:13, 54:5, 54:24
**instructions** [4] - 52:6, 52:9, 75:17, 83:14
**intelligently** [1] - 53:20
**intend** [3] - 16:25, 61:14, 84:11
**intending** [1] - 46:2
**internet** [1] - 71:19
**interrupt** [1] - 75:20
**interstate** [1] - 3:18
**interview** [3] - 49:17, 49:18, 49:20
**interviewed** [1] - 36:25
**introduce** [1] - 17:1
**introducing** [2] - 20:8, 20:11
**introductory** [1] - 72:7
**inundating** [1] - 83:1
**invade** [1] - 18:17
**investigated** [1] - 10:24
**investigation** [10] - 13:24, 13:25, 14:13, 14:18, 15:5, 15:16, 32:23, 33:3, 71:15
**invited** [1] - 49:23
**involved** [9] - 8:23, 28:10, 38:14, 38:20, 38:21, 47:16, 49:5, 49:22, 49:24
**involvement** [1] - 38:6
**involves** [1] - 8:24
**iPad** [2] - 29:8, 29:10
**irrelevant** [5] - 5:6, 5:11, 11:14, 48:13, 64:18

**Isaac** [8] - 25:18, 25:22, 26:17, 26:19, 28:10, 29:1, 29:9, 29:21
**issue** [47] - 4:23, 4:24, 4:25, 7:9, 7:14, 8:5, 8:6, 8:16, 9:3, 10:8, 11:3, 11:20, 13:14, 13:15, 15:3, 19:17, 22:19, 23:13, 30:2, 31:20, 34:11, 39:12, 39:20, 40:17, 42:24, 43:6, 44:17, 46:14, 53:3, 53:4, 53:5, 53:19, 54:9, 54:18, 55:18, 56:1, 56:15, 60:18, 65:17, 66:2, 69:9, 72:14, 73:15, 78:10, 82:8, 82:12
**issues** [13] - 16:3, 19:1, 28:11, 46:7, 49:6, 50:18, 54:23, 55:13, 55:21, 55:24, 56:5, 64:24, 70:4
**items** [1] - 34:20

### J

**Jason** [2] - 35:19, 35:20
**job** [1] - 23:18
**John** [4] - 25:18, 29:1, 29:9, 29:20
**joint** [1] - 62:23
**JTX** [1] - 62:23
**Judge** [25] - 1:16, 9:22, 11:23, 18:21, 19:11, 22:21, 24:14, 26:15, 27:7, 30:12, 38:5, 39:24, 41:17, 43:23, 47:25, 49:17, 50:13, 58:5, 59:1, 59:16, 65:9, 69:21, 73:9, 82:8, 84:19
**judge** [3] - 23:5, 52:14, 57:1
**July** [6] - 13:11, 16:22, 17:1, 18:22, 19:10, 19:16
**June** [5] - 59:25, 60:2, 60:3, 68:21, 68:25
**juries** [2] - 66:12, 66:15, 69:15
**juror** [5] - 70:13, 70:18, 70:21, 75:22
**Juror** [1] - 72:19
**jurors** [19] - 60:17, 68:10, 69:22, 70:9, 71:11, 72:17, 72:22, 72:25, 73:12, 74:8,

74:21, 74:22, 75:5, 75:7, 76:18, 77:2, 82:23, 83:11, 83:18
**Jury** [1] - 82:18
**jury** [48] - 4:23, 5:1, 6:11, 11:4, 11:6, 11:21, 12:20, 13:16, 14:17, 14:19, 15:23, 16:5, 16:18, 19:18, 21:16, 23:1, 23:3, 33:25, 46:24, 51:15, 51:22, 51:23, 51:25, 52:8, 52:13, 53:7, 54:5, 54:24, 55:12, 55:13, 55:23, 59:7, 59:25, 60:6, 66:24, 67:5, 68:21, 69:7, 69:14, 70:17, 71:1, 72:5, 73:22, 75:17, 75:21, 80:12, 82:10

## K

**keep** [14] - 40:13, 40:14, 46:4, 47:10, 62:21, 66:11, 67:13, 70:15, 72:21, 74:6, 74:9, 81:20, 81:21
**keeping** [1] - 17:4
**kept** [3] - 8:4, 40:2, 40:7
**key** [2] - 82:3
**kind** [6] - 12:16, 17:19, 57:19, 61:8, 78:23, 80:5
**kinds** [1] - 30:5
**King** [1] - 1:12
**knowing** [4] - 7:21, 36:19, 49:13, 76:9
**knowingly** [1] - 53:19
**knowledge** [2] - 36:24, 47:12
**known** [1] - 36:22
**knows** [2] - 38:9, 83:21
**KOLANSKY** [1] - 2:7

## L

**lab** [2] - 22:16, 22:17
**labeled** [1] - 62:21
**lane** [1] - 18:24
**language** [2] - 15:20, 51:7
**laptop** [11] - 14:22, 25:9, 29:10, 29:13, 29:22, 29:24, 30:7, 31:6, 31:14, 31:16, 48:21
**large** [6] - 20:1, 20:2,

20:12, 20:22, 21:12, 64:6
**largely** [1] - 16:24
**last** [4] - 21:25, 23:10, 44:1, 80:25
**lavaliere** [1] - 77:15
**law** [18] - 4:15, 7:16, 11:13, 11:19, 14:12, 14:15, 14:19, 15:7, 15:10, 25:17, 26:1, 26:10, 30:1, 31:15, 40:10, 52:17, 54:6, 54:21
**lawyer** [2] - 54:7, 80:3
**least** [6] - 3:2, 4:11, 43:2, 69:14, 69:16, 69:18
**leather** [5] - 8:3, 8:17, 9:2, 9:4, 9:9
**leave** [4] - 75:21, 83:15, 83:18, 83:19
**leaves** [1] - 81:24
**left** [2] - 23:16, 64:6
**legally** [1] - 14:20
**legitimate** [1] - 8:10
**LEO** [1] - 1:21
**less** [4] - 33:18, 42:7, 57:17, 83:8
**level** [2] - 76:6, 76:22
**licensees** [1] - 47:18
**lie** [1] - 37:17
**lied** [2] - 47:9, 47:11
**life** [1] - 12:3
**lifestyle** [3] - 19:21, 19:24, 20:8
**likely** [5] - 21:21, 33:19, 41:13, 42:7, 57:23
**Limine** [25] - 2:24, 3:3, 3:10, 5:3, 5:4, 6:12, 6:15, 10:16, 11:12, 12:10, 13:8, 13:18, 13:20, 16:6, 16:20, 16:24, 19:19, 25:2, 25:3, 25:4, 25:5, 32:3, 46:2, 54:13, 64:17
**limine** [3] - 24:16, 25:2, 56:3
**limited** [2] - 3:24, 17:24
**limits** [1] - 17:2
**line** [1] - 33:11
**link** [1] - 21:7
**list** [10] - 56:7, 56:9, 56:12, 56:14, 57:10, 58:11, 58:12, 62:25, 75:5, 75:8
**listed** [1] - 56:13
**listens** [1] - 77:16

**lists** [2] - 61:19, 75:22
**literally** [1] - 45:21
**litigation** [1] - 28:9
**live** [3] - 56:18, 76:5, 83:23
**lives** [4] - 82:14, 83:8, 84:2
**LLP** [1] - 2:6
**loaded** [1] - 63:21
**locating** [1] - 64:5
**location** [3] - 82:13, 82:24, 83:21
**locations** [1] - 20:2
**lock** [2] - 81:23, 81:24
**locker** [1] - 9:5
**logistics** [2] - 3:1, 56:6
**look** [15] - 4:16, 24:24, 30:7, 34:13, 44:21, 46:18, 53:4, 53:10, 54:8, 63:7, 67:4, 67:12, 74:25, 77:7, 83:7
**looked** [2] - 52:18
**looking** [5] - 13:2, 13:7, 27:12, 52:17, 54:25
**looks** [2] - 35:24, 78:24
**lose** [1] - 60:17
**lost** [2] - 51:17, 52:7
**LOWELL** [128] - 2:7, 2:21, 7:3, 7:5, 8:1, 9:22, 11:7, 11:23, 12:22, 13:4, 14:24, 18:11, 18:15, 19:11, 20:17, 20:19, 21:15, 22:10, 23:5, 24:2, 24:14, 25:14, 25:19, 26:15, 26:24, 27:23, 28:5, 30:12, 30:19, 31:19, 31:25, 37:10, 38:5, 38:13, 39:3, 39:9, 39:22, 40:9, 41:13, 42:14, 42:18, 43:22, 44:6, 44:14, 44:17, 44:24, 47:25, 48:16, 48:25, 50:6, 51:1, 51:4, 52:14, 53:6, 53:17, 54:11, 55:4, 55:9, 55:14, 55:22, 55:25, 57:11, 57:5, 57:19, 57:23, 58:1, 58:5, 58:9, 58:18, 59:1, 59:13, 59:16, 59:20, 60:4, 60:20, 60:25, 62:6, 62:15, 63:8, 63:12, 63:19, 63:23, 64:10, 64:16, 65:9, 65:24,

66:17, 67:2, 67:7, 67:22, 68:15, 69:11, 69:21, 71:25, 73:8, 73:16, 73:20, 73:25, 74:3, 74:9, 74:13, 74:16, 74:18, 75:2, 75:12, 76:1, 76:7, 76:16, 76:20, 76:24, 77:19, 78:2, 78:9, 78:19, 79:4, 79:10, 79:19, 79:22, 80:10, 80:15, 80:18, 80:25, 81:15, 81:19, 82:8, 83:13, 83:23, 84:19
**Lowell** [13] - 2:20, 8:13, 10:12, 18:6, 29:12, 30:5, 46:14, 47:8, 48:15, 52:5, 56:22, 61:24, 66:3
**Lowell's** [1] - 35:12
**lunch** [5] - 69:23, 69:25, 70:1, 81:3

## M

**ma'am** [2] - 2:21, 44:14
**Mac** [8] - 25:18, 25:22, 26:17, 26:19, 28:10, 29:1, 29:9, 29:20
**mail** [5] - 36:18, 42:14, 42:15, 84:11, 84:15
**mailed** [2] - 32:16, 34:3, 42:12
**man** [2] - 46:16
**Management** [1] - 82:18
**mandates** [1] - 5:12
**manner** [2] - 17:23, 17:24
**Mark** [3] - 74:7, 75:10, 75:25
**markings** [1] - 33:6
**marshal** [1] - 84:14
**marshals** [3] - 82:21, 83:4, 84:8
**MARYELLEN** [1] - 1:15
**material** [1] - 8:7
**materials** [3] - 23:3, 81:20, 81:21
**math** [4] - 59:23, 60:4, 75:12, 75:15
**matter** [4] - 3:25, 16:23, 46:4, 64:21
**matters** [2] - 16:2, 41:24
**mean** [19] - 7:5, 19:3, 26:3, 27:11, 27:16, 39:23, 41:9, 41:18,

42:10, 42:11, 43:22, 47:10, 53:2, 53:24, 54:6, 55:11, 76:16, 81:9
**meaningful** [1] - 30:2
**means** [3] - 7:2, 54:6, 76:18
**meant** [1] - 76:21
**media** [4] - 29:24, 71:15, 71:19, 83:15
**meet** [6] - 5:15, 5:23, 22:8, 23:23, 78:16, 78:23
**memoir** [2] - 5:5, 5:20
**Memorial** [2] - 24:3, 24:5
**mentioned** [1] - 44:10
**mentioning** [1] - 10:3
**merely** [1] - 52:12
**merits** [1] - 4:21
**message** [3] - 29:18, 29:25, 30:15
**messages** [10] - 29:13, 29:15, 29:16, 29:20, 31:2, 31:10, 45:6, 45:10, 45:11
**mic** [1] - 77:15
**Michael** [2] - 45:20, 45:21
**middle** [3] - 64:11, 76:12, 76:15
**midst** [1] - 65:12
**might** [17] - 3:7, 7:13, 7:14, 17:7, 18:8, 19:4, 23:12, 24:3, 27:1, 30:21, 43:3, 56:15, 62:8, 64:7, 65:22, 77:22
**MIL's** [1] - 51:2
**mind** [4] - 53:20, 58:16, 64:21, 65:15
**minimal** [1] - 3:5
**minute** [3] - 6:13, 63:8, 69:18
**minutes** [1] - 69:17
**miscellaneous** [1] - 56:5
**misinformation** [1] - 49:21
**misplaced** [1] - 4:19
**mitigate** [1] - 83:19
**model** [3] - 51:15, 52:8, 52:13
**moment** [5] - 13:18, 24:8, 47:21, 47:23, 59:20
**Monday** [5] - 60:13, 63:17, 63:18, 68:21, 73:3
**money** [1] - 20:9

**monitors** [1] - 80:12
**month** [2] - 59:8, 59:10
**months** [1] - 8:21
**morning** [10] - 2:15, 63:18, 68:4, 68:9, 68:22, 68:24, 69:19, 72:25, 73:2, 82:3
**most** [1] - 67:12
**mostly** [1] - 39:23
**motion** [37] - 5:17, 5:19, 6:18, 9:25, 10:13, 10:20, 11:16, 12:13, 12:14, 12:21, 12:23, 13:12, 15:15, 16:10, 16:13, 19:8, 19:10, 20:4, 20:6, 20:10, 21:19, 23:6, 24:15, 24:20, 25:11, 25:24, 26:8, 31:8, 31:9, 34:4, 34:5, 35:12, 50:20, 50:23, 54:18, 72:19, 83:6
**Motion** [23] - 3:10, 5:2, 5:4, 6:12, 6:15, 10:16, 11:12, 12:10, 13:8, 13:18, 13:19, 16:6, 16:20, 16:24, 19:19, 25:2, 25:3, 25:4, 25:5, 32:3, 46:1, 54:13, 64:17
**motions** [7] - 13:5, 17:15, 23:8, 24:16, 25:2, 50:22, 56:2
**Motions** [2] - 2:24, 3:2
**mountain** [1] - 62:20
**mouth** [1] - 64:20
**move** [5] - 13:19, 45:23, 46:7, 64:5, 70:17
**MR** [195] - 2:19, 2:21, 7:3, 7:5, 8:1, 8:13, 8:19, 9:8, 9:15, 9:21, 9:22, 11:7, 11:23, 12:22, 13:4, 14:10, 14:24, 15:13, 17:8, 17:22, 18:9, 18:11, 18:15, 19:11, 20:17, 20:19, 21:15, 22:10, 23:5, 24:2, 24:14, 25:14, 25:19, 26:9, 26:13, 26:15, 26:24, 27:23, 28:5, 28:23, 29:7, 30:9, 30:12, 30:19, 31:13, 31:19, 31:25, 32:8, 32:14, 32:24, 33:4, 34:15, 35:15, 35:23, 36:2, 36:7, 36:17, 37:10, 37:14, 38:5, 38:13,

39:3, 39:9, 39:22, 40:9, 41:13, 42:14, 42:18, 43:18, 43:22, 44:5, 44:6, 44:14, 44:17, 44:24, 45:3, 45:19, 45:25, 47:1, 47:14, 47:25, 48:1, 48:16, 48:25, 50:6, 50:21, 51:1, 51:4, 51:12, 51:23, 52:4, 52:14, 53:6, 53:17, 54:11, 55:4, 55:9, 55:14, 55:22, 55:25, 56:4, 56:11, 56:20, 57:1, 57:5, 57:19, 57:23, 58:1, 58:5, 58:9, 58:18, 59:1, 59:13, 59:16, 59:20, 60:4, 60:10, 60:20, 60:25, 61:6, 61:10, 61:17, 61:22, 62:1, 62:4, 62:6, 62:15, 63:8, 63:12, 63:19, 63:23, 64:1, 64:10, 64:15, 64:16, 65:2, 65:9, 65:24, 66:1, 66:17, 67:2, 67:7, 67:22, 68:14, 68:15, 69:10, 69:11, 69:21, 71:24, 71:25, 73:8, 73:13, 73:16, 73:20, 73:25, 74:3, 74:9, 74:13, 74:16, 74:18, 75:2, 75:12, 75:20, 76:1, 76:7, 76:16, 76:20, 76:24, 77:13, 77:19, 78:2, 78:9, 78:18, 78:19, 79:4, 79:10, 79:13, 79:19, 79:22, 80:10, 80:15, 80:17, 80:18, 80:25, 81:15, 81:19, 82:7, 82:8, 82:15, 83:13, 83:17, 83:23, 84:10, 84:19, 84:20
**multiple** [1] - 51:19
**must** [6] - 3:12, 3:14, 3:21, 6:10, 11:3, 22:5

**N**

**name** [3] - 34:22, 76:3, 76:4
**naturally** [1] - 11:18
**Navy** [2] - 16:9, 16:17
**near** [1] - 81:1
**necessarily** [1] - 18:23
**necessary** [2] - 58:10, 84:2

**need** [28] - 3:8, 5:25, 14:5, 14:18, 15:6, 15:15, 24:17, 24:21, 50:3, 54:17, 57:15, 60:1, 60:2, 62:13, 64:9, 66:22, 70:3, 70:25, 74:2, 74:5, 79:21, 80:20, 83:16, 84:7, 84:8, 84:9, 84:18
**needed** [1] - 19:11
**negotiations** [1] - 13:10
**never** [7] - 7:13, 18:6, 18:7, 29:9, 33:22, 37:15
**news** [3] - 71:15, 71:19, 71:20
**next** [10] - 4:5, 7:11, 21:18, 22:2, 60:19, 62:13, 64:11, 69:17, 70:17, 75:18
**nice** [1] - 35:13
**night** [3] - 63:19, 63:20, 81:22
**nine** [2] - 2:24, 56:7
**nobody** [1] - 59:9
**noise** [3] - 77:24, 78:1, 78:3
**non** [1] - 6:22
**non-prosecution** [1] - 6:22
**none** [3] - 13:3, 23:2, 50:10
**noon** [4] - 61:16, 69:3, 69:4, 77:4
**NOREIKA** [1] - 1:15
**normal** [1] - 82:14
**normally** [2] - 42:17, 43:6
**note** [1] - 6:1
**noted** [1] - 29:16
**notes** [1] - 85:1
**nothing** [11] - 9:17, 29:1, 29:11, 33:1, 36:21, 37:20, 40:3, 45:9, 45:12, 48:13, 68:18
**notice** [1] - 84:12
**noticed** [1] - 35:11
**notices** [3] - 21:22, 21:25, 22:2
**noting** [1] - 19:23
**nullification** [1] - 45:5
**number** [35] - 2:24, 3:4, 3:10, 5:3, 5:4, 6:13, 6:15, 10:16, 11:12, 12:10, 13:8, 13:18, 13:20, 16:6, 16:20, 19:1, 19:19,

20:24, 20:25, 25:3, 25:5, 25:6, 32:3, 33:8, 34:15, 39:7, 49:16, 54:13, 70:10, 70:13, 73:17, 74:25, 75:1
**Number** [1] - 72:19
**numbered** [1] - 74:24
**numbers** [2] - 41:11, 74:23
**numerous** [1] - 26:20

**O**

**object** [3] - 21:14, 31:3, 68:8
**objection** [4] - 3:5, 13:6, 21:6, 51:11
**objections** [2] - 68:3, 68:13
**obligation** [1] - 62:9
**obtain** [1] - 9:9
**obtained** [9] - 7:15, 8:4, 9:4, 14:15, 15:7, 15:21, 25:9, 27:4, 32:21
**obtaining** [1] - 20:12
**obvious** [2] - 74:18, 78:7
**obviously** [1] - 78:10
**occasions** [1] - 26:20
**occupation** [1] - 76:3
**occur** [1] - 54:19
**occurred** [6] - 4:1, 20:24, 28:10, 45:10, 49:8, 54:21
**October** [7] - 7:7, 8:4, 9:4, 32:16, 36:19, 40:3, 47:20
**OF** [3] - 1:2, 1:4, 1:20
**offense** [2] - 4:14, 4:21
**offenses** [2] - 33:18, 42:6
**offer** [3] - 61:14, 66:22, 67:20
**offered** [2] - 5:18, 68:4
**offering** [1] - 19:25
**office** [8] - 44:21, 49:11, 77:4, 81:5, 81:8, 81:13, 81:18, 82:2
**OFFICE** [1] - 1:20
**officer** [2] - 7:6, 9:10
**officers** [2] - 8:19, 8:22
**offices** [1] - 81:1
**Official** [1] - 85:3
**offline** [1] - 66:3
**offsite** [1] - 82:23,

83:20
**often** [2] - 57:7, 81:10
**once** [1] - 74:20
**One** [2] - 35:5, 47:8
**one** [73] - 6:1, 6:14, 6:23, 6:25, 8:2, 9:24, 10:25, 11:7, 11:24, 14:4, 16:23, 18:24, 19:22, 20:17, 20:24, 24:7, 24:14, 24:21, 26:24, 28:23, 29:25, 30:12, 31:19, 33:7, 33:9, 35:3, 36:17, 37:12, 38:1, 39:3, 42:8, 45:7, 45:20, 46:18, 49:16, 50:1, 50:17, 51:4, 51:10, 53:17, 56:15, 57:8, 57:17, 57:22, 57:25, 58:2, 59:21, 63:8, 64:1, 64:16, 65:12, 69:3, 69:19, 70:18, 73:8, 73:21, 73:22, 74:10, 75:11, 75:14, 77:24, 80:25, 81:7, 81:16, 81:17, 82:8, 83:7, 83:19, 83:21
**one-way** [1] - 18:24
**ones** [2] - 3:9, 39:11
**open** [2] - 64:6, 75:19
**open-ended** [1] - 75:19
**opened** [3] - 13:14, 19:15, 26:21
**opening** [3] - 13:2, 52:5, 52:16
**opens** [2] - 16:11, 17:10
**opinion** [2] - 23:4, 55:8
**opinions** [2] - 22:6, 22:23
**opportunity** [4] - 5:21, 6:6, 23:21, 24:9
**oppose** [6] - 6:18, 10:19, 11:16, 13:12, 25:11, 26:12
**opposed** [3] - 20:23, 30:17
**opposes** [4] - 3:13, 5:7, 16:9, 19:22
**opposite** [1] - 59:3
**order** [9] - 14:5, 53:13, 56:12, 61:18, 62:4, 74:24, 82:18, 82:21, 83:3
**orders** [1] - 84:13
**original** [6] - 32:15, 33:6, 33:13, 34:3, 34:4, 39:6

originally [1] - 58:22
otherwise [4] - 15:22,
20:13, 45:13, 66:25
out-of-court [1] -
64:25
outlet [1] - 71:19
outside [10] - 6:10,
11:3, 11:6, 11:21,
13:15, 16:4, 16:18,
17:2, 19:17, 54:7
outstanding [1] -
50:23
outweighed [1] -
33:25
overlap [1] - 16:23
overnight [2] - 81:23,
81:25
own [4] - 16:11, 31:25,
64:20, 70:16
owner [6] - 32:22,
37:13, 37:15, 43:16,
45:8, 56:25
owner's [1] - 32:21
owners [1] - 50:10

P

P.A [1] - 2:3
p.m [3] - 1:10, 80:22,
84:24
page [7] - 5:14, 5:20,
5:22, 17:4, 24:19,
29:16, 35:19
pages [8] - 5:11, 5:18,
6:2, 23:7, 24:15,
24:17, 25:8
Palimere [36] - 36:24,
37:1, 37:13, 37:20,
37:24, 38:5, 38:10,
38:14, 38:21, 39:10,
40:18, 40:22, 40:23,
41:4, 41:20, 42:25,
43:25, 44:15, 44:25,
45:7, 45:10, 47:16,
49:4, 49:5, 49:6,
49:13, 49:15, 49:23,
50:6, 50:8, 50:12,
50:14, 57:13, 57:20
Palimere's [3] - 37:2,
41:1, 45:1
paper [4] - 13:2, 14:4,
62:19, 64:17
paper/responsive [1]
- 13:2
papers [6] - 26:3,
27:12, 48:20, 50:1,
51:6, 54:8
paralegal [1] - 64:3
parameters [1] - 18:20
paraphernalia [2] -

20:1, 20:13
park [2] - 82:23, 83:10
parking [2] - 82:23,
83:9
part [17] - 5:17, 7:18,
8:20, 20:5, 41:14,
42:24, 51:16, 52:21,
52:22, 53:8, 53:22,
53:23, 53:25, 54:15,
79:10
partially [3] - 5:7,
16:9, 57:12
particular [6] - 3:25,
27:1, 27:2, 28:8,
31:10, 68:7
particularly [1] - 83:24
parties [6] - 10:10,
15:20, 56:14, 61:13,
61:18, 75:22
pass [2] - 51:2, 62:1
passages [2] - 5:14,
5:22
passport [2] - 38:14,
46:21
Paul [4] - 25:18, 29:1,
29:9, 29:20
pen [1] - 70:14
pencil [1] - 70:15
pencils [1] - 77:1
pending [3] - 3:3,
13:21, 15:19
pens [1] - 77:1
people [20] - 8:23,
19:5, 43:24, 44:23,
46:3, 50:5, 58:12,
66:11, 66:13, 70:23,
72:10, 72:15, 77:3,
77:8, 77:11, 79:17,
80:2, 80:3, 82:25,
83:17
people's [1] - 61:3
per [1] - 56:11
percipient [1] - 45:21
perhaps [1] - 23:23
period [7] - 8:25, 15:8,
19:21, 20:21, 36:22,
58:13, 58:19
permission [3] - 16:4,
16:18, 24:18
person [14] - 3:16, 4:6,
4:7, 7:8, 22:16,
35:24, 39:21, 45:7,
45:8, 45:9, 47:16,
51:16, 72:20, 79:24
personal [1] - 39:6
personnel [1] - 69:22
phone [2] - 29:8,
29:10
phrase [2] - 13:23,
13:25

phrasing [1] - 20:7
physical [1] - 32:20
pick [3] - 52:21, 53:8,
53:11
picked [2] - 34:19,
82:10
piece [6] - 8:2, 8:11,
28:1, 40:12, 44:3
pin [1] - 58:21
pinpointed [1] - 54:19
place [3] - 10:4, 42:11,
68:22
places [1] - 80:9
Plaintiff [1] - 1:23
plan [6] - 44:16, 56:10,
69:12, 70:5, 71:9,
72:4
planning [5] - 17:19,
34:10, 35:9, 71:5,
72:9
planted [1] - 29:22
play [3] - 24:12, 36:16,
50:4
plea [1] - 13:10
plenty [1] - 62:15
plug [1] - 79:25
point [16] - 6:3, 18:21,
22:11, 28:23, 30:13,
30:16, 30:20, 31:13,
43:4, 43:24, 53:17,
54:12, 64:16, 64:23,
75:14
pointed [1] - 31:20
pointing [1] - 22:14
Police [3] - 6:20, 9:5,
10:1
police [2] - 7:6, 9:10
policeman [2] - 9:12
pool [1] - 70:22
portions [3] - 5:5, 5:6,
6:4, 6:9, 52:11,
53:12, 64:3, 64:4
possessed [2] - 26:2
possesses [1] - 4:8
possessing [1] - 3:17
possession [8] - 7:16,
8:8, 14:20, 14:25,
25:22, 26:19, 27:4,
27:5
possibility [2] - 57:10,
64:6
possible [9] - 23:1,
56:14, 58:10, 60:12,
63:3, 68:12, 77:3,
82:14, 84:4
possibly [3] - 59:18,

77:20, 83:9
Post [3] - 27:13, 28:3,
29:12
post [1] - 76:23
potential [1] - 13:10
pouch [7] - 8:3, 8:17,
9:2, 9:4, 9:9, 9:12,
9:13
power [2] - 51:17,
52:7
powerful [1] - 21:10
practice [2] - 75:21,
77:17
precise [1] - 4:7
preclude [3] - 10:2,
10:14, 20:7
predetermining [1] -
41:18
predict [1] - 60:6
preemptories [4] -
70:24, 72:23, 73:18,
75:8
preemptory [3] -
70:23, 74:21, 75:2
prefer [2] - 82:14, 84:3
preference [4] - 74:17,
74:18, 77:6, 82:10
preferred [1] - 23:8
prejudice [4] - 5:16,
5:24, 6:5, 46:12
prejudiced [1] - 15:4
prejudicial [1] - 13:24
preliminary [1] - 75:17
premise [1] - 12:5
prepare [1] - 84:9
prepared [3] - 2:17,
69:14, 80:11
presence [4] - 6:10,
11:6, 16:4, 16:18
present [3] - 33:6,
33:23, 69:14
presentation [1] -
69:6
presented [1] - 66:19
press [2] - 49:22,
49:23
presumably [1] -
44:11
Pretrial [1] - 1:10
pretrial [4] - 2:23,
4:10, 52:1, 54:3
pretty [6] - 3:4, 22:21,
23:11, 23:18, 24:6,
78:22
previously [2] - 11:1,
19:9
primarily [1] - 34:16
primary [1] - 83:17
probative [1] - 33:24
probe [1] - 16:2

problem [4] - 11:23,
55:25, 81:12, 83:9
problems [1] - 11:7
Procedure [1] - 17:3
procedures [1] - 15:11
proceed [2] - 2:17,
68:22
proceeding [2] -
51:15, 85:1
proceedings [4] -
13:22, 15:19, 16:8,
16:17
process [2] - 69:2,
70:7
produced [1] - 14:21
production [1] - 29:2
profession [1] - 76:5
proffer [2] - 31:25,
43:25
proffered [1] - 8:2
prohibits [1] - 3:16
projection [1] - 60:21
projections [1] - 61:3
promised [1] - 23:10
promptly [1] - 23:16
proper [2] - 15:7,
15:22
properly [4] - 4:25,
6:4, 39:18, 40:25
proposed [7] - 21:19,
21:20, 71:3, 71:13,
75:17, 82:19, 82:20
proposing [1] - 24:22
prosecution [5] -
6:22, 9:20, 10:7,
10:18, 43:21
prosecutors [1] - 10:4
prospective [4] - 70:9,
72:17, 72:22, 77:2
protection [2] - 18:15,
45:14
prove [7] - 3:14, 8:16,
27:9, 34:10, 34:16,
34:17, 53:13
provide [7] - 61:13,
62:7, 62:9, 62:12,
82:22, 83:4, 84:11
provided [8] - 6:2,
7:15, 7:25, 22:12,
22:18, 37:1, 39:14,
70:13
provides [1] - 17:9
proviso [2] - 17:5,
65:6
prying [1] - 72:11
PTX [1] - 62:22
publish [1] - 79:23
published [1] - 67:5
punishment [1] -
13:10

**purchase** [2] - 3:14, 32:13
**purchased** [1] - 3:13
**purchasing** [1] - 20:4
**purported** [1] - 10:17
**purposes** [3] - 8:9, 8:15, 60:6
**pursuant** [4] - 14:15, 15:7, 25:10, 44:13
**put** [20] - 9:4, 17:19, 26:22, 26:24, 27:9, 36:12, 36:15, 40:1, 41:25, 48:24, 50:15, 52:3, 61:23, 64:16, 66:21, 67:20, 79:2, 79:5, 79:15, 80:8
**puts** [2] - 41:15, 49:15
**putting** [1] - 57:10

**Q**

**quarrel** [1] - 30:13
**quash** [2] - 45:23, 46:7
**questioned** [1] - 72:17
**questioning** [11] - 10:17, 11:13, 12:11, 12:15, 12:16, 13:9, 13:14, 13:21, 39:20, 61:3, 70:20
**questions** [41] - 6:19, 6:24, 10:10, 10:14, 11:4, 11:22, 13:16, 13:19, 16:5, 16:7, 16:21, 19:18, 19:20, 35:8, 37:7, 47:3, 47:24, 48:7, 54:10, 58:23, 64:7, 67:17, 70:14, 70:16, 70:19, 71:4, 71:6, 71:10, 71:21, 72:3, 72:7, 72:11, 72:13, 72:19, 74:10, 74:12, 75:19, 80:16, 80:18
**quote** [1] - 27:13
**quotes** [1] - 27:13

**R**

**raise** [14] - 11:3, 11:20, 12:1, 12:6, 12:8, 13:15, 19:17, 20:21, 21:13, 30:2, 30:21, 64:7, 66:6, 82:17
**raised** [4] - 4:24, 12:18, 31:20, 49:18
**raises** [1] - 39:15
**raising** [3] - 42:23, 52:5, 65:17

**random** [1] - 63:11
**randomized** [1] - 70:10
**rather** [2] - 4:1, 5:11
**read** [7] - 28:3, 28:25, 31:14, 42:1, 70:16, 71:14, 76:1
**reading** [1] - 67:16
**ready** [2] - 51:2, 70:24
**real** [2] - 29:4, 83:9, 83:24
**really** [8] - 7:2, 26:2, 27:15, 46:21, 46:22, 46:23, 77:8, 82:4
**reason** [8] - 41:23, 44:25, 58:21, 65:1, 65:7, 74:11, 76:8, 78:12
**reasonable** [1] - 60:21
**reasons** [6] - 8:1, 22:7, 22:23, 39:3, 74:19, 76:8
**rebut** [1] - 17:10
**rebuttal** [1] - 56:9
**receive** [2] - 75:22, 75:23
**received** [8] - 14:12, 25:17, 26:10, 26:17, 27:19, 29:15, 30:14, 31:6
**receives** [1] - 4:8
**receiving** [1] - 45:14
**recently** [1] - 4:1
**reciprocal** [1] - 29:23
**recognize** [2] - 20:25, 67:18
**record** [3] - 39:18, 40:1, 40:2
**recovered** [1] - 40:5
**red** [2] - 35:14, 36:1
**redact** [1] - 5:10
**redacted** [2] - 6:2, 6:4
**redactions** [1] - 6:21
**refer** [2] - 15:1, 15:16
**reference** [9] - 9:25, 11:2, 12:15, 13:21, 15:18, 16:10, 51:5, 51:17, 52:19
**references** [3] - 16:7, 16:21, 19:20
**referred** [1] - 82:17
**reflect** [1] - 43:3
**reg** [1] - 51:9
**regard** [3] - 57:11, 59:17, 59:19
**regarding** [6] - 3:19, 6:21, 10:17, 11:19, 13:9, 20:12
**Registration** [1] - 33:10

**registration** [3] - 36:21, 41:16, 48:2
**regulate** [1] - 43:14
**regulation** [15] - 4:11, 4:13, 4:16, 51:20, 52:11, 52:19, 52:20, 52:21, 52:22, 53:2, 53:9, 53:21, 53:24, 54:1
**regulations** [4] - 3:23, 53:12, 53:14, 54:6
**Regulations** [1] - 4:4
**related** [7] - 11:13, 14:14, 16:16, 20:14, 21:12, 35:6, 45:9
**relates** [1] - 20:11
**relating** [4] - 12:11, 16:2, 16:7, 16:21
**relevance** [8] - 5:15, 5:24, 6:5, 7:24, 37:19, 38:1, 38:2, 47:19
**relevant** [20] - 5:14, 5:21, 8:10, 9:1, 10:3, 10:6, 20:14, 33:19, 33:24, 38:17, 40:16, 40:22, 42:7, 53:15, 54:15, 55:13, 55:20, 55:24, 64:21
**reliability** [1] - 23:1
**reliance** [1] - 4:19
**relies** [1] - 4:19
**rely** [1] - 52:25
**relying** [1] - 53:13
**remain** [2] - 70:23, 81:25
**remainder** [1] - 34:5
**remember** [1] - 12:25
**remind** [1] - 59:2
**reply** [5] - 23:25, 29:17, 30:4, 38:17, 65:3
**report** [2] - 69:1, 73:7
**Report** [2] - 6:20, 7:8
**Reporter** [1] - 85:3
**reporter** [1] - 66:8
**Republicans** [1] - 45:17
**request** [7] - 6:9, 6:10, 31:17, 34:18, 44:18, 46:4, 51:13
**requested** [2] - 32:22, 82:17
**required** [1] - 47:9
**requirement** [2] - 22:9, 40:1
**requirements** [4] - 5:15, 5:24, 22:3, 23:23
**reserve** [3] - 79:1,

79:20, 81:8
**reserved** [1] - 79:7
**resident** [1] - 45:8
**residue** [3] - 22:17, 22:20, 58:4
**respect** [14] - 8:17, 9:2, 9:24, 12:19, 17:23, 25:4, 31:10, 46:6, 47:17, 48:6, 57:24, 64:2, 66:15, 71:2
**respond** [12] - 8:12, 12:13, 23:9, 23:12, 23:15, 23:20, 23:22, 23:24, 24:9, 24:17, 37:6, 46:8
**responding** [1] - 24:1
**response** [9] - 12:23, 12:24, 13:7, 14:13, 23:25, 24:21, 46:1, 51:7, 52:14
**responses** [2] - 24:21, 36:17
**responsible** [2] - 53:23, 77:1
**rest** [1] - 35:7
**retrospective** [1] - 12:5
**reverse** [1] - 11:14
**reviewing** [1] - 75:16
**right-hand** [1] - 33:8
**rise** [1] - 84:23
**ROBERT** [1] - 1:6
**room** [2] - 38:11, 78:25
**rooms** [2] - 81:6, 82:1
**row** [8] - 79:2, 79:3, 79:10, 79:13, 79:14, 79:17, 79:20
**Rule** [15] - 5:12, 5:23, 6:4, 11:15, 17:2, 17:3, 18:11, 18:16, 22:3, 22:4, 25:6, 31:2, 34:1, 54:18
**rule** [8] - 3:2, 24:7, 24:16, 24:19, 65:2, 65:19, 66:2, 66:3
**ruled** [3] - 10:7, 12:17, 53:1
**Rules** [1] - 72:13
**rules** [2] - 23:23, 43:10
**ruling** [8] - 10:13, 26:10, 27:3, 31:1, 31:14, 50:2, 54:14, 78:21
**run** [1] - 3:6
**Russia** [3] - 45:17, 48:18, 48:21

**S**

**sale** [3] - 47:17, 49:6, 49:7
**sales** [1] - 43:14
**salesman** [1] - 34:18
**salesperson** [1] - 47:15
**sample** [1] - 22:19
**samples** [1] - 23:2
**sanitize** [2] - 49:11, 49:12
**sat** [1] - 34:20
**saw** [12] - 18:7, 34:7, 35:3, 36:10, 37:12, 37:15, 39:21, 45:25, 46:19, 47:15, 48:12, 55:10
**scenario** [3] - 17:7, 17:12, 18:2
**scene** [1] - 7:7
**scheduling** [1] - 59:11
**school** [2] - 76:16, 76:22
**scintilla** [1] - 29:25
**scope** [1] - 56:6
**screen** [2] - 66:19, 66:23, 67:21
**sealed** [1] - 9:6
**sealing** [1] - 78:16
**search** [2] - 14:13, 25:10
**searches** [1] - 14:14
**seated** [2] - 2:16, 69:7
**seats** [1] - 79:7
**second** [12] - 32:19, 32:25, 33:5, 33:14, 33:15, 34:6, 38:17, 39:23, 59:14, 59:18, 68:25, 69:3
**Section** [11] - 3:15, 4:4, 4:14, 34:21, 35:16, 35:20, 35:22, 35:23, 36:4, 47:3, 47:15
**section** [4] - 33:11, 35:16, 47:5, 47:17
**Security** [2] - 39:7, 41:10
**security** [3] - 70:3, 77:10, 79:11
**see** [16] - 18:21, 19:5, 22:8, 35:18, 46:21, 47:3, 48:8, 51:6, 56:17, 64:14, 71:11, 74:23, 74:25, 78:9, 80:3, 83:5
**seeing** [1] - 57:8
**seek** [7] - 5:13, 5:21, 6:19, 16:4, 16:17,

18:8, 21:4
**seeking** [4] - 25:25, 31:5, 31:9, 64:19
**seeks** [6] - 4:7, 5:4, 5:19, 20:6, 21:20, 33:13
**seem** [3] - 7:22, 38:25, 41:5
**sees** [1] - 38:8
**segments** [1] - 64:6
**selecting** [1] - 70:25
**selection** [6] - 59:17, 59:25, 60:7, 68:21, 69:7, 75:21
**selective** [5] - 10:7, 43:18, 43:20, 43:22, 43:23
**self** [4] - 5:6, 51:17, 52:7, 64:18
**self-serving** [1] - 5:6
**seller** [1] - 50:10
**seller's** [1] - 33:7
**send** [1] - 43:1
**sender** [1] - 33:12
**sense** [2] - 8:10, 23:24
**sent** [6] - 29:15, 30:14, 36:18, 40:4, 42:15, 49:8
**sentence** [2] - 4:5, 20:17
**sentences** [3] - 5:14, 5:22, 28:6
**September** [1] - 32:22
**serial** [1] - 33:7
**served** [1] - 44:19
**serving** [2] - 5:6, 64:18
**set** [3] - 74:24, 79:24, 80:21
**setup** [1] - 80:5
**seven** [1] - 59:22
**several** [2] - 25:10, 56:8
**shall** [2] - 19:17, 61:18
**sheet** [1] - 70:14
**shop** [16] - 32:21, 32:22, 34:7, 34:12, 34:17, 36:10, 37:13, 37:15, 39:1, 42:21, 43:16, 44:10, 45:2, 50:10, 56:25
**short** [1] - 13:6
**shortcut** [1] - 38:19
**show** [7] - 3:12, 14:24, 44:16, 45:20, 66:23, 80:6, 82:11
**showed** [3] - 34:18, 48:2, 48:3
**showing** [1] - 20:15
**shows** [4] - 29:18,

**side** [14] - 19:15, 45:20, 63:5, 70:12, 77:5, 77:6, 77:11, 77:14, 77:16, 77:17, 77:19, 79:21, 81:7
**side-bar** [5] - 77:6, 77:14, 77:16, 77:17, 77:19
**side-bars** [2] - 77:5, 77:11
**sign** [3] - 34:8, 39:8, 39:19
**signature** [2] - 35:18, 36:14
**signed** [5] - 18:7, 34:11, 35:18, 47:21, 67:19
**similar** [1] - 19:8
**sit** [4] - 39:12, 70:11, 70:12, 74:22
**site** [1] - 71:19
**sitting** [4] - 61:7, 67:15, 68:17, 81:14
**six** [13] - 23:7, 23:19, 24:15, 24:17, 59:21, 73:18, 73:19, 73:22, 73:24, 74:5, 74:6, 74:20, 75:5
**skip** [2] - 6:12, 13:17
**skipping** [1] - 6:23
**Smith** [1] - 80:23
**smoothly** [1] - 63:22
**snipped** [1] - 64:3
**sober** [2] - 11:14, 12:5
**sobriety** [1] - 11:19
**Social** [2] - 39:7, 41:10
**social** [2] - 71:15, 71:19
**sold** [3] - 33:22, 34:19, 47:2
**solely** [1] - 20:8
**someone** [13] - 9:12, 28:2, 32:12, 34:13, 41:12, 47:9, 47:11, 48:8, 48:10, 51:18, 52:7, 63:17, 71:17
**someplace** [2] - 81:2, 83:10
**sometime** [1] - 58:14
**sometimes** [7] - 61:4, 69:15, 77:7, 77:8, 78:4, 81:9, 83:23
**soon** [2] - 64:9, 81:24
**sorry** [9] - 13:1, 19:11, 43:22, 51:1, 59:23, 69:4, 74:9, 75:20, 79:4
**sort** [6] - 46:5, 47:13,

62:25, 71:7, 82:20, 82:25
**sought** [1] - 7:11
**source** [2] - 71:16, 71:19
**speaking** [1] - 71:20
**special** [4] - 49:1, 49:10, 49:19, 81:1
**SPECIAL** [1] - 1:20
**specific** [1] - 23:2
**specifically** [1] - 22:14, 33:15, 51:14
**specify** [1] - 14:17
**spend** [2] - 60:17, 64:5
**spending** [4] - 19:20, 20:1, 20:9, 20:12
**staff** [1] - 80:23
**stand** [10] - 7:9, 11:25, 12:3, 28:2, 39:13, 43:5, 43:12, 44:11, 48:11, 64:20
**standard** [5] - 72:6, 78:16, 78:22, 82:20, 83:3
**standing** [1] - 23:11
**StarQuest** [2] - 33:17, 35:21
**start** [9] - 22:15, 38:5, 60:12, 67:17, 68:21, 69:2, 69:13, 73:4
**started** [1] - 23:6
**starting** [2] - 68:24, 80:22
**starts** [1] - 72:10
**STATE** [1] - 1:4
**State** [4] - 6:16, 6:20, 9:5, 10:1
**state** [8] - 7:6, 8:4, 53:20, 58:15, 58:16, 64:21, 65:15, 68:11
**statement** [22] - 7:7, 7:10, 11:1, 14:8, 16:22, 17:15, 17:16, 17:18, 17:24, 18:12, 18:20, 22:5, 34:11, 35:6, 38:4, 38:18, 40:1, 40:6, 46:18, 48:4, 52:16, 64:25
**statements** [17] - 3:19, 5:15, 5:23, 6:21, 7:19, 8:15, 8:18, 12:16, 17:1, 17:5, 17:7, 17:11, 64:19, 65:6, 65:11, 65:16
**STATES** [1] - 1:1
**states** [2] - 6:18, 26:17
**States** [3] - 1:16, 4:12, 18:13
**status** [4] - 4:15, 44:2,

68:23, 70:7
**statute** [3] - 4:22, 12:12, 12:17
**stay** [2] - 72:21, 82:14
**stayed** [1] - 9:6
**stenographic** [1] - 85:1
**steps** [1] - 83:1
**stick** [2] - 35:8, 73:1
**still** [4] - 5:25, 25:2, 50:23, 56:10
**stipulate** [1] - 56:15
**stipulation** [1] - 30:17
**stood** [1] - 34:20
**stop** [1] - 72:12
**store** [9] - 29:10, 34:19, 34:21, 35:4, 36:6, 40:2, 40:7, 41:2, 44:23
**stored** [1] - 25:22
**stories** [1] - 56:21
**story** [1] - 7:22
**straightforward** [1] - 3:5
**strange** [1] - 83:23
**STRAWN** [1] - 2:6
**Street** [1] - 1:12
**stricken** [2] - 73:2, 73:6
**strike** [1] - 72:20, 75:11
**strikes** [5] - 70:23, 74:21, 74:23, 75:2, 75:11
**stroke** [1] - 30:16
**struggling** [1] - 19:22
**stuff** [14] - 14:21, 28:25, 29:11, 31:23, 35:14, 38:2, 41:10, 48:22, 50:1, 58:7, 62:18, 77:10, 79:3, 79:15
**subject** [10] - 5:22, 12:1, 17:15, 28:21, 43:12, 43:16, 44:7, 65:6, 70:23, 72:13
**submission** [1] - 84:11
**submit** [4] - 63:3, 84:5, 84:6, 84:14
**submitted** [1] - 54:24
**subpoena** [3] - 44:13, 44:16, 44:18
**subpoenaed** [2] - 37:8, 44:10
**subpoenas** [5] - 44:22, 45:24, 50:11, 50:18, 50:19
**subquestion** [1] - 71:8
**subquestions** [1] -

71:7
**subsequent** [3] - 36:11, 43:7, 69:13
**subset** [1] - 17:25
**subsets** [1] - 72:4
**substance** [7] - 3:17, 3:22, 4:6, 5:9, 35:1, 51:17, 51:18
**substances** [1] - 3:12
**substantially** [1] - 33:24
**suffice** [1] - 24:10
**sufficient** [1] - 10:13
**suggest** [6] - 9:19, 21:12, 27:11, 28:17, 28:20, 52:7
**suggested** [1] - 48:23
**suggesting** [8] - 3:11, 27:16, 28:1, 39:5, 42:19, 43:23, 45:12, 65:10
**suggestion** [1] - 33:22
**suggests** [1] - 39:18
**suits** [1] - 52:22
**summarize** [1] - 27:17
**summarized** [1] - 25:7
**summarizes** [1] - 28:25
**summary** [10] - 14:11, 25:6, 25:8, 25:12, 28:14, 28:25, 29:11, 31:1, 31:4, 45:11
**sums** [3] - 20:1, 20:2, 20:22
**supplement** [2] - 23:13, 24:18
**supplemental** [2] - 24:10, 24:22
**support** [4] - 16:8, 16:16, 55:12, 61:23
**suppose** [3] - 21:13, 21:23, 22:24
**supposed** [9] - 18:16, 18:17, 22:22, 40:13, 40:14, 47:18, 57:2, 69:1
**surprised** [1] - 72:15
**surveyed** [1] - 34:19
**system** [1] - 80:5

## T

**table** [1] - 79:25
**tables** [1] - 75:7
**talks** [1] - 18:12
**tampered** [2] - 8:7, 40:15
**tax** [10] - 13:21, 13:23, 14:13, 14:14, 14:19, 15:1, 15:5, 15:16,

15:18, 16:2
**tax-related** [1] - 14:14
**taxes** [1] - 14:2
**team** [3] - 61:23, 79:1, 79:7
**ten** [4] - 73:18, 73:19, 73:22, 73:23
**ten/six** [1] - 75:13
**tend** [1] - 69:25
**tends** [1] - 63:21
**terms** [5] - 20:20, 31:20, 64:24, 65:20, 82:9
**test** [1] - 38:23
**testified** [1] - 10:24
**testifies** [6] - 11:17, 14:2, 16:1, 16:15, 17:20, 48:6
**testify** [14] - 18:17, 19:2, 19:6, 22:13, 29:14, 35:4, 35:13, 35:15, 35:17, 35:19, 36:3, 36:22, 41:17, 68:5
**testifying** [4] - 37:4, 50:12, 57:11, 57:22
**testimony** [9] - 7:21, 11:19, 16:12, 21:20, 22:12, 23:14, 26:7, 55:15, 59:20
**testing** [1] - 8:3
**text** [2] - 27:1, 65:16
**texted** [1] - 27:22
**THE** [175] - 1:1, 1:2, 1:15, 1:20, 2:15, 2:20, 2:22, 7:4, 7:24, 8:12, 8:18, 9:7, 9:10, 9:19, 9:23, 11:11, 12:8, 13:1, 13:5, 14:23, 15:9, 15:14, 17:13, 18:3, 18:10, 18:14, 18:25, 19:13, 20:18, 21:9, 21:18, 22:22, 23:21, 24:7, 24:20, 25:15, 25:20, 26:12, 26:14, 26:22, 27:11, 27:24, 28:16, 29:3, 30:6, 30:11, 30:18, 30:24, 31:18, 31:23, 32:2, 32:11, 32:15, 32:25, 33:5, 35:7, 35:22, 35:24, 36:5, 36:8, 37:6, 37:11, 37:15, 38:12, 38:16, 39:5, 39:17, 40:8, 41:8, 41:23, 42:17, 43:20, 44:9, 44:15, 44:20, 45:15, 45:23, 46:5, 47:7, 47:22, 48:15, 48:19,

49:25, 50:16, 50:22, 51:3, 51:11, 51:22, 51:25, 53:1, 53:10, 54:4, 55:2, 55:5, 55:10, 55:20, 55:23, 56:2, 56:5, 56:17, 56:21, 57:4, 57:17, 57:21, 57:24, 58:3, 58:7, 58:17, 58:20, 59:6, 59:15, 59:19, 59:23, 60:15, 60:22, 61:5, 61:8, 61:11, 61:21, 61:24, 62:2, 62:13, 62:17, 63:10, 63:16, 63:20, 64:12, 65:5, 65:18, 65:25, 66:5, 66:20, 67:6, 67:12, 68:1, 68:16, 69:12, 69:24, 72:2, 73:11, 73:19, 73:21, 74:1, 74:5, 74:11, 74:15, 74:17, 74:20, 75:4, 75:15, 75:24, 76:4, 76:14, 76:17, 76:21, 76:25, 77:25, 78:4, 78:14, 78:20, 79:8, 79:12, 79:15, 79:20, 80:1, 80:14, 80:16, 80:20, 81:5, 81:17, 81:23, 83:6, 84:5, 84:17, 84:22
**themselves** [1] - 45:11
**theoretically** [1] - 55:17
**theories** [1] - 51:20
**theory** [2] - 46:15, 51:16
**thereafter** [5] - 8:20, 8:25, 41:16, 45:2, 45:10
**therefore** [3] - 5:2, 33:19, 42:7
**thereof** [1] - 8:16
**thinking** [4] - 48:20, 50:7, 56:24, 63:16, 73:11, 73:12
**thinks** [1] - 59:9
**Third** [8] - 4:12, 4:13, 4:15, 52:18, 72:12, 78:16, 78:22
**third** [2] - 35:19, 60:8
**thirty** [10] - 23:19, 70:22, 72:22, 73:3, 73:5, 74:2, 74:5, 74:6, 74:20, 75:5
**thirty-six** [5] - 23:19, 74:5, 74:6, 74:20, 75:5
**thirty-two** [5] - 70:22, 72:22, 73:3, 73:5,

74:2
**thoughts** [4] - 14:23, 71:3, 71:23, 77:11
**threat** [1] - 83:25
**three** [15] - 3:20, 7:17, 21:21, 27:9, 45:2, 50:13, 58:19, 58:23, 59:21, 60:7, 60:10, 60:13, 61:1, 77:23, 78:11
**thrilled** [1] - 83:11
**throughout** [1] - 56:24
**thrown** [1] - 40:5
**Thursday** [2] - 75:24, 75:25
**tied** [1] - 30:18
**timing** [1] - 30:9
**today** [6] - 56:12, 61:17, 61:20, 62:5, 62:11, 84:8
**together** [1] - 61:23
**took** [3] - 7:10, 10:4, 42:11
**top** [2] - 33:8, 41:14
**topics** [1] - 16:11
**towards** [1] - 3:7
**town** [1] - 76:5
**tracing** [2] - 8:9, 8:14
**track** [1] - 70:15
**traditional** [1] - 8:10
**transactional** [1] - 33:7
**transcript** [1] - 85:1
**Transportation** [1] - 82:18
**transportation** [1] - 82:22
**transported** [1] - 82:13
**traveled** [1] - 3:18
**trial** [24] - 2:25, 8:24, 17:25, 28:1, 30:2, 30:25, 31:12, 46:1, 48:24, 50:19, 51:7, 56:6, 56:7, 56:24, 58:23, 59:22, 60:8, 61:13, 64:8, 68:20, 68:21, 69:13, 80:5, 80:21
**trials** [6] - 23:14, 56:19, 61:11, 61:12, 81:9, 81:10
**tried** [1] - 10:25
**true** [6] - 17:18, 25:19, 27:5, 29:24, 29:25, 85:1
**trust** [2] - 83:13, 83:14
**truth** [1] - 64:20
**try** [8] - 23:17, 45:16, 46:25, 49:11, 52:3,

68:4, 68:8, 68:11
**trying** [19] - 11:8, 27:24, 32:19, 37:11, 41:9, 42:1, 42:3, 42:8, 45:5, 48:19, 48:22, 54:25, 55:11, 57:14, 58:20, 66:21, 79:23
**Tuesday** [6] - 24:3, 24:5, 69:4, 69:5, 73:2, 73:5
**turn** [1] - 45:19
**Turnbull** [1] - 52:9
**turned** [2] - 30:1, 32:9, 45:6
**Turner** [3] - 35:20, 36:3, 37:24, 45:1
**turning** [1] - 2:25
**turns** [3] - 49:23, 70:3, 72:24
**TV** [2] - 80:7
**TVs** [1] - 80:6
**twelve** [3] - 56:13, 60:12, 75:7
**twenty** [4] - 23:7, 24:15, 24:17, 72:25
**twenty-five** [1] - 72:25
**twenty-six** [3] - 23:7, 24:15, 24:17
**twice** [1] - 61:1
**two** [43] - 20:25, 23:7, 25:2, 29:7, 31:13, 32:5, 32:19, 33:6, 33:8, 33:10, 36:17, 39:3, 44:4, 44:10, 48:9, 49:20, 50:11, 50:17, 51:4, 57:13, 58:19, 59:11, 59:18, 59:21, 60:7, 60:18, 70:22, 72:22, 73:3, 73:5, 73:11, 73:20, 73:25, 74:1, 74:2, 75:11, 75:13, 76:22, 77:18, 78:11, 82:8
**Two** [8] - 35:5, 38:18, 39:24, 39:25, 40:8, 40:9, 47:9
**type** [3] - 21:12, 45:9, 64:7
**types** [3] - 14:7, 48:7, 65:5
**typically** [4] - 62:20, 68:5, 69:25, 75:4

## U

**U.S** [1] - 85:4
**un-redacted** [1] - 6:2
**under** [12] - 3:15, 4:14, 5:12, 11:15, 12:13,

18:2, 31:2, 34:1, 50:2, 50:17, 51:20
**undercut** [1] - 47:13
**underlying** [4] - 4:21, 25:7, 25:25, 71:14
**underscores** [1] - 46:3
**understood** [4] - 27:3, 29:3, 29:4, 65:14
**underway** [1] - 50:24
**unfair** [2] - 6:6, 59:9
**UNITED** [1] - 1:1, 1:4
**United** [3] - 1:16, 4:12, 18:13
**unlawful** [7] - 3:16, 3:21, 4:1, 4:6, 20:16, 35:1, 48:4
**unless** [7] - 16:11, 17:20, 21:7, 29:5, 41:16, 64:19, 69:7
**unnecessarily** [1] - 66:13
**unopposed** [3] - 12:14, 16:14, 16:25
**unrelated** [1] - 48:10
**untimely** [3] - 21:22, 21:23, 22:1
**untouched** [1] - 81:25
**up** [49] - 7:23, 11:19, 16:3, 17:10, 17:20, 18:2, 18:6, 21:7, 23:11, 23:18, 27:7, 29:5, 29:9, 30:25, 37:23, 44:16, 47:4, 47:5, 48:2, 48:3, 48:22, 50:12, 53:25, 56:15, 62:1, 62:19, 63:1, 63:6, 63:11, 63:13, 65:22, 66:11, 66:15, 67:16, 68:23, 69:16, 71:10, 72:4, 72:8, 74:24, 76:10, 77:12, 77:14, 77:17, 80:6, 80:7, 80:11, 80:21, 82:11
**USB** [1] - 61:22
**user** [8] - 3:16, 3:22, 3:23, 4:6, 20:16, 35:1, 48:4, 51:8
**uses** [1] - 51:16

## V

**vacation** [1] - 60:19
**valid** [1] - 38:9
**value** [1] - 33:24
**vast** [2] - 29:20, 48:17
**vehicle** [2] - 36:20, 48:2
**Vehicle** [1] - 33:10
**version** [13] - 32:4,

32:15, 32:19, 33:5,
33:7, 33:14, 33:15,
34:6, 38:17, 42:12,
42:14, 42:15
**versions** [2] - 32:5,
61:13
**view** [2] - 6:3, 39:9
**violated** [3] - 43:10,
43:15, 43:16
**violent** [1] - 51:19
**voir** [10] - 58:24, 59:4,
69:20, 70:6, 70:14,
71:2, 71:3, 71:22,
75:17, 77:2
**voluminous** [3] -
25:12, 27:17, 31:2

## W

**wait** [3] - 38:12, 65:14,
74:25
**waiting** [1] - 83:5
**waive** [1] - 55:2
**waived** [1] - 55:7
**walk** [3] - 75:6, 77:9,
81:6
**walking** [2] - 66:15,
67:13
**walks** [1] - 38:9
**wander** [1] - 78:6
**wandering** [1] - 78:5
**wants** [4] - 9:16, 30:7,
32:7, 79:1
**warrants** [4] - 14:14,
14:16, 15:21, 25:10
**Washington** [3] -
27:13, 28:3, 29:12
**waste** [2] - 24:24,
26:15
**watched** [3] - 34:24,
35:10, 47:2
**wave** [3] - 68:25,
70:11
**waves** [1] - 68:24
**ways** [2] - 34:15, 84:2
**wear** [1] - 70:13
**Wednesday** [6] -
59:25, 60:12, 69:4,
69:5, 73:5, 82:15
**week** [13] - 44:1,
59:18, 60:8, 60:19,
60:24, 61:7, 61:8,
64:11, 75:18, 76:12,
76:15
**weeks** [4] - 3:25,
59:18, 60:8, 60:18
**weight** [2] - 34:23,
41:11
**welcome** [1] - 72:5
**whatsoever** [1] - 48:5

**whole** [2] - 46:16, 50:3
**wider** [1] - 79:18
**widow** [1] - 7:13
**willing** [1] - 13:25
**Wilmington** [2] - 1:13,
29:18
**wind** [1] - 62:19
**WINSTON** [1] - 2:6
**wise** [1] - 77:13
**WISE** [1] - 1:21
**withdraw** [3] - 21:12,
29:19, 50:11
**withdrawing** [2] -
20:2, 20:3
**withdrawn** [4] - 20:22,
21:2, 21:5, 50:17
**withhold** [1] - 50:2
**witness** [37] - 5:25,
7:12, 10:22, 10:24,
10:25, 11:9, 22:6,
26:6, 29:14, 30:14,
34:16, 36:10, 40:22,
40:23, 44:7, 45:21,
47:2, 48:11, 56:8,
56:12, 58:10, 61:3,
63:15, 66:7, 66:8,
66:20, 66:24, 67:1,
67:4, 67:9, 67:10,
67:14, 68:3, 68:5,
68:7, 68:8, 69:16
**witnesses** [19] - 19:6,
21:21, 34:12, 41:6,
45:4, 50:4, 50:9,
50:11, 52:24, 55:16,
56:7, 56:8, 56:13,
56:16, 57:6, 57:11,
58:19, 60:12, 66:9
**word** [1] - 32:18
**words** [3] - 33:10,
55:5, 67:2
**works** [6] - 53:9, 62:3,
77:10, 79:19, 79:25,
82:5
**world** [1] - 83:24
**worst** [1] - 59:24
**write** [3] - 35:11,
37:16, 37:18
**writing** [1] - 34:22
**written** [2] - 11:1, 12:4
**wrote** [4] - 35:11,
35:14, 39:16, 65:10

## Y

**year** [1] - 26:19
**years** [12] - 7:17, 8:5,
8:21, 10:5, 27:9,
32:9, 36:21, 36:25,
41:4, 47:17, 48:10,
76:22

**yes/no** [1] - 71:6
**yesterday** [2] - 23:13,
46:2

## Z

**zeros** [1] - 35:25
**Zip** [1] - 76:5