Mark J. Geragos (SBN 108325)
Tina Glandian (SBN 251614)
Setara Qassim (SBN 283552)
GERAGOS & GERAGOS APC
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone:   (213) 625-3900
Facsimile:    (213) 232-3255

Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036-3508
Telephone:   (202) 282-5000
Facsimile:    (202) 282-5100

*Attorneys for Robert Hunter Biden*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES<br><br>               Plaintiff,<br><br>    vs.<br><br>ROBERT HUNTER BIDEN,<br><br>           Defendant. | **Case No. 2:23-cr-00599-MCS**<br><br>*Hon. Mark C. Scarsi*<br><br>**MR. BIDEN'S OPPOSITION TO THE SPECIAL COUNSEL'S FIRST MOTION *IN LIMINE* TO PRECLUDE PROPOSED DEFENSE EXPERT JOSHUA LEE**<br><br>Hearing Date:  August 21, 2024<br>Hearing Time:  10:00 a.m.<br>Courtroom:      7C |

1    Defendant Robert Hunter Biden, by and through his counsel of record, hereby

2    opposes the Special Counsel's First Motion *in Limine* to preclude the proposed

3    defense expert Joshua Lee, as supplemented.  (D.E. 144 & 173.)  On July 30, 2024,

4    the Special Counsel asked for Mr. Biden's position on this proposed Motion *in Limine*.

5    On July 31, 2024, Mr. Biden's counsel indicated Dr. Lee would be substituted for

6    another expert[1] and that the defense believed the Motion was premature given their

7    intent to provide a supplemental disclosure, which they did later that day for Dr. Lee.

8

9    Dated: August 12, 2024                    Respectfully submitted,

10                                              */s/ Mark Geragos*
                                                Mark J. Geragos
11                                              Tina Glandian
                                                Setara Qassim
12

13

14                                              Angela M. Machala
                                                Abbe David Lowell
15                                              Christopher D. Man

16                                              *Attorneys for Robert Hunter Biden*

17

18

19

20

21

22

23

24

25
_____

26    [1] For a short period of time on July 31, 2024, the defense thought it would have to
replace Dr. Lee as the addiction expert due to various issues; however, the issues were
27    ironed out and the defense provided Dr. Lee's supplemental disclosure to the Special
Counsel later that day.
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Special Counsel's Motion *in Limine* seeks to preclude Mr. Biden from calling his proposed addiction, substance abuse, and trauma expert, Dr. Joshua Lee, MD, MSc, to testify on his behalf as he defends against various tax charges, each of which requires the Special Counsel to prove the offenses were committed willfully. Dr. Lee's testimony at trial is critical to providing jurors with a framework from which they can determine whether Mr. Biden had the requisite specific intent for the crimes charged and/or whether he had a diminished capacity during the relevant time-period. There is no basis for the severe remedy of excluding Dr. Lee's anticipated testimony, as his supplemented disclosure fully complies with Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702. Any deficiency in his initial disclosure did not prejudice the Special Counsel, who received the supplemental disclosure more than a month before the trial is scheduled to commence. It would be error to deprive Mr. Biden of his fundamental right to present evidence in his own defense where the defense expert's testimony is relevant, reliable, and was adequately disclosed to the Special Counsel well in advance of trial.

**ARGUMENT**

**I.    Dr. Lee's Supplemental Disclosure Is Not Untimely.**

The defense disputes the misleading and piecemeal timeline presented to this Court by Special Counsel. The Special Counsel states that "the government noticed its expert *and* provided the requisite disclosures on May 20, 2024, something the defendant has never done." (D.E. 144 at 2.) However, the defense noticed Dr. Lee as an expert and provided the Special Counsel with Dr. Lee's original disclosure on May 20, 2024. For over two months, the Special Counsel failed to raise any issue regarding the sufficiency of Dr. Lee's disclosure, nor requested any additional information from the defense. Rather, the Special Counsel waited until July 30, 2024

to ask defense counsel whether Mr. Biden still intended to call Dr. Lee at trial and whether the defense would oppose a motion to exclude his testimony. (D.E. 144 at 1.) The first time the Special Counsel raised any complaints about Dr. Lee's disclosure was in their motion *in limine* filed on July 31, 2024. On July 31, 2024, pursuant to Rule 16(b)(1)(C)(iv), the defense promptly provided the Special Counsel its supplemental expert disclosure for Dr. Lee (and a signed copy followed on August 2, 2024). The supplemental disclosure corrects any alleged deficiencies in the original disclosure.

While challenging the timeliness of Mr. Biden's supplemental disclosure for Dr. Lee on July 31, the Special Counsel fails to disclose that it provided an updated tax computation report (amended Welch Exhibit 1) for its own tax expert on July 24, only one week before the defense supplemented its disclosure for its already-noticed expert. Specifically, the Special Counsel's amended exhibit provides a substantially different tax computation by Revenue Agent Mike Welch than the one provided by the Special Counsel on May 20, 2024. Based on the foregoing, Dr. Lee's disclosure is not untimely. *See, e.g., United States v. Mohammed*, 2008 WL 5552330, at *3 (D.D.C. May 6, 2008) (disclosure of expert testimony fourteen days before trial did not violate Rule 16); *United States v. Russo*, 483 F. Supp. 2d 301, 310 (S.D.N.Y. 2007) (proposal to provide expert disclosures two weeks before trial sufficient to comply with Rule 16).

## II.    Dr. Lee's Supplemental Expert Disclosure Complies with Federal Rule of Criminal Procedure 16.

Dr. Lee's disclosure complies with Federal Rule of Criminal Procedure 16, as it includes the opinions the defense will elicit from Dr. Lee, the bases and reasons for them, Dr. Lee's qualifications (including his CV), and his extensive publication history including 96 peer-reviewed publications, abstracts, book chapters, education and training, experience, mentoring and advising positions, invited talks and teaching

of peers, teaching activities and curriculum development and specialty certifications. Additionally, attached as Exhibit A is a list of Dr. Lee's testimony in all other cases in which he has testified as an expert at trial or by deposition during the last four years.

In terms of the documents and data reviewed by Dr. Lee, the defense confirmed in its supplemental disclosure that Dr. Lee's testimony is based on his review of documents produced in discovery, his career of academic and clinical research in the field of addiction medicine, and treatment of patients for addiction and other drug, opioid, and alcohol abuse. This includes information discovered through standard academic research methods, such as: (a) study of the relevant peer-reviewed academic literature; (b) clinical research trials; (c) secondary data research; and (d) medical education.

The foregoing is sufficient to meet Rule 16's "bases and reasons" requirement. Courts regularly approve notices of comparable or even lesser specificity. *See, e.g.*, *United States v. Brown*, 2023 WL 5002872, at *l-2 (W.D. Ky. Aug. 4, 2023) (notice was sufficient where it stated that defense expert's opinions were "based on his 'training, experience, and [personal] review of the [evidence],'" supplemented by his *curriculum vitae*); *United States v. Belloisi*, 2023 WL 2716551, at *1 (E.D.N.Y. Mar. 30, 2023), (motion to exclude was denied where notice stated that expert's opinions were "based on [his] experience and training, which are detailed in his curriculum vitae ..., as well as call detail records previously produced").

"[T]he rejection of expert testimony is the exception rather than the rule." *Media Glow Digital, LLC v. Panasonic Corp. of N. Am.*, 2019 WL 1055527, at *1 (S.D.N.Y. Mar. 6, 2019); *see* Fed. R. Crim. P. 16(d)(2) (permitting the court to issue, in response to a Rule 16 violation, an "order that is just under the circumstances"). Therefore, courts regularly allow parties to supplement their Rule 16 disclosures when they are insufficient. *See United States v. Kaufman*, 2021 WL 4084523, at *18 (S.D.N.Y. Sept. 8, 2021); *United States v. Valle*, 2013 WL 440687, at *6 (S.D.N.Y.

1   Feb. 2, 2013); *United States v. Kwok*, 2024 WL 1773143, at *3 (S.D.N.Y. Apr. 24,
2   2024). Here, the defense has already provided the Special Counsel with a complete
3   supplemental disclosure clarifying Dr. Lee's opinions and the bases for them more
4   than a month before trial.

5       There is no evidence, or even allegation by the Special Counsel, that any
6   perceived deficiency in the disclosures here is tactical. And the Special Counsel has
7   failed to show that they have been prejudiced or are unable to adequately prepare for
8   trial based on any alleged deficiencies in the disclosure. *See, e.g.*, *United States v.*
9   *Leones*, 2021 WL 4806908, at *3 (M.D. Fla. Oct. 14, 2021) (denying motion *in limine*
10  to exclude untimely discovery where "there [wa]s no evidence that any of the
11  supplemental disclosures, to the extent they were untimely, caused prejudice").

12  **III.    Dr. Lee's Disclosure Complies with Federal Rule of Evidence 702.**

13      The introduction of the proffered expert opinion testimony of Dr. Lee is
14  governed by Federal Rule of Evidence 702. The Ninth Circuit has summarized the
15  requirements of Rule 702 as follows: "expert testimony must (1) address an issue
16  beyond the common knowledge of the average layman, (2) be presented by a witness
17  having sufficient expertise, and (3) assert a reasonable opinion given the state of the
18  pertinent art or scientific knowledge." *United States v. Vallejo*, 237 F.3d 1008, 1019
19  (9th Cir. 2001) (citing *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997)).
20  District courts have broad discretion in applying this test. *Kumho Tire Co. v.*
21  *Carmichael*, 526 U.S. 137, 142 (1999).

22      Expert opinion testimony is relevant if the knowledge underlying the testimony
23  has a "valid . . . connection to the pertinent inquiry." *United States v. Sandoval-*
24  *Mendoza,* 472 F.3d 645, 654 (9th Cir. 2006) (quoting *Kumho Tire*, 526 U.S. at 149).
25  It is reliable if the knowledge underlying the testimony "has a reliable basis in the
26  knowledge and experience of the relevant discipline." *Id.*

27

28

1      Here, Dr. Lee's opinions are directly relevant to Mr. Biden's state of mind.  Dr.

2   Lee's testimony about addiction, substance abuse, and trauma will give the jury a

3   framework to consider the important facts and make their own determination as to

4   whether Mr. Biden had the requisite specific intent for the crimes charged and/or

5   whether he had a diminished capacity during the relevant time-period.

6      In *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002), the Ninth

7   Circuit reversed the defendant's convictions for making a false claim against the

8   United States, attempting to interfere with the administration of the IRS, and bank

9   fraud where the district court abused its discretion in excluding the defense expert's

10  testimony based on its purported unreliability and deficient methodology.  The Ninth

11  Circuit rejected the government's claims that the expert's diagnosis was reached

12  through unsound methodology or reasoning, noting: "It appears from the record that

13  Dr. Wicks' diagnosis incorporates testing, case history, interviews with the patient and

14  family, medical factors and expert experience applying the information contained in

15  the DSM–IV and other mental health publications. Dr. Wicks' experience with

16  evaluating 'thousands' of people should not be undervalued." *Id.* at 1012.  The Ninth

17  Circuit also concluded that the evidence was relevant and would assist the trier of fact,

18  noting: "We must be cautious not to overstate the scope of the average juror's

19  common understanding and knowledge. As the Seventh Circuit has recognized, it is

20  'precisely because juries are unlikely to know that social scientists and psychologists

21  have identified [such a personality disorder] ... that the testimony would have assisted

22  the jury in making its decision.'" *Id.* at 1013 (quoting *United States v. Hall*, 93 F.3d

23  1337, 1345 (7th Cir.1996)).  *See also United States v. Vallejo,* 237 F.3d 1008, 1020

24  (9th Cir. 2001) ("[T]he expert testimony was needed to explain why the defendant

25  would make 'false statements even though they were inconsistent with his apparent

26  self-interest' when '[c]ommon understanding conforms to the notion that a person

27  ordinarily does not make untruthful inculpatory statements.'" (quoting *United States v.*

28

*Shay*, 57 F.3d 126, 133 (1st Cir.1995)) (concluding that the defendant should have been allowed to present expert testimony that he suffered from a mental disorder which caused him to tell grandiose, self-incriminating lies).

In *United States v. Shay*, the First Circuit reformulated the proper Rule 702 inquiry to be "[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved." 57 F.3d at 132 (citations omitted). In *Finley*, the Ninth Circuit concluded that "the average layperson was not qualified to assess Finley's mental condition without the assistance of an expert's specialized understanding." 301 F.3d at 1013-14.

Similarly, here, the average layperson is not qualified to assess the cognitive abilities and behavioral patterns of people with substance abuse and addiction problems, or those who have suffered from severe trauma. Dr. Lee is well qualified to testify regarding these matters which will assist the trier of fact in determining whether Mr. Biden had the requisite mental state to commit the crimes charged. The Special Counsel has not raised concerns about Dr. Lee's qualifications and there are no complex scientific or novel methodologies to consider here. Like in *Finley*, excluding Dr. Lee's testimony would constitute an abuse of discretion where the proposed testimony is relevant and reliable and complies with Federal Rule of Evidence 702.

## IV. Dr. Lee's Testimony Would Not Violate Federal Rule of Evidence 704.

Contrary to what the Special Counsel argues, Dr. Lee's anticipated testimony would not violate Federal Rule of Evidence 704. Rule 704(b) provides that "in a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). However, "[e]xpert testimony is admissible if it merely support[s] an

inference or conclusion that the defendant did or did not have the requisite mens rea, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.  It is only as to the last step in the inferential process—a conclusion as to the defendant's mental state—that Rule 704(b) commands the expert to be silent." *United States v. Watson*, 260 F.3d 301, 308–09 (3d Cir. 2001) (citations and quotations omitted).

Here, Dr. Lee's testimony would not include any opinions directly about Mr. Biden's mental state or condition as constituting an element of the crimes charged.  Dr. Lee will not be asked those questions.  Instead, Dr. Lee will provide general testimony regarding the behavior and patterns of individuals in the category the government alleges Mr. Biden to be (*i.e.*, certain alcohol and substance abusers) and information about other relevant facts such as rehabilitation, substance abuse disorder, the cycles of sobriety, recovery, and rehabilitation.  Dr. Lee's opinions will be helpful to the jury in deciding whether Mr. Biden had the requisite mental state to commit the crimes charged and/or a diminished capacity during the relevant time-period.  *See United States v. Price*, 458 F.3d 202, 212 (3d Cir. 2006) (explaining an expert's testimony does not violate Rule 704(b) where the testimony was no more and no less than a description, "in general and factual terms, [of] the common practices of drug dealers"); *United States v. Davis*, 397 F.3d 173, 179 (3d Cir. 2005) (finding no violation of Rule 704(b) where expert responded to hypothetical, not specific, questions about intent and expert had no direct relationship with the investigation or the defendants such that no juror could conclude expert had any special insight into the intent of the defendants).

While Dr. Lee's testimony may support an inference regarding *mens rea*—exactly why experts are hired in a criminal case—he will not provide a conclusion regarding Mr. Biden's mental state.  Dr. Lee's experience and training will allow him

to adequately discuss Mr. Biden's communications, all included in the government's proposed exhibits, and whether these types of communications align with a person who experienced long periods of sobriety, are high-functioning successful professionals, and whether rehabilitation treatment programs would consider the person a "substance abuser" or "addict." For these same reasons, Dr. Lee's testimony also satisfies Rule 403's balancing requirement because the probative value of his testimony would not be substantially outweighed by any danger of unfair prejudice. The Special Counsel is free and able to test Dr. Lee on whether the things the government claims Mr. Biden did, said, or did not do or say undercuts any of his opinions.

The Special Counsel argues that this Court should simply follow the ruling by the Delaware district court excluding the testimony of one of Mr. Biden's proposed addiction experts; however, there are significant distinctions between this case and the Delaware case.  First, this is not the same expert as was ultimately proffered in Delaware and therefore the qualifications, experience, and education of the experts are different. Second, Mr. Biden is facing completely different charges in a different jurisdiction, requiring the Special Counsel to prove different elements beyond a reasonable doubt in this case as what had to be proven in the Delaware case.  Third, the defense of "diminished capacity" is available in this jurisdiction (while it was not in Delaware) and Mr. Biden has already requested jury instructions on this defense. Therefore, the relevance of the addiction expert's testimony in both cases is not comparable.

Moreover, and most critically, the United States Supreme Court's recent decision in *Diaz v. United States,* 144 S. Ct. 1727 (2024)—issued after Mr. Biden's Delaware trial concluded—rejected the view taken by the Delaware district court in applying Rule 704(b) in Mr. Biden's case to justify excluding the proffered testimony

1   of his addiction expert.[2] *Diaz* involved the prosecution of a defendant for importing a
2   large amount of methamphetamine in her car from Mexico. *Id.* at 1731. The charges
3   required the government to prove the defendant "knowingly" transported drugs. *Id.*
4   The defendant claimed she was an "blind mule" who was driving her boyfriend's car
5   and did not know drugs were in the vehicle. *Id.*

6         The government called an expert witness, Agent Flood, who testified, over
7   Diaz's objection, that drug cartels typically do not entrust valuable cargo to unwitting
8   mules, so most drug mules know they are smuggling drugs, but he did not testify as to
9   the defendant's mental state in particular. *Id.* at 1731-32. The Supreme Court upheld
10  the testimony "[b]ecause Agent Flood did not give an opinion 'about whether' Diaz
11  herself 'did or did not have a mental state or condition that constitutes an element of
12  the crime charged or of a defense,' his testimony did not violate Rule 704(b)." *Id.* at
13  1734. The Court highlighted that an expert can give an "opinion about *most* couriers"
14  but not "one about *all* couriers." *Id.* The agent could testify that the defendant "was
15  part of a group of persons that *may or may not* have a particular mental state." *Id.* In
16  other words, "[t]he Rule as a whole makes clear that an opinion is 'about' the ultimate
17  issue of the defendant's mental state only if it includes a conclusion on that precise
18  topic, not merely if it concerns or refers to that topic." *Id.* at 1735. Justice Jackson
19  concurred to note that "Rule 704(b) is party agnostic" and benefits defendants,
20  including the defendant in *Diaz* who offered similar expert testimony of her own. *Id.*
21  at 1736 (Jackson, J., concurring).

22        Consistent with Rule 704(b) and the ruling in *Diaz*, Dr. Lee does not intend to
23  testify as to Mr. Biden's mental state in particular and whether he did or did not have a
24  mental state or condition that constitutes an element of the crime charged or of a
25  defense. Rather, Dr. Lee intends to give his opinions and patterns about *most* people

26
27  [2] Despite a lawyer's duty to disclose controlling adverse authority to the tribunal, Cal.
    R. Prof. Conduct 3.3(a)(2), the Special Counsel fails to cite *Diaz* in its Motion and
28  argues a contrary position.

with addiction and substance abuse problems, not *all* of them.    His proposed testimony will therefore not violate Federal Rule of Evidence 704.

## V.    The Harsh Remedy of Excluding Dr. Lee's Testimony Is Not Warranted.

Mr. Biden has a fundamental right to mount his own defense.    The Supreme Court has recognized that the right to present evidence in one's own defense is a fundamental constitutional right.    *Rock v. Arkansas*, 483 U.S. 44, 52 (1987).    The Supreme Court considered the intersection of this right and discovery sanctions in *Taylor v. Illinois*, and recognized that "few rights are more fundamental than that of an accused to present witnesses in his own defense."    484 U.S. 400, 408 (1988).    Thus, it held that exclusion is an appropriate remedy only where a discovery rule violation is "both willful and blatant."    *Id.* at 416.    *See, e.g.*, *United States v. Peters*, 937 F.2d 1422, 1426 (9th Cir.1991) (holding district court erred in excluding testimony of forensic pathologist because no willful or blatant discovery violation occurred).

Here, there is no evidence (nor has the Special Counsel argued) that any purported deficiency in the disclosures was motived by bad faith or a desire to gain a tactical advantage by the defense.    Therefore, exclusion is not an appropriate remedy. *See, e.g.*, *Finley,* 301 F.3d at 1017 (exclusion of defense expert's testimony was error where "the information [the defendant] provided to the government supplied the government with sufficient notice of the general nature of [the expert's] testimony and "met the minimum requirements of Rule 16(b)(1)(C)").    Moreover, the Special Counsel has failed to demonstrate any harm resulting from what it calls the "late" notice or any of the alleged deficiencies in the disclosures.

## CONCLUSION

Mr. Biden respectfully requests that this Court deny the Special Counsel's Motion *in Limine* to preclude Dr. Lee's testimony.

Dated: August 12, 2024                    Respectfully submitted,


                                          */s/ Mark Geragos*
                                          Mark J. Geragos
                                          Tina Glandian
                                          Setara Qassim

                                          Angela M. Machala
                                          Abbe David Lowell
                                          Christopher D. Man

                                          *Attorneys for Robert Hunter Biden*

DEFENDANT'S OPPOSITION TO THE SPECIAL COUNSEL'S FIRST MOTION *IN LIMINE*
CASE NO. 2:23-CR-00599-MCS-1