UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 2:23-cr-00599-MCS-1 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | Thursday, September 5, 2024 |
| | ) | |
| Defendant. | ) | (8:32 a.m. to 8:44 a.m.) |

VOLUME 1 - VOIR DIRE

(JURY TRIAL - DAY 1)

BEFORE THE HONORABLE MARK C. SCARSI,
UNITED STATES DISTRICT JUDGE

APPEARANCES:            SEE PAGE 2

Court Reporter:         Recorded; CourtSmart

Courtroom Deputy:       Stephen Montes Kerr

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

APPEARANCES:


For Plaintiff:                 LEO J. WISE, ESQ.
                               DEREK E. HINES, ESQ.
                               U.S. Department of Justice
                               Principal Senior Assistant
                               Special Counsel
                               950 Pennsylvania Ave. NW
                               Room B-200
                               Washington, DC 20530
                               771-217-6091


For Defendant:                 MARK J. GERAGOS, ESQ.
                               TINA GLANDIAN, ESQ.
                               SETARA QASSIM, ESQ.
                               Geragos & Geragos
                               644 S. Figueroa St.
                               Los Angeles, CA 90017

                               ABBE D. LOWELL, ESQ.
                               Winston & Strawn
                               1901 L Street NW
                               Washington, DC 20036
                               202-282-5000

                               ANGELA M. MACHALA, ESQ.
                               Winston & Strawn
                               333 S. Grand Ave.
                               38th Floor
                               Los Angeles, CA 90071
                               213-615-1997

3

1    **Los Angeles, California; Thursday, September 5, 2024; 8:32 a.m.**

2                          **(Call to Order)**

3              **THE CLERK:**  Calling Item Number 1, CR-23-599,

4    *USA versus Robert Hunter Biden.*

5              Counsel, state your appearances, please.

6              **MR. WISE:**  Good morning, Your Honor.  Leo Wise and

7    Derek Hines for the United States.  And with us at counsel

8    table is Special Agent Robert Baldini of the IRS CID and our

9    jury consultant, Dan Jacks.

10             **THE COURT:**  Good morning.

11             **MR. LOWELL:**  Abbe Lowell on behalf of Mr. Biden.

12             **MR. GERAGOS:**  Good morning, Your Honor.  Mark

13   Geragos, G-e-r-a-g-o-s, with Mr. Biden, Tina Glandian, Setara

14   Qassim, Q-a-s-s-i-m, who's seated in the I think we refer to it

15   as "the pew".

16             **THE COURT:**  Good morning.

17             **MR. GERAGOS:**  Good morning.

18             **THE COURT:**  Okay.  Good morning, everyone.

19             So we're starting with jury selection today.  I think

20   we'll have plenty of time to get it done -- we've reserved

21   today and tomorrow.  My balance of time tomorrow we'll use to

22   deal with any pretrial things we need to do before opening

23   statements.

24             We have a little bit of time before the jurors will

25   get here.  We're going to kind of bring them up in groups

**EXCEPTIONAL REPORTING SERVICES, INC**

4

1  because we're going to bring 100 of them into the courtroom and

2  because of that we're not going to have anybody else in the

3  courtroom: press, spectators, that sort of thing.  All those

4  folks can be in the overflow courtroom so they can see

5  everything that's happening.

6          In the overflow courtroom we'll have a camera on the

7  podium where the jurors will actually speak.  We'll have a

8  camera on the bench and that should be sufficient.

9          Once we get enough cleared jurors -- we need 36

10  cleared jurors to have enough jurors to allow everyone to

11  exercise their peremptory strikes -- the process will be we'll

12  get the hundred in here, I'll give them some preliminary

13  instructions.  I've got a questionnaire that the parties have

14  seen.  I'll ask them all those questions.  We'll have them fill

15  out their forms.

16          Once they're done we're going to take all the jurors,

17  the 100 of them, we're going to bring them over to Judge

18  Fischer's courtroom at the end of the hall.  And then we'll

19  bring them back one by one, they'll come up to the podium.

20  I'll ask them where they're from in the LA area, I'll ask them

21  what their occupation is.  I'll ask them if they have a

22  significant other and what their occupations are.  I'll ask

23  them whether if they have adult children what their occupations

24  are.  And then we'll ask them about the questions they answered

25  yes to on the questionnaire.

5

1          If it appears that they haven't answered "yes" to any

2    of the questions and we don't get much information from them, I

3    may ask them a few additional questions such as what are some

4    of your hobbies, what TV shows do you like to watch, those

5    sorts of things.  The intent is to try to get the jurors

6    talking a bit so you get a sense of what they're about.

7          Once we're doing questioning the juror, we'll excuse

8    them back to Judge Fischer's courtroom.  Then I'll ask the

9    parties if they have a challenge for cause and so we'll deal

10   with the cause challenges in real time.  Once we're done with

11   that we'll bring the next juror in and that'll be the process.

12         Once we have 36 cleared jurors, then we have enough

13   for everyone to exercise their peremptory strikes and so we'll

14   stop at that point, we'll get the 36 back in the courtroom,

15   we'll fill the box with them, with 12, and then I'll ask the

16   parties to exercise preemptory challenges.  And then once

17   somebody's excused in a peremptory strike, we'll fill that seat

18   with the next juror in line and that'll be the process.

19         Once we have our 12, we'll fill the four alternate

20   spots and the parties get two peremptory strikes on the

21   alternates so we'll do the same thing there.  So that's the

22   process.

23         Before I get to preliminary matters, anybody have any

24   questions about that process?

25              **MR. WISE:**  Not about the process, Your Honor, but

6

1    just an observation and a question.

2          I believe Mr. Morris is in the courtroom and he's on

3    the defense witness list.  So in terms of sequestration we

4    would ask that he not be present for any part of the trial

5    until he testifies and that he not be allowed to participate

6    until he testifies.

7          **THE COURT:**  Okay.  Can I hear from the defense?

8          **MR. LOWELL:**  Yes, Judge, it goes to two issues.

9          First of all I mean this is not part of the trial,

10   picking a jury or the preliminaries.  The rule of witnesses

11   apply to when the actual testimony and openings, et cetera,

12   begin so that a witness isn't tainted.  This is not part of

13   that.  The rule of witnesses wouldn't apply.

14         It also raises another question I was going to ask --

15   that I was asked to ask you and I have a more important point

16   to make to Your Honor before.

17         But for now, I was told that I should inquire of you

18   why it is that Mr. Biden's spouse is not allowed in this

19   courtroom for these preliminaries or for jury selection.  We

20   would ask that she's allowed.

21         **THE COURT:**  Well the -- in order to get all the

22   jurors in here, the hundred jurors, we don't have room

23   essentially for any spectators or press.  And it's hard to have

24   a rule where we say one person can come in but other people

25   can't.  We have the Courtroom 1 downstairs which is a big, big,

7

1  big courtroom that everybody can observe all the proceedings

2  there so that's the reasoning behind that.  As soon as we're

3  done with jury selection then obviously the courtroom's open to

4  anybody.

5          **MR. LOWELL:**  We're not asking that all members of his

6  family, it's just his spouse.  And of course in a case -- in

7  any case, any proceeding, having your most cherished loved one

8  is not only important for lots of reasons but not the least of

9  which of course is for the support.  I didn't know that there

10  wouldn't be one spot even if it's at the bench in front to do

11  it that way.

12          **THE COURT:**  Yeah.  I have to have a cutoff.  I don't

13  know how I would judge these things.  You know the press

14  certainly wants to be here as well and they argue that they

15  should have a right to be here so that's the Ruling of the

16  Court.

17          **MR. WISE:**  If I may respond to the first point?

18          No witness takes the stand knowing intimate details

19  about every juror and so that would make Mr. Morris unique in

20  that regard.  So we think while perhaps technically if the rule

21  doesn't apply, certainly the spirit of it would not allow a

22  fact witness to participate or observe jury selection.

23          **MR. LOWELL:**  I'm going to obviate this because

24  there's a much more important point to make to Your Honor if I

25  may?

**EXCEPTIONAL REPORTING SERVICES, INC**

8

1          THE COURT:  Sure.

2          MR. LOWELL:  We have gotten together this morning and

3   want to announce to the Court there's no reason to proceed with

4   jury selection because Mr. Biden intends to change his plea

5   this morning.

6          THE COURT:  Okay.

7          MR. LOWELL:  Therefore we'll obviate all that you

8   just indicated.

9          THE COURT:  Okay.  So your client intends to plead

10  guilty then.

11         MR. LOWELL:  Correct.

12         THE COURT:  Okay.  So in that case I'm not going to

13  let the jurors go yet -- we'll keep them downstairs because

14  until the plea is on the record, I don't want to lose all the

15  folks that we've subpoenaed to be here.

16         The only issue with -- so this would be an open plea,

17  correct?

18         MR. LOWELL:  It would be in the nature of an open

19  plea, yes.  I mean it would be an open plea, looking at the

20  caselaw and your own rule, in the nature of Rule 11 and also

21  North Carolina versus Alford.

22         THE COURT:  Will the parties want to confer on a

23  factual basis because we'll need to put that on the record and

24  there could be some negotiations between the parties as to what

25  an appropriate factual basis would be.

9

1          **MR. LOWELL:**  May I go to the podium?

2          **THE COURT:**  Sure.

3          **MR. WISE:**  Your Honor, if I may before that?

4          **THE COURT:**  Uh-huh.

5          **MR. WISE:**  To be very clear, we will not agree to an

6    Alford plea which is a plea in which the defendant does not

7    admit guilt.

8          **THE COURT:**  Okay.

9          **MR. LOWELL:**  So let me address both of those points.

10   Yours first, his second.

11          There's no agreement about this, as you've just

12   heard, but there is no requirement for an agreement.  Now I

13   know the Department has its own rules as to what it has to do

14   internally to decide if they're going to agree to it but the

15   law is very clear that their requirement is not to agree or

16   disagree.  They can oppose but the law is very clear as to what

17   you just sort of indicated.  That if a defendant satisfies the

18   requirements of Rule 11(b) and the Court finds there's a

19   factual basis, then the Court is required to take the plea.

20   That factual basis doesn't have to occur out of the mouth of

21   the defendant.

22          And the cases -- which I am prepared both to tell you

23   about if necessary and I have copies of them -- make that very

24   clear.  So unlike a conditional plea and unlike the plea of

25   nolo, neither the prosecutors or the Court's approval is

1   required.  And the cases that are reported in the Ninth Circuit

2   have various ones in which a prosecutor like Mr. Wise got up

3   and said, "We don't agree."  And sometimes they do occur by

4   plea agreement and that's where the parties could get together

5   and agree on a factual statement but we don't have to do that.

6   I doubt that we would agree under the circumstances.

7          So the Court has to -- in fact the caselaw says

8   "must" -- find the factual basis from material other than the

9   defendant's own mouth.  And I think there's more than enough

10  for you to do that given -- if anybody knows from the motions

11  to dismiss, from the pretrial conference, to all the

12  submissions, the Government having laid out what it believes is

13  its overwhelming evidence of the defendant's guilt.

14          **THE COURT:**  Okay.  Why don't we do this.  I know it

15  doesn't appear that the parties have discussed this issue.  Why

16  don't we stand in recess until 9:00 o'clock.  Let me give the

17  parties an opportunity to discuss.

18          **MR. WISE:**  Your Honor, if I just may?

19          **THE COURT:**  Sure.

20          **MR. WISE:**  So we have not discussed this.  We have

21  not been in substantive plea negotiations with the Defense for

22  months.  This is the first we're hearing of this.

23          We would appreciate the opportunity to be able to

24  brief whether Alford could be -- whether an Alford plea in this

25  case -- which again, is one in which the defendant does not

11

1   admit guilt -- is appropriate.  And this is the first we've

2   heard of this so we would appreciate an opportunity to look at

3   the law that Mr. Lowell is now mentioning and decide what our

4   position is.

5          **THE COURT:**  And I would normally give you an

6   opportunity to brief it.  I sort of understand the position

7   you're in. The issue is we've got 120 jurors that we want to

8   hang on to if we need them.

9          So can we continue this matter until let's say 11:00?

10         **MR. WISE:**  That would be -- yeah.  If we had heard

11  this yesterday, we would have done the briefing; but yes, we

12  can --

13         **THE COURT:**  Okay so let's --

14         **MR. LOWELL:**  Judge, on that, for sure let's take the

15  break.  If needs to 11:00, then I'll let you decide that,

16  that's fine.  I don't think they need as much.

17         I will provide both the Court and counsel for the

18  Government with the cases that address this.  In fact, every

19  case that addresses it so that they don't have to do much work

20  and I can basically hopefully expedite you and your colleagues'

21  ability to do that.

22         I think this can be resolved today.  It doesn't need

23  days to do it because it's not like it's a very complicated

24  issue.

25         I will point out that in order to respond to what was

**EXCEPTIONAL REPORTING SERVICES, INC**

12

1   just said, you're right there has not been an agreement because

2   the only back and forth we ever had was the Government

3   basically saying if you want to plead to all nine counts,

4   that's what we want and that was not an acceptable basis for

5   anybody to start negotiating a plea in a case like this so here

6   we are.

7          **THE COURT:**  Yeah.  And the Court wants to stay out of

8   any plea discussion.  So we'll stand in recess until 11:00

9   o'clock and then we'll come back and we'll discuss the plea.

10         And then just so you know, because of the nature of

11  this, I'm going to allow the courtroom to be open to press and

12  spectators and certainly the Defendant's spouse.

13         **MR. LOWELL:**  Thank you.  May I proffer to your clerks

14  a file of cases and --

15         **THE COURT:**  You can bring them up to the courtroom

16  deputy.  Thank you.

17         Okay.  We'll stand in recess until 11:00 o'clock.

18  Thank you.

19         **THE CLERK:**  All rise.

20     **(Recessed at 8:44 a.m.; remainder of proceeding under**

21  **separate cover)**

22

23

24

25

**EXCEPTIONAL REPORTING SERVICES, INC**

13

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                        **September 5, 2024**

        **Signed**                                                          **Dated**


*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**