UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　　　Defendant. | Case No. 2:23-cr-00599-MCS-1<br><br>**ORDER RE: NOTICE OF PARDON** |

On December 1, 2024, Defendant Robert Hunter Biden provided notice that Joseph R. Biden Jr., President of the United States of America, issued a full and unconditional pardon to Mr. Biden. (Notice of Pardon 1, ECF No. 236.) Rather than providing a true and correct copy of the pardon with the notice, Mr. Biden provided a hyperlink to a White House press release presenting a statement by the President regarding the pardon and the purported text of the pardon. (Notice of Pardon 1 n.1 (citing *Statement from President Joe Biden*, The White House, (Dec. 1, 2024), https://www.whitehouse.gov/briefing-room/statements-releases/2024/12/01/statement-from-president-joe-biden-11 [https://perma.cc/5XEA-DTE7]).) The Court previously noted its disapproval of this practice. (Order on Mots. to Dismiss 33, ECF No. 67.) The President's statement illustrates the reasons for the Court's disapproval, as representations contained therein stand in tension with the case record.

For example, the President asserts that Mr. Biden "was treated differently" from others "who were late paying their taxes because of serious addictions," implying that Mr. Biden was among those individuals who untimely paid taxes due to addiction. But he is not. In his pretrial filings, Mr. Biden represented that he "was severely addicted to alcohol and drugs" "through May 2019." (Disputed Joint Statement of the Case 4, ECF No. 152.) Upon pleading guilty to the charges in this case, Mr. Biden admitted that he engaged in tax evasion *after* this period of addiction by wrongfully deducting as business expenses items he knew were personal expenses, including luxury clothing, escort services, and his daughter's law school tuition. (*E.g.*, Indictment ¶¶ 141, 149, ECF No. 1.) And Mr. Biden admitted that he "had sufficient funds available to him to pay some or all of his outstanding taxes when they were due," but that he did not make payments toward his tax liabilities even "well after he had regained his sobriety," instead electing to "spen[d] large sums to maintain his lifestyle" in 2020. (*Id.* ¶ 48.)

According to the President, "[n]o reasonable person who looks at the facts of [Mr. Biden's] cases can reach any other conclusion than [Mr. Biden] was singled out only because he is [the President's] son." But two federal judges expressly rejected Mr.

Biden's arguments that the Government prosecuted Mr. Biden because of his familial relation to the President. (Order on Mots. to Dismiss 32–55); Mem. Opinion 6–19, *United States v. Biden*, No. 1:23-cr-00061-MN (D. Del. Apr. 12, 2024), ECF No. 99. And the President's own Attorney General and Department of Justice personnel oversaw the investigation leading to the charges. In the President's estimation, this legion of federal civil servants, the undersigned included, are unreasonable people.

In short, a press release is not a pardon. The Constitution provides the President with broad authority to grant reprieves and pardons for offenses against the United States, U.S. Const. art. II, § 2, cl. 1, but nowhere does the Constitution give the President the authority to rewrite history.

Although Mr. Biden attached a purported copy of the pardon to a subsequent filing, (*see* Reply Ex. A, ECF No. 238-1), the copy is not substantiated by an authenticating declaration, *see* Fed. R. Crim. P. 47(b); C.D. Cal. R. 7-5(b); C.D. Cal. Crim. R. 57-1; (*see also* Order on Mots. to Dismiss 33 (citing these rules)), so the Court is left to assume it is a true and correct copy of the clemency warrant.[1] Mr. Biden declares that he accepted the pardon, (Biden Decl. ¶ 2, ECF No. 236-1), and on that basis he asserts that the Court "must dismiss the Indictment against Mr. Biden with prejudice and adjourn all future proceedings in this matter," (Notice of Pardon 2). The Government, treating the notice as a motion to dismiss the indictment, asserts that "[n]othing requires the dismissal of the indictment in this case." (Opp'n 1, ECF No. 237.) The Government instead suggests that the Court terminate the charges against Mr. Biden. (*Id.* at 3.)

Neither party has provided the Court with binding authority prescribing its preferred procedural mechanic for effecting a grant of clemency, and neither party has

---

[1] As Mr. Biden notes, the Office of the Pardon Attorney published a similar copy to its website. *Pardons Granted by President Joseph Biden (2021-Present)*, Off. of Pardon Att'y, (last updated Dec. 2, 2024), https://www.justice.gov/pardon/pardons-granted-president-joseph-biden-2021-present [https://perma.cc/8K77-67WA].

presented a persuasive reason why its preferred resolution should be employed when the ultimate effect—the conclusion of the case—will be the same under either. Further, the Court has yet to receive the pardon from the appropriate executive agency. The Court directs the Clerk to comply with court procedures for effecting a grant of clemency once the pardon is formally received, which will result in the termination of the case. *Cf.* Oral Order, *United States v. Biden*, No. 1:23-cr-00061-MN (D. Del. Dec. 3, 2024), ECF No. 277 (terminating proceedings without expressly dismissing indictment). Pending the execution of those procedures, the Court vacates the sentencing hearing.

Subject to the following discussion, the Court assumes the pardon is effective and will dispose of the case. The Supreme Court long has recognized that, notwithstanding its nearly unlimited nature, the pardon power extends only to past offenses. *See Ex parte Garland*, 71 U.S. 333, 380 (1867) ("[The pardon power] extends to every offence known to the law, and may be exercised at any time *after its commission*, either before legal proceedings are taken, or during their pendency, or after conviction and judgment." (emphasis added)).

The clemency warrant pardons Mr. Biden "[f]or those offenses against the United States which he has committed or may have committed or taken part in during the period from January 1, 2014 *through* December 1, 2024," including the charges prosecuted in this case. (Reply Ex. A (emphasis added).) The President signed the pardon on December 1, 2024. (*Id.*) Because the period of pardoned conduct extends "through" the date of execution, the warrant may be read to apply prospectively to conduct that had not yet occurred at the time of its execution, exceeding the scope of the pardon power. Under the canon of constitutional avoidance, the Court declines to interpret the warrant in that manner and instead understands the warrant to pardon conduct through the time of execution on December 1. *Clark v. Suarez Martinez*, 543 U.S. 371, 380–81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a

multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court."); *see United States v. Davis*, 588 U.S. 445, 494–95 (2019) (Kavanaugh, J., dissenting) (collecting cases for the proposition "that courts should construe ambiguous laws to be consistent with the Constitution"); *see also Ex parte Endo*, 323 U.S. 283, 298 (1944) (construing executive order "as we would approach the construction of legislation"); *but see FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 516 (2009) ("We know of no precedent for applying [the canon of constitutional avoidance] to limit the scope of authorized executive action."); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018) ("In contrast to the many established principles for interpreting legislation, there appear to be few such principles to apply in interpreting executive orders.").

To the extent the pardon encompasses prospective conduct, the Court deems the prospective component of the pardon severable from the component that demands the termination of this proceeding. *See Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) ("Because no party before this Court challenges the applicability of these standards, for purposes of this case we shall assume, arguendo, that the severability standard for statutes also applies to Executive Orders."). The warrant explicitly brings the charges in this action within the ambit of the pardon, indicating presidential intent for the pardon to apply to this case even if it is unconstitutional in other respects. *See id.* at 191–92 (discussing whether the president intended an order "to stand or fall as a whole").

**IT IS SO ORDERED.**

Dated: December 3, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE